IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LOUISE BAILEY,

Plaintiff,

v.

MUTUAL OF OMAHA INSURANCE COMPANY, MICHAEL O. LEAVITT, and LESLIE V. NORWALK,

Defendants.

Case No. 1:06-cv-2144
Judge Royce C. Lamberth

**DEFENDANTS' MOTION TO DISMISS**

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), defendants in the above-captioned action respectfully move this Court for an order dismissing plaintiff's complaint on the grounds of lack of subject-matter jurisdiction, failure to exhaust administrative remedies, and failure to state a claim. For the reasons in support of these motions, defendants respectfully refer the Court to the attached memorandum of points and authorities. A proposed order is also attached.

Respectfully submitted

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

SHEILA M. LIEBER
PETER ROBBINS
United States
Department of Justice
20 Massachusetts Avenue, N.W., Room 7142
Washington, D.C. 20530
Tel: (202) 514-3953
Attorneys for Defendants

OF COUNSEL:
DANIEL MERON
General Counsel

KATHLEEN H. MCGUAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate
General Counsel for Litigation

WILLIAM A. CONNELLY
Attorney
Department of Health
and Human Services

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LOUISE BAILEY,

Plaintiff,

v.

MUTUAL OF OMAHA INSURANCE COMPANY, MICHAEL O. LEAVITT, and LESLIE V. NORWALK,

Defendants.

Case No. 1:06-cv-2144
Judge Royce C. Lamberth

**DEFENDANTS' MEMORANDUM**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

OF COUNSEL:
DANIEL MERON
General Counsel

KATHLEEN H. MCGUAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate
General Counsel for Litigation

WILLIAM A. CONNELLY
Attorney
Department of Health
and Human Services

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

SHEILA M. LIEBER
PETER ROBBINS
United States
Department of Justice
20 Massachusetts Avenue, N.W., Room 7142
Washington, D.C. 20530
Tel: (202) 514-3953
Attorneys for Defendants

## TABLE OF CONTENTS

INTRODUCTION. . . . . 1

STATEMENT OF THE CASE. . . . . 3

A. The Medicare Claims Process. . . . . 3

B. The "Reasonable and Necessary" Standard. . . . . 8

C. Blood-Glucose Tests and Medical-Necessity Standards. . . . . 11

D. Plaintiff's Claims for Blood-Glucose Tests. . . . . 14

E. Plaintiff's Challenge to the Local Coverage Determination.. . . . . 17

1. The proposed national coverage determination. . . . . 17

2. The proposed coverage determination for blood-glucose tests. . . . . 20

3. The Secretary's program guidance on blood-glucose tests and medical-necessity.. . . . . 24

4. The local coverage determination. . . . . 26

5. The final national coverage determination and retirement of the local coverage determination. . . . . 28

6. The administrative challenge. . . . . 29

ARGUMENT.. . . . . 33

I. PLAINTIFF'S FIRST CLAIM SHOULD BE DISMISSED BECAUSE SHE HAS NOT MET THE JURISDICTIONAL PREREQUISITES TO CHALLENGE A DENIAL OF PART B CLAIMS. . . . . 33

A. Plaintiff's Claim Is Not Authorized by 42 U.S.C. § 1395oo or § 1395ff(f)(3). . . 34

B. Plaintiff Does Not Meet the Dollar-Amount, Presentment and Exhaustion Requirements of 42 U.S.C. § 1395ff(b).. . . . . 35

C. Jurisdiction Is Not Available under 28 U.S.C. § 1331.. . . . . 39

D. Mandamus Jurisdiction under 28 U.S.C. § 1361 Is Not Available. . . . . 41

II. PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF TO PROHIBIT THE INTERMEDIARY FROM USING A RETIRED LCD TO DENY MEDICARE CLAIMS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

III. RETIREMENT OF THE LOCAL COVERAGE DETERMINATION BY THE INTERMEDIARY DID NOT INVALIDATE ANY POLICIES OF THE SECRETARY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

IV. PLAINTIFF'S DUE PROCESS CLAIM SHOULD BE DISMISSED FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM.. . . . . . . . . . . . . . . . . . 47

A. Plaintiff Lacks Third-Party Standing to Assert the Putative Rights of Other Medicare Beneficiaries. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

B. Plaintiff's Due-Process Theory Lacks Merit. . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

## INTRODUCTION

One of the bedrock requirements of the Medicare program is that eligible beneficiaries cannot be reimbursed for medical services unless the services are "reasonable and necessary" for diagnosis or treatment of the patient.  42 U.S.C. § 1395y(a)(1)(A).  This action concerns the reasonableness of blood-glucose tests administered to a diabetic resident in a nursing facility.  To establish that such laboratory tests are reasonable and necessary, a claimant must show that the tests were ordered by the treating physician and that the physician used "the results in the management of the beneficiary's specific medical problem."  42 C.F.R. § 410.32(a).  The mere existence of a physician's "standing order" is not "sufficient."  42 C.F.R. § 424.24(f).  Rather, the results "must be reported to the physician promptly" and the physician must "use the result" to "instruct continuation or modification of patient care," including "the physician's order for another laboratory service."  Program Memorandum Transmittal ("Program Memorandum") AB-00-108 at 1 (Dec. 1, 2000) (Def. Ex. A).

The term "standing order" is not defined in the regulation or the program instructions, and there remains considerable room for interpretation with respect to how promptly test results must be reported to the physician, as well as how often the physician must review the results in order to properly use them to order new tests and to manage the patient's condition.  Because the medically-appropriate answers may vary from patient to patient, it is not surprising that these questions have been left for case-by-case adjudication through the Medicare claims review process.  This action seeks to short-circuit that administrative process by asking this Court to issue what amounts to an advance ruling on when blood-glucose tests must be deemed to be reasonable and necessary.  The judicial ruling sought by plaintiff would effectively require one Medicare contractor in the United States to pay all blood-glucose claims submitted on behalf of

beneficiaries by nursing facilities, even where there is no evidence (a) that the nursing staff ever reported even a single result to the physician; (b) that the physician ever examined even a single result, or (c) that the physician ever used any test result to order new tests or to manage treatment of the beneficiary's medical condition. This complaint should be dismissed for lack of subject-matter jurisdiction and failure to state a claim.[1]

To understand the background of this case, it is important to distinguish between what is actually at issue and what plaintiff mistakenly thinks is at issue. The real case is very simple. Plaintiff believes that certain claims for blood-glucose tests that were submitted on her behalf were denied for a legally erroneous reason, and she would like to bypass the Medicare claims process and obtain a ruling on her issue directly from this Court. She seeks this judicial ruling on past and future claims even though (a) she personally was found not to be liable for the expense of the tests and (b), on the face of the determinations issued by Medicare, the claims were not denied for the reason she alleges in her complaint.

The reason the claims were denied was simply that "[t]he information provided" in support of the claim "does not support the need for this service." Attachment ("Routt Docs.") to Declaration of Michelle Routt ("Routt Dec.") at 55, 81, 127, 172 (Def. Ex. B). Plaintiff apparently thinks the reason that the claim was denied was because the nursing facility did not call the physician every morning to report blood-glucose levels and to obtain an order to perform another test in the afternoon. Indeed, although her 120-paragraph amended complaint is not a model of clarity, plaintiff appears to contend that <u>any</u> policy which conceivably could result in

[1] Plaintiff also asserts a meritless "due process" theory that is discussed at the end of this memorandum.

the denial of blood-glucose claims for any reason related to the "reasonable and necessary" standard must be declared unlawful by this Court.

Plaintiff contends that this astonishing outcome is justified because a private Medicare contractor once issued a "local coverage determination" ("LCD") discussing the general topic of blood-glucose tests and then retired the LCD while an administrative challenge, filed by plaintiff pursuant to 42 U.S.C. § 1395ff(f)(2)(A), was pending before an administrative law judge. Even when taken on it own misdirected terms, this argument rests on a convoluted theory that the unilateral action of a fiscal agent at the bottom of the Medicare chain-of-command can have the retroactive effect of invalidating (at least for all claims within that fiscal agent's purview) all payment policies on the same subject that had been previously articulated by the Secretary of Health and Human Services in the form of program instructions, and that it can have the prospective effect of prohibiting the fiscal agent from ever applying any payment regulations that are later promulgated by the Secretary on the same subject. This "tail wags the dog" theory of Medicare administration is, to say the least, a novel one. But, since the short answer to plaintiff's arguments is that she must first assert them through the Medicare claims process before bringing suit in this Court, the analysis properly begins with a discussion of that claims process.

## STATEMENT OF THE CASE

### A. The Medicare Claims Process

Title XVIII of the Social Security Act, commonly known as the Medicare Act, 42 U.S.C. §§ 1395, et seq., establishes a program of health insurance for the elderly and disabled. Medicare Part A pays for inpatient hospital services and related aftercare. 42 U.S.C. § 1395c. Medicare Part B is a supplementary program, 42 U.S.C. § 1395j, that covers medical and other health-care services, 42 U.S.C. § 1395k(a)(1), including "diagnostic laboratory tests." 42 U.S.C.

§ 1395x(s)(3). For the first 100 days after a qualifying hospital stay, Part A covers the costs of residence in a skilled nursing facility. 42 U.S.C. §§ 1395d(a), 1395x(h); 42 C.F.R. § 409.61(b). SNF residents who do not qualify for Part A payment (for example, because the 100 days have expired or because they were not admitted from a hospital in the first place) may still be reimbursed for some services under Part B. In this setting, the SNF generally submits the Part B claim on behalf of the beneficiary, Medicare Claims Processing Manual, ch. 7, § 10.A, and the SNF is then authorized to receive any payment made on the claim. 42 C.F.R. § 424.51(a).

The Medicare program is administered by the Centers for Medicare & Medicaid Services ("CMS") through private contractors, usually insurance companies. 42 U.S.C. §§ 1395h, 1395u. The contractors are responsible for making an initial determination on claims under Part A or Part B on the basis of regulations and other policies articulated by the Secretary. 42 U.S.C. § 1395ff(a)(1). Generally speaking, a contractor that processes Part A claims is known as a "fiscal intermediary" (or "intermediary") and a contractor that process Part B claims is known as a "carrier." Where, as here, the contractor processes Part B claims from an institutional health-care provider, such as a skilled nursing facility, for which it also processes Part A claims, the contractor is referred to as an "intermediary." Medicare Claims Processing Manual ch. 1, § 10.2.

The intermediary makes an initial determination whether to pay the claim, 42 U.S.C. § 1395ff(a)(1); 42 C.F.R. § 405.904(a)(2), on the basis of the information provided by the SNF. If the claim is denied in whole or in part, the intermediary must provide the beneficiary with a written notice that includes an explanation of "the reasons for the determination." 42 U.S.C. § 1395ff(a)(4)(A)(i); 42 C.F.R. § 405.921(a)(2)(i). This document, previously known an Explanation of Medicare Benefits, is now called a Medicare Summary Notice. If a beneficiary (or other party to the determination) is dissatisfied with the initial determination, he is entitled to

request a redetermination, 42 U.S.C. § 1395ff(a)(3); 42 C.F.R. § 405.940, to be performed by a contractor employee other than the one who made the initial decision. 42 U.S.C. § 1395ff(a)(3)(B)(ii); 42 C.F.R. § 405.948.

In the request for a redetermination, the beneficiary (or other requesting party) "must explain why [he] disagrees with the contractor's determination" and "should include any evidence that the party believes should be considered," 42 C.F.R. § 405.946(a), including any "additional evidence" that may not have previously been provided. 42 C.F.R. § 405.946(b). The contractor also "may raise and develop new issues" if they are "relevant to the claims in the particular case." 42 C.F.R. § 405.948. On the "basis of the evidence of record, the contractor adjudicates the claims(s)" a second time and "renders a redetermination affirming or reversing, in whole or in part, the initial determination in question." 42 C.F.R. § 405.954. The beneficiary is entitled to a notice of the redetermination that sets forth the "specific reasons" for the decision, 42 U.S.C. § 1395ff(a)(5)(A)(i), and that includes a "summary of the rationale for the redetermination," 42 C.F.R. § 405.956(b)(4), a "summary of the facts, including, as appropriate, a summary of any clinical or scientific evidence used in making the redetermination," 42 C.F.R. § 405.956(b)(2); see also 42 U.S.C. § 1395ff(a)(5)(A)(ii), and [a]n explanation of how laws, regulations, coverage rules, and CMS policies apply to the facts of the case." 42 C.F.R. § 405.956(b)(3). If, after the initial determination is fleshed out in this manner, the beneficiary remains dissatisfied with the result, he is entitled to a series of administrative appeals.

First, he is entitled to reconsideration of the intermediary's redetermination decision by a "qualified independent contractor," 42 U.S.C. § 1395ff(c)(3)(B)(i), with respect to "all issues related to the payment of the claim." 42 C.F.R. § 405.968. Where the particular denial at issue is based on a finding that the service furnished to the beneficiary was not "reasonable and

necessary" under 42 U.S.C. § 1395y(a)(1)(A), this review must "include consideration of the facts and circumstances" by "a panel of physicians or other appropriate health care professionals," 42 U.S.C. § 1395ff(c)(3)(B)(i), and "any decisions with respect to the reconsideration" must be based on "the medical records of the individual involved," "clinical experience," and "medical, technical, and scientific evidence." Id. At this stage, the beneficiary has a second opportunity to submit additional documentation and evidence, 42 C.F.R. §§ 405.966(a)-(b), and the panel of experts may develop independent evidence of its own. 42 C.F.R. § 405.968. The qualified independent contractor then issues its decision "affirming or reversing, in whole or in part, the initial determination," 42 C.F.R. § 405.974, accompanied by a "detailed explanation" that includes "a discussion of the pertinent facts and applicable regulations." 42 U.S.C. § 1395ff(c)(3)(E).

If, after this further fleshing out of the claims decision, the beneficiary remains dissatisfied, he is entitled to have the reconsideration decision reviewed through a hearing before an administrative law judge ("ALJ"), 42 U.S.C. § 1395ff(d)(1)(A); 42 C.F.R. §§ 405.1000, 405.1002, if the amount in controversy is $100, 42 U.S.C. § 1395ff(b)(1)(E)(i); 42 C.F.R. §§ 405.1002(b)(3), 405.1006(b), adjusted for inflation. 42 U.S.C. § 1395ff(E)(iii); 42 C.F.R. §§ 405.1006(b)(1), (b)(2).[2] At the ALJ hearing, the beneficiary has a third opportunity to submit new evidence, 42 C.F.R. §§ 405.1018, 405.1036(a), (e), (f), (g) and, if the contractor or CMS elects to participate in the hearing, the beneficiary may take discovery. 42 C.F.R. § 405.1037(a). He may also raise "all the issues brought out in the initial determination, redetermination, or

[2] For 2007, the required threshold for ALJ appeals is $110. 71 Fed. Reg. 75,250, 75,253 (Dec. 14, 2006). A beneficiary may aggregate multiple claims to meet the requirement. 42 U.S.C. § 1395ff(b)(1)(E)(ii); 42 C.F.R. § 405.1006(e).

reconsideration that were not decided entirely in [his] favor," 42 C.F.R. § 405.1032(a), and any

new issues that could have a "material impact on the claim or claims." 42 C.F.R.

§ 405.1032(b)(1)(i). If the ALJ "believes that the written record is missing information that is

essential to resolving the issues on appeal," 42 C.F.R. § 405.1034(a), he may remand the matter

to the qualified independent contractor. 42 C.F.R. § 405.1034(a)(1). This hearing process is

designed to produce "a written decision that gives the findings of fact, conclusions of law, and

the reasons for the decision." 42 C.F.R. § 405.1046(a). It also is designed to produce "a

complete record of the evidence," that includes all "documents used in making the decision,"

such as "medical records, written statements, certificates, reports, affidavits, and any other

evidence the ALJ admits." 42 C.F.R. §§ 405.1042(a)(1), (2).

        If the beneficiary remains dissatisfied, he may appeal the ALJ decision to the Medicare

Appeals Council. 42 U.S.C. § 1395ff(d)(2); 42 C.F.R. §§ 405.902, 405.1100. In requesting

review, the beneficiary is required "to identify the parts of the ALJ action" with which he

disagrees, such as the reasons why he "believes that the ALJ's action is inconsistent with a

statute, regulation, CMS ruling or other authority." 42 C.F.R. § 405.1112.(b). The Appeals

Council must "limit its review" to "those exceptions raised by the party," 42 C.F.R.

§ 405.1112(c), unless a beneficiary is pursuing the appeal without a legal representative. Id.

Although review at this stage of the appeals process generally is restricted to "the evidence

contained in the record of the proceedings before the ALJ," the Appeals Council may consider

"any evidence" related to any "new issue that the parties were not afforded an opportunity to

address at the ALJ level." 42 C.F.R. § 405.1122(a)(1). The Appeals Council also may remand to

the ALJ for further factual development if "additional evidence is needed to resolve the issues in

the case." 42 C.F.R. § 405.1112(a)(2).

"After it has reviewed all the evidence in the administrative record and any additional evidence received," 42 C.F.R. § 405.1128(a), the Appeals Council renders its decision, id., and provides notice to the beneficiary. 42 C.F.R. § 405.1128(c). The end result of this process is a "final decision" of the Secretary that is subject to review in federal court, 42 U.S.C. § 1395ff(b)(1)(A), 42 C.F.R. §§ 405.1130, 405.1136, if the amount in controversy is $1,000, indexed for inflation. 42 U.S.C. § 1395ff(b)(1)(E)(i); 42 C.F.R. §§ 405.1006(b)(1), 405.1006(b)(2), 405.1006(c)(1). The threshold amount in 2006, when the complaint in this case was originally filed, was $1,090. 71 Fed. Reg. 2247, 2248 (Jan. 13, 2006). Claims may be aggregated to meet this amount. 42 U.S.C. § 1395ff(b)(1)(E)(ii); 42 C.F.R. § 405.1006(e).

**B. The "Reasonable and Necessary" Standard**

Because of its emphasis on factual development, the Medicare claims process is especially well-suited to resolving disputes about whether particular services are "reasonable and necessary for the diagnosis or treatment of illness or injury." 42 U.S.C. § 1395y(a)(1)(A). This statutory standard is obviously couched in terms of "[b]road wording," Yale-New Haven Hosp. v. Leavitt, 470 F.3d 71, 73 (2d Cir. 2006), and the Secretary has "wide discretion in selecting the means" by which he determines when the almost innumerable different medical services and items covered by Medicare are "reasonable and necessary" in particular circumstances. Id. at 74. To accomplish the daunting task of administering the reasonable and necessary standard, the Secretary "has traditionally acted" through a combination of "formal regulations" and "(informal) instructional manuals." Id. at 73. In choosing amongst these options, the Secretary is not required to promulgate regulations or policies that, "either by default rule or by specification, address every conceivable question" that may arise. Shalala v. Guernsey Mem'l Hosp., 514 U.S. 87, 96 (1995). Rather, he may issue regulations or informal guidance at any level of particularity

he chooses and let "specific applications of a rule evolve" further through the adjudicatory

administrative process. Id.

  At the highest level of generality, the Secretary may articulate "reasonable and necessary"

standards through formal regulations, 42 U.S.C. § 1395hh, that have the force and effect of law

throughout the administrative process. 42 U.S.C. § 1395ff(a)(1). At a more particularized level

of abstraction, he also may publish a formal administrative ruling in the Federal Register setting

forth how Medicare statutes and regulations are to be applied in particular circumstances. 42

C.F.R. § 401.108. Like regulations, these administrative rulings also are binding at all stages of

the administrative process. 42 C.F.R. §§ 401.108(c), 405.1063.

  A third way the Secretary may articulate reasonable-and-necessary standards is through a

"national coverage determination" ("NCD") "with respect to whether or not a particular item or

service is covered nationally." 42 U.S.C. § 1395ff(f)(1)(B); see also 42 C.F.R. §§ 400.202;

405.1060. Such national coverage determinations "generally outline the conditions for which a

service is considered to be covered (or not covered)," and "are usually issued as a program

instruction." Medicare Program Integrity Manual § 13.1.1. Like regulations and administrative

rulings, they are legally binding throughout the administrative appeals process. 42 C.F.R.

§ 405.1060(a)(4). Contractors and higher-level agency adjudicators "have no authority to

deviate" from the NCD "if absolute words such as 'never' or 'only if ' are used in the policy."

Program Integrity Manual § 13.1.1. However, they are free to "review the facts of a particular

case to determine whether an NCD applies to a specific claim for benefits and, if so, whether the

NCD was applied correctly to the claim." 42 C.F.R. §§ 405.1060(b)(2), 405.1060(c)(2).

  A fourth way the Secretary may "further define when and under what circumstances

services may be covered (or not covered)" under the reasonable-and-necessary standard is

through "coverage provisions" in "interpretive manuals."  Program Integrity Manual § 13.1.2.  As is the case with respect to national coverage determinations, contractors are required to "apply coverage provisions in interpretive manuals to claims that are selected for review," and they may "not deviate from these coverage provisions if absolute words such as 'never' or 'only if' are used."  Id.  Administrative law judges and the Appeals Council, however, are not bound by manual instructions, 42 C.F.R. § 405.1062(a), although they must "give substantial deference to these policies if they are applicable to a particular case," 42 C.F.R. § 405.1062(a), and, if they decline to follow them, they "must explain the reasons why the policy was not followed."  42 C.F.R. § 405.1060(b).  Manual instructions are often issued in the form of program memoranda.

"In the absence of a specific national coverage decision" or other binding policy, most Medicare coverage decisions "are made at the discretion of the local contractors," 66 Fed. Reg. 58,788, 58,788 (Nov. 23, 2001), using their best medical judgment.  However, local contractors may also issue a "local coverage determination" ("LCD") with respect to "whether or not a particular item or service is covered on an intermediary- or carrier-wide basis."  42 U.S.C. §1395ff(f)(2)(B); see also 42 C.F.R. § 400.202.  These local coverage determinations are "administrative and educational tools," that are published by contractors "to provide guidance to the public and the medical community within their jurisdictions" as to the "clinical circumstances" under which "a service is considered to be reasonable and necessary."  Program Integrity Manual § 13.1.3.  Any local coverage determination issued by a contractor must be posted on its website, and must be "retired" if it "has been rendered useless by a new/revised national policy."  Id. § 13.4.C.  Individualized notice of the issuance of an LCD to beneficiaries or providers is not required.

"When making individual claims determinations," the contractor must "determine whether the service in question is covered based on an LCD or the clinical judgment of the medical reviewer." Id. § 13.3. The Medicare Summary Notice must state "the reasons for the determination," 42 U.S.C. § 1395ff(a)(4)(A)(i), and, where an LCD is the basis of the determination, the intermediary must also specifically inform the beneficiary of that fact. Id. The contractor also must provide the beneficiary with an explanation of "the procedures for obtaining additional information concerning the determination," 42 U.S.C. § 1395ff(a)(4)(A)(ii), and, "upon request," the beneficiary also must be furnished with "information on the specific provision of the policy, manual, or regulation" used in making the determination. 42 U.S.C. § 1395ff(a)(4)(C).[3] The notice to the beneficiary must be "written in a manner calculated to be understood by the beneficiary," 42 C.F.R. § 405.921(a)(1), to ensure that he has an opportunity – particularly at an early point in the appeals process such as the redetermination stage – to fill in any gaps in the documentary support for the claim.

**C. Blood-Glucose Tests and Medical-Necessity Standards**

The manner in which laboratory tests for blood-glucose levels are evaluated under the reasonable-and-necessary standard for purposes of Part B payment has historically been guided by a combination of formal regulations, general program instructions, and even more general statements in a national coverage determination. The latter two of these provisions will be discussed in greater detail later in this memorandum. At this juncture, however, it is important to emphasize that the actual claim determinations that affect the lives of beneficiaries are most heavily influenced by the thousands of medical judgments made on a case-by-case basis by the

[3] The statutory text appears to erroneously refer to the determination as a "redetermination." See 42 C.F.R. § 405.921(a)(2)(ii).

contractors who initially process the claims and whose judgments are subject to evidentiary challenge at the stages of administrative appeal discussed earlier.  Because the legal standard is a general one and the circumstances of particular patients can vary considerably, careful evaluation of individual circumstances is frequently needed to determine whether blood-glucose tests conducted in skilled nursing facilities are "reasonable and necessary."

Blood-glucose tests measure "blood sugar levels for the purpose of managing insulin therapy (shots, medication, and diet)" and "in order to maintain tight control of glucose to prevent heart disease, blindness, and other complications of diabetes."  Program Memorandum AB-00-108 at 1.  Tests "often involve[] the use of an inexpensive hand-held device to evaluate a small sample of the patient's blood acquired through a finger stick."  Id.  "The convenience of the meter or stick color method allows a patient to have access to blood glucose values in less than a minute or so and has become a standard of care for control of blood glucose."  66 Fed. Reg. at 58,846.  When blood-glucose tests are self-administered by Medicare patients at home, the beneficiary is eligible to be reimbursed for the cost of the monitoring equipment, but not for the time and effort needed to perform the test.  Program Memorandum AB-00-108 at 1 n.1.  "If a physician separately orders the performance of a glucose monitoring service for a [SNF] patient who can not self-administer," and clinical staff "administer a glucose monitoring service along with their other duties," id. at 1, the tests may be reimbursable under Medicare Part B as laboratory services that meet the requirements of the Clinical Laboratory Improvement Amendments of 1988.  42 U.S.C. § 263a.[4]

---

[4] See 42 U.S.C. §§ 263a(d)(2), 263a(d)(3); 42 C.F.R. §§ 493.15(c)(ii), 493.35-493.39 (setting standards for waiving laboratory certification requirements where device has been approved for home use by the Food and Drug Administration).

As discussed above, Medicare Part B pays for "medical and other health services," 42 U.S.C. § 1395k(a)(1), including "diagnostic laboratory tests," 42 U.S.C. §1395x(s)(3), but only if the services are "reasonable and necessary for the diagnosis or treatment of illness." 42 U.S.C. § 1395y(a)(1)(A). Regulations promulgated pursuant to that statute provide that "[a]ll diagnostic x-ray tests, diagnostic laboratory tests, and other diagnostic tests must be ordered by the physician who is treating the beneficiary, that is, the physician who furnishes a consultation or treats a beneficiary for a specific medical problem and who uses the results in the management of the beneficiary's specific medical problem." 42 C.F.R. § 410.32(a). Regulatory language promulgated last year further clarified that, in the absence of documentation that a physician actually used test results in the management of a specific medical problem, a physician's "standing order" is "not sufficient to order a series of blood glucose tests payable" to a SNF (or other provider) under Part B. 42 C.F.R. § 424.24(f). This regulatory language ratified a "longstanding" view, 71 Fed. Reg. 69,624, 69,704 (Dec. 1, 2006), previously expressed by the Secretary in informal program instructions, including Program Memorandum AB-00-108. Id. at 69,704-05. Within the parameters of those general principles, contractors must exercise a considerable degree of medical judgment to determine whether there is sufficient evidence of test-reporting and physician use to justify the conclusion that a particular blood-glucose test was reasonable and necessary in a particular case. It is therefore incumbent on a SNF submitting such claims for one of its residents to make sure that documentation to support such a determination is provided to the contractor for its review. As will be shown below, that is precisely what the SNF in this case failed to do, and the plaintiff in this case contends it should not have to do in the future.

**D. Plaintiff's Claims for Blood-Glucose Tests**

Plaintiff is a Part B enrollee who resides in a skilled nursing facility in Utah. Amended Class Action Complaint for Declaratory and Injunctive Relief ("Am. Compl.") at ¶ 18 (Doc. 8). Her Medicare Part B contractor is Mutual of Omaha Insurance Company. On November 4, 2005, plaintiff's SNF submitted a claim under Part B on her behalf for blood-glucose tests performed for her during the month of October 2005. Routt Dec. at ¶ 3 & Routt Docs. at 1-15. The claim totaled $196.20. Routt Docs. at 4.

On November 7, 2005, the intermediary requested additional information to determine whether that the blood-glucose tests for which payment was claimed for the month of October 2005 were reasonable and necessary. Routt Dec. at ¶ 4. The information requested included (a) "physician order(s) to include blood glucose testing;" (b) "documentation for the medical necessity of each test billed," which may include "nurse's notes" and "physician progress notes;" (c) "results of each blood glucose/accucheck test billed;" (d) "documentation of physician notification of each test result noting the use of the results to modify treatment;" (e) "detailed itemization of charges billed;" and (f) "history and physical supporting the diagnosis of diabetes." Id.

The SNF responded by letter dated December 12, 2005. Routt Dec. ¶ 7 & Routt Docs at 22-50. The documents it supplied showed that plaintiff was admitted to the SNF in July 2004, Routt Docs. at 32-37, with a physician order to perform blood-glucose tests twice a day. Id. at 35, 37. During the month of October 2005, the records show that the tests were performed at breakfast and dinner, id. at 29, and that plaintiff received insulin injections. Id. at 30-31.

The only physician progress notes are dated July 8, 2004, id. at 32-34, the time of admission. There are no physician's notes at all for the month of October 2005. For the period

from October 1, 2005 through October 19, 2005, the SNF furnished no progress notes written by a nurse, either. It did provide one page of nurse's progress notes covering the period from October 20, 2005 through November 29, 2005, id. at 39, but these notes do not indicate that the attending physician was ever notified of any test results or that he ever used the results in the treatment of the patient. The only indication of the attending physician's post-admission attention to plaintiff's blood-glucose level is a nurse's recording of his telephone order on November 8, 2005 to add an additional blood glucose at 8:00 p.m. each day. Id. at 38, 39. The records do not state that even this post-October increase in the number of tests was based on review of any test results. The documents furnished by the SNF therefore contain no indication that the attending physician was ever notified of any of plaintiff's blood-glucose test results, or that he ever used those test results to order any new tests, or that the tests were used in any fashion to treat, the patient. Indeed, the records reflect a marked absence of physician involvement in management of plaintiff's diabetes. On the basis of this woefully inadequate documentation, the October 2005 claim was denied on February 1, 2006. The reason given in the Medicare Summary Notice for the denial stated that "[t]he information provided does not support the need for this service." Id. at 55. There was no mention of any local coverage determination, because there was no reliance on any LCD.

The costs of services that are not reasonable and necessary are ordinarily borne by the beneficiary. However, a Medicare statute, known as the "limitation of liability" provision, establishes exceptions to this general rule in certain circumstances. Under this section, when neither the beneficiary nor the health-care provider knew or could reasonably have been expected to know that the service was not reasonable and necessary when provided, the Secretary is required to pay the claim. 42 U.S.C. § 1395pp(a). When the provider should have known the

service was not reasonable and necessary, but the beneficiary was blamelessly ignorant, the Secretary is required to reimburse the beneficiary and recoup the money from the provider. 42 U.S.C. § 1395pp(b). In this setting, either the beneficiary or the provider may request a redetermination and, if necessary, pursue the subsequent levels of the administrative appeals process. 42 U.S.C. § 1395pp(d); 42 C.F.R. §§ 405.904(b)(1), (2).

In practice, beneficiaries who are protected by the "limitation on liability" statute are simply told in the Medicare Summary Notice that they may not be charged for the service in question by the health-provider, notwithstanding the finding that the service was not covered. The notice for plaintiff's October 2005 claim informed her that "[y]ou should not be billed for this service" and "[y]ou do not have to pay this amount." Id. Thus, the tests were found to fail the reasonable and necessary standard under 42 U.S.C. § 1395y(a)(1)(A), but plaintiff was protected from liability for the costs under 42 U.S.C. § 1395pp.[5]

---

[5] On December 6, 2005, the intermediary received a claim for blood-glucose tests performed for the plaintiff in November 2005 totaling $261.60, Routt Dec. ¶ 15 & Routt Docs. at 87-102, and, on January 6, 2006, the intermediary received a claim for blood-glucose tests performed for the plaintiff in December 2005 totaling $287.76. Routt Dec. ¶ 22 & Routt Docs. at 131-46. As with the October 2005 claim, the intermediary requested additional information. Routt Dec. ¶¶ 16-17, 23-24 & Routt Docs. at 103-04, 147-48. The SNF responded on January 23, 2006. Routt Dec. ¶¶ 18, 25 & Routt Docs. at 105-22, 149-67. The SNF documented test results and insulin injections for the months of November and December, but provided no additional evidence of physician involvement in care or treatment of plaintiff's diabetes. As with the October 2005 claim, the documents supplied did not show that a single test result was ever reported to the treating physician, that the physician ever reviewed a single test result, or that the physician ever used the result to order a new test or to otherwise manage plaintiff's diabetes care. On April 1, 2006, the intermediary denied the claims because "[t]he information provided does not support the need for this service," but again advised the beneficiary that "[y]ou should not be billed for this service" and "[y]ou do not have to pay this amount." Routt Docs at 127, 172.

**E. Plaintiff's Challenge to the Local Coverage Determination**

If plaintiff thought that the intermediary had denied her claims for an incorrect reason, her remedy was to request a redetermination and, if necessary, exhaust subsequent levels of administrative appeal. Had she availed herself of this process, she would have had numerous opportunities to submit additional documentation in an effort to demonstrate at least some physician involvement in the management of her diabetes. She did not do so, however. Nor did the SNF exercise its right under 42 U.S.C. § 1395pp(d) to pursue the appeals process in its own right. Instead, plaintiff filed a claim, pursuant to a separate administrative procedure in 42 U.S.C. § 1395ff(f)(2)(A), challenging the validity of a local coverage determination on blood-glucose tests (published by Mutual of Omaha in 2001), which she mistakenly believed had something to do with the denial of her October 2005 claim. This LCD had two purposes only: to adopt, on an interim basis, a proposed national coverage determination on blood-glucose tests, and to communicate, for informational purposes, some additional requirements set forth in informal program instructions previously issued by the Secretary. The background behind this LCD and plaintiff's administrative challenge is set forth in some detail below.

**1. The proposed national coverage determination**

The story begins in 1997 when Congress instructed the Secretary to use a negotiated rulemaking process to establish "national coverage and administrative policies for clinical diagnostic laboratory tests under Part B." Balanced Budget Act of 1997 ("BBA"), Pub. L. No. 105-33, § 4554(b), 111 Stat. 251, 461 (1997); 42 U.S.C. § 1395u note.[6] The purpose of the

---

[6] A negotiated rulemaking is a process by which a committee of representatives of affected interests works with agency personnel and a facilitator to develop a consensus policy. 5 U.S.C. §§ 561-570.

negotiated rulemaking was "to promote program integrity and national uniformity and simplify administrative requirements with respect to clinical diagnostic laboratory tests payable" under Part B, BBA § 4554(b)(2), 111 Stat. at 461, in connection with, among other things, "medical conditions for which a laboratory test is reasonable and necessary," id. § 4554(b)(2)(B), 111 Stat. at 461; the "medical documentation that is required by a medical contractor at the time a claim is submitted for a laboratory test," id. § 4554(b)(2)(D), 111 Stat. at 461; "[r]ecord keeping requirements" and "information required to be submitted with a claim, including physicians' obligations regarding such requirements," id. § 4554(b)(2)(E), 111 Stat. at 461, and, where feasible, "[l]imitations on frequency of coverage for the same tests performed on the same individual." Id. § 4554(b)(2)(G), 111 Stat. at 461.  Congress expressly recognized, however, that there may be limits on the extent to which national coverage determinations could be issued for the myriad of laboratory tests that may be furnished to Medicare beneficiaries.  It therefore provided that, after implementation of the national coverage determinations, "the Secretary shall permit any carrier to develop and implement interim policies" "in cases in which a uniform national policy has not been established under this section and there is a demonstrated need for a policy to respond to aberrant utilization or provision of unnecessary tests." Id. § 4554(b)(4), 111 Stat. 462.

On March 10, 2000, the negotiated-rulemaking committee published for public comment proposed new regulations and proposed national coverage determinations.  With respect to its mandate to "simplify administrative requirements for beneficiary information that must be submitted with each claim for laboratory services," the rulemaking committee rejected a suggestion to establish "specific data elements" for each claim for laboratory services because the

"required data fields will vary with the individual circumstances of the beneficiary" from claim to claim. 65 Fed. Reg. 13,082, 13,084 (Mar. 10, 2000).

With respect to its mandate to "consider the medical conditions for which a laboratory test is considered reasonable and necessary," the committee "reached consensus to outline the specific medical conditions for which a number of specific clinical laboratory services may be reasonable and necessary" and an "extensive list of tests" for which it believed that a national coverage determination "was appropriate." Id. It concluded that the national coverage determinations "should be published in manual form, rather than as a codified regulation." Id. at 13,086. The committee used a "uniform format" for each national coverage determination that consisted of (a) "a narrative description of the test;" (b) the "clinical indications for which the test(s) may be considered reasonable and necessary;" (c) "limitations on use of the test(s);" (d) and "diagnosis codes" that should be used to identify the medical condition for which the test was ordered. Id. The diagnosis codes were then divided into three categories: those for which there was a "presumption of medical necessity," those that "are never covered," and those "that generally are not considered to support a decision that the test is reasonable and necessary, but for which there are limited exceptions." Id. At the end of each coverage determination, the committee included a section entitled "Reasons for Denial." Id. This section was not negotiated by the committee, but contained the committee's "interpretation of Medicare's longstanding policies," id., including the reasons for "denial if medical necessity is not documented in the patient's medical record." Id. at 13,094. These statements were to be included in the national coverage determination "for informational purposes" only. Id. at 13,086.

The rulemaking committee found that making precise determinations as to when thousands of laboratory tests are and are not reasonable and necessary was a task that was easier

for Congress to assign than for the committee to accomplish. It therefore stressed that inclusion of a diagnosis code in the "Indications" section for which there is a presumption of medical necessity "may support medical necessity of the claim, but the claim may be subject to review to determine whether the test was in fact reasonable and necessary in the particular circumstances presented." Id. (emphasis added). The use of the word "may" in this context was no accident. The rulemaking committee was careful to explain that

> [a] national coverage policy is neither a practice parameter nor a statement of the accepted standard of medical practice. Words such as "may be indicated" or "may be considered medically necessary" are used for this reason. Where a policy gives a general description and then lists examples (following words like "for example" or "including"), the list of examples is not meant to be all inclusive but merely to provide some guidance.

Id. at 13,095. In that setting, the local contractors were expected to continue to exercise their medical judgment to make medical-necessity determinations on individual claims.

With respect to the mandate to review documentation requirements, the committee made no proposals in the form of national coverage determinations. Rather, it proposed certain revisions to the regulation at 42 C.F.R. § 410.32. 65 Fed. Reg. at 13,088. These changes are not relevant to this case. The committee did emphasize, however, that the "entity submitting a claim is responsible for documentation of medical necessity of the services to justify and support Medicare payment of the claim." Id.

**2. The proposed coverage determination for blood-glucose tests**

The portion of the proposed national coverage determination dealing specifically with blood-glucose tests appears at 65 Fed. Reg. 13,127-31. The section labeled "Indications" stated, in its entirety, as follows:

> Blood glucose values are often necessary for the management of patients with diabetes mellitus, where hyperglycemia and hypoglycemia are often present. They

> are also critical in the determination of control of blood glucose levels in the patient with impaired fasting glucose (FPG 110-125 mg/dL), the patient with insulin resistance syndrome and/or carbohydrate intolerance (excessive rise in glucose following ingestion of glucose or glucose sources of food), in the patient with a hypoglycemia disorder such as nesidioblastosis or insulinoma, and in patients with a catabolic or malnutrition state. In addition to those conditions already listed, glucose testing may be medically necessary in patients with tuberculosis, unexplained chronic or recurrent infections, alcoholism, coronary artery disease (especially in women), or unexplained skin conditions (including pruritis, local skin infections, ulceration and gangrene without an established cause). Many medical conditions may be a consequence of a sustained elevated or depressed glucose level. These include comas, seizures or epilepsy, confusion, abnormal hunger, abnormal weight loss or gain, and loss of sensation. Evaluation of glucose may also be indicated in patients on medications known to affect carbohydrate metabolism.

65 Fed. Reg. at 13,128. This portion of the proposed national coverage determination clearly indicated that diabetes was a diagnosis for which blood-glucose tests could be warranted. A section on "Documentation Requirements" further specified that "[t]he ordering physician must include evidence in the patient's clinical record that an evaluation of history and physical preceded the ordering of glucose testing and that manifestations of abnormal glucose levels were present to warrant the testing." Id. at 13,131. Neither of these sections said anything, one way or the other, about how much physician involvement was required to establish that repeated tests were reasonable and necessary. That judgment was to be left to the informed discretion of the Medicare contractors.

Nor did the section of the proposed national coverage determination entitled "Limitations" say anything specific about reporting test results to the physician, or their use by the physician in ordering new tests or in other management of the patient's conduction. That section stated, in its entirety, as follows:

> Frequent home blood glucose testing by diabetic patients should be encouraged. In stable, non-hospitalized patients who are unable or unwilling to do home

> monitoring, it may be reasonable and necessary to measure quantitative blood glucose up to four times annually.
>
> Depending upon the age of the patient, type of diabetes, degree of control, complications of diabetes, and other co-morbid conditions, more frequent testing than four times annually may be reasonable and necessary.
>
> In some patients presenting with nonspecific signs, symptoms, or diseases not normally associated with disturbances in glucose metabolism, a single blood glucose test may be medically necessary. Repeat testing may not be indicated unless abnormal results are found or unless there is a change in clinical condition. If repeat testing is performed, a specific diagnosis code (e.g., diabetes) should be reported to support medical necessity. However, repeat testing may be indicated where results are normal in patients with conditions where there is a confirmed continuing risk of glucose metabolism abnormality (e.g., monitoring glucocorticoid therapy).

Id. at 13,128 (emphasis added). Blood-glucose tests were therefore one of the many areas for which the proposed national coverage determination was not intended to set a definitive "practice parameter" or make a "statement of the accepted standard of medical practice." Id. at 13,095. Rather, it is an instance in which the list of examples was "not meant to be all inclusive but merely to provide some guidance," id., to local contractors in making individual claims determinations.

The portion of the proposed national coverage determination labeled "Reasons for Denial" plainly stated that "[t]ests that are not reasonable and necessary for the diagnosis or treatment of an illness or injury are not covered according to the statute," 65 Fed. Reg. at 13,130 (emphasis added). The remainder of the section stated, in relevant part, as follows:

> \- Tests for screening purposes that are performed in the absence of signs, symptoms, complaints, or personal history of disease or injury are not covered except as explicitly authorized by statute. These include exams required by insurance companies, business establishments, government agencies, or other third parties.
>
> * * *

> - Failure to provide documentation of the medical necessity of tests may result in denial of claims. Such documentation may include notes documenting relevant signs, symptoms or abnormal findings that substantiate the medical necessity for ordering the tests. In addition, failure to provide independent verification that the test was ordered by the treating physician (or qualified nonphysician practitioner) through documentation in the physician's office may result in denial.
>
> - A claim for a test for which there is a national coverage or local medical review policy will be denied as not reasonable and necessary if it is submitted without an ICD-9-CM code or narrative diagnosis listed as covered in the policy unless other medical documentation justifying the necessity is submitted with the claim.
>
> - If a national or local policy identifies a frequency expectation, a claim for a test that exceeds that expectation may be denied as not reasonable and necessary, unless it is submitted with documentation justifying increased frequency.
>
> - Tests that are not ordered by a treating physician or other qualified treating nonphysician practitioner acting within the scope of their license and in compliance with Medicare requirements will be denied as not reasonable and necessary.
>
> - Failure of the laboratory performing the test to have the appropriate Clinical Laboratory Improvement Act of 1988 (CLIA) certificate for the testing performed will result in denial of claims.
>
> - Tests that require an FDA approval or clearance will be denied as not reasonable and necessary if FDA approval or clearance has not been obtained, except for those having a Category B Investigational Device Exemption (IDE). Coverage of Category B IDE devices is left to contractor discretion. (See 60 FR 48425, Sept. 19, 1995)

65 Fed. Reg. at 13,130. This section reiterated that these propositions were not part of the proposed national coverage determination, but merely reflected the committee's understanding of the Secretary's "interpretation of [his] longstanding policies," and were included for informational purposes" only. Id. Nothing in this section even remotely suggested that the rulemaking committee intended to take exception to any guidance of the Secretary interpreting the meaning of the "reasonable and necessary" standard in 42 U.S.C. § 1395y(a)(1)(A).

**3. The Secretary's program guidance on blood-glucose tests and medical-necessity**

As was discussed earlier, the Secretary has determined that laboratory tests, in general, are not reasonable and necessary for purposes of Medicare reimbursement unless the treating physician "uses the results in the management of the beneficiary's specific medical problem," 42 C.F.R. § 410.32(a), and that a "standing order" – by itself – "is not sufficient to order a series of blood glucose tests" reimbursable under Part B. 42 C.F.R. § 424.24(f). The latter regulatory language was intended to adopt the "longstanding" position of the Secretary, 71 Fed. Reg. at 69,704, expressed in program instructions previously issued by the Secretary. Id. at 69,704-05.

The Secretary's claims processing manual states that "[r]outine glucose monitoring of diabetics is never covered in a SNF, whether the beneficiary is in a covered Part A stay or not," but rather a blood-glucose test "may only be covered when it meets all the conditions of a covered laboratory service, including use by the physician in modifying the patient's treatment." Medicare Claims Processing Manual, ch. 7, § 90.1. The meaning of that provision was "briefly" discussed in a program memorandum issued in October 2000, Program Memorandum AB-00-99 at 1 (Oct. 24, 2000), and was explained more fully in a second memorandum in December 2000. Program Memorandum AB-00-108 at 1.

The December 2000 program memorandum reviewed Medicare coverage and payment policy for SNF patients whose stay were not covered by Medicare Part A, but who were eligible for services under Part B. Id. at 1. It stated that, "[i]f a physician separately orders the performance of a glucose monitoring service for a patient who can not self-administer, clinical staff generally will administer a glucose monitoring service along with their other duties." Id. at 1. The relevant remainder of the document goes on to state as follows:

Medicare Part B may pay for a glucose monitoring device and related disposable supplies under its durable medical equipment benefit if the equipment is used in the home or in an institution that is used as a home. A hospital or SNF is not considered a home under this benefit. § 1861(h) of the Social Security Act. § 42 Code of Federal Regulations (CFR) 410.38.

* * *

Sections 42 CFR 410.32 and 411.15 specify that for a laboratory service to be reasonable and necessary, it must not only be ordered by the physician but the ordering physician must also use the result in the management of the beneficiary's specific medical problem. Implicitly, the laboratory result must be reported to the physician promptly in order for the physician to use the result and instruct continuation or modification of patient care; this includes the physician's order for another laboratory service. Compliance program guidance for laboratory services sets forth conditions under which a physician's order for a repeat laboratory service can qualify as an order for another covered laboratory service. A standing order is not usually acceptable documentation for a covered laboratory service.

* * *

If home-use glucose monitoring devices are used in the hospital and nursing home settings, a glucose monitoring service must be performed in accordance with laboratory coverage criteria to qualify for separate payment under the Medicare laboratory benefit. As noted above, for a laboratory service to be reasonable and necessary, it must be ordered by the physician, the ordering physician must use the result in the management of the beneficiary's specific medical problem, and the laboratory result must be reported to the physician promptly in order for the physician to use the result and instruct continuation or modification of patient care. When a glucose monitoring service meets the criteria to be a covered laboratory service for a Part B only patient, regardless of whether the nursing home patient resides in a certified or non-certified bed, payment must be made. Denial of payment for a Part B covered laboratory service cannot be made on the basis that the service is routine care. Under Medicare, routine care determinations are applicable only for Part A nursing home services.

* * *

The blood glucose monitoring service must not only be ordered by the physician but the ordering physician must also receive and use the order's result in the management of a specific medical problem. The laboratory result must be reported to the physician promptly in order for the physician to use the result and instruct continuation or modification of patient care. Compliance program guidance for laboratory services sets forth the conditions under which a physician's order for a repeat laboratory service can qualify as an order for another

> covered laboratory service. Program integrity efforts should review for medical necessity a claim for a glucose monitoring laboratory service received at the same time as a claim for glucose test strips indicating the patient is maintaining a home-use device for self monitoring.

Program Memorandum AB-00-108 at 1-3 & n.1. The memorandum also explained to contractors that the proposed national coverage determination on laboratory tests was pending and advised them to "review their local coverage policy for glucose testing in light of the proposed national coverage policy," and "clarify, if necessary, that a glucose monitoring laboratory service must be performed in accordance with laboratory service coverage criteria including the order and clear use of a laboratory result prior to a similar subsequent laboratory order to qualify for separate payment under the Medicare laboratory benefit." Id. at 2.

**4. The local coverage determination**

Pursuant to that instruction, Mutual of Omaha published a local coverage determination on blood glucose tests on its website in 2001. This document had no original content. It adopted verbatim the language in the "Indications" and "Limitations" sections of the proposed national coverage determination on blood-glucose tests. Local Coverage Determination for Blood Glucose Testing (L19657) ("Retired LCD") at 4-5 (Def. Ex. C). In a segment captioned "Utilization Guidelines," which was apparently included solely for informational purposes, the local coverage determination quoted from the non-negotiated "Reasons for Denial" section of the proposed NCD, paraphrased the "Documentation Requirements" portion of the proposed NCD, and quoted, or restated in paraphrased form without substantive change, other language from the

proposed NCD and Program Memorandum AB-00-108 set forth earlier in this memorandum. Id. at 14-15.[7]

Nothing in this local coverage determination effectuated policy determinations or review standards created solely by Mutual of Omaha. As was explained above, the language in the proposed national coverage determination that was incorporated in the LCD did little, as a practical matter, beyond giving hypothetical examples of factors that might be taken into account in evaluating whether the frequency of blood-glucose tests might be unreasonable or unnecessary in particular settings. And the remainder of the LCD essentially did no more than inform beneficiaries and health-care providers of the contents of the existing (and more authoritative) program instructions from the Secretary.

Mutual of Omaha never relied upon the local coverage determination itself to deny any laboratory tests on the ground that they were not reasonable and necessary. Administrative Record of Plaintiff's Challenge to the Local Coverage Determination ("LCD Record") at 703-04 (Def. Ex. D). Rather, its denials of claims for blood-glucose tests on the grounds that they were

---

[7] The following paragraphs in this segment paraphrased language found in the Program Memorandum at 2-3 and the proposed NCD at 65 Fed. Reg. 13,131:

> Lack of documentation of prompt notification of the physician (prompt notification would be the anticipation that the physician would be notified prior to the next blood glucose monitoring with the possible adjustment of medication) would not be considered reasonable and necessary and would not be considered for separate payment.
>
> Routine monitoring per accucheck of blood sugars done daily, weekly or intermittently without signs or symptoms and/or without physician notification would not be considered reasonable or necessary and would not be considered for separate payment.

Retired LCD at 14.

not reasonable and necessary were made on the basis of the relevant regulations, manual provisions and program instructions discussed above, id., and beneficiaries were informed of these grounds when claims were denied. Id. 703-10. The real-world impact of the local coverage determination was, in practice, purely informational.

### 5. The final national coverage determination and retirement of the local coverage determination

On November 23, 2001, a final national coverage determination on laboratory tests was published in the Federal Register, effective November 25, 2002. 66 Fed. Reg. at 58,788. The final NCD on blood-glucose tests was identical to the language in the proposed national coverage determination. Id. at 58,846-50. That portion of the national coverage determination was then incorporated as § 190.20 of the Medicare National Coverage Determinations Manual and published on the CMS webpage (Def. Ex. E).[8]

With particular respect to limitations on the frequency of testing, the negotiated rulemaking committee reiterated that it had "agreed to set as its goal the development of specific language on frequency limitations for the various national coverage policies drafted whenever possible to promote uniformity throughout the country," and the committee stated that it "spent a great deal of time and worked very diligently on this issue." Id. at 58,802. But its members remained "unable to reach a consensus on specific frequency limitations for most of the proposed national coverage policies" because the "medical evidence" was not "sufficient to develop national frequency limitations for those policies that do not contain them at present." Id. The committee therefore "decided to defer to local contractors in this regard who will base their determinations on the local practices," and stressed that "[i]n the absence of a national coverage

---

[8] See www.cms.hhs.gov/Manuals.

determination on a particular laboratory procedure that specifies a frequency limitation, Medicare's local contractors are responsible for making individual coverage determinations on the procedure, including, if they choose, establishing local frequency limitations on the procedure." Id. The final national coverage did nothing to change any standards regarding the reporting of test results to the physician or regarding the physician's use of the results to order new tests and to manage of the patient's condition. Like the proposed national coverage determination, the final NCD simply ratified the "longstanding" interpretations of the Secretary on these matters. Id. at 58,848.

With the issuance of the final national coverage determination, Mutual of Omaha's local coverage determination no longer served the limited purpose of adopting, on an interim basis, the proposed NCD, and it was subsequently retired. Retired LCD at 16. The retirement, which was posted on the Internet in the same manner it was published,[9] stated that the LCD "is retired based on subsequent issuance of an NCD by CMS on the same subject matter," that the retirement "will have no effect on the manner in which Mutual of Omaha currently processes medical reviews or conducts appeals on blood glucose monitoring," and that the intermediary "will continue to apply the medical necessity guidelines" in CMS program memoranda. Retired LCD at 16.

**6. The administrative challenge**

In March 2006, plaintiff filed an administrative complaint, pursuant to 42 U.S.C. § 1395ff(f)(2)(A), which permits an "aggrieved party" to obtain administrative review of a local coverage determination, subject to certain "limitations." Id. §§ 1395ff(f)(2)(A), (A)(i). The

[9] Notice of the retirement, with the full text of the LCD, is accessible via Mutual of Omaha's Medicare, and the CMS, websites. See www.mutualmedicare.com/lmrp/archive.html (click on link for List of Total Retired LMRPs/LCDs).

gravamen of her argument was that every sentence in Mutual of Omaha's local coverage determination, LCD Record at 7-8, conflicted either with the final national coverage determination, id. at 9-13, or with Program Memorandum AB-00-108, id. at 11, even though all of the challenged LCD language either repeated verbatim, or closely paraphrased, language found in those documents. Among other things, the LCD complaint argued that the portions of Mutual of Omaha's local coverage determination that discussed prompt-notification and physician-use of tests were prohibited by the superceding national coverage determination, even though the NCD did not address test-reporting and physician-use requirements at all, and the portion of the NCD that addressed frequency limitations was couched only in the most general guidance examples.[10] Id. at 12.

Plaintiff's administrative challenge also suffered from a threshold jurisdictional defect. For an "acceptable LCD complaint" to fall within the jurisdictional purview of an administrative law judge to begin with, 42 C.F.R. § 426.300(a), it must be filed by an "aggrieved party," 42 U.S.C. § 1395ff(2)(A)(i), a term defined, in pertinent part, as a Medicare beneficiary who is "in need of [Medicare] coverage" that "is denied based on an applicable LCD," 42 C.F.R. § 426.110(2) (emphasis added), regardless of whether the beneficiary received the service. Plaintiff did not meet that condition. The denial of her claim for Part B benefits for October 2005 (the only one that had been denied at the time her LCD complaint was filed) was not based on the local coverage determination; it was, as was discussed above, denied because "[t]he

[10] A similar challenge to a local coverage determination was rejected recently by an administrative law judge as meritless. CMS LCD Complaint: Local Coverage Determination: Blood Glucose Testing LCD L1316, Docket Nos. C-06-568-69, Decisions Nos. CR1548-49 (HHS Dep't. Appeals Bd. Civil Remedies Div., Dec. 22, 2006) (Def. Ex. F).

information provided does not support the need for this service." Routt Docs. at 55, 81.[11] Nor, at the time she filed her LCD complaint, could plaintiff have demonstrated that any claims that she might submit in the future would necessarily be denied on the basis of the challenged LCD, because Mutual of Omaha had never used it to deny any other claims. LCD Record at 703-10. The administrative law judge therefore lacked jurisdiction to initiate any kind of review of the local coverage determination.

The administration challenge (including the intermediary's objection to jurisdiction) was pending when the now-obsolete local coverage determination was retired in 2006. Mutual of Omaha retired the LCD and notified plaintiff and the ALJ. Id. at 714-15. Under the regulations governing LCD appeals, "[i]f before the ALJ issues a decision, the ALJ receives notice that the contractor has retired the LCD," the ALJ "must dismiss the complaint and inform the aggrieved party(ies) who sought review that he or she or they receive individual claim review without the retired/withdrawn provision(s)." 42 C.F.R. § 426.420(e)(1). On September 19, 2006, the ALJ dismissed the LCD complaint. LCD Record at 1-2.

Under the Medicare regulations, the retirement of an LCD while an administrative challenge is pending "has the same effect," 42 C.F.R. § 426.420(a) (emphasis added), as an adverse decision made under 42 C.F.R. § 426.460(b). That regulation, in turn, requires the contractor to take two procedural steps "[i]f an ALJ finds that the provision or provisions of the LCD named in the complaint is (are) invalid under the reasonableness standard." Id. (emphasis added). First, "if the party's claim or appeal(s) was previously denied," the contractor "must

[11] Plaintiff's contention that the intermediary's mere request for additional information, see LCD Record at 63-64, "documented its intent to deny coverage, based on upon the LCD," id. at 4, is contradicted by the intermediary's actual Medicare Summary Notices, which make no mention of the LCD.

reopen the claim of the party who challenged the LCD and adjudicate the claim without using the provision(s) of the LCD that the ALJ found invalid." 42 C.F.R. § 426.460(b)(1)(i). The party may then challenge any adverse determination on reopening through the Medicare claims appeals process. See 42 C.F.R. § 405.842(b). Second, the contractor must not use the LCD "prospectively" when making determinations on "claims filed with dates of service after the implementation of the ALJ decision." 42 C.F.R. § 426.460(b)(2). Contrary to plaintiff's view, the retirement of the LCD does not result in any judgment by the ALJ that the local coverage determination is invalid under the reasonableness standard. The ALJ's order therefore drew no conclusion about the validity of the challenged LCD, but merely instructed that "the contractor is required to comply with the requirements" of 42 C.F.R. § 426.260(b)(1) "with regard to claim readjudication." LCD Record at 2.

Pursuant to the ALJ's order, Mutual of Omaha reopened the October 2005 claim and issued a Medicare Summary Notice reflecting its new determination on January 1, 2007. Routt Docs. at 79-86. The second determination denied the claim on exactly the same basis as the first denial: because "the information provided does not support the need for this service or item." Id. at 81. Pursuant to the "limitation on liability" provision in 42 U.S.C. § 1395pp, the second notice, like its predecessor, went on to inform plaintiff that "[y]ou should not be billed for this service" and "[y]ou do not have to pay this amount." Id. Prior to issuing the second notice, the intermediary advised plaintiff's counsel that the "review was performed without application" of the retired local coverage determination. Letter of Martha K. Zajicek dated December 19, 2006 at 1 (Pl. Ex. 17 attached to Am. Compl.). Before receiving either this information or the Medicare Summary Notice on reopening, plaintiff filed suit in this Court.

## ARGUMENT

Although her amended complaint is not a model of clarity, plaintiff apparently claims that the retirement of the local coverage determination had two legal consequences, which she alleges this Court has subject-matter jurisdiction to enforce by means of injunctive relief. Her first claim, though opaque, appears to allege as follows: even though the LCD she challenged administratively has been retired, and even though Mutual of Omaha did not cite to the LCD when it issued its first denials of her blood-glucose claims, and even though the intermediary did not refer to the retired LCD when it denied one of her claims again after reopening, and even though the intermediary expressly informed plaintiff's counsel that the retired LCD was not used during the second review of her claims, the intermediary now constructively should be deemed to be relying impermissibly on the retired LCD whenever it denies any blood-glucose claim for any reason related to the "reasonable and necessary" standard in 42 U.S.C. § 1395y(a)(1)(A). See Am. Compl. at ¶¶ 109-13. The second claim is simpler, but no less specious. Plaintiff contends that, in addition to the general notice published on its webpage, Mutual of Omaha has an obligation under the due-process clause to give individualized notice of the LCD retirement to every Part B beneficiary in its jurisdiction, see id. at ¶¶ 115-20, even though plaintiff received such notice herself. Both claims should be dismissed for lack of subject-matter jurisdiction and failure to state a claim.

### I. PLAINTIFF'S FIRST CLAIM SHOULD BE DISMISSED BECAUSE SHE DOES NOT MEET THE JURISDICTIONAL PREREQUISITES TO CHALLENGE A DENIAL OF PART B CLAIMS.

The simplest way to approach plaintiff's first claim is to begin with her failure to allege a valid jurisdictional basis for her complaint. Each of the four statutes on which she attempts to rely – 42 U.S.C. § 1395oo(f), 42 U.S.C. § 1395ff(f)(3), 28 U.S.C. § 1331, and 28 U.S.C. § 1361,

see Am. Compl. at ¶ 16 – is clearly inapposite, and the only relevant jurisdictional statute, 42 U.S.C. § 1395ff(b), does not apply because plaintiff has not met its dollar-amount, presentment and exhaustion prerequisites. The first count of the complaint should therefore be dismissed for lack of subject-matter jurisdiction and failure to exhaust administrative remedies. Indeed, an almost identical claim was dismissed on precisely those grounds in St. Mark's Lutheran Home v. Thompson, No. 01 CIV 1034, mem. op. at 2-5 (D. Minn. Oct. 2, 2002) (Def. Ex. G).

**A. Plaintiff's Claim Is Not Authorized by 42 U.S.C. § 1395oo or 42 U.S.C. § 1395ff(f)(3).**

Plaintiff's opening contention – that she "is statutorily authorized to bring this action by 42 U.S.C. § 1395oo(f) and 42 U.S.C. § 1395ff(f)(3)," Am. Compl. at ¶ 16 – is obviously wrong. Section 1395oo provides for administrative and judicial review only for the amount of program reimbursement under Medicare Part A to a "provider of services" that submits an annual "cost report" to its intermediary. 42 U.S.C. § 1395oo(a). A "provider of services" means "a hospital, critical access hospital, skilled nursing facility, comprehensive outpatient rehabilitation facility, home health agency, hospice program, or . . . fund." 42 U.S.C. § 1395x(u). A Part B claim of an individual beneficiary, such as the one for blood-glucose tests here, cannot be bought under this section. See United States v. Sanet, 666 F.2d 1370, 1373 n.15 (11th Cir. 1982) (Part B assignee cannot bring suit under 42 U.S.C. § 1395oo).

The provision at 42 U.S.C. § 1395ff(f)(3) provides for expedited judicial review of a local coverage determination, but only where the challenged LCD is "otherwise be subject to review," 42 U.S.C. § 1395ff(f)(3), under 42 U.S.C. § 1395ff(f)(2)(A)(i). A retired LCD, in turn, is not subject to review under 42 U.S.C. § 1395ff(f)(2)(A)(i), because it is no longer in effect. 42 C.F.R. § 426.325(a) (only LCD "currently effective may be challenged"); 42 C.F.R. § 426.325(b),

(b)(3) ("[r]etired LCDs" are "not reviewable under this part."). Contrary to plaintiff's view, a party cannot bring herself within the ambit of 42 U.S.C. § 1395ff(f)(3) merely by asserting that her grievance is "LCD-related" in some generalized sense. Am. Comp. at ¶ 75. Section 1395ff(f)(3) does not give this Court subject-matter jurisdiction to review a local coverage determination that does not exist.[12]

**B. Plaintiff Does Not Meet the Dollar-Amount, Presentment and Exhaustion Requirements of 42 U.S.C. § 1395ff(b).**

The real gravamen of plaintiff's first claim is not that the retired LCD is invalid, but rather that the intermediary improperly relied on it – in some never-explained, but nonetheless allegedly unlawful manner – when it denied her October 2005 claims on reopening in February 2007, and that the intermediary intends to deny claims for the same putatively unlawful reason in the future. As was discussed earlier, both intermediary determinations on reopening and intermediary determinations in the future are subject to a multi-step process of administrative review, during which the nature of the dispute and extent of medical documentation available can be throughly examined. Plaintiff's failure to invoke this process defeats jurisdiction under 42 U.S.C. § 1395ff(b).

At the outset, the Part B claims of plaintiff that have been denied to date do not meet the $1,090 dollar-amount prerequisite in 42 U.S.C. § 1395ff(b)(1)(E)(i). This Court's analysis of subject-matter jurisdiction over her first claim can therefore end here. See, e.g., United States v.

[12] For jurisdiction to exist under 42 U.S.C. § 1395ff(f)(3), the complaint must also allege that the "constitutionality of a provision" of the Medicare Act or the validity of a "regulation, determination, or ruling by the Secretary" is at issue, 42 U.S.C. § 1395ff(f)(3)(B), and that "there are no material issues in dispute." 42 U.S.C. § 1395ff(f)(3)(A). Plaintiff's complaint makes neither allegation.

Erika, Inc., 456 U.S. 201, 206-11 (1982) (enforcing express jurisdictional limits for Part B claims).

Even if plaintiff could meet the dollar-amount prerequisites, however, she has not exhausted the Medicare claims process through which "all aspects" of a "present or future claim" for Medicare benefits must be "channeled" before a challenge to the Secretary's policies can be brought in district court. Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 12 (2000) (quoting Heckler v. Ringer, 466 U.S. 602, 614 (1984); see also Nat'l Kidney Patients Ass'n v. Sullivan, 958 F.2d 1127, 1130 (D.C. Cir. 1992) (applying exhaustion analysis to Part B claims). This familiar exhaustion requirement "consists of a nonwaivable requirement that a 'claim for benefits shall have been presented to the Secretary,'" Ringer, 466 U.S. at 617 (quoting Mathews v. Eldridge, 424 U.S. 319, 328 (1976)), and "a waivable requirement that the administrative remedies prescribed by the Secretary be pursued fully by the claimant." Id. Presentment is an "absolute prerequisite," and exhaustion is "a prerequisite that may excused only under rather limited conditions," Nat'l Kidney Patients, 958 F.2d at 1130, where the plaintiff's claim is "wholly collateral to his claim for benefits" and he makes a "colorable showing that his injury could not be remedied by the retroactive payment of benefits after exhaustion of his administrative remedies." Ringer, 466 U.S. at 618 (internal quotation marks omitted). Plaintiff's complaint here has both presentment and exhaustion deficiencies.

With respect to future claims for blood-glucose tests, plaintiff here obviously does meet the presentment requirement. See, e.g., Illinois Council, 529 U.S. at 10-21; Ringer, 466 U.S. at 619-20; Action Alliance of Senior Citizens v. Leavitt, 2007 WL 1119646 at * 4-5 (D.C. Cir. Apr. 17, 2007); Nat'l Kidney Patients, 958 F.2d at 1130-34; Key Largo Med. Sys., Inc. v. Shalala., 1993 WL 229021 at *4 (D.D.C. Apr. 29, 1993); Wash. Hosp. Ctr. v. Beaner, 1993 WL 152423 at

*1 (D.D.C. Apr. 28, 1993). With respect to the one set of claims for October 2005 that has been presented to the intermediary and denied, she has not exhausted the further steps of administrative review by which her claim could be pursued. Her theory of the case – that her October 2005 claims were denied on reopening for an erroneous reason related to the retired LCD – is obviously not collateral to her claim for benefits and agency adjudicators would be legally empowered (even if unlikely) to agree with her position. Her complaint also does not allege that she will suffer irreparable injury during the pendency of the claims process. That portion of her claim should therefore be dismissed for failure to exhaust. See, e.g., Ringer, 466 U.S. at 616-19.[13]

Adherence to the exhaustion requirement also would serve the twin policy purposes of allowing the Secretary "to apply, interpret, or revise policies," Illinois Council, 529 U.S. at 13, without "overly casual or premature judicial intervention," Ringer, 466 U.S. at 627, and "to compile a record which is adequate for judicial review," id. at 619 n.12 (quoting Weinberger v. Salfi, 422 U.S. 749, 765 (1975)). This opportunity is especially important where the claim arises in connection with whether a particular service is "reasonable and necessary," 42 U.S.C. § 1395y(a)(1)(A), in circumstances that may vary widely from patient to patient. In fact, the allegations in plaintiff's own complaint nicely demonstrate why this case fairly cries out for the

[13] Indeed, Ringer is on all fours with plaintiff's claims here. In that case, a group of plaintiffs – one of whom had not presented a claim at all and the rest of whom had presented claims, but failed to exhaust the Medicare appeals process – sought "an injunction compelling the Secretary to instruct her intermediaries to provide payment for [certain] claims" that had been denied on the ground that they were not reasonable and necessary and "an injunction barring the Secretary from forcing claimants to pursue individual administrative appeals in order to obtain payment." Ringer, 466 U.S. at 611. That is exactly what plaintiff is seeking to accomplish here. See also Key Largo Med. Sys., 1993 WL 229021 at *5-6.

kind of factual development and clarification which the Medicare claims process is designed to produce.

As was discussed earlier, the medical records submitted by the SNF in support of plaintiff's October-December 2005 claims indicate that plaintiff was undergoing two blood-glucose sticks daily when she was admitted to the facility in 2004 and that the tests were increased, without explanation, to three daily in November 2005. Routt Docs. at 38, 39. The amended complaint alleges that the number of tests has now been increased to "four times per day," Am. Compl. at ¶ 18, and her treating physician confirms that this is the case. LCD Record at 155. The first "exhibit" attached to plaintiff's amended complaint, in turn, states that, for a diabetic patient who needs "finger stick blood glucose monitoring to be performed at least 3 or more times per day," the physician's instructions to the SNF should require "immediate notification" where blood-sugar values outside a certain range occur, Declaration of David Jackson, M.D., Ph.D. at 5 (Pl. Ex. 1 attached to Am. Compl.), and that the order also

> should reflect that the facility staff shall notify the physician of all the individual determinations at a time interval specified in the physician's order for the individual patient/resident, whether or not any of the levels had previously triggered an immediate notification. For this level of monitoring intensity, the frequency of physician notification and review, in my view, should be every 24 to 48 hours. The more acutely ill (unstable) the patient, the shorter the frequency of notification.

Id. at 5. Even for patients "who are relatively stable, but still exhibit some risk of fluctuations in glucose control" where "the monitoring frequency would be between one per day to twice per week," the "physician notification of all determinations would be at a frequency between every three 3 to 7 [sic] days, depending on the patient's stability and clinical context." Id.

The documents submitted by the SNF on plaintiff's behalf, however, do not indicate that the physician instructed the facility to report any blood-glucose values to him, even where they

exceeded certain parameters. And they certainly do not show that the physician instructed that all values be reported to him every 24 to 48 hours. Nor is there is any indication that he ever used a single test result in the management of plaintiff's diabetes. The terse declaration submitted by the treating physician during the LCD-challenge proceeding only adds to the doubts about the reasonableness of the tests, by stating that he reviews the results of plaintiff's four-times-a-day testing on a mere "60-day basis." Id. at 156. The conflict between what plaintiff alleges the treating physician actually did and what the declaration incorporated into her complaint alleges a reasonable testing regimen would entail raises, on its face, troubling questions that can and should be addressed through factual development during the administrative process.

**C. Jurisdiction Is Not Available under 28 U.S.C. § 1331.**

The potential availability of judicial review (after exhaustion of the administrative appeals process) under 42 U.S.C. § 1395ff(b)(1)(A), precludes relief under any other jurisdictional statute. Under 42 U.S.C. § 1395ii (incorporating 42 U.S.C. § 405(h)), "the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act," is 42 U.S.C. § 1395ff(b)(1)(A) (incorporating 42 U.S.C. § 405(g)), "to the exclusion of 28 U.S.C. § 1331." Ringer, 466 U.S. at 615; see also Illinois Council, 529 U.S. at 10; Your Home Visiting Nurse Servs., Inc. v. Shalala, 525 U.S. 449, 457 (1999); Salfi, 422 U.S. at 756.[14] The "claim 'arising

[14] The statute incorporated into the Medicare Act states as follows:

> The findings and decisions of the [Secretary of Health and Human Services] after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this

under'" language" must construed "quite broadly to include any claims in which 'both the standing and the substantive basis for the presentation' of the claims" is the Medicare Act. Ringer, 466 U.S. at 615 (quoting Salfi, 422 U.S. at 760-61). Thus, where a beneficiary seeks "payment for some medical procedure," a Medicare contractor denies the claim, and "the individual challenges the lawfulness of that denial," federal-question jurisdiction is "plainly" barred, "irrespective of whether the individual challenges the agency's denial on evidentiary, rule-related, statutory, constitutional, or other legal grounds." Illinois Council, 529 U.S. at 10. The same is true where the beneficiary desires "advance knowledge for planning purposes," id., about whether a "claim for future benefits" could lawfully be denied. Id. at 12 (quoting Ringer, 466 U.S. at 621-22). So long as the "substantive basis" for the claim is the Medicare Act, federal-question jurisdiction is precluded. Id. (quoting Ringer, 466 U.S. at 615, and Salfi, 422 U.S. at 760-61); see also Am. Chiropractic Ass'n v. Leavitt, 431 F.3d 812, 815-16 (D.C. Cir. 2005); Lenox Hill Hosp. v. Shalala, 131 F. Supp. 2d 136, 140 (D.D.C. 2000); Wash. Hosp. Ctr., 1993 WL 152423 at *1; Nat'l Med. Enters., Inc. v. Bowen, 725 F. Supp. 1, 5-8 (D.D.C. 1989). This principle applies equally to Part B claims. Nat'l Kidney Patients Ass'n, 958 F.2d at 1132; Power Mobility Coal. v. Leavitt, 404 F. Supp. 2d 190, 196-203 (D.D.C. 2005); Key Largo Med. Sys., Inc., 1993 WL 229021 at *3.[15]

---

subchapter.

42 U.S.C. § 405(h), as incorporated by 42 U.S.C. § 1395ii.

[15] The only exception – where preclusion "would not simply channel review through the agency, but would mean no review at all," Illinois Council, 529 U.S. at 19, obviously does not apply to this case. Since 1986, the Medicare statutes have afforded identical administrative review procedures for beneficiary claims under both Part A and Part B, 42 U.S.C. § 1395ff(a)(1)(A), and the opportunity for judicial review applies equally to both. 42 U.S.C. § 1395ff(b)(1)(A); see Nat'l Kidney, 958 F.2d at 1130. Inasmuch as claims can be aggregated for

**D. Mandamus Jurisdiction under 28 U.S.C. § 1361 Is Not Available.**

The same is true with respect to the mandamus statute at 28 U.S.C. § 1361. Mandamus is a "drastic remedy to be invoked only in extraordinary circumstances," Consol. Edison Co. of New York, Inc. v. Ashcroft, 286 F.3d 600, 605 (D.C. Cir. 2002) (citations and internal quotation marks omitted), where the plaintiff "has exhausted all other avenues of relief" and "the defendant owes him a clear nondiscretionary duty." Ringer, 466 U.S. at 616. For the reasons discussed above, plaintiff unarguably has "an adequate remedy" through the administrative and judicial review process for "challenging all aspects" of her claim for Part B benefits. Id.; see Power Mobility, 404 F. Supp. 2d at 202 n.9 (mandamus denied in challenge to Part B claim); see also Action Alliance, 2007 WL 1119646 at *5-6; Lenox Hill, 313 F. Supp. 2d at 140; Nat'l Med. Enters., 725 F. Supp. at 9.[16]

In addition, a "decision as to whether a particular medical service is 'reasonable and necessary,'" Ringer, 466 U.S. at 617, clearly requires the exercise of medical judgment. As the Supreme Court has explained, mandamus may be "employed to compel the performance, when refused, of a ministerial duty" or "to compel action, when refused, in matters involving judgment and discretion," but it may not be used "to direct the exercise of judgment and discretion in a

---

purposes of judicial review, 42 U.S.C. § 1395ff(b)(1)(E)(ii), the dollar-amount requirement that plaintiff currently does not meet is not a permanently insurmountable barrier, so that eventual review is not foreclosed.

[16] The Supreme Court has never ruled on whether 42 U.S.C. § 1395ii and 42 U.S.C. § 405(h) bar mandamus jurisdiction under all circumstances. See Your Home, 525 U.S. at 456-57 n.3; Ringer, 466 U.S. at 616. However, the Court of Appeals for this Circuit has limited mandamus in the Medicare context to questions of what procedure – such as a reopening – is mandated for the processing of particular claims, see Monmouth Med. Ctr. v. Thompson, 257 F.3d 807, 813-15 (D.C. Cir. 2001), not to determining what substantive standards should be applied in making claims determinations. Action Alliance, 2007 WL 1119646 at *5-6.

particular way nor to direct the retraction or reversal of action already taken in the exercise of either." Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 218 (1930).[17] "The Secretary's decision" with respect to whether a medical service is reasonable and necessary, and "the means by which she implements her decision," are "clearly discretionary decisions." Ringer, 466 U.S. at 617. No matter how plaintiff's claim is characterized, some degree of interpretive judgment is required to determine whether Mutual of Omaha impermissibly relied on a retired local coverage determination when it determined for the second time that plaintiff had not established that her blood-glucose tests were reasonable and necessary.

## II. PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF TO PROHIBIT THE INTERMEDIARY FROM USING A RETIRED LCD TO DENY MEDICARE CLAIMS.

Even if this Court were to conclude that jurisdictional prerequisites have been met here, plaintiff's first claim also should be dismissed for lack of standing because she has never been injured in the past by the complained-of local coverage determination and future injury is not reasonably likely. The "core component" of standing is a "familiar" one: the plaintiff "must

---

[17] The scope of mandamus jurisdiction has been defined by the Supreme Court as follows:

> The duties of executive officers . . . usually are connected with the administration of statutes which must be read and in a sense construed to ascertain what is required. But it does not follow that these administrative duties all involve judgment or discretion of the character intended by the rule just stated. Where the duty in a particular situation is so plainly prescribed as to be free from doubt and equivalent to a positive command, it is regarded as being so far ministerial that its performance may be compelled by mandamus, unless there be provision or implication to the contrary. But where the duty is not thus plainly prescribed, but depends upon a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus.

Kadrie, 281 U.S. at 218-19 (footnotes omitted); see also Consol. Edison, 286 F.3d at 605.

allege personal injury traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." DaimlerChrysler Corp. v. Cuno, 126 S. Ct. 1854, 1861 (2006) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)). Even where traceable injury has been shown, it is well-settled that "[p]ast exposure" to conduct alleged to be unlawful "does not in itself show a present case or controversy regarding injunctive relief," Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 109 (1998) (quoting O'Shea v. Littleton, 414 U.S. 488, 495 (1974), and "general assertions or inferences" that illegal conduct will recur are equally insufficient. O'Shea, 414 U.S. at 497. To have standing to seek declaratory and injunctive relief, the plaintiff must show either that the past action has "continuing, present adverse effects," Steel Co., 523 U.S. at 109 (quoting O'Shea, 414 U.S. at 496), or that there is a "real and immediate threat" that the complained-of action will recur in the future to the plaintiff's detriment. Gratz v. Bollinger, 539 U.S. 244, 284 n.4 (2003) (quoting Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 210-11 (1995), and City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983)). Plaintiff here cannot establish any of these elements.

The past action of which plaintiff complains is simply that Mutual of Omaha denied her claims for blood-glucose tests for an allegedly improper reason – the purported reliance upon a local coverage determination after it had been retired – and the future action of which she complains is that the intermediary will continue to deny similar claims in the future for the same putatively unlawful reason. The threshold standing problem for plaintiff is that the intermediary did not deny any of her claims on the basis of the challenged local coverage determination, either when it was in effect, Routt Docs. at 53-60, or after it was retired. Id. at 79-86. Nor does the intermediary have any intention of relying on the retired LCD in the future. Retired LCD at 16. Standing to challenge the anticipated denial of future claims is therefore lacking, see, e.g., Lyons,

461 U.S. at 105, and such hypothetical claims also are not ripe for adjudication. See Texas v. United States, 523 U.S. 296, 300 (1998) (ripeness lacking where injury rests on "contingent future events that may not occur as anticipated, or indeed may not occur at all") (citation omitted).

In addition, plaintiff was found to be immune from liability for the costs of the 2005 tests under the "limitation on liability" statute in 42 U.S.C. §§ 1395pp(a)-(b). The denial of benefits therefore caused her no injury. In the reverse situation where Medicare paid a claim denied by an insurer, a court had no difficulty concluding that the insured did not have standing to challenge the denial of benefits by the insurer. Wheeler v. Travelers Ins. Co., 22 F.3d 534, 538 (3d Cir. 1994). The same reasoning applies here.

## III. RETIREMENT OF THE LOCAL COVERAGE DETERMINATION BY THE INTERMEDIARY DID NOT INVALIDATE ANY POLICIES OF THE SECRETARY.

Even if subject-matter jurisdiction were present, plaintiff's first cause of action also should be dismissed for failure to state a claim. In determining whether the intermediary correctly construed the effect of 42 C.F.R. § 426.420(a) (incorporating 42 C.F.R. § 426.460(b)), the task of the reviewing court "is not to decide which among several competing interpretations best serves the regulatory purpose," Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994), but rather "the agency's interpretation must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" Id. (citation omitted). And "[t]his broad deference [to the administrative agency] is all the more warranted when, as here, the regulation concerns a 'complex and highly technical regulatory program,' in which the identification and classification of relevant 'criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.'" Id. (citation omitted).

At the outset, plaintiff's theory of the case suffers from an obvious analytical flaw. To say that the retirement of a local coverage determination has "the same legal effect as an ALJ's decision to invalidate that LCD under the reasonableness standard," Am. Compl. at ¶ 84 (emphasis added), is not the same as saying that the retirement of an LCD does, in fact, result in the ALJ having declared that the LCD is invalid under the reasonableness standard. The retirement of an LCD merely causes the "same" procedural "effect," 42 C.F.R. § 426.420(a), as if an adverse decision had made under 42 C.F.R. § 426.460(b). Those procedural effects are twofold. First, "if the party's claim or appeal(s) was previously denied," the contractor "must reopen the claim of the party who challenged the LCD and adjudicate the claim without using the provision(s) of the LCD that the ALJ found invalid." 42 C.F.R. § 426.460(b)(1). The party may then challenge any adverse determination on reopening through the Medicare claims appeals process. See 42 C.F.R. § 405.842(b). Second, the contractor must not use the LCD "prospectively" when making determinations on "claims filed with dates of service after the implementation of the ALJ decision." 42 C.F.R. § 426.460(b)(2). Retirement of an "LCD under review . . . before the date the ALJ issues a decision regarding the LCD" simply "means that the contractor may no longer use that LCD in the adjudication of claims on a prospective basis," 68 Fed. Reg. 63,692, 63,709 (Nov. 7, 2003), and therefore "there would no longer be a need for LCD review" by the administrative law judge. 67 Fed. Reg. 54,534, 54,540. (Aug. 22, 2002). Retirement of an LCD simply leaves that substantive judgment for another day when the judgment would matter to the parties. Thus, while it is true that the retirement of an LCD means that it is no longer effective and cannot be relied upon to deny claims, the retirement does not actually invalidate the local coverage determination, let alone each and every one of the policy statements that may appear in it. For instance, it would be absurd for plaintiff to argue that the

portion of the LCD in this case that repeated the reasonable and necessary requirement of 42 U.S.C. § 1395y(a)(1)(A) would make the statute invalid and unenforceable when the LCD was retired. The same principle would apply to past and future regulations promulgated under the reasonable and necessary standard – and to restatements of Medicare policy which interpret that standard – that happen to appear in the LCD for informational purposes.

Even if retirement of a local coverage determination were tantamount to a ruling by the ALJ that the LCD was invalid, it would do plaintiff no good. As was discussed earlier, the authority of the ALJ to review LCDs is subject to "limitations," 42 U.S.C. § 1395ff(f)(2)(A), and one of the most important of those limitations is that he "does not have the authority," 42 C.F.R. § 426.405(d), to "[f]ind invalid applicable Federal statutes, regulations, rulings, or NCDs," 42 C.F.R. § 426.405(d)(13), or to "conduct a review of any [other] policy that is not an LCD," 42 C.F.R. § 426.405(d)(5), such as program instructions issued by the Secretary. In this case, the challenged local coverage determination consisted of mere re-statements of the regulation at 42 C.F.R. § 410.32(a), the national coverage determination, and Program Memorandum AB-00-108. Mutual of Omaha added no coverage determinations of its own. Thus, there was nothing in the LCD that the ALJ could have declared was invalid. He certainly could not have declared that the prohibition against a "standing order" that now appears in 42 C.F.R. § 424.24(f) and previously appeared in Program Memorandum AB-00-108 at 1, was invalid.

Finally, the absence of an "aggrieved party," 42 U.S.C. § 1395ff(f)(2)(A), prevents the LCD retirement from having any legal effect at all. The provision at 42 C.F.R. § 426.460 – which is incorporated by reference in 42 C.F.R. § 426.420, only potentially comes into play "[i]f the ALJ finds that the provision or provisions of the LCD named in the complaint is (are) invalid under the reasonableness standard." 42 C.F.R. § 426.420(b) (emphasis added). The ALJ, in turn,

has authority only to "review complaints by an aggrieved party." 42 C.F.R. § 426.405(c)(1). Conversely, he expressly lacks authority to "[c]onduct a review of the merits of an unacceptable LCD complaint," 42 C.F.R. § 426.405(d)(7), including any complaint not submitted by an aggrieved party. 42 C.F.R. § 426.410(b)(1).

## IV. PLAINTIFF'S DUE PROCESS CLAIM SHOULD BE DISMISSED FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM.

Plaintiff's second claim – that the intermediary violated the due-process rights of other Medicare beneficiaries when it failed to provide them with the same individualized notice of the LCD retirement that she received, Am. Compl. at ¶¶ 115-20 – merits little discussion. The claim should be dismissed for lack of standing and failure to state a claim.

### A. Plaintiff Lacks Third-Party Standing to Assert the Putative Rights of Other Medicare Beneficiaries.

At the outset, plaintiff's due-process claim runs afoul of the well-settled principle that a plaintiff "generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." Kowalski v. Tesmer, 543 U.S. 125, 129 (2004) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)).[18] This "fundamental restriction" against third-party standing is subject to a "limited" exception only where "three important criteria are satisfied." Powers v. Ohio, 499 U.S. 400, 410-11 (1991). First, the litigant himself "must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute." Id. at 411 (quoting Singleton v. Wulff, 428 U.S. 106,112

[18] The rationale behind this rule – a "'healthy concern that if the claim is brought by someone other than one at whom the constitutional protection is aimed,'" courts "might be 'called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." Kowalski, 543 U.S. at 129 (citation omitted) – obviously applies with full force here.

(1976)).  Second, "the litigant must have a close relation to the third party."  Id.  Third, "there

must exist some hindrance to the third party's ability to protect his or her own interests.  Id.

Plaintiff meets none of these tests here.[19]

      With respect to personal injury, plaintiff admits she herself received all of the

individualized notice that she contends the due process clause of the Fifth Amendment demands.

Am. Compl. at ¶ 116.  The Supreme Court, in turn, "allowed standing to litigate the rights of

third parties when enforcement of the challenged restriction against the litigant would result

indirectly in the violation of third parties' rights," Kowalski, 543 U.S. at 130 (quoting Warth, 420

U.S. at 510) (emphasis in Kowalski), but it has never permitted the litigant to simply borrow the

putative injury to a third party and assert it as his own.[20]  On the contrary, the "Art. III judicial

power exists only to redress or otherwise protect against injury 'to the complaining party.'"

Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 771 (2000)

(quoting Warth, 422 U.S. at 499) (emphasis added in Vermont Agency), and therefore the

plaintiff must therefore allege that he has suffered "a distinct and palpable injury to himself,"

Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 100 (1979) (citation omitted) (emphasis

added), and not merely "that injury has been suffered by other[s]."  Warth, 422 U.S. at 502

---

    [19] The personal-standing element is an "irreducible constitutional minimum," Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), that must be strictly enforced because it is a prerequisite "to make it a case or controversy subject to a federal court's Art. III jurisdiction." Warth, 428 U.S. at 112.  The second two are "prudential" requirements.  Id.  Although the Supreme Court has applied the prudential standards in a "forgiving" manner in "certain circumstances," its most recent precedent commands that, "[b]eyond these examples," courts should not look "favorably upon third-party standing."  Kowalski, 543 U.S. at 130.

    [20] See Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, 13 Federal Practice and Procedure § 3531.4 at 945 (Supp. 2006) ("the rules that limit standing to assert the rights of others begin from the premise that a person who is not injured cannot rely on another's injury").

(emphasis added). And this is true even where, as here, the injury is alleged to be "shared by a large class of other possible litigants." Id. at 501. In the absence of a "next friend" or similar legal relationship that places the plaintiff directly in the shoes of the allegedly injured person, the Supreme Court has repeatedly held that a plaintiff cannot base his standing on injuries alleged to have been suffered by someone else.[21]

Plaintiff also fails both of the prudential tests for third-party standing. At the outset, the relationship must be "existing," rather than "hypothetical." Kowalski, 543 U.S. at 131 (emphasis in original). Second, the existing relationship between the litigant and the third party must be a sufficiently "close" one, id. that "the former is fully, or very nearly, as effective a proponent of the right as the latter." Powers, 499 U.S. at 413 (quoting Warth, 428 U.S. at 115). Where, as here, the litigant has "no relationship at all" to the third parties, Kowalski, 543 U.S. at 131, standing to represent the interests of other Medicare beneficiaries is obviously lacking. Amgen, Inc. v. Scully, 234 F. Supp. 2d 9, 22 (D.D.C. 2002), aff'd, 357 F.3d 103 (D.C. Cir. 2004).

Finally, plaintiff has not alleged any hindrance to the ability of other Medicare beneficiaries to assert their putative rights. As the Supreme Court has recently explained, where third parties have "open avenues to argue that denial deprives" them of their "constitutional rights," Kowalski, 543 U.S. at 131-32, there does not exist "the type of hindrance necessary to allow another to assert" his rights." Id. at 132. This applies equally to Medicare beneficiaries who reside in nursing homes. Coye v. Sullivan, 1991 WL 319038 at *2 (E.D. Cal. Dec. 11,

---

[21] See, e.g., Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 17-18 (2004) (non-custodial parent cannot complain of injuries to daughter over objection of custodial parent); Whitmore v. Arkansas, 495 U.S. 149, 154-66 (1990) (one prison inmate cannot complain of injuries allegedly suffered by another inmate during court proceedings); Conn v. Gabbert, 526 U.S. 286, 292-93 (1999) (lawyer cannot complain about injury to his client).

1991) ("it is clear that the nursing home residents can protect their own interests").[22] In this case, the local coverage determination and its retirement were both published on the intermediary's website, and, if any claim for Part B benefits is denied in the future on the basis of the retired LCD, the beneficiary must be notified in writing in the Medicare Summary Notice. 42 U.S.C. § 1395ff(a)(4)(A)(i). Any beneficiary who does not feel this notice is sufficient has every opportunity to bring that challenge, and any SNF that feels the notice rights of beneficiaries in its care have been violated has a financial incentive to inform the beneficiaries.

**B. Plaintiff's Due-Process Theory Lacks Merit.**

Even if plaintiff could borrow the putative injuries and interests of third parties for purposes of standing, her due-process theory should be dismissed for failure to state a claim. While Part B beneficiaries have a due-process-protected "property interest" in "receiving the medical insurance benefits for which they paid a monthly premium," Gray Panthers v. Schweiker, 652 F.2d 146, 148 n.2 (D.C. Cir. 1980), the Medicare Act guarantees them "written notice," 42 U.S.C. § 1395ff(a)(4)(A), of the "reasons for the determination, including whether a local medical review policy or a local coverage determination was used." 42 U.S.C. § 1395ff(a)(4)(A)(i). As was discussed earlier, the " written notice" must be "provided in printed form and written in a manner calculated to be understood by the individual entitled to benefits," 42 U.S.C. § 1395ff(a)(4)(B), and "the individual provided such written notice may obtain, upon

---

[22] See also Isaacs v. United States, 1988 WL 142808 at * 5 (9th Cir. Dec. 28, 1988) ("no obstacle" to Medicare beneficiaries); Equal Access for El Paso, Inc. v. Hawkins, 428 F. Supp. 2d 585, 606 (W.D. Tex. 2006) (bare assertion that patients lack "resources" not enough for hindrance); Freilich v. Bd. of Dirs. of Upper Chesapeake Health, Inc., 142 F. Supp. 2d 679, 699 (D. Md. 2001) (no hindrance prevents dialysis patients from asserting right to hospital access). Nursing home residents who are unable to manage their own affairs, of course, can still protect their rights through conservators.

request, information on the specific provision, of the policy, manual, or regulation used in making the redetermination."  42 U.S.C. § 1395ff(a)(4)(C).  In the context of Medicare Part B claims, such "notice of the specific reasons for denial," Gray Panthers, 652 F.2d at 168, is all that is necessary to give beneficiaries "notice of the factual basis" for the determination and "a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker," Hamdi v. Rumsfeld, 542 U.S. 507, 533 (2004), either through the administrative appeals process for challenging individual claims, 42 U.S.C. § 1395ff(b), or through the administrative process for challenging local coverage determinations.  42 U.S.C. § 1395ff(f)(2)(A).  That is all that due process requires.  See Connecticut Dep't of Social Servs. v. Leavitt, 428 F. Supp. 138, 151-53 (2d Cir. 2005); see generally Hamdi, 542 U.S. at 533 ("essential principle" of due process is "notice and opportunity for hearing appropriate to the nature of the case") (citation omitted); LaChance v. Erickson, 522 U.S. 262, 266 (1998) ("notice and a meaningful opportunity to be heard"); Mathews v. Eldridge, 424 U.S. at 333 ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'") (citation omitted).  Other wording in the Medicare Summary Notice is the product of a consent decree entered by this Court, Gray Panthers v. Heckler, 1985 WL 81770 (D.D.C. Nov. 4, 1985), and does not appear to be under challenge here.

**CONCLUSION**

For the reasons stated, plaintiff's amended complaint should be dismissed.[23]

Respectfully submitted,

OF COUNSEL:
DANIEL MERON
General Counsel

KATHLEEN H. MCGUAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate
General Counsel for Litigation

WILLIAM A. CONNELLY
Attorney
Department of Health
and Human Services

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

/s/ Peter Robbins
SHEILA M. LIEBER
PETER ROBBINS
Department of Justice
20 Massachusetts Avenue, N.W., Room 7142
Washington, D.C. 20530
Tel: (202) 514-3953
Attorneys for Defendants

[23] The claims against the intermediary also should be dismissed on the separate ground that the Secretary "is the real party in interest in any litigation involving the administration of the program." 42 C.F.R. § 421.5(b). In a claim seeking to "compel the government to act" in connection with the administration of the Medicare program, it is well settled that the "real party in interest" is the Secretary, Pine View Gardens, Inc. v. Mutual of Omaha Ins. Co., 485 F.2d 1073, 1075 (D.C. Cir. 1973), and the intermediary should be dismissed as a party. St. Mark's Lutheran Home, mem. op. at 3-4; see also Gundry Glass Hosp. v. Shalala, 6 F. Supp. 2d 466, 467 (D. Md. 1998), aff'd, 175 F.3d 1014 (4th Cir. 1999); Little Co. of Mary Hosp. & Health Care Ctrs. v. Shalala, 994 F. Supp. 950, 953 n.2 (N.D. Ill. 1998), aff'd, 165 F.3d 1162 (7th Cir. 1999).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LOUISE BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:06-cv-2144 |
| | ) | Judge Royce C. Lamberth |
| MUTUAL OF OMAHA INSURANCE COMPANY, MICHAEL O. LEAVITT, and LESLIE V. NORWALK, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' EXHIBIT A**

# Program Memorandum Intermediaries/Carriers

Department of Health and Human Services (DHHS)
HEALTH CARE FINANCING ADMINISTRATION (HCFA)

**Transmittal AB-00-108** **Date: DECEMBER 1 , 2000**

**CHANGE REQUEST 1362**

**SUBJECT: Glucose Monitoring**

This Program Memorandum (PM) reviews Medicare coverage and payment policy for glucose monitoring for a patient whose stay is not covered by Medicare Part A but who is eligible for services under Medicare Part B. During the past year, program integrity efforts have identified a significant increase in the number of claims submitted to intermediaries for glucose monitoring using a home-use device. We also have received inquiries from contractors, providers, and beneficiaries reporting encouragement of home-use glucose monitoring devices for more patients, more often and in more health care settings, specifically nursing homes and home health agencies, than in the past so that a review of the service is warranted. This PM incorporates and supplements material previously issued in a prior PM, AB-00-99, CR 1407, "Glucose Monitoring Note." It provides instructions on payment that supplement AB-00-109, CR 1377, "2001 Clinical Laboratory Fee Schedule."

Glucose monitoring measures blood sugar levels for the purpose of managing insulin therapy (shots, medication, and diet). The service often involves the use of an inexpensive hand-held device to evaluate a small sample of the patient's blood acquired through a finger stick. The device measures blood glucose values immediately on a digital display so as to permit self-administration in the home. If a physician separately orders the performance of a glucose monitoring service for a patient who can not self-administer, clinical staff generally will administer a glucose monitoring service along with their other duties.[1] Administration of the service several times a day is common in order to maintain tight control of glucose to prevent heart disease, blindness, and other complications of diabetes. This device is on the list of instruments that can be administered by providers registered under the Clinical Laboratory Improvement Amendments of 1988 (CLIA), including providers registered with only a certificate of waiver.[2]

[1] Medicare Part B may pay for a glucose monitoring device and related disposable supplies under its durable medical equipment benefit if the equipment is used in the home or in an institution that is used as a home. A hospital or SNF is not considered a home under this benefit. §1861(h) of the Social Security Act. §42 Code of Federal Regulations (CFR) 410.38.

[2] Section 353 of the Public Health Service Act codified at §42 CFR 493. The most recent PM identifying CLIA-waived instruments under CLIA is PM AB-00-61, dated July 2000.

The Current Procedural Terminology (CPT) code that most often describes the service is 82962 *Glucose, blood by glucose monitoring device(s) cleared by the FDA (Food and Drug Administration) specifically for home use.*[3] Section 1862(a)(1)(A) of the Social Security Act requires the service to be reasonable and necessary for diagnosis and treatment in order to be covered by Medicare. Sections 42 CFR 410.32 and 411.15 specify that for a laboratory service to be reasonable and necessary, it must not only be ordered by the physician but the ordering physician must also use the result in the management of the beneficiary's specific medical problem. Implicitly, the laboratory result must be reported to the physician promptly in order for the physician to use the result and instruct continuation or modification of patient care; this includes the physician's order for another laboratory service. Compliance program guidance for laboratory services sets forth conditions under which a physician's order for a repeat laboratory service can qualify as an order for another covered laboratory service. A standing order is not usually acceptable documentation for a covered laboratory service. A national coverage policy on blood glucose monitoring has not been finalized. Carriers and intermediaries have been responsible for making coverage determinations and many have developed a local coverage policy to assist with payment determinations. However, during the past two years, experts involved in the clinical laboratory negotiated rulemaking process determined that blood glucose laboratory testing warrants a national coverage policy. These experts reached a consensus on a proposed national coverage policy, which was described in the March 10, 2000 *Federal Register*, volume 65, number 48, pages 13127-13131. This document can be obtained at the web site http://www.access.gpo.gov Intermediaries and carriers can refer to coverage policy developments at the web site http://www.hcfa.gov/quality/docs/labsd-d.htm Contractors should review their local coverage policy for glucose testing in light of the proposed national coverage policy in order to prepare for the adoption of a national coverage policy. Also, contractors should review their local coverage policy to clarify, if necessary, that a glucose monitoring laboratory service must be performed in accordance with laboratory service coverage criteria including the order and clear use of a laboratory result prior to a similar subsequent laboratory order to qualify for separate payment under the Medicare laboratory benefit.

If a glucose monitoring service is administered for a patient who is hospitalized and eligible for Medicare Part B but who is not in a Part A covered hospital stay, a Form HCFA-1450 is submitted to the intermediary using type of bill (TOB) 12x and revenue code 30x and is paid under the clinical laboratory fee schedule.[4] If a patient is eligible for Part B, but is not in a Part A covered nursing home stay, §541 of the Skilled Nursing Facility (SNF) Manual explains that a laboratory service is separately payable either on a reasonable cost basis (if the patient is in a certified bed) or under the clinical laboratory fee schedule (if the patient is in a non-certified bed). If a Part B only patient resides in a nursing home certified bed, a Uniform Bill-92 (UB92) using TOB 22x and revenue code 30x is submitted to the intermediary. The laboratory cost center of the cost report must reflect the corresponding glucose monitoring costs and charges even when the provider is registered for laboratory testing with only a certificate of waiver from CLIA. The beneficiary is liable for the deductible and coinsurance. If a Part B only patient resides in a non-certified bed, payment is made under the clinical laboratory fee schedule. Until further instructions regarding Part B only patient are implemented, a UB92 is submitted using TOB

[3] CPT code 82962 represents a method when whole blood is obtained (usually by finger stick device) and assayed by glucose oxidase, hexaokinase, or electrochemical methods and spectrophotometry using a small portable device designed for home blood glucose monitoring use. The device(s) are now also used in physician offices, nursing homes, hospitals, and during home health visits. CPT code 82947-QW describes instruments that measure quantitative glucose levels but are not cleared by the FDA for home glucose monitoring. Development of hand-held device(s) using a noninvasive biosensor or other micromethod for more rapid glucose monitoring is underway; however, to date these devices are not categorized by FDA as CLIA-waived tests. The term *continuous glucose monitoring* does not refer to CLIA-waived test but to a procedure that implants needle probes into the patient and provides measurements to a computer screen. This lengthy procedure, reviewing and interpreting the measurements is performed by a physician or appropriately licensed practitioner similar to a 24-hour electrocardiographic monitoring and payment is made under the physician fee schedule.

[4] Medicare Intermediary Manual, §§3604 and 3628.

23x and revenue code 30x to the intermediary when the SNF provides a laboratory service either directly or under arrangement with an outside laboratory. The beneficiary is not liable for a deductible or coinsurance. Nursing and physician duties, include observing, ordering, administering and interpreting the patient's health status are paid predominately under other payment systems, such as the state nursing home payment system or the physician payment system. If home-use glucose monitoring devices are used in the hospital and nursing home settings, a glucose monitoring service must be performed in accordance with laboratory coverage criteria to qualify for separate payment under the Medicare laboratory benefit. As noted above, for a laboratory service to be reasonable and necessary, it must be ordered by the physician, the ordering physician must use the result in the management of the beneficiary's specific medical problem, and the laboratory result must be reported to the physician promptly in order for the physician to use the result and instruct continuation or modification of patient care.When a glucose monitoring service meets the criteria to be a covered laboratory service for a Part B only patient, regardless of whether the nursing home patient resides in a certified or non-certified bed, payment must be made. Denial of payment for a Part B covered laboratory service cannot be made on the basis that the service is routine care. Under Medicare, routine care determinations are applicable only for Part A nursing home services.

A covered home health service requires a home health employee to supervise, assist, record, and report on the patient's daily/weekly functional and medical activities. For some patients, their daily/weekly activities include glucose monitoring, often self administered or administered with the help of a care giver who is not an employee of or affiliated with the home health provider. If the patient maintains a home-use glucose monitoring device, a home health employee's supervision and assistance of a glucose monitoring service is encompassed in the payment for the home health service. However, if a physician separately orders the employee to administer a glucose monitoring service for a Part B only patient who does not administer daily/weekly glucose monitoring and does not maintain a glucose monitoring device, the glucose monitoring service is not encompassed in the home health benefit. [5] If a home health agency receives a supplier number, a Form HCFA-1500 may be submitted to the carrier in accordance with physician and supplier billing instructions for filing Part B claims at MCM 3001.[6] Corresponding laboratory costs and charges must be reported on the cost report even when the home health agency is registered for CLIA testing with only a certificate of waiver. Sections 42 CFR 410.32 and 411.15 apply equally to a laboratory service in the home health setting. Therefore, if a home health employee carries and assists with the use of a home-use glucose monitoring device during a home health visit, a glucose monitoring service must be performed in accordance with laboratory coverage criteria to qualify for separate payment under the Medicare laboratory benefit. The blood glucose monitoring service must not only be ordered by the physician but the ordering physician must also receive and use the order's result in the management of a specific medical problem. The laboratory result must be reported to the physician promptly in order for the physician to use the result and instruct continuation or modification of patient care. Compliance program guidance for laboratory services sets forth the conditions under which a physician's order for a repeat laboratory service can qualify as an order for another covered laboratory service. Program integrity efforts should review for medical necessity a claim for a glucose monitoring laboratory service received at the same time as a claim for glucose test strips indicating the patient is maintaining a home-use device for self monitoring.

At certain times a physician may also order a separate quantitative blood glucose test to enhance a physician evaluation and management service for the patient. A specimen collection of venous blood may be sent to an independent laboratory for testing and the laboratory reports the result to the provider and the ordering physician. This is a separate laboratory service billed with a different code than a home-use glucose monitoring service and is also paid under the laboratory fee schedule. Instructions regarding the clinical diagnostic laboratory fee schedule are at §3628 of the Medicare Intermediary Manual and §5114 of the Medicare Carriers Manual.

---

[5] §1861(m) of the Act governs the extent of Medicare home health services that may be provided to eligible beneficiaries by or under arrangements made by a participating home health agency (HHA).

[6] Home Health Manual, §465.

As stated above, the CPT code that most often describes the glucose monitoring service using a laboratory testing device designed for home use is 82962 *Glucose, blood by glucose monitoring device(s) cleared by the FDA specifically for home use*. This CPT code has been included in the clinical laboratory fee schedule since January 1, 1993. The payment amount established for this CPT code was mapped from a previously existing code representing a quantitative glucose test using a device that is not cleared by the FDA for home use. Since that time, the payment amount has been subject to the prescribed updates for the clinical laboratory fee schedule.[7] During the past year, we have reviewed the test and have determined that administering a glucose monitoring service with a home-use device is substantially different than a quantitative glucose test and therefore our earlier mapping of the CPT code 82962 for a device approved for home use to a quantitative blood glucose test was erroneous.

In order to allow Medicare to base the laboratory fee schedule payment amount for CPT code 82962 code on the best available data nationwide, carriers must gap-fill CPT code 82962 for the year 2001. To establish an appropriate gap-fill amount for 2001, carriers should receive assistance from their corresponding intermediaries to consider the cost and the charge for the service as it is administered for Part B patients in a variety of settings such as hospitals, home health agencies, nursing homes, and physician offices. Gap-filling should consider, as appropriate, the costs of professional and clerical labor, device amortization, supplies, and overhead for this service. While these costs can be difficult to distinguish from other nursing and clinical services provided to the patient, the gap-fill amount must be established to carefully reflect only the Medicare laboratory service. Carriers should also evaluate any information that may be submitted to the carrier by other interested parties in establishing the gap-fill amount. In accordance with instructions for laboratory gap-fill codes in PM AB-00-109, CR 1377, "2001 Clinical Laboratory Fee Schedule," the gap-fill amount is established by the carrier on a flow basis as claims are received for the code. For CPT code 82962, the local fee amount field and the National Limitation Amount field are zero-filled in the year 2001 clinical laboratory fee schedule date file that was issued to carriers on November 1, 2000, and to intermediaries on November 21, 2000. Carriers should establish a gap-fill amount not later that March 31, 2001, communicate the amount to the corresponding intermediary as necessary, and report the amount to their Regional Office by May 4, 2001. The gap-fill amounts establish the local laboratory fee schedule amounts for CPT code 82962 and will be used to develop the year 2002 national limitation amount for this code.

**NOTE:** Claims for dates of service prior to the effective date of this PM should be processed in accordance with local medical review policy in effect on the date of service. Medicare Intermediary Manual §3600.2 explains that a claim must be filed on or before December 31 of the calendar year following the year in which the service was furnished. Do not search for previously adjudicated claims, however, timely filed claims may be adjusted if brought to your attention.

***The effective date for this PM is January 1, 2001.***

***The implementation date for this PM is January 1, 2001.***

**These instructions should be implemented within your current operating budget.**

**For questions regarding this document, contact Anita Greenberg on (410) 786-4601.**

**This PM may be discarded after December 31, 2001.**

[7] §1833(h) of the Act; Medicare Carriers Manual, §5114.1C.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LOUISE BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:06-cv-2144 |
| | ) | Judge Royce C. Lamberth |
| MUTUAL OF OMAHA INSURANCE COMPANY, MICHAEL O. LEAVITT, and LESLIE V. NORWALK, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LOUISE BAILEY,

Plaintiff,

v.

MUTUAL OF OMAHA INSURANCE COMPANY, MICHAEL O. LEAVITT, and MICHAEL O. LEAVITT,

Defendant.

Case No. 1:06-cv-2144
Judge Royce C. Lamberth

**DECLARATION OF MICHELLE ROUTT**

I, Michelle Routt, declare as follows:

1. I am a Project Management Specialist at Mutual of Omaha Insurance Company ("Mutual"). Mutual is contracted to act as a fiscal intermediary for payment of participating health care providers for covered services provided to eligible beneficiaries under the Medicare program. Among other things, I coordinate the handling of record requests made to Mutual from various governmental and law enforcement agencies. The documents identified in this declaration are records maintained by Mutual in the course of its official business as a contractor of the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services. The statements in this declaration are based on my personal review of the referenced documents and my work experience with Mutual, including my knowledge of Mutual's practices and procedures.

2. To the best of my knowledge, attached to this declaration as Attachment 1 are true and correct copies of documents maintained by Mutual in connection with claims submitted by

Holladay Healthcare Center ("Holladay") for blood glucose tests Holladay furnished to Louise Bailey during October, November, and December 2005. The documents were either submitted to Mutual by Holladay or prepared by Mutual in connection with Holladay's submissions. The following information has been redacted from these documents: personal health information regarding patients other than Ms. Bailey; Ms. Bailey's Social Security number, Health Insurance Claim number, home address, and date of birth; and Holladay's federal Employer Identification Number.

<u>Dates of Service from October 1, 2005 through October 31, 2005</u>

3. On pages 1 through 15 of Attachment 1 are print outs from Mutual's claims processing system that summarize claims submitted by Holladay for services furnished to Ms. Bailey from October 1, 2005 through October 31, 2005. The third column on pages 2 through 4 lists the Healthcare Common Procedure Coding System ("HCPCS") codes submitted by Holladay. HCPCS code 82962 indicates a blood glucose test performed using a glucose monitoring device cleared by the Food and Drug Administration ("FDA") specifically for home use.

4. On page 16 of Attachment 1 is a print out from Mutual's claims processing system. The entry "051105 S B6000 FSSA 50200" indicates that blood glucose monitoring has been billed on the claim and that an Additional Development Request will be sent requesting additional information on the claim. This additional information should include: Physician order(s) to include blood glucose testing; documentation for the medical necessity for each test billed, which may include nurse's notes and or physician progress notes; results of each blood glucose/accucheck test billed; documentation of physician notification of each test result noting

the use of the results to modify treatment; detailed itemization of charges billed; and history and physical supporting the diagnosis of diabetes.

5. On page 17 of Attachment I is a print out from Mutual's claims processing system. The entry "051107 S B6001 BATCH ADR 39700" indicates that Mutual issued an Additional Development Request on November 7, 2005. The narrative description for reason code 39700 states that "a medical additional development request has been sent to the provider. No further processing will occur on this claim until the requested data has been received from the provider."

6. On pages 18 through 21 are print outs from Mutual's claims processing system. These print outs summarize charges for claims submitted by Holladay for services furnished to Ms. Bailey from October 1, 2005 through October 31, 2005. The third column on pages 19 through 21 lists the HCPCS codes submitted by Holladay. HCPCS code 82962 indicates a blood glucose test performed using a glucose monitoring device cleared by the FDA specifically for home use.

7. On pages 22 through 50 of Attachment 1 are copies of documents Holladay submitted to Mutual in response to the November 7, 2005 Additional Development Request.

a. On page 22 is the cover sheet of Holladay's package.

bc. On pages 23 through 26 is a copy of a letter from Thomas C. Fox of Reed Smith LLP to Marna Bogan, R.N. of Mutual. Ms. Bogan was a Project Management Specialist while employed with Mutual.

c. On pages 27 through 28 are copies of Holladay's claim for payment.

d. On page 29 is Holladay's documentation of blood glucose tests provided to Ms. Bailey during October 2005.

e. On pages 30 through 31 is Ms. Bailey's Medication Record for October 2005.

f. On pages 32 through 34 are Physician's Progress Notes for Ms. Bailey. These notes are dated July 8, 2004.

g. On pages 35 through 36 are Physician's Orders for Ms. Bailey. On line 5 of page 35 is an order for blood glucose testing. The physician's order is dated July 6, 2004.

h. On page 37 are Admissions Orders for Ms. Bailey. On the eleventh line of Section A is an order for blood glucose testing. "BID" indicates that the order is for testing twice daily. The physician's order is dated July 13, 2004.

i. On page 38 is a Physician's Telephone Order for Ms. Bailey. The notation "please check BS @ 2000 Q day" indicates that the physician ordered an additional blood glucose test daily at 8:00 PM. This physician's order is dated November 8, 2005.

k. On page 39 are Nurses' Progress Notes from October 20, 2005 through November 29, 2005.

l. On pages 40 through 42 are records of Holladay's occupational therapy, evaluation, and treatment of Ms. Bailey.

m. On page 43 is a Physician Telephone Order for occupational therapy evaluation of Ms. Bailey.

n. On pages 44 through 46 are records of Holladay's physical therapy evaluation and treatment of Ms. Bailey.

o. On pages 47 through 50 are copies of pages from the Federal Register that Holladay submitted with its documentation package.

8. On page 51 of Attachment 1 is a copy of an internal Mutual document that shows the

results of Mutual's medical review of the documents Holladay submitted in response to the

November 7, 2005 Additional Development Request. Mutual's medical review personnel

determined that the blood glucose testing services were not reasonable and necessary.

9. On page 52 of Attachment 1 is a print out of a remittance advice from Mutual's claims

processing system. This remittance advice indicates that, on January 9, 2006, Mutual made an

initial determination to deny Holladay's claims for blood glucose tests furnished to Ms. Bailey

during October 2005.

10. On pages 53 through 60 of Attachment 1 is a copy of a Medicare Summary Notice

dated February 1, 2006 that Mutual issued to Ms. Bailey. This Medicare Summary Notice

summarized Mutual's initial determination with respect to Holladay's claims for blood glucose

tests furnished to Ms. Bailey during October 2005.

11. On page 61 of Attachment 1 is an internal Mutual document that shows the results of

Mutual's second medical review of the documents Holladay submitted in response to the

November 7, 2005 Additional Development Request. Mutual carried out this review after

Mutual reopened Holladay's claims for blood glucose tests furnished to Ms. Bailey during

October 2005. After this second medical review, Mutual's medical review personnel again

determined that the blood glucose testing services were not reasonable and necessary.

12. On pages 62 through 77 of Attachment 1 is a print out from Mutual's claims

processing system that indicates that Mutual reprocessed Holladay's claims for blood glucose

tests for October 2005.

13. On page 78 of Attachment 1 is a print out of a remittance advice from Mutual's

claims processing system. This a remittance advice indicates that, on December 26, 2006,

Mutual determined after reopening to deny Holladay's claims for blood glucose tests furnished to Ms. Bailey during October 2005.

14. On pages 79 through 86 of Attachment 1 is a copy of the Medicare Summary Notice dated January 1, 2007 that Mutual issued to Ms. Bailey after reopening.

Dates of Service from November 1, 2005 through November 30, 2005

15. On pages 87 through 102 of Attachment 1 are print outs from Mutual's claims processing system that summarize claims submitted by Holladay for services furnished to Ms. Bailey from November 1, 2005 through November 30, 2005. The third column on pages 89 through 91 lists the HCPCS codes submitted by Holladay. HCPCS code 82962 indicates a blood glucose test performed using a glucose monitoring device cleared by the FDA specifically for home use.

16. On page 103 of Attachment 1 is a print out from Mutual's claims processing system. The entry "051207 S B6000 FSSA 50200" indicates that blood glucose monitoring has been billed on the claim and that an Additional Development Request will be sent requesting additional information on the claim. This additional information should include: Physician order(s) to include blood glucose testing; documentation for the medical necessity for each test billed, which may include nurse's notes and or physician progress notes; results of each blood glucose/accucheck test billed; documentation of physician notification of each test result noting the use of the results to modify treatment; detailed itemization of charges billed; and history and physical supporting the diagnosis of diabetes. The entry "051207 S B6001 BATCH ADR 39700" indicates that Mutual issued an Additional Development Request on December 7, 2005. The narrative description for reason code 39700 states that "a medical additional development

request has been sent to the provider. No further processing will occur on this claim until the requested data has been received from the provider."

17. On page 104 of Attachment 1 is the Additional Development Request dated December 7, 2005 that Mutual issued to Holladay.

18. On pages 105 through 122 of Attachment 1 are copies of documents Holladay submitted to Mutual in response to the December 7, 2005 Additional Development Request.

a. On page 105 is a copy of the cover sheet of Holladay's package.

b. On page 106 is a copy of the December 7, 2005 Additional Development Request.

c. On pages 107 through 108 is a copy of Holladay's claim for payment.

d. On page 109 is Holladay's documentation of blood glucose tests provided to Ms. Bailey during November 2005.

f. On page 110 is Ms. Bailey's Medication Record for November 2005.

g. On pages 111 through 113 are Physician's Progress Notes for Ms. Bailey. These notes are dated July 8, 2004.

h. On pages 114 through 115 are Physician's Orders for Ms. Bailey. On line 5 of page 114 is an order for blood glucose testing. The physician's order is dated July 6, 2004.

i. On page 116 are Admissions Orders for Ms. Bailey. On the eleventh line of Section A is an order for blood glucose testing. "BID" indicates that the order is for testing twice daily. The physician's order is dated July 13, 2004.

j. On page 117 is a Physician's Telephone Order for Ms. Bailey. The notation

"please check BS @ 2000 Q day" indicates that the physician ordered an additional blood glucose test daily at 8:00 PM. This order is dated November 8, 2005.

k. On page 118 are Nurses' Progress Notes from October 20, 2005 through November 29, 2005.

l. On page 119 through 122 are copies of pages from the Federal Register that Holladay submitted with its documentation package.

19. On page 123 of Attachment 1 is an internal Mutual document that shows the results of Mutual's medical review of the documents submitted by Holladay in response to the December 7, 2005 Additional Development Request. Mutual's medical review personnel determined that the blood glucose testing services were not reasonable and necessary.

20. On page 124 of Attachment 1 is a print out of a remittance advice from Mutual's claims processing system. This remittance advice indicates that, on March 8, 2006, Mutual made an initial determination to deny Holladay's claims for blood glucose tests furnished to Ms. Bailey during November 2005.

21. On pages 125 through 130 of Attachment 1 is a copy of a Medicare Summary Notice dated April 1, 2006 that Mutual issued to Ms. Bailey. This Medicare Summary Notice summarized Mutual's initial determination with respect to Holladay's claims for blood glucose tests furnished to Ms. Bailey during November 2005.

<u>Dates of Service from December 1, 2005 through December 30, 2005</u>

22. On pages 131 through 146 of Attachment 1, are print outs from Mutual's claims processing system that summarize claims submitted by Holladay for services furnished to Ms. Bailey from December 1, 2005 through December 30, 2005. The third column on pages 133

through 135 lists the HCPCS codes submitted by Holladay. HCPCS code 82962 indicates a blood glucose test performed using a glucose monitoring device cleared by the FDA specifically for home use.

23. On page 147 of Attachment 1 is a print out from Mutual's claims processing system. The entry "051207 S B6000 FSSA 50200" indicates that blood glucose monitoring has been billed on the claim and that an Additional Development Request will be sent requesting additional information on the claim. This additional information should include: Physician order(s) to include blood glucose testing; documentation for the medical necessity for each test billed, which may include nurse's notes and or physician progress notes; results of each blood glucose/accucheck test billed; documentation of physician notification of each test result noting the use of the results to modify treatment; detailed itemization of charges billed; and history and physical supporting the diagnosis of diabetes. The entry "060109 S B6001 BATCH ADR 39700" indicates that Mutual issued an Additional Development Request on January 9, 2006. The narrative description for reason code 39700 states that "a medical additional development request has been sent to the provider. No further processing will occur on this claim until the requested data has been received from the provider."

24. On page 148 of Attachment 1 is an Additional Development Request dated January 9, 2006 that Mutual issued to Holladay.

25. On pages 149 through 167 of Attachment 1 are copies of documents Holladay submitted to Mutual in response to the January 9, 2006 Additional Development Request.

    a. On page 149 is a copy of the cover sheet of Holladay's package.

    b. On page 150 is a copy of the January 9, 2006 Additional Development

Request.

c. On pages 151 through 152 is a copy of Holladay's claim for payment

d. On page 153 is Holladay's documentation of blood glucose tests provided to Ms. Bailey during December 2005.

f. On pages 154 through 155 is Ms. Bailey's Medication Record for December 2005.

g. On pages 156 through 158 are Physician's Progress Notes for Ms. Bailey. These notes are dated July 8, 2004.

h. On pages 159 through 160 are Physician's Orders for Ms. Bailey. On line 5 of page 159 is an order for blood glucose testing. The physician's order is dated July 6, 2004.

i. On page 161 are Admissions Orders for Ms. Bailey. On the eleventh line of Section A is an order for blood glucose testing. "BID" indicates that the order is for testing twice daily. The physician's order is dated July 13, 2004.

j. On page 162 is a Physician's Telephone Order for Ms. Bailey. The notation "please check BS @ 2000 Q day" indicates that the physician ordered an additional blood glucose test daily at 8:00 PM. This physician's order is dated November 8, 2005.

k. On page 163 are Nurses' Progress Notes from October 20, 2005 through November 29, 2005.

l. On pages 164 through 167 are copies of pages from the Federal Register that Holladay submitted with its documentation package.

26. On page 168 of Attachment 1 is an internal Mutual document that shows the results

of Mutual's medical review of the documents submitted by Holladay in response to the January 9, 2006 Additional Development Request. Mutual's medical review personnel determined that the blood glucose testing services were not reasonable and necessary.

27. On page 169 of Attachment 1 is a print out of a remittance advice from Mutual's claims processing system. This remittance advice indicates that, on March 8, 2006, Mutual made an initial determination to deny Holladay's claims for blood glucose tests furnished to Ms. Bailey during December 2005.

28. On pages 170 through 175 of Attachment 1 is a copy of a Medicare Summary Notice dated April 1, 2006 that Mutual issued to Ms. Bailey. This Medicare Summary Notice summarized Mutual's initial determination with respect to Holladay's claims for blood glucose tests furnished to Ms. Bailey during December 2005.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

5/8/07
DATE

MICHELLE ROUTT

**ATTACHMENT 1**

MAP1031 M E D I C A R E - A O N L I N E S Y S T E M PAGE 01
SC UB92 CLAIM INQUIRY
DCN 20530801717002 04 HIC [redacted] RECEIPT DATE 110405 TOB 223
TATUS P LOCATION B9997 TRAN DT 122006 STMT COV DT 100105 TO 103105
UB-FORM: 9 BCBS PROVIDER: TRANSACT TYPE:

P A T I E N T S T A Y I N F O R M A T I O N

PATIENT CONTROL NBR 1230119 FEDERAL TAX NO. [redacted] SUB
STATEMENT DATES FROM 100105 TO 103105 COVERED DAYS ORIG DAYS
NON-COVERED DAYS COIN DAYS LRD CST RPT DYS
ORIG CST RPT DYS

P A T I E N T I N F O R M A T I O N

LAST BAILEY FIRST LOUISE MIDDLE INIT
ADDR 1 4782 S HOLLADAY BLVD 2 HOLLADAY UT
3 4
5 6
ZIP 841175444
DATE OF BIRTH [redacted] SEX F MARITAL STATUS

A D M I S S I O N D A T A

ADMIT DATE 070604 HOUR TYPE 3 SOURCE 1 NOE ACT CD NOE DT
DISC HM 0000 PATIENT STATUS 30 MEDICAL RECORD NO. 020530

37192 <== REASON CODES
PRESS PF3-EXIT PF8-NEXT PAGE

```
MAP1032          M E D I C A R E - A   O N L I N E   S Y S T E M         PAGE 02
 SC                                 UB92 CLAIM INQUIRY
 DCN 20530801717002       04  HIC [redacted]     RECEIPT DATE 110405  TOB 223
 STATUS P  LOCATION B9997     TRAN DT 122006    STMT COV DT 100105   TO 103105

 CONDITION CODES 01 64 02    03    04    05    06    07    08    09    10

 BENE EXHAUST DATE SET      QUALIFYING STAY DATES SET      BDL CHK OVR
 PROV FLT DAYS          LTR RATE BYPASS      TECH PROV: DAYS      CHARGES

 OCCURRENCE CDS AND DATES 01 11 070804 02 35 070804 03 44 070804 04
05            06            07            08             09            10

 OCCURRENCE SPAN CDS AND DTS (FROM / THRU)
 1                    2                    3                    4
 5                    6                    7                    8
 9                    10
 AD.DCN
       V A L U E  C O D E S  -  A M O U N T S  -  A N S I   MSP APP IND
01 A2       41.76   PR 2    02 50        61.00          03 51     39.00
04 76       89.00           05                          06
07                          08                          09
37192                                                         <== REASON CODES
      PRESS PF3-EXIT  PF5-SCROLL BKWD  PF6-SCROLL FWD  PF7-PREV   PF8-NEXT
```

Date: 12/26/2006 Time: 9:09:30 AM

MAP1033 M E D I C A R E - A O N L I N E S Y S T E M PAGE 03

SC UB92 CLAIM INQUIRY REV CD PAGE 01

DCN 20530801717002 04 HIC [redacted] RECEIPT DATE 110405 TOB 223

STATUS P LOCATION B9997 TRAN DT 122006 STMT COV DT 100105 TO 103105

ESRD HRS: PAT TERM ILL: MULTI-LAB: BENEFIT SAVINGS: Y

| CL | REV | HCPC | MODS | SERV DATE | RATE | TOT UNIT | COV UNIT | TOT CHRG | COV CHRG | NCOV CHRG |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 0300 | 82962 | | 1001 | 3.270 | 2 | | 6.54 | | 6.54 |
| 2 | 0300 | 82962 | | 1002 | 3.270 | 2 | | 6.54 | | 6.54 |
| 3 | 0300 | 82962 | | 1003 | 3.270 | 2 | | 6.54 | | 6.54 |
| 4 | 0300 | 82962 | | 1004 | 3.270 | 2 | | 6.54 | | 6.54 |
| 5 | 0300 | 82962 | | 1005 | 3.270 | 2 | | 6.54 | | 6.54 |
| 6 | 0300 | 82962 | | 1006 | 3.270 | 2 | | 6.54 | | 6.54 |
| 7 | 0300 | 82962 | | 1007 | 3.270 | 2 | | 6.54 | | 6.54 |
| 8 | 0300 | 82962 | | 1008 | 3.270 | 2 | | 6.54 | | 6.54 |
| 9 | 0300 | 82962 | | 1009 | 3.270 | 2 | | 6.54 | | 6.54 |
| 10 | 0300 | 82962 | | 1010 | 3.270 | 2 | | 6.54 | | 6.54 |
| 11 | 0300 | 82962 | | 1011 | 3.270 | 2 | | 6.54 | | 6.54 |
| 12 | 0300 | 82962 | | 1012 | 3.270 | 2 | | 6.54 | | 6.54 |
| 13 | 0300 | 82962 | | 1013 | 3.270 | 2 | | 6.54 | | 6.54 |
| | | | | | | ===== | ===== | ========== | ========== | ========== |
| | | | | | TOTALS | 64 | 4 | 405.04 | 208.84 | 196.20 |

37192 <== REASON CODES

PRESS PF2-103I PF3-EXIT PF5-UP PF6 DOWN PF7-PREV PF8-NEXT PF11-RIGHT

Date: 12/26/2006 Time: 9:09:31 AM

MAP1033 M E D I C A R E - A O N L I N E S Y S T E M PAGE 03

SC UB92 CLAIM INQUIRY REV CD PAGE 02

DCN 20530801717002 04 HIC [redacted] RECEIPT DATE 110405 TOB 223

STATUS P LOCATION B9997 TRAN DT 122006 STMT COV DT 100105 TO 103105

ESRD HRS: PAT TERM ILL: MULTI-LAB: BENEFIT SAVINGS: Y

| CL | REV | HCPC | MODS | SERV DATE | RATE | TOT UNIT | COV UNIT | TOT CHRG | COV CHRG | NCOV CHRG |
|---|---|---|---|---|---|---|---|---|---|---|
| 14 | 0300 | 82962 | | 1014 | 3.270 | 2 | | 6.54 | | 6.54 |
| 15 | 0300 | 82962 | | 1015 | 3.270 | 2 | | 6.54 | | 6.54 |
| 16 | 0300 | 82962 | | 1016 | 3.270 | 1 | | 3.27 | | 3.27 |
| 17 | 0300 | 82962 | | 1017 | 3.270 | 2 | | 6.54 | | 6.54 |
| 18 | 0300 | 82962 | | 1018 | 3.270 | 2 | | 6.54 | | 6.54 |
| 19 | 0300 | 82962 | | 1019 | 3.270 | 2 | | 6.54 | | 6.54 |
| 20 | 0300 | 82962 | | 1020 | 3.270 | 2 | | 6.54 | | 6.54 |
| 21 | 0300 | 82962 | | 1021 | 3.270 | 2 | | 6.54 | | 6.54 |
| 22 | 0300 | 82962 | | 1022 | 3.270 | 2 | | 6.54 | | 6.54 |
| 23 | 0300 | 82962 | | 1023 | 3.270 | 2 | | 6.54 | | 6.54 |
| 24 | 0300 | 82962 | | 1024 | 3.270 | 2 | | 6.54 | | 6.54 |
| 25 | 0300 | 82962 | | 1025 | 3.270 | 1 | | 3.27 | | 3.27 |
| 26 | 0300 | 82962 | | 1026 | 3.270 | 2 | | 6.54 | | 6.54 |
| | | | | | | ===== | ===== | ========== | ========== | ========== |
| | | | | | TOTALS | 64 | 4 | 405.04 | 208.84 | 196.20 |

37192 <== REASON CODES

PRESS PF2-103I PF3-EXIT PF5-UP PF6 DOWN PF7-PREV PF8-NEXT PF11-RIGHT

Date: 12/26/2006 Time: 9:09:32 AM

MAP1033 M E D I C A R E - A O N L I N E S Y S T E M PAGE 03

SC UB92 CLAIM INQUIRY REV CD PAGE 03

DCN 20530801717002 04 HIC [redacted] RECEIPT DATE 110405 TOB 223

STATUS P LOCATION B9997 TRAN DT 122006 STMT COV DT 100105 TO 103105

ESRD HRS: PAT TERM ILL: MULTI-LAB: BENEFIT SAVINGS: Y

| CL | REV | HCPC | MODS | SERV DATE | RATE | TOT UNIT | COV UNIT | TOT CHRG | COV CHRG | NCOV CHRG |
|---|---|---|---|---|---|---|---|---|---|---|
| 27 | 0300 | 82962 | | 1027 | 3.270 | 2 | | 6.54 | | 6.54 |
| 28 | 0300 | 82962 | | 1028 | 3.270 | 2 | | 6.54 | | 6.54 |
| 29 | 0300 | 82962 | | 1029 | 3.270 | 2 | | 6.54 | | 6.54 |
| 30 | 0300 | 82962 | | 1030 | 3.270 | 2 | | 6.54 | | 6.54 |
| 31 | 0300 | 82962 | | 1031 | 3.270 | 2 | | 6.54 | | 6.54 |
| 32 | 0420 | 97001 | GP | 1020 | 73.420 | 1 | 1 | 73.42 | 73.42 | |
| 33 | 0430 | 97003 | GO | 1019 | 78.300 | 1 | 1 | 78.30 | 78.30 | |
| 34 | 0430 | 97530 | GO | 1019 | 28.560 | 2 | 2 | 57.12 | 57.12 | |
| 35 | 0001 | | | | | | | 405.04 | 208.84 | 196.20 |
| | | | | | | ===== | ===== | ========== | ========== | ========== |
| | | | | | TOTALS | 64 | 4 | 405.04 | 208.84 | 196.20 |

37192 <== REASON CODES

PRESS PF2-103I PF3-EXIT PF5-UP PF6 DOWN PF7-PREV PF8-NEXT PF11-RIGHT

Date: 12/26/2006 Time: 9:09:33 AM

```
MAP1034          M E D I C A R E - A   O N L I N E   S Y S T E M        PAGE 04
 SC                                  UB92 CLAIM INQUIRY
 DCN 20530801717002        04   HIC [redacted]   RECEIPT DATE 110405   TOB 223
 STATUS P   LOCATION B9997      TRAN DT 122006    STMT COV DT 100105   TO 103105
                          P A Y E R   I N F O R M A T I O N
   NPI NUMBER:                                               OFFSITE ZIPCD:
   CD  PAYER                                 PROVIDER NO.  RI AB    PRIOR     EST AMT
 A  Z MEDICARE                                465109        Y Y
 B  3 AARPUHC                                 52280         Y Y
 C
   CROSSOVER IND                                    DUE FROM PAT
   PARTNER ID

               X12 UB92   I N S U R E D   I N F O R M A T I O N
  NAME(L/F)  REL REL   CERT-SSN-HIC   SEX GROUP NAME   DOB    INS GROUP NUMBE
 A BAILEY             LOUISE           F                [redacted]
                      [redacted]
 B BAILEY             LOUISE           F
               18  01 [redacted]         AARPUHC
 C

37192                                                          <== REASON CODES
             PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

Date: 12/26/2006 Time: 9:09:36 AM

```
MAP1035        M E D I C A R E - A   O N L I N E   S Y S T E M        PAGE 05
 SC                               UB92 CLAIM INQUIRY
 DCN 20530801717002       04   HIC [redacted]   RECEIPT DATE 110405   TOB 223
 STATUS P  LOCATION B9997      TRAN DT 122006   STMT COV DT 100105    TO 103105
 MED REV ANALYST
 TREATMENT AUTHORIZATION CODE   STATUS CD       EMPLOYER NAME
   1)
      STREET                    CITY                      ST      ZIP
   2)
      STREET                    CITY                      ST      ZIP
   3)
      STREET                    CITY                      ST      ZIP

 DIAG CODES   1 73300   2 25010   3 53081   4 4019   5 2720    6
   7          8         9          ADMIT DIAG 73300     E-CODE
                              PRO ID 0         PC       IDE
 PROC CODES   1                 2                   3
              4                 5                   6
 ATT PHYS E69796   NPI          LN FEHLAUER         FN C.          MI S
 OPR PHYS          NPI          LN                  FN             MI
 OTH PHYS          NPI          LN                  FN             MI
 VERIFY NC DT         THRU       HMO REL/OR CD     HMO AUTH
37192                                                     <== REASON CODES
          PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

Date: 12/26/2006 Time: 9:09:37 AM

```
MAP1036        M E D I C A R E - A   O N L I N E   S Y S T E M          PAGE 06
 SC                                  UB92 CLAIM INQUIRY
 DCN 20530801717002        04  HIC [redacted]     RECEIPT DATE 110405  TOB 223
 STATUS P  LOCATION B9997      TRAN DT 122006     STMT COV DT 100105   TO 103105
              M S P   A D D I T I O N A L   I N F O R M A T I O N
 INSURERS ADDRESS 1
 INSURERS ADDRESS 2
              CITY                    ST     ZIP          ZIP+4
 INSURERS ADDRESS 1
 INSURERS ADDRESS 2
              CITY                    ST     ZIP          ZIP+4        MSPPS
                        E N T R Y   I N D I C A T O R S
 RTP/BDL/ADR
 REJECT CD            NON PAY CODE           CANC DCN 20635400270008       04
 PROCESS NEW HIC      NEW HIC                XREF DCN
 GENER HARDCOPY   8   TAPE TO TAPE           CWF DCN
 USER ACTION-CD N     MED REC ATTACHED    Y  MR HOSPICE REDUCED
 ADJ REQ ID           TIMELINESS IND         MR HOSPICE RO REFERRED
 ADJ CANCEL CD        PAT FILED BILL-CD      MR INCLD IN COMPOSITE
 ADJ-REAS-CD          UTIL OVERRIDE          MR REVERSAL= URC     DEMAND
 SNF TRANSFER         EMER CARE CD           BYPASS TOB 72X OVERLAP
 MSP OVR CD A      B    C    D    E    F    G    H    I    J    L    PHY SAN
37192                                                        <== REASON CODES
            PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

Date: 12/26/2006 Time: 9:09:38 AM

```
MAP1037          M E D I C A R E - A   O N L I N E   S Y S T E M      PAGE 07
 SC                               UB92 CLAIM INQUIRY              REMARKS PAGE 01
 DCN 20530801717002        04  HIC [redacted]  RECEIPT DATE 110405  TOB 223
 STATUS P  LOCATION B9997      TRAN DT 122006  STMT COV DT 100105   TO 103105

                              A T T A C H M E N T S
     N  HOME HEALTH              N  PACEMAKER                N  THERAPY PT
     N  AIR/AMBULANCE            N  OP REHAB / THERAPY OT    N  THERAPY RT
     N  THERAPY ST               N  THERAPY CR               N  THERAPY MS
     N  THERAPY PS               N  THERAPY SN               N  ESRD ATTACH

 REMARKS:

37192                                                        <== REASON CODES
     PRESS PF3-EXIT  PF5-SCROLL BKWD  PF6-SCROLL FWD  PF7-PREV   PF8-NEXT
```

Date: 12/26/2006 Time: 9:09:40 AM

```
MAP1039          M E D I C A R E - A   O N L I N E   S Y S T E M          PAGE 09
 SC                                    UB92 CLAIM INQUIRY
 DCN 20530801717002        04   HIC [redacted]        RECEIPT DATE 110405  TOB 223
 STATUS P  LOCATION B9997       TRAN DT 122006     STMT COV DT 100105   TO 103105
                          U P D A T E   I N D I C A T O R S
 MED REV RSNS       50200
 MED REV ANALYST                OPER ID              SST061221  TYPE SAVINGS IND
 KRON OVERRIDE                  OUTLIER RLSE CD                  ALIEN OVERRIDE
 MCE/OCE BYPASS                 PRE ENT PSY DY CNT
 POST PAY IND                   POST PAY REASON
 PRO ERROR REAS                 ADR DT  110705
                                    A M O U N T S
         MSP SAVINGS AMT                           PATIENT RESPON.      41.76
         MSP BLOOD DEDUCT                          MSP CASH DEDUCT
         MSP TOTAL COINS

        A U T H O R I Z E D   R E A S O N   C O D E   O V E R R I D E S
 REASON          REASON          REASON          REASON          REASON
 CODE  OPER-ID   CODE  OPER-ID   CODE  OPER-ID   CODE  OPER-ID   CODE  OPER-ID

37192                                                         <== REASON CODES
             PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

```
MAP103A          M E D I C A R E - A   O N L I N E   S Y S T E M          PAGE 10
 SC                                UB92 CLAIM INQUIRY
 DCN 20530801717002        04  HIC [redacted]      RECEIPT DATE 110405  TOB 223
 STATUS P  LOCATION B9997     TRAN DT 122006      STMT COV DT 100105   TO 103105

              P R O C E S S E D   C L A I M   I N F O R M A T I O N
    ACT MEDA REIM         167.08             LTR DAYS 2ND YR
    BENE INTEREST                            OUTLIER DAYS
    BENE REIM AMT                            PAID DATE                010906
    BLOOD PNT CHG                            PATIENT PD BLD DED
    CANCEL DATE           061226             PATIENT PD EXC BLD
    CLEAN CLM IND              E             PIP IND                       N
    COIN DY 1ST YR                           PROVIDER INTEREST
    COIN DY 2ND YR                           PROVIDER REIM            167.08
    COST RPT DAYS                            PROVIDER REIM METH            P
    DRG CODE                                 PROV REIM RATE             0.89
    DRG REIM                                 VER PAT CASH DED
    ESRD FIN REIM                            VER PAT COINS             41.76
    ESRD HLD REIM                            VER PAT PD BLD DED
    EXP TO DEDUCT         208.84             PROCESS DATE             010606
    DRG PATIENT AGE          071             PROV REIM RATE = 0           NO

 37192                                                   <== REASON CODES
            PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

Date: 12/26/2006 Time: 9:09:41 AM

```
MAP103B        M E D I C A R E - A   O N L I N E   S Y S T E M        PAGE 11
 SC                          UB92 CLAIM INQUIRY
 DCN 20530801717002      04  HIC[redacted]        RECEIPT DATE 110405   TOB 223
 STATUS P  LOCATION B9997    TRAN DT 122006       STMT COV DT 100105    TO 103105

                       C W F   I N F O R M A T I O N

   TIMES SENT TO CWF  01     CASH DED OVR CD            REASON FOR ENTITLE
   PRIOR DRG CODE            CWF ACTION CD        1     DISPOSITION CD     01
   CWF RECORD ID     HUOP    UNIBILL RIC          W     PRO REVIEW CD
   PASS/DIEM                 PART A EFF      110198     PART B EFF
   CWF MSP CD                CWF TRANS DT    010506     CWF REPLY DT   010506
   CWF CLAIM OVERRIDES:

         C L A I M   L E V E L   A N S I   R E A S O N   C O D E S

  ADJ REASON: 93     GROUP: OA    APPEALS: MA01

  TOTAL CONTRACTUAL AMOUNT              ANSI

 37192                                                     <== REASON CODES
          PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

MAP103C M E D I C A R E - A O N L I N E S Y S T E M PAGE 12
SC UB92 CLAIM INQUIRY
DCN 20530801717002 04 HIC [redacted] RECEIPT DATE 110405 TOB 223
STATUS P LOCATION B9997 TRAN DT 122006 STMT COV DT 100105 TO 103105

H M O I N F O R M A T I O N

| HMO ID | HMO OPTION | HMO EFF DT | HMO CANC DT | HMO PAY-CD | DEMO IND |
|---|---|---|---|---|---|
| | | | | 0 | |

M S P I N F O R M A T I O N

| MSP PAY IND | ORIG MSP CODE | SEC PAYER RPT TYPE | SEC PAYER TYPE SAVINGS | PATIENT AGE | LCC MSP IND |
|---|---|---|---|---|---|
| 0 | | | | 071 | |

P R O I N F O R M A T I O N

| PRO ID | PRO CNTL NBR | PRO PROCESS DATE | PRO DRG CODE | 7 DAY READMIT |
|---|---|---|---|---|
| 0 | | | | |

37192 <== REASON CODES

PRESS PF3-EXIT PF7-PREV PAGE PF8-NEXT PAGE

Date: 12/26/2006 Time: 9:09:43 AM

MAP103D M E D I C A R E - A O N L I N E S Y S T E M PAGE 13
SC UB92 CLAIM INQUIRY
DCN 205308017170002 04 HIC [redacted] RECEIPT DATE 110405 TOB 223
STATUS P LOCATION B9997 TRAN DT 122006 STMT COV DT 100105 TO 103105

M I S C E L L A N E O U S

ADJ REJ CD NEW CLM IND BATCH AUD IND
CLAIM TYPE A UNIFORM BILL CD 2 ESRD PAY TYPE 0
DME/ESRD IND ESRD REDUCT
ROUTING UBC 8 BATCH AUD DT

ORIG MEDA REIMB ORIG PROV REIMB
ORIG EXP TO DED ORIG PPS PAYMENT
ORIG PAT CASH DED ORIG PASS THRU PER DIEM
ORIG PAT PD BLOOD DED ORIG PAT COIN 41.76
ORIG CST REP DAYS CLAIM DUP DCN#

C L A I M P A T H

O04 Y O05 Y O06 Y O15 Y O25 Y O30 Y O35 Y O50 Y O55 Y O70 Y O80 Y O85 Y O89 Y
B90 Y B99 S

37192 <== REASON CODES
PRESS PF3-EXIT PF7-PREV PAGE PF8-NEXT PAGE

```
MAP103E        M E D I C A R E - A   O N L I N E   S Y S T E M        PAGE 14
 SC                                UB92 CLAIM INQUIRY
 DCN 20530801717002        04  HIC [redacted]      RECEIPT DATE 110405  TOB 223
 STATUS P  LOCATION B9997      TRAN DT 122006      STMT COV DT 100105   TO 103105

                   P P S / P R I C E R   C A L C U L A T I O N
 CARRIER ID         00823      CUTOFF DYS                   DSCHRG FRCTN
 LOCALITY           09         FSP PCT                      DRG WT
 FEDERAL PORTION               LTR DYS USED                 DRG WT FRCTN
 HOSPITAL PORTION              NAT PCT                      C TOT PAY
 MSA PRICER         7160       PAYMENT                      C HSP
 IRF/IPF AMT                   RTC              00          C FSP
 AVG LOS                       PSR BLND YR      0           C OUTLIER
 B LOS                         REG DYS USED                 C OLD HARM
 B REVIEW CD        00         WAGE INDEX                   C DSH ADJ
 LUGAR RE-CLASS CD             PPS INDICATOR    N           C IME ADJ
 ASC-RTC                       SOLE COM HSP IND             C EXCEPTIONS
 DEMO CD                       RUG IND/PHASE                C 2 PAY CODE
 PPS DOLLAR THRES                                           C 2 FSP
 SUM THRPY VISITS              EPISODE TOT VIS              C 2 OUTLIER
 CBSA PRICER                   CBSA WAGE INDEX              ESRD WADJ RATE

37192                                                  <== REASON CODES
          PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

Date: 12/26/2006 Time: 9:09:45 AM

MAP103F M E D I C A R E - A O N L I N E S Y S T E M PAGE 15
SC UB92 CLAIM INQUIRY AUDIT PAGE 01
DCN 20530801717002 04 HIC [redacted] RECEIPT DATE 110405 TOB 223
STATUS P LOCATION B9997 TRAN DT 122005 STMT COV DT 100105 TO 103105

C L A I M A U D I T T R A I L

| TRAN DT | S | LOC | OPER ID | REASON | TRAN DT | S | LOC | OPER ID | REASON |
|---|---|---|---|---|---|---|---|---|---|
| 060106 | P | B9997 | SST060106 | 37192 | 060105 | S | B9099 | CWT060105 | |
| 060105 | S | B9000 | CNA62514 | | 051220 | S | MRDOC | CNA75800 | 39700 |
| 051107 | S | B6001 | BATCH ADR | 39700 | 051105 | S | B6000 | FSSA | 50200 |
| 051104 | S | B0100 | EMC-4010A | | | | | | |

37192 <== REASON CODES
PRESS PF3-EXIT PF5-UP PF6-DWN PF7-PREV PF9-UPDT

Date: 12/26/2006 Time: 9:09:46 AM

MAP103F M E D I C A R E - A O N L I N E S Y S T E M PAGE 15
SC UB92 CLAIM INQUIRY AUDIT PAGE 01
DCN 20530801717002 04 HIC [redacted] RECEIPT DATE 110405 TOB 223
ATUS P LOCATION B9997 TRAN DT 122006 STMT COV DT 100105 TO 103105

C L A I M A U D I T T R A I L

| TRAN DT | S | LOC | OPER ID | REASON | TRAN DT | S | LOC | OPER ID | REASON |
|---|---|---|---|---|---|---|---|---|---|
| 060106 | P | B9997 | SST060106 | 37192 | 060105 | S | B9099 | CWT060105 | |
| 060105 | S | B9000 | CNA62514 | | 051220 | S | MRDOC | CNA75800 | 39700 |
| 051107 | S | B6001 | BATCH ADR | 39700 | 051105 | S | B6000 | FSSA | 50200 |
| 051104 | S | B0100 | EMC-4010A | | | | | | |

37192 <== REASON CODES
PRESS PF3-EXIT PF5-UP PF6-DWN PF7-PREV PF9-UPDT

Date: 12/26/2006 Time: 9:09:46 AM

MAP1031 M E D I C A R E A O N L I N E S Y S T E M PAGE 01
SC UB92 CLAIM INQUIRY
DCN 20530801717002 04 HIC [redacted] RECEIPT DATE 110405 TOB 223
STATUS P LOCATION B9997 TRAN DT 010606 STMT COV DT 100105 TO 103105
UB-FORM: 9 BCBS PROVIDER: TRANSACT TYPE:

P A T I E N T S T A Y I N F O R M A T I O N

PATIENT CONTROL NBR 1230119 FEDERAL TAX NO. [redacted] SUB
STATEMENT DATES FROM 100105 TO 103105 COVERED DAYS ORIG DAYS
NON-COVERED DAYS COIN DAYS LRD CST RPT DYS
ORIG CST RPT DYS

P A T I E N T I N F O R M A T I O N

LAST BAILEY FIRST LOUISE MIDDLE INIT
ADDR 1 4782 S HOLLADAY BLVD 2 HOLLADAY UT
3 4
5 6
ZIP 841175444
DATE OF BIRTH [redacted] SEX F MARITAL STATUS

A D M I S S I O N D A T A

ADMIT DATE 070604 HOUR TYPE 3 SOURCE 1 NOE ACT CD NOE DT
DISC HM 0000 PATIENT STATUS 30 MEDICAL RECORD NO. 020530

37192 <== REASON CODES
PRESS PF3-EXIT PF8-NEXT PAGE

Date: 12/11/2006 Time: 1:14:29 PM

MAP1033 M E D I C A R E A 0 N - L I N E S Y S T E M PAGE 03
SC UB92 CLAIM INQUIRY REV CD PAGE 01
DCN 20530801717002 04 HIC [redacted] RECEIPT DATE 110405 TOB 223
STATUS P LOCATION B9997 TRAN DT 010606 STMT COV DT 100105 TO 103105
ESRD HRS: PAT TERM ILL: MULTI-LAB: BENEFIT SAVINGS: Y

| CL | REV | HCPC | MODS | SERV DATE | RATE | TOT UNIT | COV UNIT | TOT CHRG | COV CHRG | NCOV CHRG |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 0300 | 82962 | | 1001 | 3.270 | 2 | | 6.54 | | 6.54 |
| 2 | 0300 | 82962 | | 1002 | 3.270 | 2 | | 6.54 | | 6.54 |
| 3 | 0300 | 82962 | | 1003 | 3.270 | 2 | | 6.54 | | 6.54 |
| 4 | 0300 | 82962 | | 1004 | 3.270 | 2 | | 6.54 | | 6.54 |
| 5 | 0300 | 82962 | | 1005 | 3.270 | 2 | | 6.54 | | 6.54 |
| 6 | 0300 | 82962 | | 1006 | 3.270 | 2 | | 6.54 | | 6.54 |
| 7 | 0300 | 82962 | | 1007 | 3.270 | 2 | | 6.54 | | 6.54 |
| 8 | 0300 | 82962 | | 1008 | 3.270 | 2 | | 6.54 | | 6.54 |
| 9 | 0300 | 82962 | | 1009 | 3.270 | 2 | | 6.54 | | 6.54 |
| 10 | 0300 | 82962 | | 1010 | 3.270 | 2 | | 6.54 | | 6.54 |
| 11 | 0300 | 82962 | | 1011 | 3.270 | 2 | | 6.54 | | 6.54 |
| 12 | 0300 | 82962 | | 1012 | 3.270 | 2 | | 6.54 | | 6.54 |
| 13 | 0300 | 82962 | | 1013 | 3.270 | 2 | | 6.54 | | 6.54 |
| | | | | | TOTALS | 64 | 4 | 405.04 | 208.84 | 196.20 |

37192 <== REASON CODES
PRESS PF2-103I PF3-EXIT PF5-UP PF6 DOWN PF7-PREV PF8-NEXT PF11-RIGHT

Date: 12/11/2006 Time: 1:14:38 PM

MAP1033 M E D I C A R E A O N L I N E S Y S T E M PAGE 03
SC UB92 CLAIM INQUIRY REV CD PAGE 02
DCN 20530801717002 04 HIC [redacted] RECEIPT DATE 110405 TOB 223
STATUS P LOCATION B9997 TRAN DT 010606 STMT COV DT 100105 TO 103105
ESRD HRS: PAT TERM ILL: MULTI-LAB: BENEFIT SAVINGS: Y

| CL | REV | HCPC | MODS | SERV DATE | RATE | TOT UNIT | COV UNIT | TOT CHRG | COV CHRG | NCOV CHRG |
|---|---|---|---|---|---|---|---|---|---|---|
| 14 | 0300 | 82962 | | 1014 | 3.270 | 2 | | 6.54 | | 6.54 |
| 15 | 0300 | 82962 | | 1015 | 3.270 | 2 | | 6.54 | | 6.54 |
| 16 | 0300 | 82962 | | 1016 | 3.270 | 1 | | 3.27 | | 3.27 |
| 17 | 0300 | 82962 | | 1017 | 3.270 | 2 | | 6.54 | | 6.54 |
| 18 | 0300 | 82962 | | 1018 | 3.270 | 2 | | 6.54 | | 6.54 |
| 19 | 0300 | 82962 | | 1019 | 3.270 | 2 | | 6.54 | | 6.54 |
| 20 | 0300 | 82962 | | 1020 | 3.270 | 2 | | 6.54 | | 6.54 |
| 21 | 0300 | 82962 | | 1021 | 3.270 | 2 | | 6.54 | | 6.54 |
| 22 | 0300 | 82962 | | 1022 | 3.270 | 2 | | 6.54 | | 6.54 |
| 23 | 0300 | 82962 | | 1023 | 3.270 | 2 | | 6.54 | | 6.54 |
| 24 | 0300 | 82962 | | 1024 | 3.270 | 2 | | 6.54 | | 6.54 |
| 25 | 0300 | 82962 | | 1025 | 3.270 | 1 | | 3.27 | | 3.27 |
| 26 | 0300 | 82962 | | 1026 | 3.270 | 2 | | 6.54 | | 6.54 |
| | | | | | TOTALS | 64 | 4 | 405.04 | 208.84 | 196.20 |

37192 <== REASON CODES

PRESS PF2-103I PF3-EXIT PF5-UP PF6 DOWN PF7-PREV PF8-NEXT PF11-RIGHT

Date: 12/11/2006 Time: 1:14:43 PM

MAP1033 M E D I C A R E - A O N L I N E S Y S T E M PAGE 03

SC UB92 CLAIM INQUIRY REV CD PAGE 03

DCN 20530801717002 04 HIC [redacted] RECEIPT DATE 110405 TOB 223

STATUS P LOCATION B9997 TRAN DT 010606 STMT COV DT 100105 TO 103105

ESRD HRS: PAT TERM ILL: MULTI-LAB: BENEFIT SAVINGS: Y

| CL | REV | HCPC | MODS | SERV DATE | RATE | TOT UNIT | COV UNIT | TOT CHRG | COV CHRG | NCOV CHRG |
|---|---|---|---|---|---|---|---|---|---|---|
| 27 | 0300 | 82962 | | 1027 | 3.270 | 2 | | 6.54 | | 6.54 |
| 28 | 0300 | 82962 | | 1028 | 3.270 | 2 | | 6.54 | | 6.54 |
| 29 | 0300 | 82962 | | 1029 | 3.270 | 2 | | 6.54 | | 6.54 |
| 30 | 0300 | 82962 | | 1030 | 3.270 | 2 | | 6.54 | | 6.54 |
| 31 | 0300 | 82962 | | 1031 | 3.270 | 2 | | 6.54 | | 6.54 |
| 32 | 0420 | 97001 | GP | 1020 | 73.420 | 1 | 1 | 73.42 | 73.42 | |
| 33 | 0430 | 97003 | GO | 1019 | 78.300 | 1 | 1 | 78.30 | 78.30 | |
| 34 | 0430 | 97530 | GO | 1019 | 28.560 | 2 | 2 | 57.12 | 57.12 | |
| 35 | 0001 | | | | | | | 405.04 | 208.84 | 196.20 |
| | | | | | TOTALS | 64 | 4 | 405.04 | 208.84 | 196.20 |

37192 <== REASON CODES

PRESS PF2-103I PF3-EXIT PF5-UP PF6 DOWN PF7-PREV PF8-NEXT PF11-RIGHT

Date: 12/11/2006 Time: 1:14:49 PM

Holladay Healthcare Center
A Kindred Community

December 12, 2005

Medicare Medical Review Unit
Mutual of Omaha Insurance Company
Medicare Area - Medical Reviews
P. O. Box 1602
Omaha, NE 68101

*Re: Request for Blood Glucose Testing Documentation/Information*
*Provider Name/Number:* Holladay Healthcare Ctr 465109
*Beneficiary Name:* Louise Bail[illegible]
*HICN:* [redacted]
*Dates of Services:* 10-01-05 to 10-31-05

To Whom It May Concern:

We are in receipt of your request for information dated 11-7-05. Pursuant to your request, the following documents are enclosed for your review.

| | No. of Pages |
|---|---|
| Physician Order(s) for blood glucose testing (BGT) | [ 1 ] |
| Documentation of medical necessity for BGT | [ 1 ] |
| Documentation of BGT results | [ 3 ] |
| Documentation of any physician notification of BGT results and any resulting physician orders | [ 7 ] |
| National BGT Coverage Decision | [ 4 ] |
| Letter to Mutual of Omaha, dated April 22, 2005, with attachment | [ 11 ] |
| Total number of pages submitted for review | [ 31 ] |

Should you have any questions, please contact the undersigned at [phone number].

Cindy Passa BOM
Name/Credentials

cc: Facility Executive Director
Regional Director of Utilization
Claim Tracking File

For Mutual of Omaha Medicare's use only:

Received ____________ Analyzed ____________ Region ____________ Clerk # ____________
Reason Code(s) ____________ MR HCPCS Code(s) ____________
MR Decision ____________
MR Rev Code ____________
MR All ____________

Medically reviewed by ____________ Date ____________
Overridden by ____________ Date ____________

4782 South Holladay Boulevard Salt Lake City, Utah 84117
801.277.7002 801.272.0622 Fax

ReedSmith

Reed Smith LLP
1301 K Street, N.W.
Suite 1100 - East Tower
Washington, D.C. 20005-3373
202.414.9200
Fax 202.414.9299

Thomas C. Fox
Direct Phone: (202) 414-9222
Email: tfox@reedsmith.com

April 22, 2005

VIA FEDERAL EXPRESS

Marna Bogan, R.N.
Senior Nurse Coordinator
Medicare Medical Review
Mutual of Omaha
P.O. Box 1602
Omaha, NE 68101

Re: Blood Glucose Testing

Dear Ms. Bogan:

This law firm represents Kindred Healthcare, Inc. and its subsidiary Medicare provider entities ("Kindred"). We understand that you have been speaking with Mr. Dennis Hansen of Kindred's Health Services Division (nursing homes) about a blood glucose testing and billing issue under Medicare Part B. As Mr. Hansen recently mentioned to you, Kindred has asked us to update its legal position with respect to this issue. We have done so below and would ask that you share this letter with appropriate senior management at Mutual for review and response to us.

Kindred's October 2001 Letter

By way of background, enclosed is an October 29, 2001 letter that Kindred (f/k/a Vencor, Inc.) sent to Mark Pilley, M.D., Medical Director, Medicare, at Mutual of Omaha ("Mutual").

Please note that in our October 2001 letter, we expressed the view that Mutual's August 6, 2001 LMRP on blood glucose monitoring was not enforceable in light of then-current Medicare laws and regulations, and the fact that the final national coverage decision ("NCD") had not been released by the Centers for Medicare and Medicaid ("CMS"). In our letter we maintained that Mutual's LMRP is contrary to good medical practice and that it creates unnecessary administrative burdens on providers and physicians. We also asserted that the proposed regulations (what would become the NCD) had not been finalized and the LMRP could not be used to circumvent the rulemaking process. Last, we asserted that the LMRP was implemented in contravention of existing laws and regulations.

Approximately 3-1/2 years have passed since we sent this letter, and there has been no formal response from Mutual. In the interim, however, several legal developments have occurred which support Kindred's original position and warrant this updated position paper.

Final National Coverage Decision
Effective November 23, 2002

The Final NCD is Controlling

The controlling NCD, effective November 23, 2002, states that "[f]requent home blood glucose testing by diabetic patients should be encouraged," and that "[t]he convenience of the meter or stick color method . . . has become a standard of care for control of blood glucose, even in the inpatient setting." 66 Fed. Reg. 58846 (Nov. 23, 2001). The NCD also states that "[d]epending upon the age of the patient, type of diabetes, degree of control, complications of diabetes, and other co-morbid conditions, more frequent testing than four times annually may be reasonable and necessary. . . . [R]epeat testing may be indicated where results are normal in patients with conditions where there is a confirmed continuing risk of glucose metabolism abnormality." Id. Taking into account the health factors of the beneficiary, nowhere in the NCD are specific limitations on the frequency of testing, and nowhere is the mention of "prompt" notification. The NCD simply lists the number of maladies that may require blood glucose testing and reiterates that the reasonable and necessary tests will be reimbursed. See id. at 58846, 58848.

The NCD, not the LMRP, dictates which blood glucose monitoring services will be reimbursed. A NCD is binding on all Medicare carrier and fiscal intermediaries, the Medicare Appeals Council and administrative law judges ("ALJs"). 42 C.F.R. § 405.732(a)(4). Further, "[a]n LMRP may not conflict with a national coverage decision once the national coverage decision is effective. If a national coverage decision conflicts with a previously established LMRP, the contractor must change its LMRP to conform to the national coverage decision." 66 Fed. Reg. 58788 (Nov. 23, 2001) (emphasis added). Thus, the NCD trumps the LMRP and is controlling.

Kindred's blood glucose monitoring services meet the NCD criteria in that they are performed on diabetic beneficiaries who have a continued risk of glucose metabolism abnormality. As aforementioned, the NCD clearly states that such testing should be encouraged. Thus, limiting blood glucose services to patients who require daily insulin shots defies the language of the NCD and good medical practice.

Kindred's blood glucose monitoring services also meet the reasonable and necessary criteria. They are ordered by the treating physician, furnished by qualified personnel, in an appropriate setting, and furnished in accordance with accepted standards of medical practice for the treatment of diabetes. All of the tests are performed at a frequency determined by the treating physician to meet each beneficiary's needs.

American Health Care Association
Medical Director Meetings

The American Health Care Association, a trade association to which Kindred belongs, participated through a number of medical directors of its member facilities in a series of meetings over at least several years with representatives of the Centers for Medicare and Medicaid Services ("CMS"), during which the blood glucose testing and billing matter was discussed along with the clinical issues and benefits of the monitoring services provided by Kindred and others. To our knowledge, no revisions, modifications, or other communications were issued by CMS with respect to the NCD.

Extendicare Health Services, Inc.
Administrative Law Judge Decisions

Recent Extendicare Decisions Agree That Blood Glucose Monitoring Is Medicare Reimbursable

Two ALJs recently accepted arguments similar to the ones asserted by Kindred in recent coverage decisions. See Extendicare Health Services v. AdminaStar Federal, Docket Number 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 (Aug. 12, 2004) ("Extendicare I."); Extendicare Health Services v. AdminaStar Federal, Docket Number 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 (Aug. 24, 2004) ("Extendicare II"). Both cases dealt with an LMRP released by AdminaStar that was similar to Mutual's LMRP in that it stated that Medicare would only cover medically reasonable and necessary blood glucose monitoring services when a physician is "promptly notified of the test results so that he/she may provide active treatment.... Multiple blood glucose monitoring services, without prompt physician notification, are not covered...." See Extendicare II, at 3. In arguing for Part B coverage of blood glucose tests, Extendicare, in both cases, appealed from determinations that reimbursement was not warranted because the medical records did not reflect that the physician was notified after each test or that the physician used each test result to order a new test. In neither case did AdminaStar seek appeal of the ALJs' determinations, nor did the Secretary seek to intervene.

In finding for Extendicare, one ALJ stated, "If a service cannot be denied because it is routine,[1] it stands to reason that the services may be covered despite the fact that it is routine. In fact, the purpose of routine, frequent blood glucose monitoring is to assure that tight control is maintained, and this is precisely the kind of testing which is encouraged and allowed under the [NCD]." Extendicare II, at 7. The other ALJ determined that blood glucose monitoring is not a "routine" procedure because it requires skilled care, and that "prompt" notification was not defined in the LMRP. Further, the ALJ concluded that "With such lack of specificity, it makes every sense for the doctor to be able to monitor blood sugar after a series of blood tests over a period of a week or so, in order to assess any fluctuations....

[1] The ALJ discussed the reference to "routine" in the context of the Hearing Officer's denial of reimbursement for blood glucose testing since such testing was "routine." The ALJ quoted CMS Program Memorandum AB-00-108, which states "Denial of payment for a Part B covered laboratory service cannot be made on the basis that the service is routine care. Under Medicare, routine care determinations are applicable only for Part A nursing home services." Extendicare II, at 7.

Expecting a physician to check every day on the results and make changes based on each report in isolation is neither cost-effective nor warranted for good health." Extendicare I, at 2.

We are not aware of any appeal which CMS filed with respect to these decisions with the Medicare Appeals Council of the Department Appeals Board, Department of Health and Human Services, which it had the right to do, or any other communication issued by CMS expressing disagreement with the factual findings and legal conclusions of the Administrative Law Judge.

Kindred's position is similar to the positions of Extendicare endorsed by the ALJs. The blood glucose monitoring services cannot be dismissed as "routine" and, further, they meet the criteria of reasonable and necessary. As the ALJs stated, nothing in the NCD or regulations requires notifying the physician of each and every test result, nor is such notification necessary for effective management of the illness. Kindred, like Extendicare, is simply seeking reimbursement under the Medicare Part B rules for blood glucose monitoring services that are considered necessary and are even encouraged by CMS.

Conclusion

It is the position of Kindred that its blood glucose testing and billing fully meet, and will continue to meet, the coverage criteria set forth in the law. Similarly, Mutual's payment of these claims was in accordance with those criteria.

Accordingly, Kindred maintains that any denials of these claims, retrospectively or prospectively, would be contrary to the law; further, it intends to follow the current Medicare laws and regulations and continue to bill for these services.

Very truly yours,

Thomas C Fox

Thomas C. Fox

Enclosures

cc: Dennis J. Hansen, Kindred Healthcare
Senior VP of Operational Reimbursement
Mark Pilley, M.D., Mutual of Omaha
Medical Director Medicare
David Pearce, Esq., Kindred Healthcare

DBA HOLLADAY HEALTH CARE CENT
4782 SO. HOLLADAY BLVD.
SALT LAKE CITY UT 84117

5 FED. TAX NO. | 6 STATEMENT COVERS PERIOD FROM 100105 THROUGH 103105 | 7 COV D. 0 | 8 N-C D. 0 | 9 C-I D. 0 | 10 L-R D. | 11

12 PATIENT NAME: BAILEY, LOUISE

13 PATIENT ADDRESS: [redacted]

| 14 BIRTHDATE | 15 SEX | 16 MS | 17 ADMISSION DATE | 18 HR | 19 TYPE | 20 SRC | 21 D HR | 22 STAT | 23 MEDICAL RECORD NO. |
|---|---|---|---|---|---|---|---|---|---|
| [redacted] | F | U | 07062004 | 12 | 3 | 1 | | 30 | 020530 |

| 32 OCCURRENCE CODE | DATE | 33 OCCURRENCE CODE | DATE | 34 OCCURRENCE CODE | DATE |
|---|---|---|---|---|---|
| 11 | 07082004 | 44 | 07082004 | 35 | 07082004 |

AARP/UHC
P.O. BOX 740819
Atlanta, GA 30374

| | 39 VALUE CODES CODE | AMOUNT | 40 VALUE CODES CODE | AMOUNT |
|---|---|---|---|---|
| a | 51 | 3900 | 50 | 6100 |

| 42 REV. CD. | 43 DESCRIPTION | 44 HCPCS / RATES | 45 SERV. DATE | 46 SERV. UNITS | 47 TOTAL CHARGES | 48 NON-COVERED CHARGES | 49 |
|---|---|---|---|---|---|---|---|
| 300 | LAB | 82962 | 10012005 | 2 | 654 | | |
| 300 | LAB | 82962 | 10022005 | 2 | 654 | | |
| 300 | LAB | 82962 | 10032005 | 2 | 654 | | |
| 300 | LAB | 82962 | 10042005 | 2 | 654 | | |
| 300 | LAB | 82962 | 10052005 | 2 | 654 | | |
| 300 | LAB | 82962 | 10062005 | 2 | 654 | | |
| 300 | LAB | 82962 | 10072005 | 2 | 654 | | |
| 300 | LAB | 82962 | 10082005 | 2 | 654 | | |
| 300 | LAB | 82962 | 10092005 | 2 | 654 | | |
| 300 | LAB | 82962 | 10102005 | 2 | 654 | | |
| 300 | LAB | 82962 | 10112005 | 2 | 654 | | |
| 300 | LAB | 82962 | 10122005 | 2 | 654 | | |
| 300 | LAB | 82962 | 10132005 | 2 | 654 | | |
| 300 | LAB | 82962 | 10142005 | 2 | 654 | | |
| 300 | LAB | 82962 | 10152005 | 2 | 654 | | |
| 300 | LAB | 82962 | 10162005 | [illegible] | [illegible] | | |
| 300 | LAB | 82962 | 10172005 | 2 | 654 | | |
| 300 | LAB | 82962 | 10182005 | 2 | 654 | | |
| 300 | LAB | 82962 | 10192005 | 2 | 654 | | |
| 430 | OCCUPATION THER | 97003/GO | 10192005 | 1 | [illegible] | | |
| 430 | OCCUPATION THER | 97530/GO | 10192005 | 2 | 5712 | | |
| 300 | LAB | 82962 | 10202005 | 2 | 654 | | |
| 420 | PHYSICAL THERP | 97001/GP | 10202005 | 1 | 7342 | | |

| 50 PAYER | 51 PROVIDER NO. | 52 REL INFO | 53 ASG BEN | 54 PRIOR PAYMENTS | 55 EST. AMOUNT DUE | 56 |
|---|---|---|---|---|---|---|
| MEDICARE | 465109 | Y | Y | | | |
| AARP/UHC | [illegible] | | | | | |

57 DUE FROM PATIENT ▶

| 58 INSURED'S NAME | 59 P.REL | 60 CERT. - SSN - HIC. - ID NO. | 61 GROUP NAME | 62 INSURANCE GROUP NO. |
|---|---|---|---|---|
| BAILEY, LOUISE | 01 | [redacted] | | |
| BAILEY, LOUISE | 01 | [redacted] | | |

63 TREATMENT AUTHORIZATION CODES | 64 ESC | 65 EMPLOYER NAME | 66 EMPLOYER LOCATION

| 67 PRIN. DIAG. CD. | 68 CODE | 69 CODE | 70 CODE | 71 CODE | 72 CODE | 73 CODE | 74 CODE | 75 CODE | 76 ADM. DIAG. CD. | 77 E-CODE | 78 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 73300 | 25010 | 53081 | 4019 | 2720 | | | | | 73300 | | |

79 P.C. | 80 PRINCIPAL PROCEDURE CODE DATE | 81 OTHER PROCEDURE CODE DATE A | OTHER PROCEDURE CODE DATE B | OTHER PROCEDURE CODE DATE C | OTHER PROCEDURE CODE DATE D | OTHER PROCEDURE CODE DATE E

82 ATTENDING PHYS. ID: E69796 FEHLAUER C.

83 OTHER PHYS. ID

OTHER PHYS. ID

84 REMARKS: (801)277-7002

85 PROVIDER REPRESENTATIVE | 86 DATE

I CERTIFY THE CERTIFICATIONS ON THE REVERSE APPLY TO THIS BILL AND ARE MADE A PART HEREOF.

DBA HOLLADAY HEALTH CARE CENT
4782 SO. HOLLADAY BLVD
SALT LAKE CITY UT 84117

020530 — 223

Statement covers period: From 100105 Through 103105 — 0 0 0 0

12 PATIENT NAME: BAILEY, LOUISE

13 PATIENT ADDRESS: [redacted]

14 BIRTHDATE: [redacted] | 16 MS: D | 17 Admission Date: 07062004 | 18 HR: 12 | 19 Type: 3 | 20 SRC: 1 | 22 STAT: 30 | 23 MEDICAL RECORD NO.: 020530

Occurrence codes/dates: 11 07082004 | 44 07082004 | 35 07082004

Value codes: a 51 3900 | 50 6100

| 42 REV. CD. | 43 DESCRIPTION | 44 HCPCS / RATES | 45 SERV. DATE | 46 SERV. UNITS | 47 TOTAL CHARGES | 48 NON-COVERED CHARGES |
|---|---|---|---|---|---|---|
| 300 | LAB | 82962 | 10212005 | 2 | 654 | |
| 300 | LAB | 82962 | 10222005 | 2 | 654 | |
| 300 | LAB | 82962 | 10232005 | 2 | 654 | |
| 300 | LAB | 82962 | 10242005 | 2 | 654 | |
| 300 | LAB | 82962 | 10252005 | 1 | 327 | |
| 300 | LAB | 82962 | 10262005 | 2 | 654 | |
| 300 | LAB | 82962 | 10272005 | 2 | 654 | |
| 300 | LAB | 82962 | 10282005 | 2 | 654 | |
| 300 | LAB | 82962 | 10292005 | 2 | 654 | |
| 300 | LAB | 82962 | 10302005 | 2 | 654 | |
| 300 | LAB | 82962 | 10312005 | 2 | 654 | |
| 001 | TOTAL CHARGE | | | | 6867 | |

50 PAYER: MEDICARE / AARP | 51 PROVIDER NO.: 465109 | 52 REL INFO: Y | 53 ASG BEN: Y

DUE FROM PATIENT ▶

58 INSURED'S NAME: BAILEY, LOUISE | 59 P.REL: 01 | 60 CERT. - SSN - HIC. - ID NO.: [redacted]

67 PRIN. DIAG. CD.: 73300 | Other diag codes: 25010, 53081, 4019, 2720 | 76 ADM. DIAG. CD.: 73300

82 ATTENDING PHYS. ID: E69796 FEHLAUER C.

84 REMARKS: (801)277-7002

UB-92 HCFA-1450 — OCR/ORIGINAL — I CERTIFY THE CERTIFICATIONS ON THE REVERSE APPLY TO THIS BILL AND ARE MADE A PART HEREOF.

PATIENT ... IC RECORD

CH...ING FROM: 10/1/05 THRU: 10/31/05

PATIENT NAME: Bailey

DOCTOR:

DATE OF S/S INSULIN ORDER: 7/6/04 ←

FREQUENCY OF USE: BID

MONTH OF THIS RECORD: Oct

SLIDING SCALE ORDER:

_____ = _____ U _____ INSULIN

_____ = _____ U _____ INSULIN

_____ = _____ U _____ INSULIN

_____ = _____ U _____ INSULIN

| DATE | BREAKFAST (0630) TEST | INS. | SITE | INIT. | LUNCH TEST | INS. | SITE | INIT. | DINNER (1730) TEST | INS. | SITE | INIT. | BEDTIME TEST | INS. | SITE | INIT. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 109 | — | — | [illegible] | | | | | 177 | — | — | [illegible] | | | | |
| 2 | 113 | — | — | [illegible] | | | | | 164 | — | — | [illegible] | | | | |
| 3 | 109 | | | [illegible] | | | | | 174 | | | [illegible] | | | | |
| 4 | 133 | | | [illegible] | | | | | 124 | | | [illegible] | | | | |
| 5 | 126 | — | — | [illegible] | | | | | 247 | | | [illegible] | | | | |
| 6 | 188 | — | — | [illegible] | | | | | 273 | — | — | [illegible] | | | | |
| 7 | 215 | — | — | [illegible] | | | | | 146 | — | — | [illegible] | | | | |
| 8 | 126 | — | — | [illegible] | | | | | 136 | — | — | [illegible] | | | | |
| 9 | 117 | — | — | [illegible] | | | | | 128 | — | — | [illegible] | | | | |
| 10 | 127 | — | — | [illegible] | | | | | 244 | — | — | [illegible] | | | | |
| 11 | 99 | — | — | [illegible] | | | | | 211 | — | — | [illegible] | | | | |
| 12 | 118 | — | — | [illegible] | | | | | 188 | — | — | [illegible] | | | | |
| 13 | 138 | — | — | [illegible] | | | | | 203 | — | — | [illegible] | | | | |
| 14 | 99 | — | — | [illegible] | | | | | 179 | — | — | [illegible] | Had b-day cake for lunch | | | |
| 15 | 125 | — | — | [illegible] | | | | | 114 | — | — | [illegible] | | | | |
| 16 | 110 | — | — | [illegible] | | | | | | | | | | | | |
| 17 | 114 | — | — | [illegible] | | | | | 117 | — | — | [illegible] | | | | |
| 18 | 136 | — | — | [illegible] | c/o | Nausea/Vomiting | | | 159 | — | — | [illegible] | | | | |
| 19 | 164 | — | — | [illegible] | | | | | 163 | — | — | [illegible] | | | | |
| 20 | 145 | — | — | [illegible] | | | | | 240 | — | — | [illegible] | | | | |
| 21 | 114 | — | — | [illegible] | | | | | 147 | — | — | [illegible] | | | | |
| 22 | 119 | — | — | [illegible] | | | | | 144 | — | — | [illegible] | | | | |
| 23 | 150 | Ø | N/P | [illegible] | | | | | 226 | Ø | N/P | [illegible] | | | | |
| 24 | 99 | — | — | [illegible] | | | | | 169 | — | — | [illegible] | | | | |
| 25 | 103 | — | — | [illegible] | | | | | | | | | | | | |
| 26 | 119 | — | — | [illegible] | | | | | 144 | — | — | [illegible] | | | | |
| 27 | 119 | — | — | [illegible] | | | | | 98 | — | — | [illegible] | | | | |
| 28 | 113 | — | — | [illegible] | | | | | 151 | — | — | [illegible] | | | | |
| 29 | 93 | — | — | [illegible] | | | | | 143 | — | — | [illegible] | | | | |
| 30 | 108 | — | — | [illegible] | | | | | 149 | — | — | [illegible] | | | | |
| 31 | 91 | — | — | [illegible] | | | | | 213 | — | — | [illegible] | | | | |

# Medication Record

| Order | Time / Hour |
|---|---|
| Order Date: 08/22/2005<br>LANTUS INSULIN 22 UNITS SQ Q AM / DM<br>D/C'd 10/20/05 | TIME 0800<br>SITE |
| Order Date: 07/06/2004<br>GLUCOSCAN BID / DM<br>***SEE DIABETIC RECORD*** | SEE<br>OTHER<br>SHEET<br>TO CHART |
| Order Date: 04/27/2005<br>PLAVIX 75 MG PO Q DAY / VENOUS THROMBOSIS | 0800 |
| Order Date: 04/14/2005<br>COZAAR 25 MG PO Q DAY / HTN | 0800 |
| Order Date: 02/08/2005<br>PREVACID 30 MG PO Q PM / GERD | 1700 |
| Order Date: 06/16/2005<br>LIPITOR 20 MG PO Q PM / HYPERCHOLESTROLEMIA | 1700 |
| Order Date: 08/19/2004<br>COLACE 200 MG PO BID / CONSTIPATION | 0800<br>1700 |
| Order Date: 08/19/2004<br>SENNA 1 TAB PO ON MON, WED AND FRI ROUTINE / CONSTIPATION | TIME<br>INITIALS<br>0700 |

Handwritten on the Lantus Insulin row: ORDER Δ 10/20/05

INSTRUCTIONS (SEE REVERSE SIDE) | HOUR

CHARTING FROM: 10/1/2005 THRU: 10/31/2005 COMPLETE ENTRIES CHECKED BY: TITLE:

DIAGNOSIS: Diabetes mellitus; Hypertension; Osteoporosis; VENOUS THROMBOSIS NEC; ADJUSTMNT DIS W DEPRESSN; DMI WO CMP NT ST UNCNTRL; ESOPHAGEAL REFLUX; BOTH EYES BLIND-WHO DEF

ALLERGIES: DEMEROL

NURSE'S ALERT: BLIND; Do not resuscitate; Pain less than daily; Some/all natural teeth lost, does not have or does not use dentures (or partial plates)

PHYSICIAN: FEHLAUER, DR. STEVE TELEPHONE NO. (801)408-5060

ALT. PHYS. FEHLAUER, DR. STEVE ALT. TELEPHONE (801)408-5060

RESIDENT NAME: BAILEY, LOUISE MED. REC NO. 20530 NURSE STA. 1 ROOM/BED 0134C FACILITY: Holladay Healthcare Center PAGE 1

# Medication Record

| Order | | Sa 01 | Su 02 | Mo 03 | Tu 04 | We 05 | Th 06 | Fr 07 | Sa 08 | Su 09 | Mo 10 | Tu 11 | We 12 | Th 13 | Fr 14 | Sa 15 | Su 16 | Mo 17 | Tu 18 | We 19 | Th 20 | Fr 21 | Sa 22 | Su 23 | Mo 24 | Tu 25 | We 26 | Th 27 | Fr 28 | Sa 29 | Su 30 | Mo 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Order Date: 02/15/2005 | SEE | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| REMERON 15 MG PO Q HS / DEPRESSION R/T | OTHER | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| MEDICAL ILLNESS. TEARFUL | SHEET | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| ***SEE A/D BLUE MED SHEET*** | TO CHART | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Order Date: 11/19/2004 | P | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| TYLENOL 650 MG PO Q 4 HRS PRN / PAIN | R | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Order Date: 05/23/2005 | P | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| MAALOX 30 CC PO QID PRN / HEART BURN | R | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Order Date: 03/24/2005 | P | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| PREP H SUPPOSITORY 1 PR BID PRN / | R | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Lantus Insulin 25U SQ QAM | 0800 | | | | | | | | | | | | | | | | | | | | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| IDDM 10/20/05 | Site | | | | | | | | | | | | | | | | | | | | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | Site | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

Influenza vaccine 0.5 ml IM annually as prophylaxis for influenza.
Education/Consultation provided.
Administered:
DATE 10/28 SITE LD INITIALS [illegible]
Not Administered:
Check if Contraindicated ___ and document in resident progress notes the reason (s) contraindicated.
Check if Refused ___ and document in resident progress notes to whom education on the vaccine was provided and the reason (s) for the refusal.
DATE ______ INITIALS ______

INSTRUCTIONS (SEE REVERSE SIDE)

CHARTING FROM: 10/1/2005 THRU: 10/31/2005

COMPLETE ENTRIES CHECKED BY: TITLE:

DIAGNOSIS: Diabetes mellitus; Hypertension; Osteoporosis; VENOUS THROMBOSIS NEC; ADJUSTMNT DIS W DEPRESSN; DMI WO CMP NT ST UNCNTRL; ESOPHAGEAL REFLUX; BOTH EYES BLIND-WHO DEF

ALLERGIES: DEMEROL

NURSE'S ALERT: BLIND; Do not resuscitate; Pain less than daily; Some/all natural teeth lost, does not have or does not use dentures (or partial plates)

| PHYSICIAN | TELEPHONE NO. | ALT. PHYS. | ALT. TELEPHONE |
|---|---|---|---|
| FEHLAUER, DR. STEVE | (801)408-5060 | FEHLAUER, DR. STEVE | (801)408-5060 |

| RESIDENT NAME | MED. REC NO. | NURSE STA. | ROOM/BED | FACILITY | PAGE |
|---|---|---|---|---|---|
| BAILEY, LOUISE | 20530 | 1 | 0134C | Holladay Healthcare Center | 2 |

# PHYSICIAN'S PROGRESS NOTES

| DATE | TIME | NOTES MUST BE SIGNED BY PHYSICIAN |
|---|---|---|
| 7-8-04 | | Admission H & P |
| | | CC: Constipation often & requested softner |
| | | HPI: This is an admission H&P for a 72 yr old ♀ who was adm. from home & c̄ self care deficits 2° D.M./effects. Husb. has assisted her, along c̄ H.H. CNA for last 4 yrs but now c̄ caregiver fatigue & ∅ assist. from family. |
| | | No med. records avail. p̄ several attempts for HHC staff & husb. to acquire. Medical & surg hx acquired from this very pleasant & cognitively intact lady. |
| | | Medicaid pending. |
| | | P.M.HX.: |
| | | · AODM/IDDM (4-5 yrs. & first dx. p̄ onset of blindness) |
| | | · Neuropathy of bil. ft. 2° DM. |
| | | · gastroparesis 2° D.M. (dx. hosp. stay 12/03) |
| | | · Hx T.I.A. c̄ temp. loss of speech |
| | | · HTN, prim. · depression, situational |
| | | · osteoporosis prev. - ∅ bone density |
| | | · hiatal hernia c̄ GERD |
| | | · GLFs x2 (2 & 4 yrs. ago c̄ fx) |
| | | · Blindness 2° DM 4-5 yrs. |
| | | PSHx: · (L) hip pinning (4 yrs. ago) 2° GLF |
| | | · (R) shoulder fx. & rep 2° GLF 2 yrs. ago |
| | | · TAH remote. · hyster. 20 yrs. ago · mult. eye surgs |

| NAME–Last First | Middle | Attending Physician | Record No. | Room/Bed |
|---|---|---|---|---|
| Bailey, Louise | | Fehlauer | | |

[signature] APRN

CFS 9-1HH © 1992 Briggs Corporation, Des Moines, IA 50306 (800) 247-2343 PRINTED IN U.S.A.

PHYSICIAN'S PROGRESS NOTES

☐ Continued on Reverse

# PHYSICIAN'S PROGRESS NOTES

| DATE | TIME | NOTES MUST BE SIGNED BY PHYSICIAN |
|---|---|---|
| 7-8-04 | | Current Meds: / Allergies: |
| | | • Lexapro 10 mg qd • Lantus insulin 10 U |
| | | - prevacid 30 mg bid q AM |
| | | • lasix 20 qd • plavix 75 qd |
| | | - reglan 10 mg ~~qd~~. • lipitor 40 q HS |
| | | q AC • cozaar 50 qd |
| | | • calcium 500 tid • Darvocet N 100 qid |
| | | Fam Hx: Father = ↓ age 75 c MI; AODM |
| | | Mother = ↓ age 85 - ? ⊘ kidney, lung or liver dis. |
| | | Soci Hx: Married 3 children = 2 dau. |
| | | out-of-state & son in SLC. Retired |
| | | Occup = sales/office worker/ business owner |
| | | ⊘ tobacco or ETOH. |
| | | ROS: ⊕ constipation; ⊕ numbness of (L) ft; |
| | | otherwise N.S. |
| | | ADLs: Cont. B & B; requires assist. c feeding; |
| | | mod assist. c bathing, drsg, & hygiene |
| | | Propels self in w/c & ambs. |
| | | S: See HPI. Denies CP, N/V, joint pain |
| | | O: VS = 134/88 71-18 Wt. = 5'5" 116 lbs. |
| | | Gen. = Sitting in w/c. Alert & oriented X3 |
| | | & very pleasant & coop. HEENT = Normocephalic, |
| | | P ≠ (L) ⊘ react to light - does ⊘ see light of |
| | | optmascope. Bil. TM visible & intact. Skin tag |
| | | (L) ear auricle. Own teeth T + L but poor |
| | | hygiene. Nares dry. Neck = ⊘ JVD or adenopathy. |
| | | [signature] APRN |

| NAME-Last | First | Middle | Attending Physician | Record No. | Room/Bed |
|---|---|---|---|---|---|
| Bailey | Lorease | | Tellauer | | |

# PHYSICIAN'S PROGRESS NOTES

| DATE | TIME | NOTES MUST BE SIGNED BY PHYSICIAN |
|---|---|---|
| 7-8-04 | | Ht = (RRR) ø murmur; $S_1S_2$. Lungs = CTA, ø wheezing. Abdom = sl. rounded, soft + N.T. c̄ hypoactive BTs x4 quads. Skin = intact. Extrem = ↓ ROM (R) shoulder, to abduction; otherwise WNLs. Fair strength x4. Toenails longer than recommended ø cyanosis or sores. |
| | | A/P: (1.) Constipation 2° DM, ↓ mobility. Add senna S qd & T as needed. |
| | | (2.) AODM/IDDM c̄ neuropathy, retinopathy/blindness, gastroparesis. On lantus & accept. glucoscans last 2 d. Cont. to monitor. ø chg in meds. Cont. ↑ P. Care. |
| | | (3.) HTN = WNLs ø Δ in meds. |
| | | (4.) Depressional, situational, 2° mult. health problems. Cont. lexapro. |
| | | (5.) Health maint. = declines offer of mammo, but agrees to dental. SW to assist c̄ medicaid dentist loc. |
| | | (6) Osteoporosis prev. = cont. cal. add vit. |
| | | (7) A.D = ø C.P.R. |
| | | (8) Labs = consider hgb. $A_{1c}$, CMP, $B_{12}$, TSH, $T_4$ if ø done @ prim. MD clinic last Fri. Msg to call for labs. |
| | | Pope APRN/GNP |

NAME–Last: Bailey First: Louise Middle: Attending Physician: Fehlauer Record No.: Room/Bed:

CFS9-1HH © 1992 Briggs, Des Moines, IA 50306 PRINTED IN U.S.A. (R500)
DON'T BREAK THE LAW MAKE THE CALL Save 13%* 1-800-247-2343 www.BriggsCorp.com
*savings on buying vs. copying
PHYSICIAN'S PROGRESS NOTES
☒ Continued on Reverse
34

# PHYSICIAN'S ORDERS

| D/C DATE | ORDER DATE | Cd | ORDER TEXT | FREQUENCY |
|---|---|---|---|---|
| | | | GENERIC EQUIVALENTS MAY BE USED UNLESS OTHER- WISE NOTED. | |
| | 7/6/2004<br>7-6-04 | DT | 3 : THERAPEUTIC DIET: 1800 CAL ADA<br>Resident is DNR. | |
| | 7/6/2004 | MF | 8 : MAY HAVE ANNUAL FLU VACCINE<br>MAY HAVE ANNUAL PPD TEST | |
| | 7/6/2004 | TI | 13 : LANTUS INSULIN 10 UNITS SQ Q AM / DM | QAM S |
| | 7/6/2004 | GS | 21 : GLUCOSCAN BID / DM<br>***SEE DIABETIC RECORD*** | SO |
| | 7/8/2004 | MR | 22 : SENNA S 1 TAB PO Q DAY / CONSTIPATION | QD |
| | 7/6/2004 | MR | 18 : LIPITOR 40 MG PO Q HS / HYPERCHOLESTROLEMIA | QHS |
| | 7/6/2004 | MR | 20 : CALCIUM 500 MG PO TID / OSTEOPOROSIS | TID |
| | 7/6/2004 | ME | 11 : LEXAPRO 10 MG PO Q DAY / SIT. DEPRESSION R/T HEALTH PROBLEMS.<br>***SEE A/D BLUE MED SHEET*** | SO |
| | 7/6/2004 | MR | 17 : REGLAN 10 MG PO Q AC&HS / GERD | AC & HS |
| | 7/6/2004 | MR | 14 : PREVACID 30 MG PO BID / GERD | BID |
| | 7/6/2004 | MR | 15 : LASIX 20 MG PO Q DAY / HTN | QD |
| | 7/6/2004 | MR | 16 : PLAVIX 75 MG PO Q DAY / HYPERCHOLESTROLEMIA | QD |
| | 7/6/2004 | MR | 19 : COZAAR 50 MG PO Q DAY / HTN | QD |
| | 7/8/2004 | TR | 24 : SHOES OR SLIPPERS ON FEET WHEN LEAVING ROOM TO PROTECT THEM | IO1 |

| Charting From | Thru | Facility Name | LAST PHYS. EXAM |
|---|---|---|---|
| 8/1/2004 | 8/31/2004 | Holladay Healthcare Center | |

| PHYSICIAN NAME | ALT. PHYS. NAME | ALT. PHYS. PHONE |
|---|---|---|
| FEHLAUER, DR. STEVE (801)321-5060 | FEHLAUER, DR. STEVE | (801)321-5060 |

| Diagnosis | Nursing Alert |
|---|---|
| Diabetes mellitus; Hypertension; Osteoporosis; OSTEOPOROSIS NOS; BRIEF DEPRESSIVE REACT; DMI WO CMP NT ST UNCNTRL; ESOPHAGEAL ...FLUX; BOTH ...S BLIND-WHO DEF | BLIND; Do not resuscitate; Pain less than daily; Some/all natural teeth lost, does not have or does not use dentures (or partial plates) |
| | ALLERGIES: DEMEROL |

| PATIENT NAME | PATIENT NO. | STA | ROOM/BED | PAGE |
|---|---|---|---|---|
| BAILEY, LOUISE | 20530 | 1 | 0102A | 1 |

# PHYSICIAN'S ORDERS

| D/C DATE | ORDER DATE | Cd | ORDER TEXT | FREQUENCY |
|---|---|---|---|---|
| | 7/6/2004 | TR | 9 : OFFER HS SNACK DOCUMENT % TAKEN OR R=REFUSED | NS1 |
| | 7/6/2004 | TV | 5 : VITAL SIGNS Q DAY (SEE VS & WT REPORT/YELLOW) | SO |
| | 7/6/2004 | WA | 4 : WEIGHTS WEEKLY (SEE WT HX REPORT/DIETARY) LAST WT: | SO |
| | 7/6/2004 | AG | 6 : MAY GO OUT ON PASS WITH MEDS AND RESPONSIBLE PERSON | |
| | 7/6/2004 | AS | 2 : MAY PARTICIPATE IN SOCIAL ACTIVITIES AS TOLERATED | |
| | 7/6/2004 | OA | 7 : PODIATRIST CARE AS ORDERED | PRN |
| | 7/7/2004 | RP | 1 : REHAB POTENTIAL: POOR | |

I HAVE REVIEWED & APPROVED THE PATIENT CARE PLAN

I HAVE REVIEWED & APPROVED THE ACTIVITY PLAN. IT ISN'T IN CONFLICT WITH MED. PLAN OF CARE

CONTINUE THE ABOVE ORDERS FOR 30 DAYS/SNF OR 60 DAYS/ICF UNLESS OTHERWISE SPECIFIED.

I CERTIFY THAT THIS PATIENT REQUIRES SKILLED / INTERMEDIATE NURSING HOME CARE.

REHAB/RESTORATIVE NURSING PER NURSING JUDGEMENT

NURSES REVIEW BY: [signature] DATE: 8-1-04

M.D. SIGNATURE: [signature] DATE:

| Charting From | Thru | Facility Name | LAST PHYS. EXAM |
|---|---|---|---|
| 8/1/2004 | 8/31/2004 | Holladay Healthcare Center | |

| PHYSICIAN NAME | | ALT. PHYS. NAME | ALT. PHYS. PHONE |
|---|---|---|---|
| FEHLAUER, DR. STEVE | (801)321-5060 | FEHLAUER, DR. STEVE | (801)321-5060 |

| Diagnosis | Nursing Alert |
|---|---|
| Diabetes mellitus; Hypertension; Osteoporosis; OSTEOPOROSIS NOS; BRIEF DEPRESSIVE REACT; DMI WO CMP NT ST UNCNTRL; ESOPHAGEAL REFLUX; BOTH EYES BLIND-WHO DEF | BLIND; Do not resuscitate; Pain less than daily; Some/all natural teeth lost, does not have or does not use dentures (or partial plates) |
| | **ALLERGIES** |
| | DEMEROL |

| PATIENT NAME | PATIENT NO. | STA | ROOM/BED | PAGE |
|---|---|---|---|---|
| BAILEY, LOUISE | 20530 | 1 | 0102A | 2 |

# ADMISSION ORDERS

**SECTION A: MEDICATION/TREATMENT**

Lexapro 10mg po QD ✓
Diagnosis: depression

Darvocet N 100 po QID prn pain ✓
Diagnosis: osteoporosis

Lantus insulin 10units SQ Q AM ✓
Diagnosis: DM

Prevacid 30mg po BID. ✓
Diagnosis: GERD

Lasix 20mg po QD. ✓
Diagnosis: HTN

Plavix 75mg po QD. ✓
Diagnosis: hypercholesterolemia

Reglan 10mg po QAC et @ HS. ✓
Diagnosis: GERD

Lipitor 40mg po @ HS. ✓
Diagnosis: hypercholesterolemia

Cozaar 50mg po QD. ✓
Diagnosis: HTN

Calcium 500mg po TID ✓
Diagnosis: osteoporosis

~~Glucoscan BID~~
Diagnosis: DM

Nurse's signature [signature], LPN / W. [signature]
Date 7/6/04

I have reviewed this resident's plan of care and am in agreement with it.
Physician's signature [signature]
Date 7/13/04

**SECTION D: NEW ADMISSION ORDERS (Complete this section once part 4 is detached)**

Admit to: Holladay Healthcare
Rehab potential: ☐ Good ☐ Fair ☒ Poor ☐ None
Comment:
CPR Status: ☐ Yes ☒ No CPR Resident representative aware? ☒ Yes ☐ No
Advance directives issued? ☒ Yes ☐ No Copy attached? ☐ Yes ☐ No
Diet Order: 1800 cal ADA
Texture: ☒ Regular ☐ Ground meat ☐ Pureed ☐ As tolerated ☐ Other
☐ May have regular diet - Special occasions
☐ Supplements:

Therapy Evaluation Orders:
Weight bearing ability: ☐ Full ☐ Partial ☐ None Mobility Status:
PT yes x per week OT ___ x per week ST ___ x per week

| ADDITIONAL ORDERS | YES | NO |
|---|---|---|
| Restraints – If yes, type/frequency/reason | | ✓ |
| Side rails – If yes, type/frequency/reason | | ✓ |
| Podiatry care PRN | ✓ | |
| Dental care PRN | ✓ | |
| Ophthalmology care PRN | ✓ | |
| Audiological care PRN | ✓ | |
| May participate in: Overall activity plan | ✓ | |
| Volunteer program | | |
| May have occasional alcoholic beverage | | ✓ |
| May go on pass with meds | ✓ | |
| PPD per facility policy | ✓ | |
| Chest X-ray | ✓ | |
| Pneumococcal vaccine | | ✓ |
| Annual flu shot | ✓ | |
| Laboratory per facility policy | ✓ | |
| Vital signs per facility policy | ✓ | |
| Weight per facility policy | ✓ | |

Discharge Plans:

Admission date 7/6/04 Date Of Birth [redacted]

**SECTION B: DIAGNOSES (not listed in Section A)**

**SECTION C: ALLERGIES**
Demerol

☐ Generic equivalents may not be used

WHITE–To Physician for Signature YELLOW–Temporary Chart Copy PINK–Pharmacy Copy GREEN–Medication Adm. Record

| NAME–Last | First | Middle | Attending Physician | Record No. | Room/Bed |
|---|---|---|---|---|---|
| Bailey | Louise | | Fehlauer | | 102A |

CFS 5-2/4P © 1992 Briggs Corporation, Des Moines, IA 50306 (800) 247-2343 PRINTED IN U.S.A.

ADMISSION ORDERS

**PHYSICIAN'S TELEPHONE ORDERS AUDIT**

| Name of Facility HHC | | | | Address |
|---|---|---|---|---|
| Family Name Brika | First Name Louise | Admission Number | Room No. | Attending Physician [illegible] |

| Date Ordered | Time Ordered | Date Discontinued | Orders |
|---|---|---|---|
| 11/8/05 | | [illegible] | please check BS @ 2000 Q day |

Signature of Nurse Receiving Orders: [illegible signature]

Signature of Physician: [illegible] 11/10/05

Date:

| | Initials | | Initials | | Initials | |
|---|---|---|---|---|---|---|
| On.MO Order Sheet | | Med/Tx Sheet | | Date & Time | | Communicated |
| Pharmacy | | Nurses Notes | | PL Care Plan | | Signed |

Form 1394/4 © BRIGGS, Des Moines, IA 50306 (800) 247-2343 PRINTED IN U.S.A. www.BriggsCorp.com R204

ORIGINAL COPY - Physician Please Sign and Return

# NURSE'S NOTES

| DATE/ TIME | PROB. NO. | NOTES MUST BE SIGNED WITH NAME AND TITLE |
|---|---|---|
| 10/20/05 1050 | | Order received to Δ Lantus to 25 units SQ ā hs. — [illegible signature] |
| 10/27/05 | | Pt. seen by podiatrist, no new orders — [illegible signature] |
| 11-5-05 | | N.O. Benadryl 25mg Caps 2 po q HS prn sleep per pt. request — [illegible signature] |
| 11/8/05 | | Louise attended care plan mtg. is doing well pleased w/ new room & situation. We are working on getting her a new wheelchair, which pleases her. Her daughter-in-law present as well. She is pleased w/ care & Louise's new room. — W. Henson [illegible] |
| 11-8-05 1300 | | T.O. Please check BS @ 2000 Q day. Put in MAR and on BS sheet. — [illegible signature] |
| 11-10-05 | | Orders noted: 1) Tylenol 500mg ii po QHS 2) If/when Res wakes @ Noc, √ BG at [illegible]. Notify MD if abnormal, X 1 week. 3) Prevacid @ HS (time Δ). — [illegible signature] RN |
| 11-14-05 | | weekly done today — [illegible signature] |
| 11/28/05 1600 | | Resident C/o cough & hoarse voice. Requesting cough med. Orders received et noted from Dr. Lehauer. Called to pharm. Res to stay in Rm until [illegible] symptoms [illegible] — [illegible signature] |
| 11/29/05 1430 | | N.O. Cepacol throat lozenges prn sore throat; Give 1 before ea meal x 7 days. Offer meal supplements + soft foods while having sore throat, this is already being done — [illegible signature] |

| NAME—Last | First | Middle | Attending Physician | Record No. | Room/Bed |
|---|---|---|---|---|---|
| Bailey | Louise | | Dr. Lehauer | | |

CFS 6-32NH © 1992 Briggs, Des Moines, IA 50306 PRINTED IN U.S.A.

DON'T BREAK THE LAW MAKE THE CALL Save 13%* 1-800-247-2343 www.BriggsCorp.com

*savings on buying vs. copying

NURSE'S NOTES
☐ Continued on Reverse

Month: October Year: 2005

Facility: 7664 Holladay Healthcare Center

Discipline: OT Patient: Bailey, Louise Payer : Medicare B

Treatment Dx: 799.3 Treatment Dx Onset Date: 10/3/2005 Start of Care (Eval Date): 10/19/2005 Admission Setting: Inpatient

1. Identify Procedure(s) prescribed.
2. If treatment is not rendered, indicate appropriate session code. Utilize rehab progress note for supportive documentation necessary for Daily Services Record.
3. Record progress summaries on Rehab Progress Note.
4. Signed electronic DAR, maintained in Rehab Debt., is the supporting document confirming services were provided by the specific therapist.

Session Code:
P=Procedure/medical appointment
M=Medical Hold
C=Schedule Conflict
D=Discontinued/Discharged
R=Refused
S=Sick/Illness
W=Withheld (see progress record)

| DAY of Month | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Therapist | Procedure | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Mayer, Jamie Lynn, OTR | 97003 | | | | | | | | | | | | | | | | | | | 30 | | | | | | | | | | | | |
| | 97530 | | | | | | | | | | | | | | | | | | | 30 | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Evaluation Time | | | | | | | | | | | | | | | | | | | | 30 | | | | | | | | | | | | |
| DAY of Month | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| Individual Time | | | | | | | | | | | | | | | | | | | | 30 | | | | | | | | | | | | |
| Total Time | | | | | | | | | | | | | | | | | | | | 30 | | | | | | | | | | | | |

# Occupational Therapy Evaluation

Facility Name: Room Number: 134C

Patient Name: Louise Bailey State: UT Soc. Sec. #: [redacted] Age: 71

Gender: ☐ M ☒ F Med ID #: Facility Admit Date: 7-6-04 Admit Setting: ☒ Inpatient Skilled ☐ LTC ☐ Outpatient (non-resident)

Admit Dx: DM II ICD-9 #: 250 Onset Date: Dates of Prior Hosp.: — to: —

Payor: MCB Policy #: [redacted] Payor Effective Date:

Rehab (Incident) Start Date: 10/ /05 Primary Rehab Dx: debility ☐ same as Admit Dx ICD-9 #: 799.3 Onset Date:

Prior Living Setting: ☒ LTC ☐ ACLF/B&C ☐ Private Residence

Eval Date: 10/19/05 Ordering MD: Fehlauer Tx Dx: debility ICD-9 #: 799.3 Onset Date:

Prior Level of Function: min Ⓐ c̄ ADL's

Treatment Precautions (circle all that apply): Aspiration Diabetic Diet Restrictions NPO Cardiac No Code Full Code

Respiratory ⊖ HTN Isolation Wound/Skin Fall Risk Behavior Confusion Hearing/Visual Impaired

Restraints ⊖ Total Hip Wt Bearing Status: Non / Toe Touch / Partial / Full / ___ # or ___ % No Treatment Precautions

Adaptive Equipment:

Therapy History:

Clinical Evaluation Summary (i.e., PMHx, Prior living arrangement, ROM, Tone, MMT, Gross/Fine Coordination, Pain, Sensation, Activity tolerance, Cognition, Perception):

Pt. referred to OT services p̄ quarterly IDT screen to address a possible fx'l decline. Pt. has a PMH significant for GERD, HTN, DM, depression & Ⓑ blindness. On eval, pt, CNA staff & restorative aide were interviewed to determine pts level of fx'l Ⓘ. Pt. reports ⊖ significant Δ in ADL task dependence & overall improvement c̄ strength for fx'l tasks. CNA & restorative report ⊖ Δ in ADL status. Pt. will evaluate for ~~for~~ PT to address gait & x-fer status. OT to cont. quarterly screen to determ need

Current level of general ADL status:

☐ See Special Assessment Sheet

Treatment Plan: Skilled Occupational Therapy to Treat

☐ QD ☐ BID ☐ TID (check one)

___ x / week for ___ Weeks

Treatment may include:

☐ Self Care / Home Management Training / Adapt. Equip.
☐ Therapeutic Exercises
☐ Therapeutic Activities
☐ Neuro-Muscular Re-education
☐ Orthotics Fitting & Training
☐ Cognitive / Perceptual Retraining
☐ Compensatory Instruction
☐ Home Visit as needed
☐ Patient / Family / Staff Instruction
☐
☐
☐
☐

eval only

Justification for Skilled Services (Include why therapy is needed and why the knowledge & the skills of a therapist are required):

Short-Term Goals to be achieved by: / /

Long-Term Goals to be achieved by: / /

eval only

Other Comments:

Patient Goals for Therapy:

Potential for achieving goals and benefit from skilled services: ☐ Excellent ☐ Good ☐ Fair due to:

Patient/Caregiver participated in establishing Plan of Care: ☐ Yes ☐ No ☐ Unable due to:

Signature of therapist/professional establishing plan of treatment including professional designation: [signature] Mayer, MOTR/L Date: 10-19-05

I certify the need for these services furnished under this plan of treatment and while under my care from ___ through ___.

NOTE: Federal law mandates that the physician personally date his/her signature.

Physician Signature: [signature] 10/20/I Date:

Score Only Relevant Areas - Items in bold boxes must be scored for outcome data

| Prior Status | Eval Date: / Discharge Date: | Functional Scores Eval | STG | DCG | Evaluator Initials: Eval Comments/Impairments | F. Score DC | D/C Initials: D/C Comments/Impairments |
|---|---|---|---|---|---|---|---|
| 5 | **Self Feeding** | 5 | | | | | |
| | Scoop Food/Hand to Mouth | | | | | | |
| | Access Glass/Cup | | | | | | |
| 5 | **Grooming** | 4 | | | | | |
| | Simple Grooming | | | | | | |
| | Wash Hands/Face | | | | | | |
| | Shave/Make-up/Lotion Applic. | | | | | | |
| 5 | **Bathing** | 4 | | | | | |
| | Upper Body | | | | | | |
| | Lower Body | | | | | | |
| 5 | **Toileting** | 4.5 | | | | | |
| | Clothing Management | | | | | | |
| | Personal Hygiene | | | | | | |
| 5 | **Upper Body Dressing - Donning/Removing** | 5 | | | | | |
| | Pullover Garment | | | | | | |
| | Front Opening Garment | | | | | | |
| | Fastenings | | | | | | |
| 5 | **Lower Body Dressing - Donning/Removing** | 4 | | | | | |
| | Socks/Hose/Slippers | | | | | | |
| | Shoes | | | | | | |
| | Slacks/Skirt | | | | | | |
| 5 | **ADL Transfers** | 4.5 | | | | | |
| | **Toilet/Commode** | | | | | | |
| | **Shower/Tub** | | | | | | |
| | Sitting Balance during ADLs | | | | | | |
| | Standing Balance during ADLs | | | | | | |
| | Functional Mobility during ADLs (Comment on W/C, walker, cane, etc.) | | | | | | |
| 5 | **Safety Awareness** | 5 | | | | | |
| | Follows Directions | | | | | | |
| | Problem Solving | | | | | | |
| | **Home Making/Housekeeping** | | | | | | |
| N/A | Meal - Prep/Cleanup | | | | | | |
| | Bed Making | | | | | | |
| | Laundry | | | | | | |
| | Heavy Cleaning | | | | | | |
| | Budgeting | | | | | | |
| | Medication Management | | | | | | |
| | **Community ADLs** | | | | | | |
| N/A | Community Reintegration (i.e., shopping, money management, job skill) | | | | | | |
| | Other ______ | | | | | | |

Eval only

**Functional Scores**

7.0 = CI - Complete Independence: No assistance, no equipment
6.0 = MI - Independence: No assistance, but equipment, or extra time
5.0 = SBA - Stand By Assistance: No physical assistance other than set up - supervision for safety/technique and or/ single cue to initiate
4.5 = CG - Contact Guard Assist
4.0 = Min: Occasional assistance (25% or less of the time or effort involved to complete task)
3.5 = MnM - Min Mod: Periodic assistance (25-40% of the time or effort involved to complete task).
3.0 = Mod: Frequent assistance (40-50% of the time or effort involved to complete task).
2.5 = MdM - Mod.Max: Constant assistance (50-75% of the time or effort involved to complete task).
2.0 = Max: Constant assistance (75-90% of the time or effort involved to complete task).
1.7 = NTD - Near Total Dependence: Total assistance with only partial task completion.
1.0 = CD - Complete Dependence: No contribution from patient; task done by others

PHYSICIAN'S TELEPHONE ORDERS AUDIT

Name of Facility _____
Family Name _____ First Name _____ Admission Number _____ Address _____ Room No. _____ Attending Physician _____

Duplication order
PT to eval for ADL &tr/kls—
OT to indicated @ this
time —

Signature of Physician _____ Date 5/29/5

On MD Order Sheet
Pharmacy
Med/Tx Sheet
Nurses Notes

Signature of Nurse Receiving Order _____
Date & Time _____ Communicated _____
Pt. Care Plan _____ Signed _____

Form 1384/4 © BRIGGS, Des Moines, IA 50306 (800) 247-2343  PRINTED IN U.S.A.
www.BriggsCorp.com

DUPLICATE COPY - Destroy When Original Has Been Received and Placed On Medical Record

*Daily Patient Services Record* Month: October Year: 2005

**Facility:** 7664 Holladay Healthcare Center

**Discipline:** PT **Patient :** Bailey, Louise **Payer :** Medicare B

**Treatment Dx:** 719.7 **Treatment Dx Onset Date:** 10/13/2005 **Start of Care (Eval Date):** 10/20/2005 **Admission Setting:** Inpatient

1. Identify Procedure(s) prescribed.
2. If treatment is not rendered, indicate appropriate session code. Utilize rehab progress note for supportive documentation necessary for Daily Services Record.
3. Record progress summaries on Rehab Progress Note.
4. Signed electronic DAR, maintained in Rehab Debt., is the supporting document confirming services were provided by the specific therapist.

Session Code:
P=Procedure/medical appointment
M=Medical Hold
C=Schedule Conflict
D=Discontinued/Discharged
R=Refused
S=Sick/Illness
W=Withheld (see progress record)

| DAY of Month | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Therapist** | Procedure | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Aricona, Diosdado, RPT | 97001 | | | | | | | | | | | | | | | | | | | | 60 | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Evaluation Time | | | | | | | | | | | | | | | | | | | | | 60 | | | | | | | | | | | |
| DAY of Month | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |

Patient Name: [handwritten] ID # (MR or SS#): Room #:

Score Only Relevant Areas - Items in bold boxes needed for outcome data: * are mandatory, ** mandatory if primary means of locomotion - Gait or WC

| Prior Status | Eval Date: / Discharge Date: | Functional Scores Eval | STG | DCG | Eval Signature: / Eval Comments/Impairments | F. Score DC | D/C Signature: / D/C Comments/Impairments |
|---|---|---|---|---|---|---|---|
| | **Bed Mobility*** | 5.0 | | | OB blindness | | |
| | Rolling | | | | | | |
| | Scooting | | | | | | |
| | Supine to Sit | | | | | | |
| | Sit to Supine | | | | | | |
| | Other ___ | | | | | | |
| | **Transfers (Bed/Mat/Chair)*** | 5.0 | | | | | |
| | Sit to Stand | | | | | | |
| | Pivot | | | | | | |
| | Mat | | | | | | |
| | Bed | | | | | | |
| | Wheelchair | | | | | | |
| | Toilet | | | | | | |
| | Other ___ | | | | | | |
| | **Gait**** | 4.5 | | | | | |
| Primary means of locomotion: ☒ Gait or ☐ Wheelchair | Level Surface | | | | | | |
| | Uneven Surfaces | | | | | | |
| | Distance | | | | | | |
| | Negotiating Obstacles | | | | | | |
| | Other ___ | | | | | | |
| | **Wheelchair Mobility**** | 4.0 | | | | | |
| | Propulsion | | | | | | |
| | In Room | | | | | | |
| | In Facility | | | | | | |
| | Outdoors | | | | | | |
| | Positioning WC for Transfers | | | | | | |
| | Negotiating Obstacles | | | | | | |
| | **Wheelchair Management**** | 4.0 | | | | | |
| | Brakes | | | | | | |
| | Footrest | | | | | | |
| | Armrest | | | | | | |
| | Pressure Relief | | | | | | |
| | **Other Mobility Skills** | | | | | | |
| | **Stairs*** | 1.0 | | | | | |
| | **Fall Recovery*** | | | | | | |
| | **Residential Mobility*** | 4.0 | | | | | |
| | **Car Transfers** | | | | | | |
| | **Community Mobility** | 1.0 | | | | | |
| | Doors | | | | | | |
| | Uneven Surface | | | | | | |
| | Curbs | | | | | | |
| | Crossing Streets | | | | | | |
| | Other ___ | | | | | | |

**Functional Scores**

| | |
|---|---|
| [illegible] **Independence**: No assistance, no equipment | 3.5 = **MnM - Min Mod**: Periodic assistance (25-40% of the time or effort involved to complete task) |
| [illegible]: No assistance, but equipment, or extra time | 3.0 = **Mod**: Frequent assistance (40-50% of the time or effort involved to complete task). |
| [illegible] **By Assistance**: No physical assistance other than set up - supervision for [illegible] and or single cue to initiate | 2.5 = **MdM - Mod Max**: Constant assistance (50-75% of the time or effort involved to complete task). |
| [illegible] **Guard Assist** | 2.0 = **Max**: Constant assistance (75-90% of the time or effort involved to complete task). |
| [illegible] assistance (25% or less of the time or effort involved to complete task). | 1.7 = **NTD - Near Total Dependence**: Total assistance with only partial task completion |
| | 1.0 = **CD - Complete Dependence**: No contribution from patient; task done by others |

# Physical Therapy Evaluation

Facility Name: HCC Room Number:

Patient Name: BAILEY LOUISE State: UT Soc. Sec. #: [redacted] DOB: [redacted] Age: 71

Gender: ☐ M ☐ F Med ID #: Facility Admit Date: 7-6-04 Admit Setting: ☑ Inpatient Skilled ☐ LTC ☐ Outpatient (non-resident)

Admit Dx: DVT ICD-9 #: Onset Date: Dates of Prior Hosp.: to:

Payor: MCR Policy #: Payor Effective Date:

Rehab (Incident) Start Date: Prior Living Setting: ☐ Private Residence ☐ ACLF/B&C ☑ LTC

Patient Incident Dx Classification: Group: Class:

Primary Rehab Diagnosis: ☐ same as Admit Dx ICD-9 #: Onset Date:

Eval Date: 10-20-05 Ordering MD: [illegible] Tx Dx: debility ICD-9 #: Onset Date:

Prior Level of Function: able to function [illegible] transfers & gt [illegible] CGA/SBA

Treatment Precautions (circle all that apply): Aspiration Diabetic Diet Restrictions NPO Cardiac No Code Full Code

Respiratory Ø (HTN) Isolation Wound/Skin (Fall Risk) Behavior Confusion Hearing/(Visual Impaired)

Restraints Ø Total Hip Wt Bearing Status: Non / Toe Touch / Partial / (Full) ____ # or ____ % No Treatment Precautions

Adaptive Equipment: WC FWW

Therapy History: Received skilled PT in past yr. Currently on resto. rehab program

Clinical Evaluation Summary (i.e., PMHx, Prior living arrangement, ROM, Tone, MMT, Coordination, Pain, Sensation, Skin integrity, Activity tolerance, Cognition):

Pt. is a 72 y/o ♀ referred to PT 2° reported Δ in function. prior to onset, pt. was functioning at CGA/SBA, w/standing/ambulating [illegible] restorative rehab program.
PMH: GERD, HTN, DM, depression, Osteomyelitis
Pt at this time is maintaining functional mobility skills well. skilled PT not indicated at this time

Strength: BUE/LE = 3/5 to 3+/5 ROM: WFL x 4 [illegible] min. (B) hamstring tightness Balance: Sit: Good Stand: Good ☐ See Special Assessment Sheet

Treatment Plan: Skilled Physical Therapy to Treat
☐ QD ☐ BID ☐ TID (check one)
____ x / week for ____ Weeks
Treatment may include:
☐ Gait Training
☐ Therapeutic Exercises
☐ Therapeutic Activities
☐ Neuro-Muscular Re-education
☐ Orthotics Fitting & Training
☐ Wheelchair Management/Propulsion Training
☐ Home Visit as needed
☐ Patient / Family / Staff Instruction
☐ Modalities
☑ EVALUATION ONLY
☐
☐
☐

Justification for Skilled Services (Include why therapy is needed and why the knowledge & the skills of a therapist are required):
Pt. evaluated for skilled PT. At this time, skilled PT not indicated 2° pt. doing well

Short-Term Goals to be achieved by:
maintaining current level of function at CGA/SBA [illegible] bed mobility, transfers & gait [illegible] up to [illegible] [illegible] requiring constant v/c 2° [illegible]

Long-Term Goals to be achieved by:
Recommended to cont. restorative rehab. program & will cont. to monitor pt.'s status regularly

Other Comments:

Patient Goals for Therapy: Ø

Potential for achieving goals and benefit from skilled services: ☐ Excellent ☑ Good ☐ Fair due to:

Patient/Caregiver participated in establishing Plan of Care: ☑ Yes ☐ No ☐ Unable due to:

Signature of therapist/professional establishing plan of treatment including professional designation: [signature] PT Date: 10-20-05

I certify the need for these services furnished under this plan of treatment and while under my care from 10-20-05 through 11-19-05.

NOTE: Federal law mandates that the physician personally date his/her signature.

Physician Signature: [signature] 10/21/05 Date:

has not been coded to the full number of digits required for that code. (From Coding Clinic for ICD–9–CM. Fourth Quarter, 1995, page 44.)

4. Diagnoses documented as "probable," "suspected," "questionable," "rule-out," or "working diagnosis" should not be coded as though they exist. Rather, code the condition(s) to the highest degree of certainty for that encounter/visit, such as signs, symptoms, abnormal test results, exposure to communicable disease or other reasons for the visit. (From Coding Clinic for ICD–9–CM, Fourth Quarter 1995, page 45.)

5. When a non-specific ICD–9 code is submitted, the underlying sign, symptom, or condition must be related to the indications for the test above.

6. When the indication for the test is long-term administration of glucocorticosteroids, use ICD–9–CM code V58.69.

*Medicare National Coverage Decision for Blood Glucose Testing*

*Description*

This policy is intended to apply to blood samples used to determine glucose levels.

Blood glucose determination may be done using whole blood, serum or plasma. It may be sampled by capillary puncture, as in the fingerstick method, or by vein puncture or arterial sampling. The method for assay may be by color comparison of an indicator stick, by meter assay of whole blood or a filtrate of whole blood, using a device approved for home monitoring, or by using a laboratory assay system using serum or plasma. The convenience of the meter or stick color method allows a patient to have access to blood glucose values in less than a minute or so and has become a standard of care for control of blood glucose, even in the inpatient setting.

*HCPCS Codes (Alpha numeric, CPT–AMA)*

| Code | Descriptor |
|---|---|
| 82947 | Glucose; quantitative, blood (except reagent strip) |
| 82948 | Glucose; blood, reagent strip |
| 82962 | Glucose, blood by glucose monitoring device(s) cleared by the FDA specifically for home use. |

*Indications*

Blood glucose values are often necessary for the management of patients with diabetes mellitus, where hyperglycemia and hypoglycemia are often present. They are also critical in the determination of control of blood glucose levels in the patient with impaired fasting glucose (FPG 110–125 mg/dL), the patient with insulin resistance syndrome and/or carbohydrate intolerance (excessive rise in glucose following ingestion of glucose or glucose sources of food), in the patient with a hypoglycemia disorder such as nesidioblastosis or insulinoma, and in patients with a catabolic or malnutrition state. In addition to those conditions already listed, glucose testing may be medically necessary in patients with tuberculosis, unexplained chronic or recurrent infections, alcoholism, coronary artery disease (especially in women), or unexplained skin conditions (including pruritis, local skin infections, ulceration and gangrene without an established cause). Many medical conditions may be a consequence of a sustained elevated or depressed glucose level. These include comas, seizures or epilepsy, confusion, abnormal hunger, abnormal weight loss or gain, and loss of sensation. Evaluation of glucose may also be indicated in patients on medications known to affect carbohydrate metabolism.

*Limitations*

Frequent home blood glucose testing by diabetic patients should be encouraged. In stable, non-hospitalized patients who are unable or unwilling to do home monitoring, it may be reasonable and necessary to measure quantitative blood glucose up to four times annually.

Depending upon the age of the patient, type of diabetes, degree of control, complications of diabetes, and other co-morbid conditions, more frequent testing than four times annually may be reasonable and necessary.

In some patients presenting with nonspecific signs, symptoms, or diseases not normally associated with disturbances in glucose metabolism, a single blood glucose test may be medically necessary. Repeat testing may not be indicated unless abnormal results are found or unless there is a change in clinical condition. If repeat testing is performed, a specific diagnosis code (e.g., diabetes) should be reported to support medical necessity. However, repeat testing may be indicated where results are normal in patients with conditions where there is a confirmed continuing risk of glucose metabolism abnormality (e.g., monitoring glucocorticoid therapy).

**ICD–9–CM Codes Covered by Medicare Program**

| Code | Description |
|---|---|
| 011.00–011.96 | Tuberculosis |
| 038.0–038.9 | Septicemia |
| 112.1 | Recurrent vaginal candidiasis |
| 112.3 | Interdigital candidiasis |
| 118 | Opportunistic mycoses |
| 157.4 | Malignant neoplasm of islets of Langerhans |
| 158.0 | Malignant neoplasm of retroperitoneum |
| 211.7 | Benign neoplasm of Islets of Langerhans |
| 242.00–242.91 | Thyrotoxicosis |
| 250.00–250.93 | Diabetes mellitus |
| 251.0–251.9 | Disorders of pancreatic internal secretion |
| 253.0–253.9 | Disorders of the pituitary gland |
| 255.0 | Cushing syndrome |

| Code | Description |
| --- | --- |
| 263.0–263.9 | Malnutrition |
| 271.0–271.9 | Disorders of carbohydrate transport and metabolism |
| 272.0–272–4 | Disorders of lipoid metabolism |
| 275.0 | Hemochromotosis |
| 276.0–276.9 | Disorders of fluid, electrolyte and acid-base balance |
| 278.3 | Hypercarotinemia |
| 293.0 | Acute delirium |
| 294.9 | Unspecified organic brain syndrome |
| 298.9 | Unspecified psychosis |
| 300.9 | Unspecified neurotic disorder |
| 310.1 | Organic personality syndrome |
| 337.9 | Autonomic nervous system neuropathy |
| 345.10–345.11 | Generalized convulsive epilepsy |
| 348.3 | Encephalopathy, unspecified |
| 355.9 | Neuropathy, not otherwise specified |
| 356.9 | Unspecified hereditary and idiopathic peripheral neuropathy |
| 357.9 | Unspecified inflammatory and toxic neuropathy |
| 362.10 | Background retinopathy |
| 362.18 | Retinal vasculitis |
| 362.29 | Nondiabetic proliferative retinopathy |
| 362.50–362.57 | Degeneration of macular posterior pole |
| 362.60–362.66 | Peripherial retinal degeneration |
| 362.81–362.89 | Other retinal disorders |
| 362.0 | Unspecified retinal disorders |
| 365.04 | Borderline glaucoma, ocular hypertension |
| 365.32 | Corticosteriod-induced glaucoma residual |
| 366.00–366.09 | Presenile cataract |
| 366.10–366.19 | Senile cataract |
| 367.1 | Acute myopia |
| 368.8 | Other specified visual disturbance |
| 373.00 | Blepharitis |
| 377.24 | Pseudopapiliedema |
| 377.9 | Autonomic nervous system neuropathy |
| 378.50–378.55 | Paralytic strabismus |
| 379.45 | Argyll-Robertson pupils |
| 410.00–410.92 | Acute myocardial infarctions |
| 414.00–414.19 | Coronary atherosclerosis and aneurysm of heart |
| 425.9 | Secondary cardiomyopathy, unspecified |
| 440.23 | Arteriosclerosis of extremities with ulceration |
| 440.24 | Arteriosclerosis of extremities with gangrene |
| 440.9 | Arteriosclerosis, not otherwise specified |
| 458.0 | Postural hypotension |
| 462 | Acute pharyngitis |
| 466.0 | Acute bronchitis |
| 480.0–486 | Pneumonia |
| 490 | Recurrent bronchitis, not specified as acute or chronic |
| 491.0–491.9 | Chronic bronchitis |
| 527.7 | Disturbance of salivory secretion (drymouth) |
| 528.0 | Stomatitis |
| 535.50–535.51 | Gastritis |
| 536.8 | Dyspepsia |
| 571.8 | Other chronic nonalcoholic liver disease |
| 572.0–572.8 | Liver abscess and sequelae of chronic liver disease |
| 574.50–574.51 | Choledocholitiasis |
| 575.0–575.12 | Cholecystitis |
| 576.1 | Cholangitis |
| 577.0 | Acute pancreatitis |
| 577.1 | Chronic pancreatitis |
| 577.8 | Pancreatic multiple calculi |
| 590.00–590.9 | Infections of the kidney |
| 595.9 | Recurrent cystitis |
| 596.4 | Bladder atony |
| 596.53 | Bladder paresis |
| 599.0 | Urinary tract infection, recurrent |
| 607.84 | Impotence of organic origin |
| 608.89 | Other disorders male genital organs |
| 616.10 | Vulvovaginitis |
| 626.0 | Amenorrhea |
| 626.4 | Irregular menses |
| 628.9 | Infertility—female |
| 648.00 | Diabetes mellitus complicating pregnancy, Childbirth or the puerperium, unspecified as to episode of care or not applicable |
| 648.03 | Diabetes mellitus complicating pregnancy, Childbirth or the puerperium, antipartum condition or complication |

| Code | Description |
|---|---|
| 648.04 | Diabetes mellitus complicating pregnancy, Childbirth or the puerperium, postpartum condition or complication |
| 648.80 | Abnormal glucose tolerance complicating pregnancy, childbirth or the puerperium, unspecified as to episode of care or not applicable |
| 648.83 | Abnormal glucose tolerance complicating pregnancy, childbirth or the puerperium, antipartum condition or complication |
| 648.84 | Abnormal glucose tolerance complicating pregnancy, childbirth or the puerperium, postpartum condition or complication |
| 656.60–656.63 | Fetal problems affecting management of mother—large for-date of fetus |
| 657.00–657.03 | Polyhydramnios |
| 680.0–680.9 | Carbuncle and furuncle |
| 686.00–686.9 | Infections of skin and subcutaneous tissue |
| 698.0 | Pruritis ani |
| 698.1 | Pruritis of genital organs |
| 704.1 | Hirsutism |
| 705.0 | Anhidrosis |
| 707.0–707.9 | Chronic ulcer of skin |
| 709.3 | Degenerative skin disorders |
| 729.1 | Myalgia |
| 730.07–730.27 | Osteomyelitis of tarsal bones |
| 780.01 | Coma |
| 780.02 | Transient alteration of awareness |
| 780.09 | Alteration of consciousness, other |
| 780.2 | Syncope and collapse |
| 780.31 | Febrile convulsions |
| 780.39 | Seizures, not otherwise specified |
| 780.4 | Dizziness and giddiness |
| 780.71–780.79 | Malaise and fatigue |
| 780.8 | Hyperhidrosis |
| 781.0 | Abnormal involuntary movements |
| 782.0 | Loss of vibratory sensation |
| 783.1 | Abnormal weight gain |
| 783.2 | Abnormal loss of weight |
| 783.5 | Polydipsia |
| 783.6 | Polyphagia |
| 785.0 | Tachycardia |
| 785.4 | Gangrene |
| 786.01 | Hyperventilation |
| 786.09 | Dyspnea, |
| 786.50 | Chest pain, unspecified |
| 787.6 | Fecal incontinence |
| 787.91 | Diarrhea |
| 788.41–788.43 | Frequency of urination and polyuria |
| 789.1 | Hepatomegaly |
| 790.2 | Abnormal glucose tolerance test |
| 790.6 | Other abnormal blood chemistry (hyperglycemia) |
| 791.0 | Proteinuria |
| 791.5 | Glycosuria |
| 796.1 | Abnormal reflex |
| 799.4 | Cachexia |
| V23.0–.9 | Supervision of high risk pregnancy |
| V67.2 | Follow-up examination, following chemotherapy |
| V67.51 | Follow up examination with high-risk medication not elsewhere classified |
| V58.69 | Long term current use of other medication |

*Reasons for Denial:*

Note: This section was not negotiated by the Negotiated Rulemaking Committee. This section includes HCFA's interpretation of its longstanding policies and is included for informational purposes.

- Tests for screening purposes that are performed in the absence of signs, symptoms, complaints, or personal history of disease or injury are not covered except as explicitly authorized by statute. These include exams required by insurance companies, business establishments, government agencies, or other third parties.
- Tests that are not reasonable and necessary for the diagnosis or treatment of an illness or injury are not covered according to the statute.
- Failure to provide documentation of the medical necessity of tests may result in denial of claims. Such documentation may include notes documenting relevant signs, symptoms or abnormal findings that substantiate the medical necessity for ordering the tests. In addition, failure to provide independent verification that the test was ordered by the treating physician (or qualified nonphysician practitioner) through documentation in the physician's office may result in denial.
- A claim for a test for which there is a national coverage or local medical review policy will be denied as not reasonable and necessary if it is submitted without an ICD–9–CM code or narrative diagnosis listed as covered in the policy unless other medical documentation justifying the necessity is submitted with the claim.
- If a national or local policy identifies a frequency expectation, a

claim for a test that exceeds that expectation may be denied as not reasonable and necessary, unless it is submitted with documentation justifying increased frequency.

- Tests that are not ordered by a treating physician or other qualified treating nonphysician practitioner acting within the scope of their license and in compliance with Medicare requirements will be denied as not reasonable and necessary.
- Failure of the laboratory performing the test to have the appropriate Clinical Laboratory Improvement Amendment of 1988 (CLIA) certificate for the testing performed will result in denial of claims.

**ICD–9–CM Codes Denied**

| Code | Description |
|---|---|
| 798.0–798.9 | Sudden death, cause unknown |
| V15.85 | Exposure to potentially hazardous body fluids |
| V16.1 | Family history of malignant neoplasm, trachea, bronchus, and lung |
| V16.2 | Family history of malignant neoplasm, other respiratory and intrathoracic organs |
| V16.4 | Family history of malignant neoplasm, genital organs |
| V16.5 | Family history of malignant neoplasm, urinary organs |
| V16.6 | Family history of malignant neoplasm, leukemia |
| V16.7 | Family history of malignant neoplasm, other lymphatic and hematopoietic neoplasms |
| V16.8 | Family history of malignant neoplasm, other specified malignant neoplasm |
| V16.9 | Family history of malignant neoplasm, unspecified malignant neoplasm |
| V17.0–V17.8 | Family history of certain chronic disabling diseases |
| V18.0–V18.8 | Family history of certain other specific conditions |
| V19.0–V19.8 | Family history of other conditions |
| V20.0–V20.2 | Health supervision of infant or child |
| V28.0–V28.9 | Antenatal screenings |
| V50.0–V50.9 | Elective surgery for purposes other than remedying health states |
| V53.2 | Fitting and adjustment of hearing aid |
| V60.0–V60.9 | Housing, household, and economic circumstances |
| V62.0 | Unemployment |
| V62.1 | Adverse effects of work environment |
| V65.0 | Healthy persons accompanying sick persons |
| V65.1 | Persons consulting on behalf of another person |
| V68.0–V68.9 | Encounters for administrative purposes |
| V70.0–V70.9 | General medical examinations |
| V73.0–V73.99 | Special screening examinations for viral and chlamydia diseases |
| V74.0–V74.9 | Special screening examinations for bacterial and spirochetal diseases |
| V75.0–V75.9 | Special screening examination for other infectious diseases |
| V76.0 | Special screening for malignant neoplasms, respiratory organs |
| V76.3 | Special screening for malignant neoplasms, bladder |
| V76.42–V76.9 | Special screening for malignant neoplasms, (sites other than breast, cervix, and rectum) |
| V77.0–V77.9 | Special screening for endocrine, nutrition, metabolic, and immunity disorders |
| V78.0–V78.9 | Special screening for disorders of blood and blood-forming organs |
| V79.0–V.79.9 | Special screening for mental disorders |
| V80.0–V80.3 | Special screening for neurological, eye, and ear diseases |
| V81.0–V81.6 | Special screening for cardiovascular, respiratory, and genitourinary diseases |
| V82.0–V82.9 | Special screening for other conditions |

*ICD–9–CM Codes That Do Not Support Medical Necessity*

Any ICD–9–CM code not listed in either of the ICD–9–CM sections above.

*Sources of Information*

AACE Guidelines for the Management of Diabetes Mellitus, Endocrine Practice (1995)1:149–157.

Bower, Bruce F. and Robert E. Moore, Endocrine Function and Carbohydrates.

Clinical Laboratory Medicine, Kenneth D. McClatchy, editor. Baltimore/Williams & Wilkins, 1994. pp 321–323.

Report of the Expert Committee on the Diagnosis and Classification of Diabetes Mellitus, Diabetes Care, Volume 20, Number 7, July 1997, pages 1183 *et seq.*

Roberts, H.J., Difficult Diagnoses. W. B. Saunders Co., pp 69–70.

*Coding Guidelines*

1. Any claim for a test listed in "HCPCS CODES" above must be submitted with an ICD–9–CM diagnosis code or comparable narrative. Codes that describe symptoms and signs, as opposed to diagnoses, should be provided for reporting purposes when a diagnosis has not been established by the physician. (Based on Coding Clinic for ICD–9–CM, Fourth Quarter 1995, page 43.)

2. Screening is the testing for disease or disease precursors so that early detection and treatment can be provided for those who test positive for the disease. Screening tests are performed when no specific sign, symptom, or diagnosis is present and the patient has not been exposed to a disease. The testing of a person to rule out or to confirm a suspected diagnosis because the patient has a sign and/or symptom is a diagnostic test, not a screening. In these cases, the sign or symptom should be used to explain the reason for the test. When the reason for performing a test is because the patient has had contact with, or exposure to, a communicable disease, the appropriate code from category V01, Contact with or exposure to communicable diseases, should be assigned, not a screening code, but the test may still be considered screening and not covered by Medicare. For screening tests, the appropriate ICD–9–CM screening code from categories V28 or V73–V82 (or comparable narrative) should be used. (From Coding Clinic for ICD–9–CM, Fourth Quarter 1996, pages 50 and 52)

3. A three-digit code is to be used only if it is not further subdivided.

Attention Medicare Medical Review Unit

**For Provider Use:**

Provider Number 46-5109

HIC Number [redacted] DCN 2053080171700 2

Dates of Service 10-01-05 to 10-31-05

**Please indicate if:**

PT Notes Attached ✓ ST Notes Attached ____ OT Notes Attached ✓

SNF MDS Attached ____ Demand MDS Attached ____

Itemized bill for Supply/Pharmacy ____

Ambulance ____ Cardiac Rehab ____ Cataract surgery ____

Chest X-Rays ____ CT Scan ____ EPO ____ HBO ____ Labs ____

MRI ____ MRA ____ Observation ____ PSYCH ____

Questionable Covered Procedure ____

Other (Specify) ____

**For Mutual of Omaha Medicare's use only:**

Received MEDICARE 54 19 DEC '05 Analyzed MEDICARE 58 20 DEC '05 Region ✓ Clerk # 75800

Reason Code(s) 5D

**MR Indicators:**

MR HCPCS Code(s) 82962

MR Decision DENY (55616-L)

Line Deny lines 1-31 RevCode 300 HCPC 82962

Pay lines 32-34

MR Rev Code 300

MR All ____

Medically reviewed by 8 MEDICARE SPEC RVW JACKIE MAJORS RN Date 1.5.06

Overridden by JAN 05 2006 Vanessa Barajas 62514 36 Medicare Date ____

FILED

ø S/S
ø doc to support
MD notification)



EDS Thin Client 1.14 - Microsoft Internet Explorer provided by Mutual of Omaha

http://a029/jeos/appEnSwPRDD.html

MUTUAL OF OMAHA MEDICARE    MUTUAL OF OMAHA PLAZA    OMAHA    NE 68175    VER# 4010-AI

465109    KINDRED NRSG CTRS WEST LLC    PART B    PAID DATE: 01/09/2006    REMIT#: 392    PAGE: 1

| | RC | REM | | | | | |
|---|---|---|---|---|---|---|---|
| PATIENT NAME / PATIENT CNTRL NUMBER | RC | REM | DRG# | DRG OUT AMT | COINSURANCE | PAT REFUND | CONTRACT ADJ |
| HIC NUMBER / ICN NUMBER | RC | REM | OUTCD CAPCD | NEW TECH/ECT | COVD CHGS | ESRD NET ADJ | PER DIEM RTE |
| FROM DT THRU DT / NACHG HICHG TOB | RC | REM | PROF COMP | MSP PAYMT | NCOVD CHGS | INTEREST | PROC CD AMT |
| CLM STATUS / COST COVDY NCOVDY | RC | REM | DRG AMT | DEDUCTIBLES | DENIED CHGS | PRE PAY ADJ | NET REIMB |
| BAILEY [redacted] L 1230119 | 50 | MA01 | | .00 | 41.76 | .00 | 196.20 |
| 20530801717002 04 2 | | | | .00 | 208.84 | .00 | .89 |
| [..]/2005 10/31/2005 223 | | | .00 | .00 | 196.20 | .00 | 208.84 |
| [redacted] | | | .00 | .00 | .00 | .00 | 167.08 |
| | | | | .00 | 114.43 | .00 | 398.94 |
| | | | | .00 | 572.18 | .00 | .89 |
| | | | .00 | .00 | 398.94 | .00 | 572.18 |
| | | | .00 | .00 | .00 | .00 | 457.75 |
| | | | | .00 | 14.68 | .00 | 382.59 |
| | | | | .00 | 73.42 | .00 | .89 |
| | | | .00 | .00 | 382.59 | .00 | 73.42 |
| | | | .00 | .00 | .00 | .00 | 58.74 |
| | | | | .00 | 130.01 | .00 | 405.48 |
| | | | | .00 | 649.76 | .00 | .89 |
| | | | .00 | .00 | 405.48 | .00 | 649.76 |
| | | | .00 | .00 | .00 | .00 | 519.75 |
| SUBTOTAL FISCAL YEAR - 2005 | | | | .00 | 300.88 | .00 | 1383.21 |
| | | | | .00 | 1504.20 | .00 | .00 |
| | | | .00 | .00 | 1383.21 | .00 | 1504.20 |
| | | | .00 | .00 | .00 | .00 | 1203.32 |
| SUBTOTAL PART B | | | | .00 | 300.88 | .00 | 1383.21 |



CMS CENTERS for MEDICARE & MEDICAID SERVICES

# Medicare Summary Notice

CNA05902

February 01, 2006

**CUSTOMER SERVICE INFORMATION**

**Your Medicare Number:** [redacted]

If you have questions, write or call:
MUTUAL OF OMAHA (#52280)
MEDICARE DIVISION
P.O. BOX 1602
OMAHA, NE 68101

**Call: 1-800-MEDICARE (1-800-633-4227)**
**Ask For Hospital Services**
**TDD-Telecommunication Device For The Deaf: 1-877-486-2048**

LOUISE BAILEY

**BE INFORMED:** Always review your Medicare Summary Notice for correct information about the items or services you received.

This is a summary of claims processed on 01/06/2006.

## PART B MEDICAL INSURANCE - OUTPATIENT FACILITY CLAIMS

| Dates of Service | Services Provided | Amount Charged | Non-Covered Charges | Deductible and Coinsurance | You May Be Billed | See Notes Section |
|---|---|---|---|---|---|---|
| | Control number 205308017117002 04 | | | | | |
| | **Kindred Nrsg Ctrs West Llc** | | | | | a |
| | **Holladay Healthcare Ctr** | | | | | |
| | **4782 South Holladay Blvd** | | | | | |
| | **Salt Lake City, UT 84117** | | | | | |
| | Referred by: C. S. Fehlauer | | | | | |
| 10/01/05-10/31/05 | Glucose blood test (82962) | $6.54 | $6.54 | $0.00 | $0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |

(continued)

**THIS IS NOT A BILL - Keep this notice for your records.**

# IMPORTANT INFORMATION YOU SHOULD KNOW ABOUT YOUR MEDICARE BENEFITS

For more information about services covered by Medicare, please see your Medicare Handbook.

**PART A HOSPITAL INSURANCE (INPATIENT)** helps pay for inpatient hospital care, inpatient care in a skilled nursing facility following a hospital stay, home health care and hospice care. Inpatient services are measured in benefit periods. A benefit period begins the first time you receive Medicare covered inpatient hospital care and ends when you have been out of the hospital or skilled nursing facility for 60 consecutive days. There is no limit to the number of benefit periods you may have.

**THE AMOUNT YOU MAY BE BILLED** for **Part A** services includes:

- **an inpatient hospital deductible** once during each benefit period,
- **a coinsurance amount for the 61st through the 90th days** of a hospital stay during each benefit period,
- **a coinsurance amount for each Lifetime Reserve Day,** which can be used if you have to stay in the hospital more than 90 days in one benefit period. Lifetime Reserve Days may be used only once.
- **a blood deductible** for the first three pints of unreplaced blood furnished to you in a calendar year in some states,
- **an inpatient coinsurance for the 21st through the 100th days** of a Medicare covered stay in a **skilled nursing facility,**
- charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

**PART B MEDICAL INSURANCE (OUTPATIENT FACILITIES)** helps pay for care provided by certified medical facilities, such as hospital outpatient departments, renal dialysis facilities, and community health centers.

**THE AMOUNT YOU MAY BE BILLED** for **PART B** services includes:

- **An annual deductible,** taken from the first Medicare Part B charges each year;
- After the deductible has been met for the year, depending on services received, a **coinsurance** amount (20 percent of the amount charged), or a fixed copayment for each service; and
- Charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

If you have supplemental insurance, it may help to pay the amounts you may be billed.

If you use this notice to claim supplemental benefits from another insurance company, make a copy for your records.

**WHEN OTHER INSURANCE PAYS FIRST:** All Medicare payments are made on the condition that you will pay Medicare back if benefits could be paid by insurance that is primary to Medicare. Types of insurance that should pay before Medicare include employer group health plans, no-fault insurance, automobile medical insurance, liability insurance and workers' compensation. Notify us right away if you have filed or could file a claim with insurance that is primary to Medicare.

**YOUR RIGHT TO APPEAL:** If you disagree with what Medicare approved for these services, you may appeal the decision. You must file your appeal within **120 days of the date you receive this notice.** Unless you show us otherwise, we assume you received this notice 5 days after the date of this notice. Follow the appeal instructions on the front of the last page of the notice. If you want **help with your appeal,** a friend or someone else can help you. Also, groups such as legal aid services may provide free assistance. To contact us for the names and telephone numbers of groups in your area, please see our Customer Service Information box on the front of this notice.

**HELP STOP MEDICARE FRAUD:** Fraud is a false representation by a person or business to get Medicare payments. Some examples of fraud include:

- offers of goods or money in exchange for your Medicare Number,
- telephone or door-to-door offers for free medical services or items, and
- claims for Medicare services/items you did not receive.

If you think a person or business is involved in fraud, you should call Medicare at the Customer Service Telephone number on the front of this notice.

**INSURANCE COUNSELING AND ASSISTANCE:** Insurance Counseling and Assistance programs are located in every State. These programs have volunteer counselors who can give you free assistance with Medicare questions, including enrollment, entitlement, Medigap, and premium issues. If you would like to know how to get in touch with your local Insurance Counseling and Assistance Program Counselor, please call us at the number shown in the Customer Service Information box on the front of this notice.

Your Medicare Number [redacted]

## PART B MEDICAL INSURANCE - OUTPATIENT FACILITY CLAIMS (continued)

| Dates of Service | Services Provided | Amount Charged | Non-Covered Charges | Deductible and Coinsurance | You May Be Billed | See Notes Section |
|---|---|---|---|---|---|---|
| **This Claim was continued from the previous page.** | | | | | | |
| 10/01/05-10/31/05 | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 3.27 | 3.27 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 3.27 | 3.27 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | b,c |
| | Pt evaluation (97001) | 73.42 | 0.00 | 14.68 | 14.68 | |
| | Ot evaluation (97003) | 78.30 | 0.00 | 15.66 | 15.66 | |
| | Therapeutic activities (97530) | 57.12 | 0.00 | 11.42 | 11.42 | |
| | **Claim Total** | **$405.04** | **$196.20** | **$41.76** | **$41.76** | |

## Notes Section:

a The amount Medicare paid the provider for this claim is $167.08.

b The information provided does not support the need for this service or item.

c You should not be billed for this service. You do not have to pay this amount.

# IMPORTANT INFORMATION YOU SHOULD KNOW ABOUT YOUR MEDICARE BENEFITS

For more information about services covered by Medicare, please see your Medicare Handbook.

**PART A HOSPITAL INSURANCE (INPATIENT)** helps pay for inpatient hospital care, inpatient care in a skilled nursing facility following a hospital stay, home health care and hospice care. Inpatient services are measured in benefit periods. A benefit period begins the first time you receive Medicare covered inpatient hospital care and ends when you have been out of the hospital or skilled nursing facility for 60 consecutive days. There is no limit to the number of benefit periods you may have.

**THE AMOUNT YOU MAY BE BILLED** for **Part A** services includes:

- **an inpatient hospital deductible** once during each benefit period,
- **a coinsurance amount for the 61st through the 90th days** of a hospital stay during each benefit period,
- **a coinsurance amount for each Lifetime Reserve Day,** which can be used if you have to stay in the hospital more than 90 days in one benefit period. Lifetime Reserve Days may be used only once.
- **a blood deductible** for the first three pints of unreplaced blood furnished to you in a calendar year in some states,
- **an inpatient coinsurance for the 21st through the 100th days** of a Medicare covered stay in a **skilled nursing facility,**
- charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

**PART B MEDICAL INSURANCE (OUTPATIENT FACILITIES)** helps pay for care provided by certified medical facilities, such as hospital outpatient departments, renal dialysis facilities, and community health centers.

**THE AMOUNT YOU MAY BE BILLED** for **PART B** services includes:

- **An annual deductible**, taken from the first Medicare Part B charges each year;
- After the deductible has been met for the year, depending on services received, a **coinsurance** amount (20 percent of the amount charged), or a fixed copayment for each service; and
- Charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

If you have supplemental insurance, it may help to pay the amounts you may be billed.

If you use this notice to claim supplemental benefits from another insurance company, make a copy for your records.

**WHEN OTHER INSURANCE PAYS FIRST:** All Medicare payments are made on the condition that you will pay Medicare back if benefits could be paid by insurance that is primary to Medicare. Types of insurance that should pay before Medicare include employer group health plans, no-fault insurance, automobile medical insurance, liability insurance and workers' compensation. Notify us right away if you have filed or could file a claim with insurance that is primary to Medicare.

**YOUR RIGHT TO APPEAL:** If you disagree with what Medicare approved for these services, you may appeal the decision. You must file your appeal within **120 days of the date you receive this notice**. Unless you show us otherwise, we assume you received this notice 5 days after the date of this notice. Follow the appeal instructions on the front of the last page of the notice. If you want **help with your appeal**, a friend or someone else can help you. Also, groups such as legal aid services may provide free assistance. To contact us for the names and telephone numbers of groups in your area, please see our Customer Service Information box on the front of this notice.

**HELP STOP MEDICARE FRAUD:** Fraud is a false representation by a person or business to get Medicare payments. Some examples of fraud include:

- offers of goods or money in exchange for your Medicare Number,
- telephone or door-to-door offers for free medical services or items, and
- claims for Medicare services/items you did not receive.

If you think a person or business is involved in fraud, you should call Medicare at the Customer Service Telephone number on the front of this notice.

**INSURANCE COUNSELING AND ASSISTANCE:** Insurance Counseling and Assistance programs are located in every State. These programs have volunteer counselors who can give you free assistance with Medicare questions, including enrollment, entitlement, Medigap, and premium issues. If you would like to know how to get in touch with your local Insurance Counseling and Assistance Program Counselor, please call us at the number shown in the Customer Service Information box on the front of this notice.

**Your Medicare Number:** [redacted]

**Deductible Information:**

You have met the Part B deductible for 2005.

**General Information:**

As requested, this is a duplicate copy of your Medicare Summary Notice.

If you change your address, please contact the Social Security Administration by calling 1-800-772-1213.

You have the right to make a request in writing for an itemized statement which details each Medicare item or service which you have received from your physician, hospital, or any other health supplier or health professional. Please contact them directly, in writing, if you would like an itemized statement.

Compare the services you receive with those that appear on your Medicare Summary Notice. If you have questions, call your doctor or provider. If you feel further investigation is needed due to possible fraud or abuse, call the phone number in the Customer Service Information Box.

ALERT: Coverage by Medicare will be limited for outpatient physical therapy (PT), speech-language pathology (SLP), and occupational therapy (OT) services for services received on January 1, 2006 through December 31, 2006. The limits are $1,740 for PT and SLP combined and $1,740 for OT. Medicare pays up to 80 percent of the limits after the deductible has been met. These limits don't apply to therapy you get at hospital outpatient departments, unless you are a resident of and occupy a Medicare-certified bed in a skilled nursing facility. If you have questions, please call 1-800-MEDICARE.

If you are not due a payment check from Medicare, your Medicare summary notices (MSN) will now be mailed to you on a quarterly basis. You will no longer receive a monthly statement in the mail for these types of MSNs. You will now receive a statement every 90 days summarizing all of your Medicare claims. You may receive a bill from your provider before you receive an MSN. Please compare the MSN with the bill from your provider to ensure you paid the appropriate amount for your services.

Protect your Medicare number as you would a credit card number.

# IMPORTANT INFORMATION YOU SHOULD KNOW ABOUT YOUR MEDICARE BENEFITS

For more information about services covered by Medicare, please see your Medicare Handbook.

**PART A HOSPITAL INSURANCE (INPATIENT)** helps pay for inpatient hospital care, inpatient care in a skilled nursing facility following a hospital stay, home health care and hospice care. Inpatient services are measured in benefit periods. A benefit period begins the first time you receive Medicare covered inpatient hospital care and ends when you have been out of the hospital or skilled nursing facility for 60 consecutive days. There is no limit to the number of benefit periods you may have.

**THE AMOUNT YOU MAY BE BILLED** for **Part A** services includes:

- **an inpatient hospital deductible** once during each benefit period,
- **a coinsurance amount for the 61st through the 90th days** of a hospital stay during each benefit period,
- **a coinsurance amount for each Lifetime Reserve Day,** which can be used if you have to stay in the hospital more than 90 days in one benefit period. Lifetime Reserve Days may be used only once.
- **a blood deductible** for the first three pints of unreplaced blood furnished to you in a calendar year in some states,
- **an inpatient coinsurance for the 21st through the 100th days** of a Medicare covered stay in a **skilled nursing facility,**
- charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

**PART B MEDICAL INSURANCE (OUTPATIENT FACILITIES)** helps pay for care provided by certified medical facilities, such as hospital outpatient departments, renal dialysis facilities, and community health centers.

**THE AMOUNT YOU MAY BE BILLED** for **PART B** services includes:

- **An annual deductible,** taken from the first Medicare Part B charges each year;
- After the deductible has been met for the year, depending on services received, a **coinsurance** amount (20 percent of the amount charged), or a fixed copayment for each service; and
- Charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

If you have supplemental insurance, it may help to pay the amounts you may be billed.

If you use this notice to claim supplemental benefits from another insurance company, make a copy for your records.

**WHEN OTHER INSURANCE PAYS FIRST:** All Medicare payments are made on the condition that you will pay Medicare back if benefits could be paid by insurance that is primary to Medicare. Types of insurance that should pay before Medicare include employer group health plans, no-fault insurance, automobile medical insurance, liability insurance and workers' compensation. Notify us right away if you have filed or could file a claim with insurance that is primary to Medicare.

**YOUR RIGHT TO APPEAL:** If you disagree with what Medicare approved for these services, you may appeal the decision. You must file your appeal within **120 days of the date you receive this notice**. Unless you show us otherwise, we assume you received this notice 5 days after the date of this notice. Follow the appeal instructions on the front of the last page of the notice. If you want **help with your appeal**, a friend or someone else can help you. Also, groups such as legal aid services may provide free assistance. To contact us for the names and telephone numbers of groups in your area, please see our Customer Service Information box on the front of this notice.

**HELP STOP MEDICARE FRAUD:** Fraud is a false representation by a person or business to get Medicare payments. Some examples of fraud include:

- offers of goods or money in exchange for your Medicare Number,
- telephone or door-to-door offers for free medical services or items, and
- claims for Medicare services/items you did not receive.

If you think a person or business is involved in fraud, you should call Medicare at the Customer Service Telephone number on the front of this notice.

**INSURANCE COUNSELING AND ASSISTANCE:** Insurance Counseling and Assistance programs are located in every State. These programs have volunteer counselors who can give you free assistance with Medicare questions, including enrollment, entitlement, Medigap, and premium issues. If you would like to know how to get in touch with your local Insurance Counseling and Assistance Program Counselor, please call us at the number shown in the Customer Service Information box on the front of this notice.

**Your Medicare Number:** [redacted]

## Appeals Information - Part B (Outpatient)

**If you disagree with any claims decisions on either PART A or PART B of this notice,** your appeal must be received by **June 06, 2006.**
Follow the instructions below:

1) Circle the item(s) you disagree with and explain why you disagree.

2) Send this notice, or a copy, to the address in the "Customer Service Information" box on Page 1. (You may also send any additional information you may have about your appeal.)

3) Sign here ______________________________ Phone number (___)__________

For more information about services covered by Medicare, please see your Medicare Handbook.

**PART A HOSPITAL INSURANCE (INPATIENT)** helps pay for inpatient hospital care, inpatient care in a skilled nursing facility following a hospital stay, home health care and hospice care. Inpatient services are measured in benefit periods. A benefit period begins the first time you receive Medicare covered inpatient hospital care and ends when you have been out of the hospital or skilled nursing facility for 60 consecutive days. There is no limit to the number of benefit periods you may have.

**THE AMOUNT YOU MAY BE BILLED** for **Part A** services includes:

- **an inpatient hospital deductible** once during each benefit period,
- **a coinsurance amount for the 61st through the 90th days** of a hospital stay during each benefit period,
- **a coinsurance amount for each Lifetime Reserve Day,** which can be used if you have to stay in the hospital more than 90 days in one benefit period. Lifetime Reserve Days may be used only once.
- **a blood deductible** for the first three pints of unreplaced blood furnished to you in a calendar year in some states,
- **an inpatient coinsurance for the 21st through the 100th days** of a Medicare covered stay in a **skilled nursing facility**,
- charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

**PART B MEDICAL INSURANCE (OUTPATIENT FACILITIES)** helps pay for care provided by certified medical facilities, such as hospital outpatient departments, renal dialysis facilities, and community health centers.

**THE AMOUNT YOU MAY BE BILLED** for **PART B** services includes:

- **An annual deductible,** taken from the first Medicare Part B charges each year;
- After the deductible has been met for the year, depending on services received, a **coinsurance** amount (20 percent of the amount charged), or a fixed copayment for each service; and
- Charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

If you have supplemental insurance, it may help to pay the amounts you may be billed.

If you use this notice to claim supplemental benefits from another insurance company, make a copy for your records.

**WHEN OTHER INSURANCE PAYS FIRST:** All Medicare payments are made on the condition that you will pay Medicare back if benefits could be paid by insurance that is primary to Medicare. Types of insurance that should pay before Medicare include employer group health plans, no-fault insurance, automobile medical insurance, liability insurance and workers' compensation. Notify us right away if you have filed or could file a claim with insurance that is primary to Medicare.

**YOUR RIGHT TO APPEAL:** If you disagree with what Medicare approved for these services, you may appeal the decision. You must file your appeal within **120 days of the date you receive this notice.** Unless you show us otherwise, we assume you received this notice 5 days after the date of this notice. Follow the appeal instructions on the front of the last page of the notice. If you want **help with your appeal**, a friend or someone else can help you. Also, groups such as legal aid services may provide free assistance. To contact us for the names and telephone numbers of groups in your area, please see our Customer Service Information box on the front of this notice.

**HELP STOP MEDICARE FRAUD:** Fraud is a false representation by a person or business to get Medicare payments. Some examples of fraud include:

- offers of goods or money in exchange for your Medicare Number,
- telephone or door-to-door offers for free medical services or items, and
- claims for Medicare services/items you did not receive.

If you think a person or business is involved in fraud, you should call Medicare at the Customer Service Telephone number on the front of this notice.

**INSURANCE COUNSELING AND ASSISTANCE:** Insurance Counseling and Assistance programs are located in every State. These programs have volunteer counselors who can give you free assistance with Medicare questions, including enrollment, entitlement, Medigap, and premium issues. If you would like to know how to get in touch with your local Insurance Counseling and Assistance Program Counselor, please call us at the number shown in the Customer Service Information box on the front of this notice.

Holladay Healthcare Center

A Kindred Community

December 12, 2005

Medicare Medical Review Unit
Mutual of Omaha Insurance Company
Medicare Area - Medical Reviews
P. O. Box 1602
Omaha, NE 68101

*Re: Request for Blood Glucose Testing Documentation/Information*
*Provider Name/Number:* Holladay Healthcare Ctr 465109
*Beneficiary Name:* Louise Ba[redacted]
*HICN:* [redacted]
*Dates of Services:* 10-01-05 To 10-31-05

To Whom It May Concern:

We are in receipt of your request for information dated 11-7-05. Pursuant to your request, the following documents are enclosed for your review.

| | No. of Pages |
|---|---|
| Physician Order(s) for blood glucose testing (BGT) | [ 1 ] |
| Documentation of medical necessity for BGT | [ 1 ] |
| Documentation of BGT results | [ 3 ] |
| Documentation of any physician notification of BGT results and any resulting physician orders | [ 7 ] |
| National BGT Coverage Decision | [ 4 ] |
| Letter to Mutual of Omaha, dated April 22, 2005, with attachment | [ 11 ] |
| Total number of pages submitted for review | [ 31 ] |

Should you have any questions, please contact the undersigned at [phone number].

Cindy Passa BOM
Name/Credentials

cc: Facility Executive Director
Regional Director of Utilization
Claim Tracking File

For Mutual of Omaha Medicare's use only:
Received 12-11-06 Analyzed 12-11-06 Region 04 Clerk #
Reason Code(s) 37192 MR HCPCS Code(s) 82962
MR Decision Deny - 55615-C/55646-C
Services Not R/N
MR Rev Code 0300
MR All —
Medically reviewed by R. [illegible] RN Date 12-11-06
Overridden by Date

Services Not Reasonable & Necessary per pub. 100-4, Ch 7, section 90.1

4782 South Holladay Boulevard Salt Lake City, Utah 84117
801.277.7002 801.272.0622 Fax

```
MAP1031         M E D I C A R E - A   O N L I N E   S Y S T E M        PAGE 01
 SC                              UBS- CLAIM INQUIRY
 DCN 20635400270008        04  HIC [REDACTED]   RECEIPT DATE 122006  TOB 22I
 STATUS P  LOCATION B9996     TRAN DT 122106    STMT COV DT 100105   TO 103105
  UB-FORM: 9    BCBS PROVIDER:                  TRANSACT TYPE: D
                  P A T I E N T   S T A Y   I N F O R M A T I O N
 PATIENT CONTROL NBR 1230119              FEDERAL TAX NO. [REDACTED]    SUB
 STATEMENT DATES FROM 100105  TO 103105   COVERED DAYS           ORIG DAYS
 NON-COVERED DAYS          COIN DAYS      LRD                  CST RPT DYS
                                                          ORIG CST RPT DYS
                       P A T I E N T   I N F O R M A T I O N
           LAST BAILEY                  FIRST LOUISE       MIDDLE INIT
  ADDR  1 4782 S HOLLADAY BLVD                2 HOLLADAY UT
        3                                     4
        5                                     6
        ZIP 841175444
                DATE OF BIRTH [REDACTED]    SEX F    MARITAL STATUS

                            A D M I S S I O N   D A T A
   ADMIT DATE 070604  HOUR      TYPE 3  SOURCE 1  NOE ACT CD    NOE DT
  DISC HM 0000   PATIENT STATUS 30    MEDICAL RECORD NO. 020530

 37205                                                      <== REASON CODES
             PRESS PF3-EXIT  PF8-NEXT PAGE
```

```
MAP1032         M E D I C A R E - A   O N L I N E   S Y S T E M        PAGE 02
 SC                                UB92 CLAIM INQUIRY
 DCN 20635400270008        04   HIC [redacted]          RECEIPT DATE 122006   TOB 22I
 STATUS P  LOCATION B9996       TRAN DT 122106       STMT COV DT 100105    TO 103105

 CONDITION CODES 01 64 02    03     04     05     06     07     08     09     10

 BENE EXHAUST DATE SET       QUALIFYING STAY DATES SET        BDL CHK OVR
 PROV FLT DAYS          LTR RATE BYPASS      TECH PROV: DAYS       CHARGES

 OCCURRENCE CDS AND DATES 01 11 070804 02 35 070804 03 44 070804 04
05             06             07             08             09             10

 OCCURRENCE SPAN CDS AND DTS (FROM / THRU)
 1                    2                    3                    4
 5                    6                    7                    8
 9                    10
 AD.DCN 20530801717002       04
       V A L U E  C O D E S  -  A M O U N T S  -  A N S I   MSP APP IND
01 A2       41.76   PR 2    02 50       61.00          03 51      39.00
04 76       89.00           05                         06
07                          08                         09
37205                                                        <== REASON CODES
      PRESS PF3-EXIT  PF5-SCROLL BKWD  PF6-SCROLL FWD  PF7-PREV   PF8-NEXT
```

MAP1033 M E D I C A R E - A O N L I N E S Y S T E M PAGE 03
SC UB92 CLAIM INQUIRY REV CD PAGE 01
DCN 20635400270008 04 HIC [redacted] RECEIPT DATE 122006 TOB 22I
STATUS P LOCATION B9996 TRAN DT 122106 STMT COV DT 100105 TO 103105
ESRD HRS: PAT TERM ILL: MULTI-LAB: BENEFIT SAVINGS: Y

| CL | REV | HCPC | MODS | SERV DATE | RATE | TOT UNIT | COV UNIT | TOT CHRG | COV CHRG | NCOV CHRG |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 0300 | 82962 | | 1001 | 3.270 | 2 | | 6.54 | | 6.54 |
| 2 | 0300 | 82962 | | 1002 | 3.270 | 2 | | 6.54 | | 6.54 |
| 3 | 0300 | 82962 | | 1003 | 3.270 | 2 | | 6.54 | | 6.54 |
| 4 | 0300 | 82962 | | 1004 | 3.270 | 2 | | 6.54 | | 6.54 |
| 5 | 0300 | 82962 | | 1005 | 3.270 | 2 | | 6.54 | | 6.54 |
| 6 | 0300 | 82962 | | 1006 | 3.270 | 2 | | 6.54 | | 6.54 |
| 7 | 0300 | 82962 | | 1007 | 3.270 | 2 | | 6.54 | | 6.54 |
| 8 | 0300 | 82962 | | 1008 | 3.270 | 2 | | 6.54 | | 6.54 |
| 9 | 0300 | 82962 | | 1009 | 3.270 | 2 | | 6.54 | | 6.54 |
| 10 | 0300 | 82962 | | 1010 | 3.270 | 2 | | 6.54 | | 6.54 |
| 11 | 0300 | 82962 | | 1011 | 3.270 | 2 | | 6.54 | | 6.54 |
| 12 | 0300 | 82962 | | 1012 | 3.270 | 2 | | 6.54 | | 6.54 |
| 13 | 0300 | 82962 | | 1013 | 3.270 | 2 | | 6.54 | | 6.54 |
| | | | | | TOTALS | 64 | 4 | 405.04 | 208.84 | 196.20 |

37205 <== REASON CODES
PRESS PF2-103I PF3-EXIT PF5-UP PF6 DOWN PF7-PREV PF8-NEXT PF11-RIGHT

MAP1033 M E D I C A R E - A O N L I N E S Y S T E M PAGE 03
SC UB92 CLAIM INQUIRY REV CD PAGE 02
DCN 20635400270008 04 HIC [redacted] RECEIPT DATE 122006 TOB 22I
STATUS P LOCATION B9996 TRAN DT 122106 STMT COV DT 100105 TO 103105
ESRD HRS: PAT TERM ILL: MULTI-LAB: BENEFIT SAVINGS: Y

| CL | REV | HCPC | MODS | SERV DATE | RATE | TOT UNIT | COV UNIT | TOT CHRG | COV CHRG | NCOV CHRG |
|---|---|---|---|---|---|---|---|---|---|---|
| 14 | 0300 | 82962 | | 1014 | 3.270 | 2 | | 6.54 | | 6.54 |
| 15 | 0300 | 82962 | | 1015 | 3.270 | 2 | | 6.54 | | 6.54 |
| 16 | 0300 | 82962 | | 1016 | 3.270 | 1 | | 3.27 | | 3.27 |
| 17 | 0300 | 82962 | | 1017 | 3.270 | 2 | | 6.54 | | 6.54 |
| 18 | 0300 | 82962 | | 1018 | 3.270 | 2 | | 6.54 | | 6.54 |
| 19 | 0300 | 82962 | | 1019 | 3.270 | 2 | | 6.54 | | 6.54 |
| 20 | 0300 | 82962 | | 1020 | 3.270 | 2 | | 6.54 | | 6.54 |
| 21 | 0300 | 82962 | | 1021 | 3.270 | 2 | | 6.54 | | 6.54 |
| 22 | 0300 | 82962 | | 1022 | 3.270 | 2 | | 6.54 | | 6.54 |
| 23 | 0300 | 82962 | | 1023 | 3.270 | 2 | | 6.54 | | 6.54 |
| 24 | 0300 | 82962 | | 1024 | 3.270 | 2 | | 6.54 | | 6.54 |
| 25 | 0300 | 82962 | | 1025 | 3.270 | 1 | | 3.27 | | 3.27 |
| 26 | 0300 | 82962 | | 1026 | 3.270 | 2 | | 6.54 | | 6.54 |
| | | | | | | ===== | ===== | ========== | ========== | ========== |
| | | | | | TOTALS | 64 | 4 | 405.04 | 208.84 | 196.20 |

37205 <== REASON CODES
PRESS PF2-103I PF3-EXIT PF5-UP PF6 DOWN PF7-PREV PF8-NEXT PF11-RIGHT

MAP1033 M E D I C A R E - A O N L I N E S Y S T E M PAGE 03
SC UB92 CLAIM INQUIRY REV CD PAGE 03
DCN 20635400270008 04 HIC [redacted] RECEIPT DATE 122006 TOB 22I
STATUS P LOCATION B9996 TRAN DT 122106 STMT COV DT 100105 TO 103105
ESRD HRS: PAT TERM ILL: MULTI-LAB: BENEFIT SAVINGS: Y

| CL | REV | HCPC | MODS | SERV DATE | RATE | TOT UNIT | COV UNIT | TOT CHRG | COV CHRG | NCOV CHRG |
|---|---|---|---|---|---|---|---|---|---|---|
| 27 | 0300 | 82962 | | 1027 | 3.270 | 2 | | 6.54 | | 6.54 |
| 28 | 0300 | 82962 | | 1028 | 3.270 | 2 | | 6.54 | | 6.54 |
| 29 | 0300 | 82962 | | 1029 | 3.270 | 2 | | 6.54 | | 6.54 |
| 30 | 0300 | 82962 | | 1030 | 3.270 | 2 | | 6.54 | | 6.54 |
| 31 | 0300 | 82962 | | 1031 | 3.270 | 2 | | 6.54 | | 6.54 |
| 32 | 0420 | 97001 | GP | 1020 | 73.420 | 1 | 1 | 73.42 | 73.42 | |
| 33 | 0430 | 97003 | GO | 1019 | 78.300 | 1 | 1 | 78.30 | 78.30 | |
| 34 | 0430 | 97530 | GO | 1019 | 28.560 | 2 | 2 | 57.12 | 57.12 | |
| 35 | 0001 | | | | | | | 405.04 | 208.84 | 196.20 |
| | | | | | TOTALS | 64 | 4 | 405.04 | 208.84 | 196.20 |

37205 <== REASON CODES

PRESS PF2-103I PF3-EXIT PF5-UP PF6 DOWN PF7-PREV PF8-NEXT PF11-RIGHT

```
MAP1034        M E D I C A R E - A   O N L I N E   S Y S T E M        PAGE 04
 SC                                UB92 CLAIM INQUIRY
 DCN 20635400270008       04  HIC [redacted]      RECEIPT DATE 122006   TOB 221
 STATUS P  LOCATION B9996     TRAN DT 122106      STMT COV DT 100105    TO 103105
                         P A Y E R   I N F O R M A T I O N
    NPI NUMBER:                                                OFFSITE ZIPCD:
   CD  PAYER                                 PROVIDER NO.  RI AB     PRIOR     EST AMT
 A  Z MEDICARE                                465109         Y Y
 B  3 AARPUHC                                 52280          Y Y
 C
   CROSSOVER IND                                 DUE FROM PAT
   PARTNER ID

              X12 UB92   I N S U R E D   I N F O R M A T I O N
  NAME(L/F)  REL REL   CERT-SSN-HIC  SEX GROUP NAME   DOB [redacted]   INS GROUP NUMBE
 A BAILEY             LOUISE            F
                    [redacted]
 B BAILEY             LOUISE            F
              18  01 [redacted]            AARPUHC
 C

 37205                                                           <== REASON CODES
             PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

```
MAP1035        M E D I C A R E - A   O N L I N E   S Y S T E M       PAGE 05
 SC                           UB92 CLAIM INQUIRY
 DCN 20635400270008       04  HIC [redacted]  RECEIPT DATE 122006  TOB 22I
 STATUS P  LOCATION B9996     TRAN DT 122106     STMT COV DT 100105   TO 103105
 MED REV ANALYST
 TREATMENT AUTHORIZATION CODE   STATUS CD        EMPLOYER NAME
   1)
       STREET                     CITY                     ST     ZIP
   2)
       STREET                     CITY                     ST     ZIP
   3)
       STREET                     CITY                     ST     ZIP

 DIAG CODES  1 73300   2 25010   3 5308l   4 4019   5 2720    6
   7         8         9          ADMIT DIAG 73300      E-CODE
                              PRO ID 0        PC          IDE
 PROC CODES  1                  2                   3
             4                  5                   6
 ATT PHYS E69796  NPI           LN FEHLAUER          FN C.          MI S
 OPR PHYS         NPI           LN                   FN             MI
 OTH PHYS         NPI           LN                   FN             MI
 VERIFY NC DT          THRU       HMO REL/OR CD     HMO AUTH
37205                                                     <== REASON CODES
           PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

```
MAP1036        M E D I C A R E - A   O N L I N E   S Y S T E M        PAGE 06
 SC                              UB92 CLAIM INQUIRY
 DCN 20635400270008       04  HIC [redacted]   RECEIPT DATE 122006  TOB 22I
 STATUS P  LOCATION B9996     TRAN DT 122106    STMT COV DT 100105  TO 103105
              M S P   A D D I T I O N A L   I N F O R M A T I O N
 INSURERS ADDRESS 1
 INSURERS ADDRESS 2
              CITY                   ST      ZIP         ZIP+4
 INSURERS ADDRESS 1
 INSURERS ADDRESS 2
              CITY                   ST      ZIP         ZIP+4        MSPPS
                        E N T R Y   I N D I C A T O R S
 RTP/BDL/ADR
 REJECT CD            NON PAY CODE           CANC DCN
 PROCESS NEW HIC      NEW HIC                XREF DCN 20530801717002       04
 GENER HARDCOPY       TAPE TO TAPE           CWF DCN
 USER ACTION-CD N     MED REC ATTACHED    N  MR HOSPICE REDUCED
 ADJ REQ ID        F  TIMELINESS IND         MR HOSPICE RO REFERRED
 ADJ CANCEL CD        PAT FILED BILL-CD      MR INCLD IN COMPOSITE
 ADJ-REAS-CD     OT   UTIL OVERRIDE          MR REVERSAL= URC     DEMAND
 SNF TRANSFER         EMER CARE CD           BYPASS TOB 72X OVERLAP
 MSP OVR CD A     B    C    D    E    F    G    H    I    J    L    PHY SAN
37205                                                         <== REASON CODES
             PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

```
MAP1037          M E D I C A R E - A   O N L I N E   S Y S T E M        PAGE 07
 SC                              UB92 CLAIM INQUIRY              REMARKS PAGE 01
 CN 20635400270008      04  HIC [redacted]       RECEIPT DATE 122006  TOB 22I
 STATUS P  LOCATION B9997   TRAN DT 122206       STMT COV DT 100105   TO 103105

                             A T T A C H M E N T S
     N  HOME HEALTH         N  PACEMAKER                N  THERAPY PT
     N  AIR/AMBULANCE       N  OP REHAB / THERAPY OT    N  THERAPY RT
     N  THERAPY ST          N  THERAPY CR               N  THERAPY MS
     N  THERAPY PS          N  THERAPY SN               N  ESRD ATTACH

 REMARKS:
ADMININTRATIVE LAW JUDGE (ALJ) MANDATE TO RE-REVIEW THE CLAIM WITHOUT THE
BLOOD GLUCOSE LCD.       122006 72473

37205                                                           <== REASON CODES
     PRESS PF3-EXIT  PF5-SCROLL BKWD  PF6-SCROLL FWD  PF7-PREV   PF8-NEXT
```

```
MAP1039        M E D I C A R E - A   O N L I N E   S Y S T E M        PAGE 09
 SC                               UB92 CLAIM INQUIRY
 DCN 20635400270008       04  HIC [redacted]    RECEIPT DATE 122006   TOB 22I
 STATUS P  LOCATION B9996     TRAN DT 122106    STMT COV DT 100105    TO 103105
                        U P D A T E   I N D I C A T O R S
 MED REV RSNS        50200
 MED REV ANALYST               OPER ID            SST061221  TYPE SAVINGS IND
 KRON OVERRIDE                 OUTLIER RLSE CD               ALIEN OVERRIDE
 MCE/OCE BYPASS      N         PRE ENT PSY DY CNT
 POST PAY IND                  POST PAY REASON
 PRO ERROR REAS                ADR DT
                                   A M O U N T S
         MSP SAVINGS AMT                        PATIENT RESPON.       41.76
         MSP BLOOD DEDUCT                       MSP CASH DEDUCT
         MSP TOTAL COINS

        A U T H O R I Z E D   R E A S O N   C O D E   O V E R R I D E S
 REASON          REASON          REASON          REASON          REASON
 CODE   OPER-ID  CODE   OPER-ID  CODE   OPER-ID  CODE   OPER-ID  CODE   OPER-ID

37205                                                     <== REASON CODES
             PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

Date: 12/22/2006 Time: 9:01:41 AM

```
MAP103A        M E D I C A R E - A   O N L I N E   S Y S T E M        PAGE 10
 SC                                UB92 CLAIM INQUIRY
 DCN 20635400270008       04   HIC[redacted]       RECEIPT DATE 122006  TOB 22I
 STATUS P  LOCATION B9996      TRAN DT 122106      STMT COV DT 100105   TO 103105

             P R O C E S S E D   C L A I M   I N F O R M A T I O N
     ACT MEDA REIM        167.08                LTR DAYS 2ND YR
     BENE INTEREST                              OUTLIER DAYS
     BENE REIM AMT                              PAID DATE                 122206
     BLOOD PNT CHG                              PATIENT PD BLD DED
     CANCEL DATE                                PATIENT PD EXC BLD
     CLEAN CLM IND             M                PIP IND                        N
     COIN DY 1ST YR                             PROVIDER INTEREST
     COIN DY 2ND YR                             PROVIDER REIM             167.08
     COST RPT DAYS                              PROVIDER REIM METH             P
     DRG CODE                                   PROV REIM RATE              0.89
     DRG REIM                                   VER PAT CASH DED
     ESRD FIN REIM                              VER PAT COINS              41.76
     ESRD HLD REIM                              VER PAT PD BLD DED
     EXP TO DEDUCT        208.84                PROCESS DATE              122106
     DRG PATIENT AGE         071                PROV REIM RATE = 0            NO

 37205                                                       <== REASON CODES
            PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

Date: 12/22/2006 Time: 9:01:42 AM

```
MAP103B        M E D I C A R E - A   O N L I N E   S Y S T E M       PAGE 11
 SC                              UB92 CLAIM INQUIRY
 DCN 20635400270008       04   HIC [redacted]    RECEIPT DATE 122006   TOB 22I
 STATUS P  LOCATION B9996      TRAN DT 122106    STMT COV DT 100105    TO 103105

                            C W F   I N F O R M A T I O N

      TIMES SENT TO CWF  01      CASH DED OVR CD             REASON FOR ENTITLE
      PRIOR DRG CODE             CWF ACTION CD       3       DISPOSITION CD     01
      CWF RECORD ID    HUOP      UNIBILL RIC         W       PRO REVIEW CD
      PASS/DIEM                  PART A EFF     110198       PART B EFF
      CWF MSP CD                 CWF TRANS DT   122006       CWF REPLY DT  122006
      CWF CLAIM OVERRIDES:

             C L A I M   L E V E L   A N S I   R E A S O N   C O D E S

    ADJ REASON: 93    GROUP: OA   APPEALS: MA01  MA67

    TOTAL CONTRACTUAL AMOUNT              ANSI

 37205                                                          <== REASON CODES
             PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

MAP103C M E D I C A R E - A O N L I N E S Y S T E M PAGE 12
SC UB92 CLAIM INQUIRY
DCN 20635400270008 04 HIC [redacted] RECEIPT DATE 122006 TOB 22I
STATUS P LOCATION B9996 TRAN DT 122106 STMT COV DT 100105 TO 103105

H M O I N F O R M A T I O N

| HMO ID | HMO OPTION | HMO EFF DT | HMO CANC DT | HMO PAY-CD | DEMO IND |
|---|---|---|---|---|---|
| | | | | 0 | |

M S P I N F O R M A T I O N

| MSP PAY IND | ORIG MSP CODE | SEC PAYER RPT TYPE | SEC PAYER TYPE SAVINGS | PATIENT AGE | LCC MSP IND |
|---|---|---|---|---|---|
| 0 | | | | 071 | |

P R O I N F O R M A T I O N

| PRO ID | PRO CNTL NBR | PRO PROCESS DATE | PRO DRG CODE | 7 DAY READMIT |
|---|---|---|---|---|
| 0 | | | | |

37205 <== REASON CODES

PRESS PF3-EXIT PF7-PREV PAGE PF8-NEXT PAGE

Date: 12/22/2006 Time: 9:01:43 AM

MAP103D M E D I C A R E - A O N L I N E S Y S T E M PAGE 13
SC UB92 CLAIM INQUIRY
DCN 20635400270008 04 HIC [redacted] RECEIPT DATE 122006 TOB 221
STATUS P LOCATION B9996 TRAN DT 122106 STMT COV DT 100105 TO 103105

M I S C E L L A N E O U S

ADJ REJ CD P
CLAIM TYPE
DME/ESRD IND
ROUTING UBC 8

NEW CLM IND
UNIFORM BILL CD 8
ESRD REDUCT
BATCH AUD DT

BATCH AUD IND
ESRD PAY TYPE 0

ORIG MEDA REIMB
ORIG EXP TO DED
ORIG PAT CASH DED
ORIG PAT PD BLOOD DED
ORIG CST REP DAYS

ORIG PROV REIMB
ORIG PPS PAYMENT
ORIG PASS THRU PER DIEM
ORIG PAT COIN 41.76
CLAIM DUP DCN#

C L A I M P A T H

004 Y 005 Y 006 Y 015 Y 025 Y 030 Y 035 Y 050 Y 055 Y 070 Y 080 Y 085 Y 089 Y
B90 Y B99 S

37205 <== REASON CODES
PRESS PF3-EXIT PF7-PREV PAGE PF8-NEXT PAGE

Date: 12/22/2006 Time: 9:01:44 AM

MAP103E M E D I C A R E - A O N L I N E S Y S T E M PAGE 14

SC UB92 CLAIM INQUIRY

DCN 20635400270008 04 HIC [redacted] RECEIPT DATE 122006 TOB 221

STATUS P LOCATION B9996 TRAN DT 122106 STMT COV DT 100105 TO 103105

P P S / P R I C E R C A L C U L A T I O N

| | | | | |
|---|---|---|---|---|
| CARRIER ID | 03502 | CUTOFF DYS | | DSCHRG FRCTN |
| LOCALITY | 09 | FSP PCT | | DRG WT |
| FEDERAL PORTION | | LTR DYS USED | | DRG WT FRCTN |
| HOSPITAL PORTION | | NAT PCT | | C TOT PAY |
| MSA PRICER | 7160 | PAYMENT | | C HSP |
| IRF/IPF AMT | | RTC | 00 | C FSP |
| AVG LOS | | PSR BLND YR | 0 | C OUTLIER |
| B LOS | | REG DYS USED | | C OLD HARM |
| B REVIEW CD | 00 | WAGE INDEX | | C DSH ADJ |
| LUGAR RE-CLASS CD | | PPS INDICATOR | N | C IME ADJ |
| ASC-RTC | | SOLE COM HSP IND | | C EXCEPTIONS |
| DEMO CD | | RUG IND/PHASE | | C 2 PAY CODE |
| PPS DOLLAR THRES | | | | C 2 FSP |
| SUM THRPY VISITS | | EPISODE TOT VIS | | C 2 OUTLIER |
| CBSA PRICER | | CBSA WAGE INDEX | | ESRD WADJ RATE |

37205 <== REASON CODES

PRESS PF3-EXIT PF7-PREV PAGE PF8-NEXT PAGE

Date: 12/22/2006 Time: 9:01:44 AM

76

```
MAP103F          M E D I C A R E - A   O N L I N E   S Y S T E M          PAGE 15
 SC                                  UB92 CLAIM INQUIRY                AUDIT PAGE 01
 `CN 20635400270008        04   HIC[redacted]       RECEIPT DATE 122006   TOB 22I
 STATUS P   LOCATION B9997      TRAN DT 122206      STMT COV DT 100105    TO 103105

                          C L A I M   A U D I T   T R A I L

 TRAN DT S  LOC    OPER ID   REASON        TRAN DT S  LOC    OPER ID   REASON
  061222 P B9997 SST061222 37205            061221 P B9996 SST061221 37205
  061220 S B9099 CWT061220                  061220 S B9000 CNA72473

37205                                                          <== REASON CODES
 PRESS PF3-EXIT  PF5-UP  PF6-DWN  PF7-PREV  PF9-UPDT
```

Date: 12/26/2006 Time: 9:10:09 AM

http://a029/jeos/appEnSwPROD.html

MUTUAL OF OMAHA MEDICARE MUTUAL OF OMAHA PLAZA OMAHA NE 68175 VER# 4010-AI
465109 KINDRED NRSG CTRS WEST LLC PART B PAID DATE: 12/26/2006 REMIT#: 534 PAGE: 2

| PATIENT NAME / HIC NUMBER / FROM DT THRU DT / CLM STATUS / NPI | PATIENT CNTRL NUMBER / ICN NUMBER / NACHG HICHG TOB / COST COVDY NCOVDY | RC / RC / RC / RC | REM / REM / REM / REM | DRG# / OUTCD CAPCD / PROF COMP / DRG AMT | DRG OUT AMT / NEW TECH/ECT / MSP PAYMT / DEDUCTIBLES | COINSURANCE / COVD CHGS / NCOVD CHGS / DENIED CHGS | PAT REFUND / ESRD NET ADJ / INTEREST / PRE PAY ADJ | CONTRACT ADJ / PER DIEM RTE / PROC CD AMT / NET REIMB |
|---|---|---|---|---|---|---|---|---|
| BAILEY 1 | 1230119 | 50 | MA01 | | .00 | 41.76- | .00 | 196.20- |
| | 20530801717002 | 04 2 | | | .00 | 208.84- | .00 | .89 |
| 10/01/2005 10/31/2005 | 228 | | | .00 | .00 | 196.20- | .00 | 208.84- |
| 22 | | | | .00 | .00 | .00 | .00 | 167.08- |
| BAILEY 1 | 1230119 | 50 | MA01 | | .00 | 41.76 | .00 | 196.20 |
| | 20635400270008 | 04 2 | | | .00 | 208.84 | .00 | .89 |
| 10/01/2005 10/31/2005 | 221 | | | .00 | .00 | 196.20 | .00 | 208.84 |
| 19 | | | | .00 | .00 | .00 | .00 | 167.08 |
| SUBTOTAL FISCAL YEAR - 2005 | | | | | .00 | .00 | .00 | .00 |
| | | | | | .00 | .00 | .00 | .00 |
| | | | | .00 | .00 | .00 | .00 | .00 |
| | | | | .00 | .00 | .00 | .00 | .00 |
| | | | | | .00 | 57.67 | .00 | .00 |
| | | | | | .00 | 288.37 | .00 | .89 |
| | | | | .00 | .00 | .00 | .00 | 288.37 |
| | | | | .00 | .00 | .00 | .00 | 230.70 |
| SUBTOTAL FISCAL YEAR - 2006 | | | | | .00 | 57.67 | .00 | .00 |

CMS CENTERS for MEDICARE & MEDICAID SERVICES

# Medicare Summary Notice

January 01, 2007

LOUISE [redacted]

**CUSTOMER SERVICE INFORMATION**

**Your Medicare Number:** [redacted]

If you have questions, write or call:
MUTUAL OF OMAHA (#52280)
MEDICARE DIVISION
P.O. BOX 1602
OMAHA, NE 68101

**Call: 1-800-MEDICARE (1-800-633-4227)**
**Ask For Hospital Services**
**TDD-Telecommunication Device**
**For The Deaf: 1-877-486-2048**

**BE INFORMED:** Always review your Medicare Summary Notice for correct information about the items or services you received.

This is a summary of claims processed on 12/21/2006.

## PART B MEDICAL INSURANCE - OUTPATIENT FACILITY CLAIMS

| Dates of Service | Services Provided | Amount Charged | Non-Covered Charges | Deductible and Coinsurance | You May Be Billed | See Notes Section |
|---|---|---|---|---|---|---|
| Control number 20635400270008 04 | | | | | | |
| **Kindred Nrsg Ctrs West Llc** | | | | | | a,b,c, d |
| **Holladay Healthcare Ctr** | | | | | | |
| **4782 South Holladay Blvd** | | | | | | |
| **Salt Lake City, UT 84117** | | | | | | |
| Referred by: C. S. Fehlauer | | | | | | |
| 10/01/05-10/31/05 | Glucose blood test (82962) | $6.54 | $6.54 | $0.00 | $0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |

**(continued)**

THIS IS NOT A BILL - Keep this notice for your records.

For more information about services covered by Medicare, please see your Medicare Handbook.

**PART A HOSPITAL INSURANCE (INPATIENT)** helps pay for inpatient hospital care, inpatient care in a skilled nursing facility following a hospital stay, home health care and hospice care. Inpatient services are measured in benefit periods. A benefit period begins the first time you receive Medicare covered inpatient hospital care and ends when you have been out of the hospital or skilled nursing facility for 60 consecutive days. There is no limit to the number of benefit periods you may have.

**THE AMOUNT YOU MAY BE BILLED** for **Part A** services includes:
- **an inpatient hospital deductible** once during each benefit period,
- **a coinsurance amount for the 61st through the 90th days** of a hospital stay during each benefit period,
- **a coinsurance amount for each Lifetime Reserve Day,** which can be used if you have to stay in the hospital more than 90 days in one benefit period. Lifetime Reserve Days may be used only once.
- **a blood deductible** for the first three pints of unreplaced blood furnished to you in a calendar year in some states,
- **an inpatient coinsurance for the 21st through the 100th days** of a Medicare covered stay in a **skilled nursing facility,**
- charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

**PART B MEDICAL INSURANCE (OUTPATIENT FACILITIES)** helps pay for care provided by certified medical facilities, such as hospital outpatient departments, renal dialysis facilities, and community health centers.

**THE AMOUNT YOU MAY BE BILLED** for **PART B** services includes:
- **An annual deductible,** taken from the first Medicare Part B charges each year;
- After the deductible has been met for the year, depending on services received, a **coinsurance** amount (20 percent of the amount charged), or a fixed copayment for each service; and
- Charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

If you have supplemental insurance, it may help to pay the amounts you may be billed.

If you use this notice to claim supplemental benefits from another insurance company, make a copy for your records.

**WHEN OTHER INSURANCE PAYS FIRST:** All Medicare payments are made on the condition that you will pay Medicare back if benefits could be paid by insurance that is primary to Medicare. Types of insurance that should pay before Medicare include employer group health plans, no-fault insurance, automobile medical insurance, liability insurance and workers' compensation. Notify us right away if you have filed or could file a claim with insurance that is primary to Medicare.

**YOUR RIGHT TO APPEAL:** If you disagree with what Medicare approved for these services, you may appeal the decision. You must file your appeal within **120 days of the date you receive this notice.** Unless you show us otherwise, we assume you received this notice 5 days after the date of this notice. Follow the appeal instructions on the front of the last page of the notice. If you want **help with your appeal,** a friend or someone else can help you. Also, groups such as legal aid services may provide free assistance. To contact us for the names and telephone numbers of groups in your area, please see our Customer Service Information box on the front of this notice.

**HELP STOP MEDICARE FRAUD:** Fraud is a false representation by a person or business to get Medicare payments. Some examples of fraud include:
- offers of goods or money in exchange for your Medicare Number,
- telephone or door-to-door offers for free medical services or items, and
- claims for Medicare services/items you did not receive.
If you think a person or business is involved in fraud, you should call Medicare at the Customer Service Telephone number on the front of this notice.

**INSURANCE COUNSELING AND ASSISTANCE:** Insurance Counseling and Assistance programs are located in every State. These programs have volunteer counselors who can give you free assistance with Medicare questions, including enrollment, entitlement, Medigap, and premium issues. If you would like to know how to get in touch with your local Insurance Counseling and Assistance Program Counselor, please call us at the number shown in the Customer Service Information box on the front of this notice.

PART B MEDICAL INSURANCE - OUTPATIENT FACILITY CLAIMS (continued)

| Dates of Service | Services Provided | Amount Charged | Non-Covered Charges | Deductible and Coinsurance | You May Be Billed | See Notes Section |
|---|---|---|---|---|---|---|
| **This Claim was continued from the previous page.** | | | | | | |
| 10/01/05-10/31/05 | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 3.27 | 3.27 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 3.27 | 3.27 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | e,f |
| | Pt evaluation (97001) | 73.42 | 0.00 | 14.68 | 14.68 | |
| | Ot evaluation (97003) | 78.30 | 0.00 | 15.66 | 15.66 | |
| | Therapeutic activities (97530) | 57.12 | 0.00 | 11.42 | 11.42 | |
| **Claim Total** | | **$405.04** | **$196.20** | **$41.76** | **$41.76** | |

## Notes Section:

a The amount Medicare paid the provider for this claim is $167.08.

b This information is being sent to your private insurer(s). Send any questions regarding your benefits to them.

c This information is being sent to Medicaid. They will review it to see if additional benefits can be paid.

d This is a correction to a previously processed claim and/or deductible record.

e The information provided does not support the need for this service or item.

(continued)

For more information about services covered by Medicare, please see your Medicare Handbook.

**PART A HOSPITAL INSURANCE (INPATIENT)** helps pay for inpatient hospital care, inpatient care in a skilled nursing facility following a hospital stay, home health care and hospice care. Inpatient services are measured in benefit periods. A benefit period begins the first time you receive Medicare covered inpatient hospital care and ends when you have been out of the hospital or skilled nursing facility for 60 consecutive days. There is no limit to the number of benefit periods you may have.

**THE AMOUNT YOU MAY BE BILLED** for **Part A** services includes:

- **an inpatient hospital deductible** once during each benefit period,
- **a coinsurance amount for the 61st through the 90th days** of a hospital stay during each benefit period,
- **a coinsurance amount for each Lifetime Reserve Day,** which can be used if you have to stay in the hospital more than 90 days in one benefit period. Lifetime Reserve Days may be used only once.
- **a blood deductible** for the first three pints of unreplaced blood furnished to you in a calendar year in some states,
- **an inpatient coinsurance for the 21st through the 100th days** of a Medicare covered stay in a **skilled nursing facility,**
- charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

**PART B MEDICAL INSURANCE (OUTPATIENT FACILITIES)** helps pay for care provided by certified medical facilities, such as hospital outpatient departments, renal dialysis facilities, and community health centers.

**THE AMOUNT YOU MAY BE BILLED** for **PART B** services includes:

- **An annual deductible,** taken from the first Medicare Part B charges each year;
- After the deductible has been met for the year, depending on services received, a **coinsurance** amount (20 percent of the amount charged), or a fixed copayment for each service; and
- Charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

If you have supplemental insurance, it may help to pay the amounts you may be billed.

If you use this notice to claim supplemental benefits from another insurance company, make a copy for your records.

**WHEN OTHER INSURANCE PAYS FIRST:** All Medicare payments are made on the condition that you will pay Medicare back if benefits could be paid by insurance that is primary to Medicare. Types of insurance that should pay before Medicare include employer group health plans, no-fault insurance, automobile medical insurance, liability insurance and workers' compensation. Notify us right away if you have filed or could file a claim with insurance that is primary to Medicare.

**YOUR RIGHT TO APPEAL:** If you disagree with what Medicare approved for these services, you may appeal the decision. You must file your appeal within **120 days of the date you receive this notice.** Unless you show us otherwise, we assume you received this notice 5 days after the date of this notice. Follow the appeal instructions on the front of the last page of the notice. If you want **help with your appeal,** a friend or someone else can help you. Also, groups such as legal aid services may provide free assistance. To contact us for the names and telephone numbers of groups in your area, please see our Customer Service Information box on the front of this notice.

**HELP STOP MEDICARE FRAUD:** Fraud is a false representation by a person or business to get Medicare payments. Some examples of fraud include:

- offers of goods or money in exchange for your Medicare Number,
- telephone or door-to-door offers for free medical services or items, and
- claims for Medicare services/items you did not receive.

If you think a person or business is involved in fraud, you should call Medicare at the Customer Service Telephone number on the front of this notice.

**INSURANCE COUNSELING AND ASSISTANCE:** Insurance Counseling and Assistance programs are located in every State. These programs have volunteer counselors who can give you free assistance with Medicare questions, including enrollment, entitlement, Medigap, and premium issues. If you would like to know how to get in touch with your local Insurance Counseling and Assistance Program Counselor, please call us at the number shown in the Customer Service Information box on the front of this notice.

Notes Section: (continued)

f  You should not be billed for this service.  You do not have to pay this
   amount.

**Deductible Information:**

You have met the Part B deductible for 2005.

**General Information:**

As requested, this is a duplicate copy of your Medicare Summary Notice.

If you change your address, please contact the Social Security
Administration by calling 1-800-772-1213.

You have the right to make a request in writing for an itemized statement which
details each Medicare item or service which you have received from your
physician, hospital, or any other health supplier or health professional.
Please contact them directly, in writing, if you would like an itemized
statement.

Compare the services you receive with those that appear on your Medicare
Summary Notice.  If you have questions, call your doctor or provider.  If you
feel further investigation is needed due to possible fraud or abuse, call the
phone number in the Customer Service Information Box.

ALERT: Coverage by Medicare will be limited for outpatient physical therapy
(PT), speech-language pathology (SLP), and occupational therapy (OT) services
for services received on January 1, 2006 through December 31, 2007.  The limits
are $1,740 in 2006 and $1780 in 2007 for PT and SLP combined and $1740 in 2006
and $1780 in 2007 for OT.  Medicare pays up to 80 percent of the limits after
the deductible has been met.  These limits don't apply to certain therapy
approved by Medicare or to therapy you get at hospital outpatient departments,
unless you are a resident of and occupy a Medicare-certified bed in a skilled
nursing facility.  If you have questions, please call 1-800-MEDICARE.

For more information about services covered by Medicare, please see your Medicare Handbook.

**PART A HOSPITAL INSURANCE (INPATIENT)** helps pay for inpatient hospital care, inpatient care in a skilled nursing facility following a hospital stay, home health care and hospice care. Inpatient services are measured in benefit periods. A benefit period begins the first time you receive Medicare covered inpatient hospital care and ends when you have been out of the hospital or skilled nursing facility for 60 consecutive days. There is no limit to the number of benefit periods you may have.

**THE AMOUNT YOU MAY BE BILLED** for **Part A** services includes:

- **an inpatient hospital deductible** once during each benefit period,
- **a coinsurance amount for the 61st through the 90th days** of a hospital stay during each benefit period,
- **a coinsurance amount for each Lifetime Reserve Day,** which can be used if you have to stay in the hospital more than 90 days in one benefit period. Lifetime Reserve Days may be used only once.
- **a blood deductible** for the first three pints of unreplaced blood furnished to you in a calendar year in some states,
- **an inpatient coinsurance for the 21st through the 100th days** of a Medicare covered stay in a **skilled nursing facility**,
- charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

**PART B MEDICAL INSURANCE (OUTPATIENT FACILITIES)** helps pay for care provided by certified medical facilities, such as hospital outpatient departments, renal dialysis facilities, and community health centers.

**THE AMOUNT YOU MAY BE BILLED** for **PART B** services includes:

- **An annual deductible**, taken from the first Medicare Part B charges each year;
- After the deductible has been met for the year, depending on services received, a **coinsurance** amount (20 percent of the amount charged), or a fixed copayment for each service; and
- Charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

If you have supplemental insurance, it may help to pay the amounts you may be billed.

If you use this notice to claim supplemental benefits from another insurance company, make a copy for your records.

**WHEN OTHER INSURANCE PAYS FIRST:** All Medicare payments are made on the condition that you will pay Medicare back if benefits could be paid by insurance that is primary to Medicare. Types of insurance that should pay before Medicare include employer group health plans, no-fault insurance, automobile medical insurance, liability insurance and workers' compensation. Notify us right away if you have filed or could file a claim with insurance that is primary to Medicare.

**YOUR RIGHT TO APPEAL:** If you disagree with what Medicare approved for these services, you may appeal the decision. You must file your appeal within **120 days of the date you receive this notice**. Unless you show us otherwise, we assume you received this notice 5 days after the date of this notice. Follow the appeal instructions on the front of the last page of the notice. If you want **help with your appeal**, a friend or someone else can help you. Also, groups such as legal aid services may provide free assistance. To contact us for the names and telephone numbers of groups in your area, please see our Customer Service Information box on the front of this notice.

**HELP STOP MEDICARE FRAUD:** Fraud is a false representation by a person or business to get Medicare payments. Some examples of fraud include:

- offers of goods or money in exchange for your Medicare Number,
- telephone or door-to-door offers for free medical services or items, and
- claims for Medicare services/items you did not receive.

If you think a person or business is involved in fraud, you should call Medicare at the Customer Service Telephone number on the front of this notice.

**INSURANCE COUNSELING AND ASSISTANCE:** Insurance Counseling and Assistance programs are located in every State. These programs have volunteer counselors who can give you free assistance with Medicare questions, including enrollment, entitlement, Medigap, and premium issues. If you would like to know how to get in touch with your local Insurance Counseling and Assistance Program Counselor, please call us at the number shown in the Customer Service Information box on the front of this notice.

General Information (continued):

If you are not due a payment check from Medicare, your Medicare summary notices (MSN) will now be mailed to you on a quarterly basis. You will no longer receive a monthly statement in the mail for these types of MSNs. You will now receive a statement every 90 days summarizing all of your Medicare claims. You may receive a bill from your provider before you receive an MSN. Please compare the MSN with the bill from your provider to ensure you paid the appropriate amount for your services.

Protect your Medicare number as you would a credit card number.

**Appeals Information - Part B (Outpatient)**

**If you disagree with any claims decisions on either PART A or PART B of this notice,** your appeal must be received by **May 06, 2007.**
Follow the instructions below:

1) Circle the item(s) you disagree with and explain why you disagree.

2) Send this notice, or a copy, to the address in the "Customer Service Information" box on Page 1. (You may also send any additional information you may have about your appeal.)

3) Sign here ______________________________ Phone number (____)____________

# ABOUT YOUR MEDICARE BENEFITS

For more information about services covered by Medicare, please see your Medicare Handbook.

**PART A HOSPITAL INSURANCE (INPATIENT)** helps pay for inpatient hospital care, inpatient care in a skilled nursing facility following a hospital stay, home health care and hospice care. Inpatient services are measured in benefit periods. A benefit period begins the first time you receive Medicare covered inpatient hospital care and ends when you have been out of the hospital or skilled nursing facility for 60 consecutive days. There is no limit to the number of benefit periods you may have.

**THE AMOUNT YOU MAY BE BILLED** for **Part A** services includes:

- **an inpatient hospital deductible** once during each benefit period,
- **a coinsurance amount for the 61st through the 90th days** of a hospital stay during each benefit period,
- **a coinsurance amount for each Lifetime Reserve Day**, which can be used if you have to stay in the hospital more than 90 days in one benefit period. Lifetime Reserve Days may be used only once.
- **a blood deductible** for the first three pints of unreplaced blood furnished to you in a calendar year in some states,
- **an inpatient coinsurance for the 21st through the 100th days** of a Medicare covered stay in a **skilled nursing facility,**
- charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

**PART B MEDICAL INSURANCE (OUTPATIENT FACILITIES)** helps pay for care provided by certified medical facilities, such as hospital outpatient departments, renal dialysis facilities, and community health centers.

**THE AMOUNT YOU MAY BE BILLED** for **PART B** services includes:

- **An annual deductible,** taken from the first Medicare Part B charges each year;
- After the deductible has been met for the year, depending on services received, a **coinsurance** amount (20 percent of the amount charged), or a fixed copayment for each service; and
- Charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

If you have supplemental insurance, it may help to pay the amounts you may be billed.

If you use this notice to claim supplemental benefits from another insurance company, make a copy for your records.

**WHEN OTHER INSURANCE PAYS FIRST:** All Medicare payments are made on the condition that you will pay Medicare back if benefits could be paid by insurance that is primary to Medicare. Types of insurance that should pay before Medicare include employer group health plans, no-fault insurance, automobile medical insurance, liability insurance and workers' compensation. Notify us right away if you have filed or could file a claim with insurance that is primary to Medicare.

**YOUR RIGHT TO APPEAL:** If you disagree with what Medicare approved for these services, you may appeal the decision. You must file your appeal within **120 days of the date you receive this notice**. Unless you show us otherwise, we assume you received this notice 5 days after the date of this notice. Follow the appeal instructions on the front of the last page of the notice. If you want **help with your appeal**, a friend or someone else can help you. Also, groups such as legal aid services may provide free assistance. To contact us for the names and telephone numbers of groups in your area, please see our Customer Service Information box on the front of this notice.

**HELP STOP MEDICARE FRAUD:** Fraud is a false representation by a person or business to get Medicare payments. Some examples of fraud include:

- offers of goods or money in exchange for your Medicare Number,
- telephone or door-to-door offers for free medical services or items, and
- claims for Medicare services/items you did not receive.

If you think a person or business is involved in fraud, you should call Medicare at the Customer Service Telephone number on the front of this notice.

**INSURANCE COUNSELING AND ASSISTANCE:** Insurance Counseling and Assistance programs are located in every State. These programs have volunteer counselors who can give you free assistance with Medicare questions, including enrollment, entitlement, Medigap, and premium issues. If you would like to know how to get in touch with your local Insurance Counseling and Assistance Program Counselor, please call us at the number shown in the Customer Service Information box on the front of this notice.

```
MAP1031          M E D I C A R E - A   O N L I N E   S Y S T E M       PAGE 01
 SC                                UB92 CLAIM INQUIRY
  CN 20534002602402       04  HIC [redacted]       RECEIPT DATE 120605  TOB 220
 STATUS D  LOCATION B9997     TRAN DT 030706     STMT COV DT 110105   TO 113005
  UB-FORM: 9    BCBS PROVIDER:                   TRANSACT TYPE:
                   P A T I E N T   S T A Y   I N F O R M A T I O N
 PATIENT CONTROL NBR 1262342                    FEDERAL TAX NO. [redacted]   SUB
 STATEMENT DATES FROM 110105  TO 113005         COVERED DAYS          ORIG DAYS
 NON-COVERED DAYS          COIN DAYS            LRD                 CST RPT DYS
                                                               ORIG CST RPT DYS
                        P A T I E N T   I N F O R M A T I O N
             LAST BAILEY                        FIRST LOUISE      MIDDLE INIT
  ADDR   1 4782 S HOLLADAY BLVD                      2 HOLLADAY UT
         3                                           4
         5                                           6
         ZIP 841175444
                DATE OF BIRTH [redacted]        SEX F     MARITAL STATUS

                             A D M I S S I O N   D A T A
   ADMIT DATE 070604  HOUR       TYPE 3  SOURCE 1  NOE ACT CD     NOE DT
  DISC HM 0000   PATIENT STATUS 30    MEDICAL RECORD NO. 020530

 55615                                                          <== REASON CODES
              PRESS PF3-EXIT  PF8-NEXT PAGE
```

```
MAP1032          M E D I C A R E - A   O N L I N E   S Y S T E M       PAGE 02
 SC                                UB92 CLAIM INQUIRY
 DCN 20534002602402        04  HIC [redacted]       RECEIPT DATE 120605  TOB 220
 STATUS D  LOCATION B9997      TRAN DT 030706     STMT COV DT 110105   TO 113005

 CONDITION CODES 01 64 02    03    04    05    06    07    08    09    10

 BENE EXHAUST DATE SET      QUALIFYING STAY DATES SET       BDL CHK OVR
 PROV FLT DAYS          LTR RATE BYPASS     TECH PROV: DAYS      CHARGES

 OCCURRENCE CDS AND DATES 01            02            03            04
05            06            07            08            09            10

 OCCURRENCE SPAN CDS AND DTS (FROM / THRU)
 1                    2                    3                    4
 5                    6                    7                    8
 9                    10
 AD.DCN
       V A L U E  C O D E S  -  A M O U N T S  -  A N S I   MSP APP IND
01 76      89.00          02                       03
04                        05                       06
07                        08                       09
55615                                                       <== REASON CODES
      PRESS PF3-EXIT  PF5-SCROLL BKWD  PF6-SCROLL FWD  PF7-PREV   PF8-NEXT
```

MAP1033 M E D I C A R E - A O N L I N E S Y S T E M PAGE 03
SC UB92 CLAIM INQUIRY REV CD PAGE 01
DCN 20534002602402 04 HIC [redacted] RECEIPT DATE 120605 TOB 220
STATUS D LOCATION B9997 TRAN DT 030706 STMT COV DT 110105 TO 113005
ESRD HRS: PAT TERM ILL: MULTI-LAB: BENEFIT SAVINGS: Y

| CL | REV | HCPC | MODS | SERV DATE | RATE | TOT UNIT | COV UNIT | TOT CHRG | COV CHRG | NCOV CHRG |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 0300 | 82962 | | 1101 | | 2 | | 6.54 | | 6.54 |
| 2 | 0300 | 82962 | | 1102 | | 2 | | 6.54 | | 6.54 |
| 3 | 0300 | 82962 | | 1103 | | 2 | | 6.54 | | 6.54 |
| 4 | 0300 | 82962 | | 1104 | | 2 | | 6.54 | | 6.54 |
| 5 | 0300 | 82962 | | 1105 | | 2 | | 6.54 | | 6.54 |
| 6 | 0300 | 82962 | | 1106 | | 2 | | 6.54 | | 6.54 |
| 7 | 0300 | 82962 | | 1107 | | 2 | | 6.54 | | 6.54 |
| 8 | 0300 | 82962 | | 1108 | | 2 | | 6.54 | | 6.54 |
| 9 | 0300 | 82962 | | 1109 | | 3 | | 9.81 | | 9.81 |
| 10 | 0300 | 82962 | | 1110 | | 3 | | 9.81 | | 9.81 |
| 11 | 0300 | 82962 | | 1111 | | 3 | | 9.81 | | 9.81 |
| 12 | 0300 | 82962 | | 1112 | | 3 | | 9.81 | | 9.81 |
| 13 | 0300 | 82962 | | 1113 | | 3 | | 9.81 | | 9.81 |
| | | | | | | ===== | ===== | ========== | ========== | ========== |
| | | | | | TOTALS | 80 | 0 | 261.60 | 0.00 | 261.60 |

55615 <== REASON CODES
PRESS PF2-103I PF3-EXIT PF5-UP PF6 DOWN PF7-PREV PF8-NEXT PF11-RIGHT

MAP1033 M E D I C A R E - A O N L I N E S Y S T E M PAGE 03
SC UB92 CLAIM INQUIRY REV CD PAGE 02
DCN 20534002602402 04 HIC [redacted] RECEIPT DATE 120605 TOB 220
STATUS D LOCATION B9997 TRAN DT 030706 STMT COV DT 110105 TO 113005
ESRD HRS: PAT TERM ILL: MULTI-LAB: BENEFIT SAVINGS: Y

| CL | REV | HCPC | MODS | SERV DATE | RATE | TOT UNIT | COV UNIT | TOT CHRG | COV CHRG | NCOV CHRG |
|---|---|---|---|---|---|---|---|---|---|---|
| 14 | 0300 | 82962 | | 1114 | | 3 | | 9.81 | | 9.81 |
| 15 | 0300 | 82962 | | 1115 | | 3 | | 9.81 | | 9.81 |
| 16 | 0300 | 82962 | | 1116 | | 3 | | 9.81 | | 9.81 |
| 17 | 0300 | 82962 | | 1117 | | 3 | | 9.81 | | 9.81 |
| 18 | 0300 | 82962 | | 1118 | | 2 | | 6.54 | | 6.54 |
| 19 | 0300 | 82962 | | 1119 | | 2 | | 6.54 | | 6.54 |
| 20 | 0300 | 82962 | | 1120 | | 3 | | 9.81 | | 9.81 |
| 21 | 0300 | 82962 | | 1121 | | 3 | | 9.81 | | 9.81 |
| 22 | 0300 | 82962 | | 1122 | | 3 | | 9.81 | | 9.81 |
| 23 | 0300 | 82962 | | 1123 | | 3 | | 9.81 | | 9.81 |
| 24 | 0300 | 82962 | | 1124 | | 3 | | 9.81 | | 9.81 |
| 25 | 0300 | 82962 | | 1125 | | 3 | | 9.81 | | 9.81 |
| 26 | 0300 | 82962 | | 1126 | | 3 | | 9.81 | | 9.81 |
| | | | | | | ===== | ===== | ========== | ========== | ========== |
| | | | | | TOTALS | 80 | 0 | 261.60 | 0.00 | 261.60 |

55615 <== REASON CODES
PRESS PF2-103I PF3-EXIT PF5-UP PF6 DOWN PF7-PREV PF8-NEXT PF11-RIGHT

```
MAP1033        M E D I C A R E - A   O N L I N E   S Y S T E M       PAGE 03
 SC                              UB92 CLAIM INQUIRY                REV CD PAGE 03
 DCN 20534002602402      04  HIC [redacted]       RECEIPT DATE 120605  TOB 220
 STATUS D  LOCATION B9997    TRAN DT 030706      STMT COV DT 110105    TO 113005
    ESRD HRS:          PAT TERM ILL:      MULTI-LAB:        BENEFIT SAVINGS: Y
                       SERV                   TOT    COV
 CL  REV  HCPC MODS DATE        RATE   UNIT   UNIT    TOT CHRG    COV CHRG   NCOV CHRG
 27 0300 82962      1127                  3                9.81                   9.81
 28 0300 82962      1128                  3                9.81                   9.81
 29 0300 82962      1129                  3                9.81                   9.81
 30 0300 82962      1130                  3                9.81                   9.81
 31 0001                                                 261.60                 261.60

                                      =====  =====  ==========  ==========  ==========
                              TOTALS     80      0      261.60        0.00      261.60
55615                                                              <== REASON CODES
      PRESS PF2-103I  PF3-EXIT  PF5-UP  PF6 DOWN  PF7-PREV  PF8-NEXT  PF11-RIGHT
```

```
MAP1034        M E D I C A R E - A   O N L I N E   S Y S T E M        PAGE 04
 SC                               UB92 CLAIM INQUIRY
 DCN 20534002602402        04  HIC [redacted]   RECEIPT DATE 120605  TOB 220
 STATUS D  LOCATION B9997      TRAN DT 030706    STMT COV DT 110105  TO 113005
                          P A Y E R   I N F O R M A T I O N
 NPI#:                TAXO.CD:             FAC.ZIP:             OFFSIT/ZIP:
   CD  PAYER                               PROVIDER NO.  RI AB     PRIOR     EST AMT
 A  Z MEDICARE                              465109        Y Y
 B  3 AARPUHC                               52280         Y Y
 C
   CROSSOVER IND                                  DUE FROM PAT
   PARTNER ID

              X12 UB92   I N S U R E D   I N F O R M A T I O N
  NAME(L/F) REL REL   CERT-SSN-HIC   SEX GROUP NAME   DOB    INS GROUP NUMBE
 A BAILEY            LOUISE            F                [redacted]
                     [redacted]
 B BAILEY            LOUISE            F
              18  01 [redacted]          AARPUHC
 C

 55615                                                       <== REASON CODES
          PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

```
MAP1035        M E D I C A R E - A   O N L I N E   S Y S T E M        PAGE 05
 SC                              UB92 CLAIM INQUIRY
 DCN 20534002602402        04  HIC [redacted]     RECEIPT DATE 120605  TOB 220
 STATUS D  LOCATION B9997      TRAN DT 030706     STMT COV DT 110105   TO 113005
 MED REV ANALYST  FSSB5501
 TREATMENT AUTHORIZATION CODE   STATUS CD         EMPLOYER NAME
   1)
       STREET                      CITY                      ST     ZIP
   2)
       STREET                      CITY                      ST     ZIP
   3)
       STREET                      CITY                      ST     ZIP

 DIAG CODES  1 73300    2 25010    3 53081   4         5         6
   7          8          9          ADMIT DIAG 73300      E-CODE
                               PRO ID 0        PC         IDE
 PROC CODES  1                   2                   3
             4                   5                   6
 ATT PHYS E69796  NPI            LN FEHLAUER         FN C.        MI S
 OPR PHYS         NPI            LN                  FN           MI
 OTH PHYS         NPI            LN                  FN           MI
 VERIFY NC DT         THRU        HMO REL/OR CD    HMO AUTH
55615                                                      <== REASON CODES
            PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

```
MAP1036        M E D I C A R E - A   O N L I N E   S Y S T E M      PAGE 06
 SC                              UB92 CLAIM INQUIRY
 DCN 20534002602402     04  HIC [redacted]     RECEIPT DATE 120605  TOB 220
 STATUS D  LOCATION B9997     TRAN DT 030706    STMT COV DT 110105  TO 113005
             M S P  A D D I T I O N A L  I N F O R M A T I O N
 INSURERS ADDRESS 1
 INSURERS ADDRESS 2
             CITY                  ST     ZIP       ZIP+4
 INSURERS ADDRESS 1
 INSURERS ADDRESS 2
             CITY                  ST     ZIP       ZIP+4        MSPPS
                        E N T R Y   I N D I C A T O R S
 RTP/BDL/ADR 55615
 REJECT CD    55615  NON PAY CODE       N   CANC DCN
 PROCESS NEW HIC     NEW HIC                XREF DCN
 GENER HARDCOPY  9   TAPE TO TAPE           CWF DCN
 USER ACTION-CD I    MED REC ATTACHED    Y  MR HOSPICE REDUCED
 ADJ REQ ID          TIMELINESS IND         MR HOSPICE RO REFERRED
 ADJ CANCEL CD       PAT FILED BILL-CD      MR INCLD IN COMPOSITE
 ADJ-REAS-CD         UTIL OVERRIDE          MR REVERSAL= URC     DEMAND
 SNF TRANSFER        EMER CARE CD           BYPASS TOB 72X OVERLAP
 MSP OVR CD A    B    C    D    E    F    G    H    I    J    L    PHY SAN
55615                                                  <== REASON CODES
           PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

```
MAP1037         M E D I C A R E - A   O N L I N E   S Y S T E M        PAGE 07
 SC                                UB92 CLAIM INQUIRY              REMARKS PAGE 01
 DCN 20534002602402      04   HIC [redacted]     RECEIPT DATE 120605  TOB 220
 STATUS D  LOCATION B9997     TRAN DT 030706     STMT COV DT 110105   TO 113005

                                A T T A C H M E N T S
      N  HOME HEALTH              N  PACEMAKER              N  THERAPY PT
      N  AIR/AMBULANCE            N  OP REHAB / THERAPY OT  N  THERAPY RT
      N  THERAPY ST               N  THERAPY CR             N  THERAPY MS
      N  THERAPY PS               N  THERAPY SN             N  ESRD ATTACH

 REMARKS:

 55615                                                         <== REASON CODES
      PRESS PF3-EXIT  PF5-SCROLL BKWD  PF6-SCROLL FWD  PF7-PREV   PF8-NEXT
```

```
MAP1039        M E D I C A R E - A   O N L I N E   S Y S T E M        PAGE 09
 SC                                UB92 CLAIM INQUIRY
 DCN 20534002602402        04   HIC [redacted]       RECEIPT DATE 120605   TOB 220
 STATUS D  LOCATION B9997       TRAN DT 030706      STMT COV DT 110105    TO 113005
                          U P D A T E   I N D I C A T O R S
 MED REV RSNS        50200
 MED REV ANALYST  FSSB5501   OPER ID              SST060307  TYPE SAVINGS IND
 KRON OVERRIDE               OUTLIER RLSE CD                 ALIEN OVERRIDE
 MCE/OCE BYPASS              PRE ENT PSY DY CNT
 POST PAY IND                POST PAY REASON
 PRO ERROR REAS              ADR DT   120705
                                  A M O U N T S
         MSP SAVINGS AMT                          PATIENT RESPON.
         MSP BLOOD DEDUCT                         MSP CASH DEDUCT
         MSP TOTAL COINS

         A U T H O R I Z E D   R E A S O N   C O D E   O V E R R I D E S
 REASON          REASON          REASON          REASON          REASON
 CODE  OPER-ID   CODE  OPER-ID   CODE  OPER-ID   CODE  OPER-ID   CODE  OPER-ID

55615                                                        <== REASON CODES
          PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

```
MAP103A         M E D I C A R E - A   O N L I N E   S Y S T E M     PAGE 10
 SC                               UB92 CLAIM INQUIRY
 DCN 20534002602402      04  HIC [redacted]    RECEIPT DATE 120605  TOB 220
 STATUS D  LOCATION B9997    TRAN DT 030706    STMT COV DT 110105   TO 113005

          P R O C E S S E D   C L A I M   I N F O R M A T I O N
    ACT MEDA REIM                              LTR DAYS 2ND YR
    BENE INTEREST                              OUTLIER DAYS
    BENE REIM AMT                              PAID DATE                030806
    BLOOD PNT CHG                              PATIENT PD BLD DED
    CANCEL DATE                                PATIENT PD EXC BLD
    CLEAN CLM IND         E                    PIP IND                       N
    COIN DY 1ST YR                             PROVIDER INTEREST
    COIN DY 2ND YR                             PROVIDER REIM
    COST RPT DAYS                              PROVIDER REIM METH            P
    DRG CODE                                   PROV REIM RATE             0.89
    DRG REIM                                   VER PAT CASH DED
    ESRD FIN REIM                              VER PAT COINS
    ESRD HLD REIM                              VER PAT PD BLD DED
    EXP TO DEDUCT                              PROCESS DATE             030606
    DRG PATIENT AGE     071                    PROV REIM RATE = 0           NO

 55615                                                    <== REASON CODES
          PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

```
MAP103B        M E D I C A R E - A   O N L I N E   S Y S T E M        PAGE 11
 SC                                   UB92 CLAIM INQUIRY
 DCN 20534002602402        04   HIC [redacted]       RECEIPT DATE 120605  TOB 220
 STATUS D  LOCATION B9997       TRAN DT 030706       STMT COV DT 110105   TO 113005

                           C W F   I N F O R M A T I O N

     TIMES SENT TO CWF  01       CASH DED OVR CD             REASON FOR ENTITLE
     PRIOR DRG CODE              CWF ACTION CD       1       DISPOSITION CD     01
     CWF RECORD ID    HUOP       UNIBILL RIC         W       PRO REVIEW CD
     PASS/DIEM                   PART A EFF     110198       PART B EFF
     CWF MSP CD                  CWF TRANS DT   030306       CWF REPLY DT  030306
     CWF CLAIM OVERRIDES:

          C L A I M   L E V E L   A N S I   R E A S O N   C O D E S

   ADJ REASON: 50     GROUP: CO    APPEALS: MA01

   TOTAL CONTRACTUAL AMOUNT                ANSI

 55615                                                          <== REASON CODES
            PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

MAP103C M E D I C A R E - A O N L I N E S Y S T E M PAGE 12
SC UB92 CLAIM INQUIRY
DCN 20534002602402 04 HIC [redacted] RECEIPT DATE 120605 TOB 220
STATUS D LOCATION B9997 TRAN DT 030706 STMT COV DT 110105 TO 113005

H M O I N F O R M A T I O N

| HMO ID | HMO OPTION | HMO EFF DT | HMO CANC DT | HMO PAY-CD | DEMO IND |
|---|---|---|---|---|---|
| | | | | 0 | |

M S P I N F O R M A T I O N

| MSP PAY IND | ORIG MSP CODE | SEC PAYER RPT TYPE | SEC PAYER TYPE SAVINGS | PATIENT AGE | LCC MSP IND |
|---|---|---|---|---|---|
| 0 | | | | 072 | |

P R O I N F O R M A T I O N

| PRO ID | PRO CNTL NBR | PRO PROCESS DATE | PRO DRG CODE | 7 DAY READMIT |
|---|---|---|---|---|
| 0 | | | | |

55615 <== REASON CODES
PRESS PF3-EXIT PF7-PREV PAGE PF8-NEXT PAGE

```
MAP103D        M E D I C A R E - A   O N L I N E   S Y S T E M       PAGE 13
 SC                                UB92 CLAIM INQUIRY
 DCN 20534002602402        04  HIC [redacted]      RECEIPT DATE 120605  TOB 220
 STATUS D  LOCATION B9997      TRAN DT 030706      STMT COV DT 110105   TO 113005

                            M I S C E L L A N E O U S
  ADJ REJ CD                  NEW CLM IND                BATCH AUD IND
  CLAIM TYPE A                UNIFORM BILL CD 2          ESRD PAY TYPE 0
  DME/ESRD IND                ESRD REDUCT
  ROUTING UBC 8               BATCH AUD DT

  ORIG MEDA REIMB                        ORIG PROV REIMB
  ORIG EXP TO DED                        ORIG PPS PAYMENT
  ORIG PAT CASH DED                      ORIG PASS THRU PER DIEM
  ORIG PAT PD BLOOD DED                  ORIG PAT COIN
  ORIG CST REP DAYS                      CLAIM DUP DCN#

                               C L A I M   P A T H
 O04 Y O05 Y O06 Y O15 Y O25 Y O30 Y O35 Y O50 Y O55 Y O70 Y O80 Y O85 Y O89 Y
 B90 Y B99 S

 55615                                                          <== REASON CODES
           PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

```
MAP103E        M E D I C A R E - A   O N L I N E   S Y S T E M        PAGE 14
 SC                              UB92 CLAIM INQUIRY
 DCN 20534002602402       04   HIC[redacted]   RECEIPT DATE 120605   TOB 220
 STATUS D  LOCATION B9997      TRAN DT 030706    STMT COV DT 110105    TO 113005

                    P P S / P R I C E R   C A L C U L A T I O N
 CARRIER ID          00823       CUTOFF DYS                  DSCHRG FRCTN
 LOCALITY            09          FSP PCT                     DRG WT
 FEDERAL PORTION                 LTR DYS USED                DRG WT FRCTN
 HOSPITAL PORTION                NAT PCT                     C TOT PAY
 MSA PRICER          7160        PAYMENT                     C HSP
 IRF/IPF AMT                     RTC              00         C FSP
 AVG LOS                         PSR BLND YR      0          C OUTLIER
 B LOS                           REG DYS USED                C OLD HARM
 B REVIEW CD         00          WAGE INDEX                  C DSH ADJ
 LUGAR RE-CLASS CD               PPS INDICATOR   N           C IME ADJ
 ASC-RTC                         SOLE COM HSP IND            C EXCEPTIONS
 DEMO CD                         RUG IND/PHASE               C 2 PAY CODE
 PPS DOLLAR THRES                                            C 2 FSP
 SUM THRPY VISITS                EPISODE TOT VIS             C 2 OUTLIER
 CBSA PRICER                     CBSA WAGE INDEX             ESRD WADJ RATE

 55615                                                      <== REASON CODES
             PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

MAP103F M E D I C A R E - A O N L I N E S Y S T E M PAGE 15
SC UB92 CLAIM INQUIRY AUDIT PAGE 01
DCN 20534002602402 04 HIC [redacted] RECEIPT DATE 120605 TOB 220
STATUS D LOCATION B9997 TRAN DT 030706 STMT COV DT 110105 TO 113005

C L A I M A U D I T T R A I L

| TRAN DT | S | LOC | OPER ID | REASON | TRAN DT | S | LOC | OPER ID | REASON |
|---|---|---|---|---|---|---|---|---|---|
| 060307 | D | B9997 | SST060307 | 55615 | 060306 | D | B9996 | SST060306 | 55615 |
| 060303 | S | B9099 | CWT060303 | | 060303 | S | B9000 | CNA69047 | |
| 060123 | S | MRDOC | CNA75613 | 39700 | 051207 | S | B6001 | BATCH ADR | 39700 |
| 051207 | S | B6000 | FSSA | 50200 | 051206 | S | B0100 | EMC-4010A | |

55615 <== REASON CODES
PRESS PF3-EXIT PF5-UP PF6-DWN PF7-PREV PF9-UPDT

MAP103F M E D I C A R E - A O N L I N E S Y S T E M PAGE 15
SC UB92 CLAIM INQUIRY AUDIT PAGE 01
DCN 20534002602402 04 HIC [redacted] RECEIPT DATE 120605 TOB 220
STATUS D LOCATION B9997 TRAN DT 030706 STMT COV DT 110105 TO 113005

C L A I M A U D I T T R A I L

| TRAN DT | S | LOC | OPER ID | REASON | TRAN DT | S | LOC | OPER ID | REASON |
|---|---|---|---|---|---|---|---|---|---|
| 060307 | D | B9997 | SST060307 | 55615 | 060306 | D | B9996 | SST060306 | 55615 |
| 060303 | S | B9099 | CWT060303 | | 060303 | S | B9000 | CNA69047 | |
| 060123 | S | MRDOC | CNA75613 | 39700 | 051207 | S | B6001 | BATCH ADR | 39700 |
| 051207 | S | B6000 | FSSA | 50200 | 051206 | S | B0100 | EMC-4010A | |

55615 <== REASON CODES

PRESS PF3-EXIT PF5-UP PF6-DWN PF7-PREV PF9-UPDT

Date: 03/20/2007 Time: 9:37:49 AM

CMS CENTERS for MEDICARE & MEDICAID SERVICES

MEDICARE Part A Intermediary

REPORT: 001 MEDICARE PART A - 52280 PROVIDER NUMBER: 465109
DATE: 12/07/05 ADDITIONAL DEVELOPMENT REQUEST TYPE REQUEST: MEDICAL
BILL TYPE: 223

HOLLADAY HEALTHCARE CENTER
4782 S HOLLADAY BLVD
HOLLADAY UT 84117

WE HAVE REVIEWED YOUR CLAIM RECORDS AND FOUND THAT ADDITIONAL DEVELOPMENT WILL BE NECESSARY BEFORE PROCESSING CAN BE FINALIZED. TO ASSIST YOU IN PROVIDING THE REQUIRED INFORMATION, WE HAVE ASSIGNED REASON CODES TO THE AFFECTED CLAIM RECORD (SEE BELOW) FOR YOUR REVIEW. PLEASE REFER TO THE ACCOMPANYING LIST FOR EXPLANATION OF THE ASSIGNED CODE, AND ENTER THE REQUIRED INFORMATION IN THE SPACE PROVIDED BELOW EACH CLAIM RECORD AND RETURN WITHIN 30 DAYS TO THE: OMB CONTROL# 0938-0969

MEDICAL REVIEW DEPARTMENT
MUTUAL OF OMAHA MEDICARE
PO BOX 1602
OMAHA NE 68101

| MEDICAL REC NO. DCN | PATIENT NAME/ HIC NUMBER | | FROM/TO DATES | OPR-MED ANALYST | TOTAL CHARGES |
|---|---|---|---|---|---|
| 020530 20534002602402 | BAILEY | LOUISE | 110105 113005 | M699 | 261.60 |

REASONS: 50200

50200
PLEASE SUBMIT THE FOLLOWING INFORMATION TO SUPPORT BLOOD GLUCOSE SERVICES
- PHYSICIAN ORDER(S) TO INCLUDE BLOOD GLUCOSE TESTING.
- DOCUMENTATION FOR THE MEDICAL NECESSITY FOR EACH TEST BILLED, THIS MAY INCLUDE NURSE'S NOTES AND OR PHYSICIAN PROGRESS NOTES.
- RESULTS OF EACH BLOOD GLUCOSE/ACCUCHECK TEST BILLED.
- DOCUMENTATION OF PHYSICIAN NOTIFICATION OF EACH TEST RESULT NOTING THE USE OF THE RESULTS TO MODIFY TREATMENT.
- DETAILED ITEMIZATION OF CHARGES BILLED.
- HISTORY AND PHYSICAL SUPPORTING THE DIAGNOSIS OF DIABETES

Holladay Healthcare Center

A Kindred Community

December 12, 2005

Medicare Medical Review Unit
Mutual of Omaha Insurance Company
Medicare Area - Medical Reviews
P. O. Box 1602
Omaha, NE 68101

*Re: Request for Blood Glucose Testing Documentation/Information*
*Provider Name/Number:* Holladay Health Care Ctr
*Beneficiary Name:* Bailey, Louise
*HICN:* [redacted]
*Dates of Services:* 11-1-05 to 11-30-05

To Whom It May Concern:

We are in receipt of your request for information dated 12-7-05. Pursuant to your request, the following documents are enclosed for your review.

| | No. of Pages |
|---|---|
| Physician Order(s) for blood glucose testing (BGT) | [ ] |
| Documentation of medical necessity for BGT | [ ] |
| Documentation of BGT results | [ ] |
| Documentation of any physician notification of BGT results and any resulting physician orders | [ ] |
| National BGT Coverage Decision | [ 4 ] |
| Letter to Mutual of Omaha, dated April 22, 2005, with attachment | [ 11 ] |
| Total number of pages submitted for review | [ 28 ] |

Should you have any questions, please contact the undersigned at [phone number]. 801-277-7002

Cindy Pason Bom
Name, Credentials

cc: Facility Executive Director
Regional Director of Utilization
Claim Tracking File

IS MAILING 23 JAN '06

For Mutual of Omaha Medicare's use only:
Received ____ Analyzed ____ Region ____ Clerk # ____
Reason Code(s) ____ MR HCPCS Code(s) ____
MR Decision ____
MR Rev Code ____
MR All ____

Medically reviewed by ____ Date ____
Overridden by ____ Date ____

4782 South Holladay Boulevard Salt Lake City, Utah 84117
801.277.7002 801.272.0622 Fax



CMS
CENTERS for MEDICARE & MEDICAID SERVICES

MEDICARE
Part A Intermediary

REPORT: 001 MEDICARE PART A - 52280 PROVIDER NUMBER: 465109
DATE: 12/07/05 ADDITIONAL DEVELOPMENT REQUEST TYPE REQUEST: MEDICAL
BILL TYPE: 223

HOLLADAY HEALTHCARE CENTER
4782 S HOLLADAY BLVD
HOLLADAY UT 84117

WE HAVE REVIEWED YOUR CLAIM RECORDS AND FOUND THAT ADDITIONAL DEVELOPMENT WILL BE NECESSARY BEFORE PROCESSING CAN BE FINALIZED. TO ASSIST YOU IN PROVIDING THE REQUIRED INFORMATION, WE HAVE ASSIGNED REASON CODES TO THE AFFECTED CLAIM RECORD (SEE BELOW) FOR YOUR REVIEW. PLEASE REFER TO THE ACCOMPANYING LIST FOR EXPLANATION OF THE ASSIGNED CODE, AND ENTER THE REQUIRED INFORMATION IN THE SPACE PROVIDED BELOW EACH CLAIM RECORD AND RETURN WITHIN 30 DAYS TO THE: OMB CONTROL# 0938-0969

MEDICAL REVIEW DEPARTMENT
MUTUAL OF OMAHA MEDICARE
PO BOX 1602
OMAHA NE 68101

| MEDICAL REC NO. / DCN | PATIENT NAME/ HIC NUMBER | | FROM/TO DATES | OPR-MED ANALYST | TOTAL CHARGES |
|---|---|---|---|---|---|
| 020530 | BAILEY | LOUISE | 110105 | M699 | 261.60 |
| 20534002602402 | [redacted] | | 113005 | | |

REASONS: 50200

50200
PLEASE SUBMIT THE FOLLOWING INFORMATION TO SUPPORT BLOOD GLUCOSE SERVICES
- PHYSICIAN ORDER(S) TO INCLUDE BLOOD GLUCOSE TESTING.
- DOCUMENTATION FOR THE MEDICAL NECESSITY FOR EACH TEST BILLED, THIS MAY INCLUDE NURSE'S NOTES AND OR PHYSICIAN PROGRESS NOTES.
- RESULTS OF EACH BLOOD GLUCOSE/ACCUCHECK TEST BILLED.
- DOCUMENTATION OF PHYSICIAN NOTIFICATION OF EACH TEST RESULT NOTING THE USE OF THE RESULTS TO MODIFY TREATMENT.
- DETAILED ITEMIZATION OF CHARGES BILLED.
- HISTORY AND PHYSICAL SUPPORTING THE DIAGNOSIS OF DIABETES



SALT LAKE CITY UT 84117

| | | | | |
|---|---|---|---|---|
| 110105 | 113005 | 0 | 0 | 0 | 0 |

12 PATIENT NAME: BAILEY, LOUISE

13 PATIENT ADDRESS

| 14 BIRTHDATE | 15 SEX | 16 MS | 17 DATE | 18 HR | 19 TYPE | 20 SRC | 21 D HR | 22 STAT | 23 MEDICAL RECORD NO. |
|---|---|---|---|---|---|---|---|---|---|
| | F | U | 07062004 | 12 | 3 | 1 | | 30 | 020530 |

CONDITION CODES

OCCURRENCE CODE / DATE — OCCURRENCE SPAN FROM / THROUGH

AARP/UHC
P.O. BOX 740819
Atlanta, GA 30374

VALUE CODES — CODE / AMOUNT

| 42 REV. CD. | 43 DESCRIPTION | 44 HCPCS / RATES | 45 SERV. DATE | 46 SERV. UNITS | 47 TOTAL CHARGES | 48 NON-COVERED CHARGES | 49 |
|---|---|---|---|---|---|---|---|
| 300 | LAB | 82962 | 11012005 | 2 | 654 | | |
| 300 | LAB | 82962 | 11022005 | 2 | 654 | | |
| 300 | LAB | 82962 | 11032005 | 2 | 654 | | |
| 300 | LAB | 82962 | 11042005 | 2 | 654 | | |
| 300 | LAB | 82962 | 11052005 | 2 | 654 | | |
| 300 | LAB | 82962 | 11062005 | 2 | 654 | | |
| 300 | LAB | 82962 | 11072005 | 2 | 654 | | |
| 300 | LAB | 82962 | 11082005 | 2 | 654 | | |
| 300 | LAB | 82962 | 11092005 | 3 | 981 | | |
| 300 | LAB | 82962 | 11102005 | 3 | 981 | | |
| 300 | LAB | 82962 | 11112005 | 3 | 981 | | |
| 300 | LAB | 82962 | 11122005 | 3 | 981 | | |
| 300 | LAB | 82962 | 11132005 | 3 | 981 | | |
| 300 | LAB | 82962 | 11142005 | 3 | 981 | | |
| 300 | LAB | 82962 | 11152005 | 3 | 981 | | |
| 300 | LAB | 82962 | 11162005 | 3 | 981 | | |
| 300 | LAB | 82962 | 11172005 | 3 | 981 | | |
| 300 | LAB | 82962 | 11182005 | 2 | 654 | | |
| 300 | LAB | 82962 | 11192005 | 2 | 654 | | |
| 300 | LAB | 82962 | 11202005 | 3 | 981 | | |
| 300 | LAB | 82962 | 11212005 | 3 | 981 | | |
| 300 | LAB | 82962 | 11222005 | 3 | 981 | | |
| 300 | LAB | 82962 | 11232005 | 3 | 981 | | |

| PAYER | 51 PROVIDER NO. | 52 REL INFO | 53 ASG BEN | 54 PRIOR PAYMENTS | 55 EST. AMOUNT DUE | 56 |
|---|---|---|---|---|---|---|
| MEDICARE | 465109 | Y | Y | | | |
| AARPUHC | 522085558004 | Y | Y | | | |

DUE FROM PATIENT ▶

| INSURED'S NAME | 59 P.REL | 60 CERT. - SSN - HIC. - ID NO. | 61 GROUP NAME | 62 INSURANCE GROUP NO. |
|---|---|---|---|---|
| BAILEY, LOUISE | 01 | | | |
| BAILEY, LOUISE | 01 | | | |

TREATMENT AUTHORIZATION CODES — 64 ESC — 65 EMPLOYER NAME — 66 EMPLOYER LOCATION

PRIN. DIAG. CD.: 73300 — OTHER DIAG. CODES: 25010, 53081 — 76 ADM. DIAG. CD.: 73300 — 77 E-CODE

80 PRINCIPAL PROCEDURE CODE / DATE — 81 OTHER PROCEDURE CODE / DATE

82 ATTENDING PHYS. ID: E69796 FEHLAUER C. G

83 OTHER PHYS. ID

OTHER PHYS. ID

REMARKS: (801)277-7002

85 PROVIDER REPRESENTATIVE: X — 86 DATE

HCFA-1450 — OCR/ORIGINAL — I CERTIFY THE CERTIFICATIONS ON THE REVERSE APPLY TO THIS BILL AND ARE MADE A PART HEREOF



4782 SO. HOLLADAY BLVD
SALT LAKE CITY UT 84117

5 FED. TAX NO. [redacted] | STATEMENT COVERS PERIOD FROM 110105 THROUGH 113005 | 7 COV D. 0 | 8 N-C D. 0 | 9 C-I D. 0 | 10 L-R D. 0

12 PATIENT NAME: BAILEY, LOUISE
13 PATIENT ADDRESS: [redacted]

| 14 BIRTHDATE | 15 SEX | 16 MS | 17 DATE | 18 HR | 19 TYPE | 20 SRC | 21 D HR | 22 STAT | 23 MEDICAL RECORD NO. |
|---|---|---|---|---|---|---|---|---|---|
| [redacted] | F | U | 07062004 | 12 | 3 | 1 | | 30 | 020530 |

AARP/UHC
P.O. BOX 740819
Atlanta, GA 30374

| 42 REV. CD. | 43 DESCRIPTION | 44 HCPCS / RATES | 45 SERV. DATE | 46 SERV. UNITS | 47 TOTAL CHARGES | 48 NON-COVERED CHARGES |
|---|---|---|---|---|---|---|
| 300 | LAB | 82962 | 11242005 | 3 | 981 | |
| 300 | LAB | 82962 | 11252005 | 3 | 981 | |
| 300 | LAB | 82962 | 11262005 | 3 | 981 | |
| 300 | LAB | 82962 | 11272005 | 3 | 981 | |
| 300 | LAB | 82962 | 11282005 | 3 | 981 | |
| 300 | LAB | 82962 | 11292005 | 3 | 981 | |
| 300 | LAB | 82962 | 11302005 | 3 | 981 | |
| 0001 | TOTAL CHARGE | | | | 26100 | |

| 50 PAYER | 51 PROVIDER NO. | 52 REL INFO | 53 ASG BEN | 54 PRIOR PAYMENTS | 55 EST. AMOUNT DUE |
|---|---|---|---|---|---|
| MEDICARE | 465109 | Y | Y | | |
| AARP/UHC | 52208155800Y | Y | Y | | |

DUE FROM PATIENT ▶

| 58 INSURED'S NAME | 59 P.REL | 60 CERT. - SSN - HIC - ID NO. | 61 GROUP NAME | 62 INSURANCE GROUP NO. |
|---|---|---|---|---|
| BAILEY, LOUISE | 01 | [redacted] | | |
| BAILEY, LOUISE | 01 | [redacted] | | |

TREATMENT AUTHORIZATION CODES | 64 ESC | 65 EMPLOYER NAME | 66 EMPLOYER LOCATION

PRIN. DIAG. CD.: 73300 | OTHER DIAG. CODES: 25010 | 53081 | 76 ADM. DIAG. CD.: 73300

80 PRINCIPAL PROCEDURE | 81 OTHER PROCEDURE | 82 ATTENDING PHYS. ID: E69796 FEHLAUER C. S

83 OTHER PHYS. ID | OTHER PHYS. ID

REMARKS (801)277-7002

85 PROVIDER REPRESENTATIVE X | 86 DATE

UB-92 HCFA-1450 | OCR/ORIGINAL | I CERTIFY THE CERTIFICATIONS ON THE REVERSE APPLY TO THIS BILL AND ARE MADE A PART HEREOF

PATIENT [illegible]IC RECORD

CH[illegible]ING FROM: 11 / 01 / 05 THRU: 11 / 30 / 05

PATIENT NAME: Louise Bailey

DOCTOR: Fehlauer

DATE OF S/S INSULIN ORDER: 7/6/04

FREQUENCY OF USE: BID

MONTH OF THIS RECORD: November

SLIDING SCALE ORDER:

| | | | |
|---|---|---|---|
| - | U | INSULIN |
| - | U | INSULIN |
| - | U | INSULIN |
| - | U | INSULIN |

Please ✓ BS @ 2000 Q Day

| DATE | BREAKFAST 0700 TEST | INS. | SITE | INIT. | LUNCH TEST | INS. | SITE | INIT. | DINNER 1630 TEST | INS. | SITE | INIT. | BEDTIME 2000 TEST | INS. | SITE | INIT. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 114 | | | [illegible] | | | | | 125 | | | | | | | |
| 2 | 93 | | | [illegible] | | | | | 175 | | | | | | | |
| 3 | 114 | | | [illegible] | | | | | 135 | | | [illegible] | | | | |
| 4 | 97 | | | [illegible] | | | | | 175 | | | [illegible] | | | | |
| 5 | 108 | | | [illegible] | | | | | 148 | | | [illegible] | | | | |
| 6 | 90 | | | [illegible] | | | | | 155 | | | [illegible] | | | | |
| 7 | 98 | | | [illegible] | | | | | 105 | | | [illegible] | | | | |
| 8 | 70/67/811 | | | [illegible] | | | | | 160 | | | [illegible] | | | | |
| 9 | 88 | | | [illegible] | | | | | 155 | | | [illegible] | | | | |
| 10 | 91 | | | [illegible] | | | | | 125 | | | [illegible] | 299 | | | [illegible] |
| 11 | 77 8g juice given | | | [illegible] | | | | | 186 | | | [illegible] | 134 | | | [illegible] |
| 12 | 88 | | | [illegible] | | | | | 197 | | | [illegible] | 256 | | | [illegible] |
| 13 | 70 | md pass given | | [illegible] | | | | | 117 | | | [illegible] | 228 | | | [illegible] |
| 14 | 75 | md pass [illegible] | | [illegible] | | | | | 136 | | | [illegible] | 179 | | | [illegible] |
| 15 | 97 | | | [illegible] | | | | | 124 | | | [illegible] | 235 | | | [illegible] |
| 16 | 100 | | | [illegible] | | | | | 125 | | | [illegible] | 293 | | | [illegible] |
| 17 | 87 | | | [illegible] | | | | | 135 | | | [illegible] | 264 | | | [illegible] |
| 18 | 107 | | | [illegible] | | | | | | | | | 298 | | | [illegible] |
| 19 | 101 | | | [illegible] | | | | | | | | | 277 | | | [illegible] |
| 20 | 89 | | | [illegible] | | | | | | | | | 297 | | | [illegible] |
| 21 | 87 | | | [illegible] | | | | | 124 | | | [illegible] | 110 | | | [illegible] |
| 22 | 103 | | | [illegible] | | | | | 168 | | | [illegible] | 368 | | | [illegible] |
| 23 | 87 | | | [illegible] | | | | | 84 | | | [illegible] | 353 | | | [illegible] |
| 24 | 122 | | | [illegible] | | | | | 169 | | | [illegible] | 279 | | | [illegible] |
| 25 | 92 | | | [illegible] | | | | | 159 | | | [illegible] | 132 | | | [illegible] |
| 26 | 75 | | | [illegible] | | | | | 91 | | | [illegible] | 134 | | | [illegible] |
| 27 | 75 | | | [illegible] | | | | | 98 | | | [illegible] | 211 | | | [illegible] |
| 28 | 84 | | | [illegible] | | | | | 239 | | | [illegible] | 381 | | | [illegible] |
| 29 | 113 | | | [illegible] | | | | | 74 | MD | PASS | [illegible] | 375 | | | [illegible] |
| 30 | 86 | | | [illegible] | | | | | 124 | | | [illegible] | 130 | | | [illegible] |
| 31 | | | | | | | | | 231 | | | [illegible] | 281 | | | [illegible] |

110

# Medication Record

| Order | Time / Site |
|---|---|
| Order Date: 10/20/2005<br>LANTUS INSULIN 25 UNITS SQ Q AM / DM | TIME 0800<br>SITE |
| Order Date: 07/06/2004<br>GLUCOSCAN BID / DM<br>***SEE DIABETIC RECORD*** | SEE OTHER SHEET TO CHART |
| Order Date: 04/27/2005<br>PLAVIX 75 MG PO Q DAY / VENOUS THROMBOSIS | 0800 |
| Order Date: 04/14/2005<br>COZAAR 25 MG PO Q DAY / HTN | 0800 |
| Order Date: 02/08/2005<br>PREVACID 30 MG PO ~~Q PM~~ QHS GERD<br>time Δ 11/10/05 | ~~1700~~ 2100 |
| Order Date: 06/16/2005<br>LIPITOR 20 MG PO Q PM / HYPERCHOLESTROLEMIA | 1700 |
| Order Date: 08/19/2004<br>COLACE 200 MG PO BID / CONSTIPATION | 0800<br>1700 |
| Order Date: 08/19/2004<br>SENNA 1 TAB PO ON MON, WED AND FRI ROUTINE / CONSTIPATION | TIME 08<br>INITIALS |

Days: Tu 01, We 02, Th 03, Fr 04, Sa 05, Su 06, Mo 07, Tu 08, We 09, Th 10, Fr 11, Sa 12, Su 13, Mo 14, Tu 15, We 16, Th 17, Fr 18, Sa 19, Su 20, Mo 21, Tu 22, We 23, Th 24, Fr 25, Sa 26, Su 27, Mo 28, Tu 29, We 30

INSTRUCTIONS (SEE REVERSE SIDE)

CHARTING FROM 11/1/2005 THRU 11/30/2005

COMPLETE ENTRIES CHECKED BY: TITLE:

DIAGNOSIS: Diabetes mellitus; Hypertension; Osteoporosis; VENOUS THROMBOSIS NEC; ADJUSTMNT DIS W DEPRESSN; DMI WO CMP NT ST UNCNTRL; ESOPHAGEAL REFLUX; BOTH EYES BLIND-WHO DEF

ALLERGIES: DEMEROL

NURSE'S ALERT: BLIND, Do not resuscitate; Pain less than daily; Some/all natural teeth lost, does not have or does not use dentures (or partial plates)

| PHYSICIAN | TELEPHONE NO. | ALT. PHYS. | ALT. TELEPHONE |
|---|---|---|---|
| FEHLAUER, DR. STEVE | (801)408-5060 | FEHLAUER, DR. STEVE | (801)408-5060 |

| RESIDENT NAME | MED REC NO. | NURSE STA. | ROOM/BED | FACILITY | PAGE |
|---|---|---|---|---|---|
| BAILEY, LOUISE | 20530 | 1 | 0134C | Holladay Healthcare Center | 1 |

# PHYSICIAN'S PROGRESS NOTES

| DATE | TIME | NOTES MUST BE SIGNED BY PHYSICIAN |
|---|---|---|
| 7-8-04 | | Admission H & P |
| | | [CC:] Constipation often & requested softner |
| | | [HPI:] This is an admission H+P for a 72 yr old ♀ who was adm from home & c̄ self-care deficits 2° D.M. /effects. Husb. has assisted her, along c̄ H.H. CNA for last 4 yrs but now c̄ caregiver fatigue + ↓ assist. from family. |
| | | No med. records avail. p̄ several attempts for HHC staff & husb. to acquire. Medical & surg dx. acquired from this very pleasant & cognitively intact lady. |
| | | Medicaid pending. |
| | | [P.M.HX:] |
| | | · AODM/IDDM (4-5 yrs. & first dx. p̄ onset of blindness) |
| | | · Neuropathy of bil. ft. 2° DM |
| | | · gastroparesis 2° D.M. (dx. hosp. stay 12/03) |
| | | · Hx T.I.A. c̄ temp. loss of speech |
| | | · HTN, prim. · depression, situational |
| | | · osteoporosis prev. - ⊖ bone density |
| | | · hiatal hernia c̄ GERD |
| | | · GLFs X2 c̄ (2 & 4 yrs ago c̄ fx) |
| | | · Blindness 2° DM 4-5 yrs. |
| | | [PSHx:] · (L) hip pinning (4 yrs. ago) 2° GLF |
| | | · (R) shoulder fx. & rep 2° GLF 2 yrs ago |
| | | · TAH, remote · hyster. 20 yrs. ago · mult. eye surgs. |

NAME–Last: Bailey First: Louise Middle: Attending Physician: Fehlauer Record No.: Room/Bed:

Pope, APRN

CFS 9-1HH © 1992 Briggs Corporation, Des Moines, IA 50306 (800) 247-2343 PRINTED IN U.S.A.

PHYSICIAN'S PROGRESS NOTES 

☐ Continued on Reverse

# PHYSICIAN'S PROGRESS NOTES

| DATE | TIME | NOTES MUST BE SIGNED BY PHYSICIAN |
|---|---|---|
| 7-8-04 | | Current Meds: Allergies: |
| | | • Lexapro 10 mg qd • Lantus insulin 10 U |
| | | • prevacid 30 mg bid q AM |
| | | • lasix 20 qd • plavix 75 qd. |
| | | • reglan 10 mg ~~qd~~. • lipitor 40 q HS |
| | | q AC • cozaar 50 qd |
| | | • calcium 500 tid • Darvocet N 100 qid |
| | | Fam Hx: Father = ↓ age 75 c MI · AODM |
| | | Mother = ↓ age 85 - ? ⊖ kidney, lung or liver dis. |
| | | Soc Hx: Married, 3 children = 2 dau. |
| | | out-of-state & son in SLC. Retired |
| | | Occup = sales/office worker/business owner |
| | | ⊖ tobacco or ETOH. |
| | | ROS: ⊕ constipation; ⊕ numbness of feet; |
| | | otherwise N.S. |
| | | ADLs: Cont. B&B; requires assist. c feeding; |
| | | mod. assist. c bathing, dressing, & hygiene |
| | | Propels self in w/c & ambs. |
| | | S: See HPI Denies CP, N/V, joint pain. |
| | | O: VS = 134/88 71-18 Ht. 5'5" Wt. = 116 lbs. |
| | | Gen. = Sitting in w/c. Alert & oriented X3 |
| | | & very pleasant & coop. HEENT = Normocephalic |
| | | P ± & ⊖ react to light - does s see light of |
| | | opthmascope. B/L TM visible & intact. Skin tag |
| | | Ⓛ ear auricle. Own teeth T + L but poor |
| | | hygiene. Nares dry. Neck = s JVD or adenopathy. |
| | | [signature] APRN |

| ME Last | First | Middle | Attending Physician | Record No. | Room/Bed |
|---|---|---|---|---|---|
| Bailey | Louise | | Fellauer | | |

# PHYSICIAN'S PROGRESS NOTES

| DATE | TIME | NOTES MUST BE SIGNED BY PHYSICIAN |
|---|---|---|
| 7-8-04 | | Hrt = (RRR) ø murmur; $S_1S_2$. Lungs = CTA, ø wheezing. Abdom. = sl. rounded, soft & N.T. c̄ hypoactive BTs x4 quads. Skin = intact. Extrem. = ↓ ROM (R) shoulder to abduction; otherwise WNLs. Fair strength x4. Toenails longer than recommended ø cyanosis or sores. |
| | | A/P: (1.) Constipation 2° DM, ↓ mobility. Add senna S qd & T as needed. |
| | | (2.) AODM/IDDM c̄ neuropathy, retinopathy/blindness, gastroparesis. On lantus & accept. glucoscans last 2 d. Cont. to monitor ø chg in meds. Cont. P. Care. |
| | | (3.) HTN = WNLs ø Δ in meds. |
| | | (4.) Depression, situational, 2° mult. health problems. Cont. lexapro. |
| | | (5.) Health maint. = declines offer of mammo, but agrees to dental. SW to assist c̄ medicaid dentist loc. |
| | | (6) Osteoporosis prev. = cont. cal. add vit. |
| | | (7) A.D = ø CPR |
| | | (8) Labs = consider hgb $A_{1c}$, CMP, $B_{12}$, TSH, $T_4$ if ø done @ prim. MD clinic last Fri. Msg to call for labs. |
| | | Pope, APRN/NP |

NAME–Last: Bailey First: Louise Middle: Attending Physician: Tehlaner Record No. Room/Bed

CFS9-1HH © 1992 Briggs, Des Moines, IA 50306 PRINTED IN U.S.A. (R500)
DON'T BREAK THE LAW / MAKE THE CALL — Save 13% — 1-800-247-2343 www.BriggsCorp.com — savings on buying vs. copying
PHYSICIAN'S PROGRESS NOTES
☒ Continued on Reverse
113

# PHYSICIAN'S ORDERS

| D/C DATE | ORDER DATE | Cd | ORDER TEXT | FREQUENCY |
|---|---|---|---|---|
| | | | GENERIC EQUIVALENTS MAY BE USED UNLESS OTHER- WISE NOTED. | |
| | 7/6/2004 | DT | 3 : THERAPEUTIC DIET: 1800 CAL ADA | |
| | 7-6-04 | | Resident is DNR. | |
| | 7/6/2004 | MF | 8 : MAY HAVE ANNUAL FLU VACCINE MAY HAVE ANNUAL PPD TEST | |
| | 7/6/2004 | TI | 13 : LANTUS INSULIN 10 UNITS SQ Q AM / DM | QAM S |
| | 7/6/2004 | GS | 21 : GLUCOSCAN BID / DM ***SEE DIABETIC RECORD*** | SO |
| | 7/8/2004 | MR | 22 : SENNA S 1 TAB PO Q DAY / CONSTIPATION | QD |
| | 7/6/2004 | MR | 18 : LIPITOR 40 MG PO Q HS / HYPERCHOLESTROLEMIA | QHS |
| | 7/6/2004 | MR | 20 : CALCIUM 500 MG PO TID / OSTEOPOROSIS | TID |
| | 7/6/2004 | ME | 11 : LEXAPRO 10 MG PO Q DAY / SIT. DEPRESSION R/T HEALTH PROBLEMS. ***SEE A/D BLUE MED SHEET*** | SO |
| | 7/6/2004 | MR | 17 : REGLAN 10 MG PO Q AC&HS / GERD | AC & HS |
| | 7/6/2004 | MR | 14 : PREVACID 30 MG PO BID / GERD | BID |
| | 7/6/2004 | MR | 15 : LASIX 20 MG PO Q DAY / HTN | QD |
| | 7/6/2004 | MR | 16 : PLAVIX 75 MG PO Q DAY / HYPERCHOLESTROLEMIA | QD |
| | 7/6/2004 | MR | 19 : COZAAR 50 MG PO Q DAY / HTN | QD |
| | 7/8/2004 | TR | 24 : SHOES OR SLIPPERS ON FEET WHEN LEAVING ROOM TO PROTECT THEM | IO1 |

| Charting From | Thru | Facility Name | LAST PHYS. EXAM |
|---|---|---|---|
| 8/1/2004 | 8/31/2004 | Holladay Healthcare Center | |

| PHYSICIAN NAME | | ALT. PHYS. NAME | ALT. PHYS. PHONE |
|---|---|---|---|
| FEHLAUER, DR. STEVE | (801)321-5060 | FEHLAUER, DR. STEVE | (801)321-5060 |

| Diagnosis | Nursing Alert |
|---|---|
| Diabetes mellitus; Hypertension; Osteoporosis; OSTEOPOROSIS NOS; BRIEF DEPRESSIVE REACT; DMI WO CMP NT ST UNCNTRL; ESOPHAGEAL ‑FLUX; BOTH .S BLIND-WHO DEF | BLIND; Do not resuscitate; Pain less than daily; Some/all natural teeth lost, does not have or does not use dentures (or partial plates) |
| | **ALLERGIES** |
| | DEMEROL |

| PATIENT NAME | PATIENT NO. | STA | ROOM/BED | PAGE |
|---|---|---|---|---|
| BAILEY, LOUISE | 20530 | 1 | 0102A | 1 |

# PHYSICIAN'S ORDERS

| D/C DATE | ORDER DATE | Cd | ORDER TEXT | FREQUENCY |
|---|---|---|---|---|
| | 7/6/2004 | TR | 9 : OFFER HS SNACK DOCUMENT % TAKEN OR R=REFUSED | NS1 |
| | 7/6/2004 | TV | 5 : VITAL SIGNS Q DAY (SEE VS & WT REPORT/YELLOW) | SO |
| | 7/6/2004 | WA | 4 : WEIGHTS WEEKLY (SEE WT HX REPORT/DIETARY) LAST WT: | SO |
| | 7/6/2004 | AG | 6 : MAY GO OUT ON PASS WITH MEDS AND RESPONSIBLE PERSON | |
| | 7/6/2004 | AS | 2 : MAY PARTICIPATE IN SOCIAL ACTIVITIES AS TOLERATED | |
| | 7/6/2004 | OA | 7 : PODIATRIST CARE AS ORDERED | PRN |
| | 7/7/2004 | RP | 1 : REHAB POTENTIAL: POOR | |

I HAVE REVIEWED & APPROVED THE PATIENT CARE PLAN

I HAVE REVIEWED & APPROVED THE ACTIVITY PLAN. IT ISN'T IN CONFLICT WITH MED. PLAN OF CARE

CONTINUE THE ABOVE ORDERS FOR 30 DAYS/SNF OR 60 DAYS/ICF UNLESS OTHERWISE SPECIFIED.

I CERTIFY THAT THIS PATIENT REQUIRES SKILLED / INTERMEDIATE NURSING HOME CARE.

REHAB/RESTORATIVE NURSING PER NURSING JUDGEMENT

NURSES REVIEW BY: Bosler, RN DATE: 8-1-04

M.D. SIGNATURE: DATE: 8/3/04

| Charting From | Thru | Facility Name | LAST PHYS. EXAM |
|---|---|---|---|
| 8/1/2004 | 8/31/2004 | Holladay Healthcare Center | |

| PHYSICIAN NAME | | ALT. PHYS. NAME | ALT. PHYS. PHONE |
|---|---|---|---|
| FEHLAUER, DR. STEVE | (801)321-5060 | FEHLAUER, DR. STEVE | (801)321-5060 |

| Diagnosis | Nursing Alert |
|---|---|
| Diabetes mellitus; Hypertension; Osteoporosis; OSTEOPOROSIS NOS; BRIEF DEPRESSIVE REACT; DMI WO CMP NT ST UNCNTRL; ESOPHAGEAL REFLUX; BOTH EYES BLIND-WHO DEF | BLIND; Do not resuscitate; Pain less than daily; Some/all natural teeth lost, does not have or does not use dentures (or partial plates) |
| | **ALLERGIES** |
| | DEMEROL |

| PATIENT NAME | PATIENT NO. | STA | ROOM/BED | PAGE |
|---|---|---|---|---|
| BAILEY, LOUISE | 20530 | 1 | 0102A | 2 |

# ADMISSION ORDERS

**SECTION A: MEDICATION/TREATMENT**

Lexapro 10mg po QD ✓
Diagnosis: depression

Darvocet N 100 po QID prn pain ✓
Diagnosis: osteoporosis

Lantus insulin 10units SQ Q AM ✓
Diagnosis: DM

Prevacid 30mg po BID. ✓
Diagnosis: GERD

Lasix 20mg po QD. ✓
Diagnosis: HTN

Plavix 75mg po QD. ✓
Diagnosis: hypercholesterolemia

Reglan 10mg po QAC et Q HS. ✓
Diagnosis: GERD

Lipitor 40mg po Q HS. ✓
Diagnosis: hypercholesterolemia

Cozaar 50mg po QD. ✓
Diagnosis: HTN

Calcium 500mg po TID ✓
Diagnosis: osteoporosis

Glucosamine BID
Diagnosis: DM

Nurse's signature [signature], LPN / W. [signature]
Date 7 / 6 / 04

I have reviewed this resident's plan of care and am in agreement with it.
Physician's signature [signature]
Date 7 / 12 / 04

**SECTION D: NEW ADMISSION ORDERS (Complete this section once part 4 is detached)**

Admit to: Holladay Healthcare
Rehab potential: ☐ Good ☐ Fair ☑ Poor ☐ None
Comment:
CPR Status: ☐ Yes ☑ No CPR Resident representative aware? ☑ Yes ☐ No
Advance directives issued? ☑ Yes ☐ No Copy attached? ☐ Yes ☐ No
Diet Order: 1800 cal ADA
Texture: ☑ Regular ☐ Ground meat ☐ Pureed ☐ As tolerated ☐ Other
☐ May have regular diet - Special occasions
☐ Supplements:

**Therapy Evaluation Orders:**
Weight bearing ability: ☐ Full ☐ Partial ☐ None Mobility Status:
PT yes x per week OT ____ x per week ST ____ x per week

| ADDITIONAL ORDERS | YES | NO |
|---|---|---|
| Restraints – If yes, type/frequency/reason | | ✓ |
| Side rails – If yes, type/frequency/reason | | ✓ |
| Podiatry care PRN | ✓ | |
| Dental care PRN | ✓ | |
| Ophthalmology care PRN | ✓ | |
| Audiological care PRN | ✓ | |
| May participate in: Overall activity plan | ✓ | |
| Volunteer program | | |
| May have occasional alcoholic beverage | | ✓ |
| May go on pass with meds | ✓ | |
| PPD per facility policy | ✓ | |
| Chest X-ray | ✓ | |
| Pneumococcal vaccine | | ✓ |
| Annual flu shot | ✓ | |
| Laboratory per facility policy | ✓ | |
| Vital signs per facility policy | ✓ | |
| Weight per facility policy | ✓ | |

Discharge Plans:

Admission date 7 / 6 / 04 Date Of Birth [redacted]

**SECTION B: DIAGNOSES (not listed in Section A)**

**SECTION C: ALLERGIES**
Demerol

☐ Generic equivalents may not be used

WHITE–To Physician for Signature YELLOW–Temporary Chart Copy PINK–Pharmacy Copy GREEN–Medication Adm. Record

| NAME–Last | First | Middle | Attending Physician | Record No. | Room/Bed |
|---|---|---|---|---|---|
| Bailey, Louise | | | Fehlauer | | 102A |

CFS 5-2/4P © 1992 Briggs Corporation, Des Moines, IA 50306 (800) 247-2343 PRINTED IN U.S.A.

ADMISSION ORDERS

# PHYSICIAN'S TELEPHONE ORDERS AUDIT

| Name of Facility | Address |
|---|---|
| HHC | |

| Family Name | First Name | Admission Number | Room No. | Attending Physician |
|---|---|---|---|---|
| Bailey | Louise | | | [illegible] |

| Date Ordered | Time Ordered | Date Discontinued | Orders |
|---|---|---|---|
| 11/8/05 | | | please check BS @ 2000 Q day |
| | | [illegible] | |

Signature of Nurse Receiving Order: W. [illegible]
Signature of Physician: [illegible] 11/10/05
Date:

| | Initials | | Initials | | Initials | | |
|---|---|---|---|---|---|---|---|
| On MO Order Sheet | | Med/Tx Sheet | | Date & Time | | Communicated | |
| Pharmacy | | Nurses Notes | | Pt. Care Plan | | Signed | |

ORIGINAL COPY - Physician Please Sign and Return

Form 1394/4 © BRIGGS, Des Moines, IA 50306 (800) 247-2343 PRINTED IN U.S.A. www.BriggsCorp.com R204

# NURSE'S NOTES

| DATE/ TIME | PROB. NO. | NOTES MUST BE SIGNED WITH NAME AND TITLE |
|---|---|---|
| 10/20/05 1050 | | Order received to Δ Lantus to 25 units SQ @ 4m. — [illegible] |
| 10/27/05 | | Pt. seen by podiatrist, no new orders — [illegible] |
| 11-5-05 | | N.O. Benadryl 25mg Caps 2 po QHS prn sleep per pt. request — [illegible] |
| 11/8/05 | | Louise attended care plan mtg in today & doing well pleased w/ new room & situation. We are working on getting her a new wheelchair, which provides her. Her daughter-in-law present as well She is pleased w/ care & Louise's new room. W. [illegible] |
| 11-8-05 1300 | | T.O. Please check BS @ 2000 Q day. Put in MAR and on BS sheet. [illegible] |
| 11-10-05 | | Orders noted: 1) Tylenol 500mg ÷ po QHS 2) If/when Res wakes @ Noc, √ BG at [illegible]. Notify MD if abnormal, X 1 week. 3) Prevacid @ HS (time Δ). — [illegible] RN |
| 11-19-05 | | weekly done today — [illegible] |
| 11/28/05 1600 | | Resident C/o cough & hoarse voice. Requesting cough med. Order received of [illegible] from Dr. Lehrauer. Called to pharm. Res to stay in Rm until [illegible] symptoms [illegible] — [illegible] |
| 11/28/05 1430 | | N.O. Cepacol throat lozenges prn sore throat; Give 1 before ea meal x 7 days. Offer meal supplements + soft foods while having sore throat, this is already being done. — [illegible] |

| NAME–Last | First | Middle | Attending Physician | Record No. | Room/Bed |
|---|---|---|---|---|---|
| Bailey | Louise | | Dr. Lehrauer | | |

CFS 6-32HH © 1992 Briggs, Des Moines, IA 50306 PRINTED IN U.S.A. (R500)
DON'T BREAK THE LAW MAKE THE CALL Save 13%* 1-800-247-2343 www.BriggsCorp.com
*savings on buying vs. copying

NURSE'S NOTES
☐ Continued on Reverse

has not been coded to the full number of digits required for that code. (From Coding Clinic for ICD–9–CM. Fourth Quarter, 1995, page 44.)

4. Diagnoses documented as "probable," "suspected," "questionable," "rule-out," or "working diagnosis" should not be coded as though they exist. Rather, code the condition(s) to the highest degree of certainty for that encounter/visit, such as signs, symptoms, abnormal test results, exposure to communicable disease or other reasons for the visit. (From Coding Clinic for ICD–9–CM, Fourth Quarter 1995, page 45.)

5. When a non-specific ICD–9 code is submitted, the underlying sign, symptom, or condition must be related to the indications for the test above.

6. When the indication for the test is long-term administration of glucocorticosteroids, use ICD–9–CM code V58.69.

*Medicare National Coverage Decision for Blood Glucose Testing*

*Description*

This policy is intended to apply to blood samples used to determine glucose levels.

Blood glucose determination may be done using whole blood, serum or plasma. It may be sampled by capillary puncture, as in the fingerstick method, or by vein puncture or arterial sampling. The method for assay may be by color comparison of an indicator stick, by meter assay of whole blood or a filtrate of whole blood, using a device approved for home monitoring, or by using a laboratory assay system using serum or plasma. The convenience of the meter or stick color method allows a patient to have access to blood glucose values in less than a minute or so and has become a standard of care for control of blood glucose, even in the inpatient setting.

*HCPCS Codes (Alpha numeric, CPT–AMA)*

| Code | Descriptor |
|---|---|
| 82947 | Glucose; quantitative, blood (except reagent strip) |
| 82948 | Glucose; blood, reagent strip |
| 82962 | Glucose, blood by glucose monitoring device(s) cleared by the FDA specifically for home use. |

*Indications*

Blood glucose values are often necessary for the management of patients with diabetes mellitus, where hyperglycemia and hypoglycemia are often present. They are also critical in the determination of control of blood glucose levels in the patient with impaired fasting glucose (FPG 110–125 mg/dL), the patient with insulin resistance syndrome and/or carbohydrate intolerance (excessive rise in glucose following ingestion of glucose or glucose sources of food), in the patient with a hypoglycemia disorder such as nesidioblastosis or insulinoma, and in patients with a catabolic or malnutrition state. In addition to those conditions already listed, glucose testing may be medically necessary in patients with tuberculosis, unexplained chronic or recurrent infections, alcoholism, coronary artery disease (especially in women), or unexplained skin conditions (including pruritis, local skin infections, ulceration and gangrene without an established cause). Many medical conditions may be a consequence of a sustained elevated or depressed glucose level. These include comas, seizures or epilepsy, confusion, abnormal hunger, abnormal weight loss or gain, and loss of sensation. Evaluation of glucose may also be indicated in patients on medications known to affect carbohydrate metabolism.

*Limitations*

Frequent home blood glucose testing by diabetic patients should be encouraged. In stable, non-hospitalized patients who are unable or unwilling to do home monitoring, it may be reasonable and necessary to measure quantitative blood glucose up to four times annually.

Depending upon the age of the patient, type of diabetes, degree of control, complications of diabetes, and other co-morbid conditions, more frequent testing than four times annually may be reasonable and necessary.

In some patients presenting with nonspecific signs, symptoms, or diseases not normally associated with disturbances in glucose metabolism, a single blood glucose test may be medically necessary. Repeat testing may not be indicated unless abnormal results are found or unless there is a change in clinical condition. If repeat testing is performed, a specific diagnosis code (e.g., diabetes) should be reported to support medical necessity. However, repeat testing may be indicated where results are normal in patients with conditions where there is a confirmed continuing risk of glucose metabolism abnormality (e.g., monitoring glucocorticoid therapy).

ICD–9–CM Codes Covered by Medicare Program

| Code | Description |
|---|---|
| 011.00–011.96 | Tuberculosis |
| 038.0–038.9 | Septicemia |
| 112.1 | Recurrent vaginal candidiasis |
| 112.3 | Interdigital candidiasis |
| 118 | Opportunistic mycoses |
| 157.4 | Malignant neoplasm of islets of Langerhans |
| 158.0 | Malignant neoplasm of retroperitoneum |
| 211.7 | Benign neoplasm of islets of Langerhans |
| 242.00–242.91 | Thyrotoxicosis |
| 250.00–250.93 | Diabetes mellitus |
| 251.0–251.9 | Disorders of pancreatic internal secretion |
| 253.0–253.9 | Disorders of the pituitary gland |
| 255.0 | Cushing syndrome |

/ 5119

| Code | Description |
|---|---|
| 263.0–263.9 | Malnutrition |
| 271.0–271.9 | Disorders of carbohydrate transport and metabolism |
| 272.0–272–4 | Disorders of lipoid metabolism |
| 275.0 | Hemochromotosis |
| 276.0–276.9 | Disorders of fluid, electrolyte and acid-base balance |
| 278.3 | Hypercarotinemia |
| 293.0 | Acute delirium |
| 294.9 | Unspecified organic brain syndrome |
| 298.9 | Unspecified psychosis |
| 300.9 | Unspecified neurotic disorder |
| 310.1 | Organic personality syndrome |
| 337.9 | Autonomic nervous system neuropathy |
| 345.10–345.11 | Generalized convulsive epilepsy |
| 348.3 | Encephalopathy, unspecified |
| 355.9 | Neuropathy, not otherwise specified |
| 356.9 | Unspecified hereditary and idiopathic peripheral neuropathy |
| 357.9 | Unspecified inflammatory and toxic neuropathy |
| 362.10 | Background retinopathy |
| 362.18 | Retinal vasculitis |
| 362.29 | Nondiabetic proliferative retinopathy |
| 362.50–362.57 | Degeneration of macular posterior pole |
| 362.60–362.66 | Peripherial retinal degeneration |
| 362.81–362.89 | Other retinal disorders |
| 362.0 | Unspecified retinal disorders |
| 365.04 | Borderline glaucoma, ocular hypertension |
| 365.32 | Corticosteriod-induced glaucoma residual |
| 366.00–366.09 | Presenile cataract |
| 366.10–366.19 | Senile cataract |
| 367.1 | Acute myopia |
| 368.8 | Other specified visual disturbance |
| 373.00 | Blepharitis |
| 377.24 | Pseudopapilledema |
| 377.9 | Autonomic nervous system neuropathy |
| 378.50–378.55 | Paralytic strabismus |
| 379.45 | Argyll-Robertson pupils |
| 410.00–410.92 | Acute myocardial infarctions |
| 414.00–414.19 | Coronary atherosclerosis and aneurysm of heart |
| 425.9 | Secondary cardiomyopathy, unspecified |
| 440.23 | Arteriosclerosis of extremities with ulceration |
| 440.24 | Arteriosclerosis of extremities with gangrene |
| 440.9 | Arteriosclerosis, not otherwise specified |
| 458.0 | Postural hypotension |
| 462 | Acute pharyngitis |
| 466.0 | Acute bronchitis |
| 480.0–486 | Pneumonia |
| 490 | Recurrent bronchitis, not specified as acute or chronic |
| 491.0–491.9 | Chronic bronchitis |
| 527.7 | Disturbance of salivory secretion (drymouth) |
| 528.0 | Stomatitis |
| 535.50–535.51 | Gastritis |
| 536.8 | Dyspepsia |
| 571.8 | Other chronic nonalcoholic liver disease |
| 572.0–572.8 | Liver abscess and sequelae of chronic liver disease |
| 574.50–574.51 | Choledocholitiasis |
| 575.0–575.12 | Cholecystitis |
| 576.1 | Cholangitis |
| 577.0 | Acute pancreatitis |
| 577.1 | Chronic pancreatitis |
| 577.8 | Pancreatic multiple calculi |
| 590.00–590.9 | Infections of the kidney |
| 595.9 | Recurrent cystitis |
| 596.4 | Bladder atony |
| 596.53 | Bladder paresis |
| 599.0 | Urinary tract infection, recurrent |
| 607.84 | Impotence of organic origin |
| 608.89 | Other disorders male genital organs |
| 616.10 | Vulvovaginitis |
| 626.0 | Amenorrhea |
| 626.4 | Irregular menses |
| 628.9 | Infertility—female |
| 648.00 | Diabetes mellitus complicating pregnancy, Childbirth or the puerperium, unspecified as to episode of care or not applicable |
| 648.03 | Diabetes mellitus complicating pregnancy, Childbirth or the puerperium, antipartum condition or complication |

| Code | Description |
|---|---|
| 648.04 | Diabetes mellitus complicating pregnancy, Childbirth or the puerperium, postpartum condition or complication |
| 648.80 | Abnormal glucose tolerance complicating pregnancy, childbirth or the puerperium, unspecified as to episode of care or not applicable |
| 648.83 | Abnormal glucose tolerance complicating pregnancy, childbirth or the puerperium, antipartum condition or complication |
| 648.84 | Abnormal glucose tolerance complicating pregnancy, childbirth or the puerperium, postpartum condition or complication |
| 656.60–656.63 | Fetal problems affecting management of mother—large for-date of fetus |
| 657.00–657.03 | Polyhydramnios |
| 680.0–680.9 | Carbuncle and furuncle |
| 686.00–686.9 | Infections of skin and subcutaneous tissue |
| 698.0 | Pruritis ani |
| 698.1 | Pruritis of genital organs |
| 704.1 | Hirsutism |
| 705.0 | Anhidrosis |
| 707.0–707.9 | Chronic ulcer of skin |
| 709.3 | Degenerative skin disorders |
| 729.1 | Myalgia |
| 730.07–730.27 | Osteomyelitis of tarsal bones |
| 780.01 | Coma |
| 780.02 | Transient alteration of awareness |
| 780.09 | Alteration of consciousness, other |
| 780.2 | Syncope and collapse |
| 780.31 | Febrile convulsions |
| 780.39 | Seizures, not otherwise specified |
| 780.4 | Dizziness and giddiness |
| 780.71–780.79 | Malaise and fatigue |
| 780.8 | Hyperhidrosis |
| 781.0 | Abnormal involuntary movements |
| 782.0 | Loss of vibratory sensation |
| 783.1 | Abnormal weight gain |
| 783.2 | Abnormal loss of weight |
| 783.5 | Polydipsia |
| 783.6 | Polyphagia |
| 785.0 | Tachycardia |
| 785.4 | Gangrene |
| 786.01 | Hyperventilation |
| 786.09 | Dyspnea, |
| 786.50 | Chest pain, unspecified |
| 787.6 | Fecal incontinence |
| 787.91 | Diarrhea |
| 788.41–788.43 | Frequency of urination and polyuria |
| 789.1 | Hepatomegaly |
| 790.2 | Abnormal glucose tolerance test |
| 790.6 | Other abnormal blood chemistry (hyperglycemia) |
| 791.0 | Proteinuria |
| 791.5 | Glycosuria |
| 796.1 | Abnormal reflex |
| 799.4 | Cachexia |
| V23.0–.9 | Supervision of high risk pregnancy |
| V67.2 | Follow-up examination, following chemotherapy |
| V67.51 | Follow up examination with high-risk medication not elsewhere classified |
| V58.69 | Long term current use of other medication |

*Reasons for Denial:*

Note: This section was not negotiated by the Negotiated Rulemaking Committee. This section includes HCFA's interpretation of its longstanding policies and is included for informational purposes.

- Tests for screening purposes that are performed in the absence of signs, symptoms, complaints, or personal history of disease or injury are not covered except as explicitly authorized by statute. These include exams required by insurance companies, business establishments, government agencies, or other third parties.
- Tests that are not reasonable and necessary for the diagnosis or treatment of an illness or injury are not covered according to the statute.
- Failure to provide documentation of the medical necessity of tests may result in denial of claims. Such documentation may include notes documenting relevant signs, symptoms or abnormal findings that substantiate the medical necessity for ordering the tests. In addition, failure to provide independent verification that the test was ordered by the treating physician (or qualified nonphysician practitioner) through documentation in the physician's office may result in denial.
- A claim for a test for which there is a national coverage or local medical review policy will be denied as not reasonable and necessary if it is submitted without an ICD–9–CM code or narrative diagnosis listed as covered in the policy unless other medical documentation justifying the necessity is submitted with the claim.
- If a national or local policy identifies a frequency expectation, a

claim for a test that exceeds that expectation may be denied as not reasonable and necessary, unless it is submitted with documentation justifying increased frequency.

• Tests that are not ordered by a treating physician or other qualified treating nonphysician practitioner acting within the scope of their license and in compliance with Medicare requirements will be denied as not reasonable and necessary.

• Failure of the laboratory performing the test to have the appropriate Clinical Laboratory Improvement Amendment of 1988 (CLIA) certificate for the testing performed will result in denial of claims.

ICD–9–CM Codes Denied

| Code | Description |
|---|---|
| 798.0–798.9 | Sudden death, cause unknown |
| V15.85 | Exposure to potentially hazardous body fluids |
| V16.1 | Family history of malignant neoplasm, trachea, bronchus, and lung |
| V16.2 | Family history of malignant neoplasm, other respiratory and intrathoracic organs |
| V16.4 | Family history of malignant neoplasm, genital organs |
| V16.5 | Family history of malignant neoplasm, urinary organs |
| V16.6 | Family history of malignant neoplasm, leukemia |
| V16.7 | Family history of malignant neoplasm, other lymphatic and hematopoietic neoplasms |
| V16.8 | Family history of malignant neoplasm, other specified malignant neoplasm |
| V16.9 | Family history of malignant neoplasm, unspecified malignant neoplasm |
| V17.0–V17.8 | Family history of certain chronic disabling diseases |
| V18.0–V18.8 | Family history of certain other specific conditions |
| V19.0–V19.8 | Family history of other conditions |
| V20.0–V20.2 | Health supervision of infant or child |
| V28.0–V28.9 | Antenatal screenings |
| V50.0–V50.9 | Elective surgery for purposes other than remedying health states |
| V53.2 | Fitting and adjustment of hearing aid |
| V60.0–V60.9 | Housing, household, and economic circumstances |
| V62.0 | Unemployment |
| V62.1 | Adverse effects of work environment |
| V65.0 | Healthy persons accompanying sick persons |
| V65.1 | Persons consulting on behalf of another person |
| V68.0–V68.9 | Encounters for administrative purposes |
| V70.0–V70.9 | General medical examinations |
| V73.0–V73.99 | Special screening examinations for viral and chlamydia diseases |
| V74.0–V74.9 | Special screening examinations for bacterial and spirochetal diseases |
| V75.0–V75.9 | Special screening examination for other infectious diseases |
| V76.0 | Special screening for malignant neoplasms, respiratory organs |
| V76.3 | Special screening for malignant neoplasms, bladder |
| V76.42–V76.9 | Special screening for malignant neoplasms, (sites other than breast, cervix, and rectum) |
| V77.0–V77.9 | Special screening for endocrine, nutrition, metabolic, and immunity disorders |
| V78.0–V78.9 | Special screening for disorders of blood and blood-forming organs |
| V79.0–V.79.9 | Special screening for mental disorders |
| V80.0–V80.3 | Special screening for neurological, eye, and ear diseases |
| V81.0–V81.6 | Special screening for cardiovascular, respiratory, and genitourinary diseases |
| V82.0–V82.9 | Special screening for other conditions |

*ICD–9–CM Codes That Do Not Support Medical Necessity*

Any ICD–9–CM code not listed in either of the ICD–9–CM sections above.

*Sources of Information*

AACE Guidelines for the Management of Diabetes Mellitus, Endocrine Practice (1995)1:149–157.

Bower, Bruce F. and Robert E. Moore, Endocrine Function and Carbohydrates.

Clinical Laboratory Medicine, Kenneth D. McClatchy, editor. Baltimore/Williams & Wilkins, 1994. pp 321–323.

Report of the Expert Committee on the Diagnosis and Classification of Diabetes Mellitus, Diabetes Care, Volume 20, Number 7, July 1997, pages 1183 *et seq.*

Roberts, H.J., Difficult Diagnoses. W. B. Saunders Co., pp 69–70.

*Coding Guidelines*

1. Any claim for a test listed in "HCPCS CODES" above must be submitted with an ICD–9–CM diagnosis code or comparable narrative. Codes that describe symptoms and signs, as opposed to diagnoses, should be provided for reporting purposes when a diagnosis has not been established by the physician. (Based on Coding Clinic for ICD–9–CM, Fourth Quarter 1995, page 43.)

2. Screening is the testing for disease or disease precursors so that early detection and treatment can be provided for those who test positive for the disease. Screening tests are performed when no specific sign, symptom, or diagnosis is present and the patient has not been exposed to a disease. The testing of a person to rule out or to confirm a suspected diagnosis because the patient has a sign and/or symptom is a diagnostic test, not a screening. In these cases, the sign or symptom should be used to explain the reason for the test. When the reason for performing a test is because the patient has had contact with, or exposure to, a communicable disease, the appropriate code from category V01, Contact with or exposure to communicable diseases, should be assigned, not a screening code, but the test may still be considered screening and not covered by Medicare. For screening tests, the appropriate ICD–9–CM screening code from categories V28 or V73–V82 (or comparable narrative) should be used. (From Coding Clinic for ICD–9–CM, Fourth Quarter 1996, pages 50 and 52)

3. A three-digit code is to be used only if it is not further subdivided.

Attention Medicare Medical Review Unit

For Provider Use:

Provider Number 465109

HIC Number [redacted] DCN 20534002602402

Dates of Service 11-1-05 to 11-30-05

Please indicate if:

PT Notes Attached ______ ST Notes Attached ______ OT Notes Attached ______

SNF MDS Attached ______ Demand MDS Attached ______

Itemized bill for Supply/Pharmacy X

Ambulance ______ Cardiac Rehab ______ Cataract surgery ______

Chest X-Rays ______ CT Scan ______ EPO ______ HBO ______ Labs ______

MRI ______ MRA ______ Observation ______ PSYCH ______

Questionable Covered Procedure ______

Other (Specify) ______

For Mutual of Omaha Medicare's use only:

Received MEDICARE 2 23 JAN 06 Analyzed MEDICARE 2 23 JAN '06 Region 4 Clerk # 75613

Reason Code(s) 57300 B6

MR Indicators:

MR Decision: ____ Pay all lines

Q Deny All lines

____ Deny Lines ______

MR Indicators:

MR HCPCS Code 82962

MR Rev Code 300

(for all denials, use denial codes 55615-C/55616-L)

X Services not reasonable and necessary per Pub. 100-4, Ch 7, Section 90.1

____ Services not provided as billed

____ Other ______

Medically Reviewed by S6 MEDICARE-MEDICAL REVIEW BONNIE RATIGAN RN Date MAR 2 2006

Overridden by MAR 03 2006 Jayne 69057 S6 Medicare Date ______

or Support Services User Only – OK to file MEDICARE 67 04 MAR '06

EOS Thin Client 1.14 - Microsoft Internet Explorer provided by Mutual of Omaha

Address http://a029/jeos/appEnSwPROD.html

```
465109      KINDRED NRSG CTRS WEST LLC          PART B          PAID DATE: 03/08/2006         REMIT#:   416       PAGE:      1
PATIENT NAME          PATIENT CNTRL NUMBER    RC   REM  DRG#            DRG OUT AMT   COINSURANCE   PAT REFUND     CONTRACT ADJ
HIC NUMBER            ICN NUMBER              RC   REM  OUTCD   CAPCD   NEW TECH/ECT  COVD CHGS     ESRD NET ADJ   PER DIEM RTE
FROM DT    THRU DT    MACHG   HICHG   TOB     RC   REM  PROF COMP       MSP PAYMT     NCOVD CHGS    INTEREST       PROC CD AMT
CLM STATUS            COST   COVDY    NCOVDY  RC   REM  DRG AMT         DEDUCTIBLES   DENIED CHGS   PRE PAY ADJ    NET REIMB
                      1291664                 50   MA01                          .00           .00          .00         202.74
                      20600602544802      04                                     .00           .00          .00            .89
                                      220                        .00             .00           .00          .00            .00
    4                                                            .00             .00        202.74          .00            .00
BAILEY          L     1262342                 50   MA01                          .00           .00          .00         261.60
                      20534003602402      04                                     .00           .00          .00            .89
11/01/2005 11/30/2005                 220                        .00             .00           .00          .00            .00
    4                                                            .00             .00        261.60          .00            .00
BAILEY          L     1291670                 50   MA01                          .00           .00          .00         287.76
                      20600602557302      04                                     .00           .00          .00            .89
12/01/2005 12/31/2005                 220                        .00             .00           .00          .00            .00
                                                                 .00             .00        287.76          .00            .00
                                                                                 .00           .00          .00         389.13
                                                                                 .00           .00          .00            .89
                                                                 .00             .00           .00          .00            .00
                                                                 .00             .00        389.13          .00            .00
                                                                                 .00           .00          .00         405.48
                                                                                 .00           .00          .00            .89
                                                                 .00             .00           .00          .00            .00
                                                                 .00             .00        405.48          .00            .00
                                                                                 .00           .00          .00         395.67
                                                                                 .00           .00          .00            .89
                                                                 .00             .00           .00          .00            .00
                                                                 .00             .00        395.67          .00            .00
                                                   MA01                          .00        273.66          .00         255.06
                                                                                 .00       1368.28          .00            .89
                                                                 .00             .00        255.06          .00        1368.28
                                                                 .00             .00           .00          .00        1094.62
                                                    01                           .00        205.15          .00         392.40
                                                                                 .00       1025.69          .00            .89
```



CMS CENTERS for MEDICARE & MEDICAID SERVICES

# Medicare Summary Notice

April 01, 2006

**CUSTOMER SERVICE INFORMATION**

**Your Medicare Number:** [redacted]

If you have questions, write or call:
MUTUAL OF OMAHA (#52280)
MEDICARE DIVISION
P.O. BOX 1602
OMAHA, NE 68101

**Call: 1-800-MEDICARE (1-800-633-4227)**
**Ask For Hospital Services**
**TDD-Telecommunication Device For The Deaf: 1-877-486-2048**

**BE INFORMED:** Always review your Medicare Summary Notice for correct information about the items or services you received.

This is a summary of claims processed on 03/06/2006.

## PART B MEDICAL INSURANCE - OUTPATIENT FACILITY CLAIMS

| Dates of Service | Services Provided | Amount Charged | Non-Covered Charges | Deductible and Coinsurance | You May Be Billed | See Notes Section |
|---|---|---|---|---|---|---|
| Control number 20534002602402 04 | | | | | | |
| **Kindred Nrsg Ctrs West Llc** | | | | | | a,b,c |
| **Holladay Healthcare Ctr** | | | | | | |
| **4782 South Holladay Blvd** | | | | | | |
| **Salt Lake City, UT 84117** | | | | | | |
| Referred by: C. S. Fehlauer | | | | | | |
| 11/01/05-11/30/05 | Glucose blood test (82962) | $6.54 | $6.54 | $0.00 | $0.00 | a,b |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |

**(continued)**

**THIS IS NOT A BILL** - Keep this notice for your records.

# ABOUT YOUR MEDICARE BENEFITS

For more information about services covered by Medicare, please see your Medicare Handbook.

**PART A HOSPITAL INSURANCE (INPATIENT)** helps pay for inpatient hospital care, inpatient care in a skilled nursing facility following a hospital stay, home health care and hospice care. Inpatient services are measured in benefit periods. A benefit period begins the first time you receive Medicare covered inpatient hospital care and ends when you have been out of the hospital or skilled nursing facility for 60 consecutive days. There is no limit to the number of benefit periods you may have.

**THE AMOUNT YOU MAY BE BILLED** for **Part A** services includes:

- **an inpatient hospital deductible** once during each benefit period,
- **a coinsurance amount for the 61st through the 90th days** of a hospital stay during each benefit period,
- **a coinsurance amount for each Lifetime Reserve Day,** which can be used if you have to stay in the hospital more than 90 days in one benefit period. Lifetime Reserve Days may be used only once.
- **a blood deductible** for the first three pints of unreplaced blood furnished to you in a calendar year in some states,
- **an inpatient coinsurance for the 21st through the 100th days** of a Medicare covered stay in a **skilled nursing facility,**
- charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

**PART B MEDICAL INSURANCE (OUTPATIENT FACILITIES)** helps pay for care provided by certified medical facilities, such as hospital outpatient departments, renal dialysis facilities, and community health centers.

**THE AMOUNT YOU MAY BE BILLED** for **PART B** services includes:

- **An annual deductible,** taken from the first Medicare Part B charges each year;
- After the deductible has been met for the year, depending on services received, a **coinsurance** amount (20 percent of the amount charged), or a fixed copayment for each service; and
- Charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

If you have supplemental insurance, it may help to pay the amounts you may be billed.

If you use this notice to claim supplemental benefits from another insurance company, make a copy for your records.

**WHEN OTHER INSURANCE PAYS FIRST:** All Medicare payments are made on the condition that you will pay Medicare back if benefits could be paid by insurance that is primary to Medicare. Types of insurance that should pay before Medicare include employer group health plans, no-fault insurance, automobile medical insurance, liability insurance and workers' compensation. Notify us right away if you have filed or could file a claim with insurance that is primary to Medicare.

**YOUR RIGHT TO APPEAL:** If you disagree with what Medicare approved for these services, you may appeal the decision. You must file your appeal within **120 days of the date you receive this notice.** Unless you show us otherwise, we assume you received this notice 5 days after the date of this notice. Follow the appeal instructions on the front of the last page of the notice. If you want **help with your appeal,** a friend or someone else can help you. Also, groups such as legal aid services may provide free assistance. To contact us for the names and telephone numbers of groups in your area, please see our Customer Service Information box on the front of this notice.

**HELP STOP MEDICARE FRAUD:** Fraud is a false representation by a person or business to get Medicare payments. Some examples of fraud include:

- offers of goods or money in exchange for your Medicare Number,
- telephone or door-to-door offers for free medical services or items, and
- claims for Medicare services/items you did not receive.

If you think a person or business is involved in fraud, you should call Medicare at the Customer Service Telephone number on the front of this notice.

**INSURANCE COUNSELING AND ASSISTANCE:** Insurance Counseling and Assistance programs are located in every State. These programs have volunteer counselors who can give you free assistance with Medicare questions, including enrollment, entitlement, Medigap, and premium issues. If you would like to know how to get in touch with your local Insurance Counseling and Assistance Program Counselor, please call us at the number shown in the Customer Service Information box on the front of this notice.

Your Medicare Number: [redacted]

PART B MEDICAL INSURANCE - OUTPATIENT FACILITY CLAIMS (continued)

| Dates of Service | Services Provided | Amount Charged | Non-Covered Charges | Deductible and Coinsurance | You May Be Billed | See Notes Section |
|---|---|---|---|---|---|---|
| **This Claim was continued from the previous page.** | | | | | | |
| 11/01/05-11/30/05 | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | **Claim Total** | **$261.60** | **$261.60** | **$0.00** | **$0.00** | |

## Notes Section:

a The information provided does not support the need for this service or item.

b You should not be billed for this service. You do not have to pay this amount.

c The amount Medicare paid the provider for this claim is $0.00.

## Deductible Information:

You have met the Part B deductible for 2005.

## ABOUT YOUR MEDICARE BENEFITS

For more information about services covered by Medicare, please see your Medicare Handbook.

**PART A HOSPITAL INSURANCE (INPATIENT)** helps pay for inpatient hospital care, inpatient care in a skilled nursing facility following a hospital stay, home health care and hospice care. Inpatient services are measured in benefit periods. A benefit period begins the first time you receive Medicare covered inpatient hospital care and ends when you have been out of the hospital or skilled nursing facility for 60 consecutive days. There is no limit to the number of benefit periods you may have.

**THE AMOUNT YOU MAY BE BILLED** for Part A services includes:

- **an inpatient hospital deductible** once during each benefit period,
- **a coinsurance amount for the 61st through the 90th days** of a hospital stay during each benefit period,
- **a coinsurance amount for each Lifetime Reserve Day,** which can be used if you have to stay in the hospital more than 90 days in one benefit period. Lifetime Reserve Days may be used only once.
- **a blood deductible** for the first three pints of unreplaced blood furnished to you in a calendar year in some states,
- **an inpatient coinsurance for the 21st through the 100th days** of a Medicare covered stay in a **skilled nursing facility,**
- charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

**PART B MEDICAL INSURANCE (OUTPATIENT FACILITIES)** helps pay for care provided by certified medical facilities, such as hospital outpatient departments, renal dialysis facilities, and community health centers.

**THE AMOUNT YOU MAY BE BILLED** for **PART B** services includes:

- **An annual deductible,** taken from the first Medicare Part B charges each year;
- After the deductible has been met for the year, depending on services received, a **coinsurance** amount (20 percent of the amount charged), or a fixed copayment for each service; and
- Charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

If you have supplemental insurance, it may help to pay the amounts you may be billed.

If you use this notice to claim supplemental benefits from another insurance company, make a copy for your records.

**WHEN OTHER INSURANCE PAYS FIRST:** All Medicare payments are made on the condition that you will pay Medicare back if benefits could be paid by insurance that is primary to Medicare. Types of insurance that should pay before Medicare include employer group health plans, no-fault insurance, automobile medical insurance, liability insurance and workers' compensation. Notify us right away if you have filed or could file a claim with insurance that is primary to Medicare.

**YOUR RIGHT TO APPEAL:** If you disagree with what Medicare approved for these services, you may appeal the decision. You must file your appeal within **120 days of the date you receive this notice.** Unless you show us otherwise, we assume you received this notice 5 days after the date of this notice. Follow the appeal instructions on the front of the last page of the notice. If you want **help with your appeal,** a friend or someone else can help you. Also, groups such as legal aid services may provide free assistance. To contact us for the names and telephone numbers of groups in your area, please see our Customer Service Information box on the front of this notice.

**HELP STOP MEDICARE FRAUD:** Fraud is a false representation by a person or business to get Medicare payments. Some examples of fraud include:

- offers of goods or money in exchange for your Medicare Number,
- telephone or door-to-door offers for free medical services or items, and
- claims for Medicare services/items you did not receive.

If you think a person or business is involved in fraud, you should call Medicare at the Customer Service Telephone number on the front of this notice.

**INSURANCE COUNSELING AND ASSISTANCE:** Insurance Counseling and Assistance programs are located in every State. These programs have volunteer counselors who can give you free assistance with Medicare questions, including enrollment, entitlement, Medigap, and premium issues. If you would like to know how to get in touch with your local Insurance Counseling and Assistance Program Counselor, please call us at the number shown in the Customer Service Information box on the front of this notice.

**PART A HOSPITAL INSURANCE (INPATIENT)** helps pay for inpatient hospital care, inpatient care in a skilled nursing facility following a hospital stay, home health care and hospice care. Inpatient services are measured in benefit periods. A benefit period begins the first time you receive Medicare covered inpatient hospital care and ends when you have been out of the hospital or skilled nursing facility for 60 consecutive days. There is no limit to the number of benefit periods you may have.

**THE AMOUNT YOU MAY BE BILLED** for **Part A** services includes:

- **an inpatient hospital deductible** once during each benefit period,
- **a coinsurance amount for the 61st through the 90th days** of a hospital stay during each benefit period,
- **a coinsurance amount for each Lifetime Reserve Day,** which can be used if you have to stay in the hospital more than 90 days in one benefit period. Lifetime Reserve Days may be used only once.
- **a blood deductible** for the first three pints of unreplaced blood furnished to you in a calendar year in some states,
- **an inpatient coinsurance for the 21st through the 100th days** of a Medicare covered stay in a **skilled nursing facility**,
- charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

**PART B MEDICAL INSURANCE (OUTPATIENT FACILITIES)** helps pay for care provided by certified medical facilities, such as hospital outpatient departments, renal dialysis facilities, and community health centers.

**THE AMOUNT YOU MAY BE BILLED** for **PART B** services includes:

- **An annual deductible,** taken from the first Medicare Part B charges each year;
- After the deductible has been met for the year, depending on services received, a **coinsurance** amount (20 percent of the amount charged), or a fixed copayment for each service; and
- Charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

If you have supplemental insurance, it may help to pay the amounts you may be billed.

If you use this notice to claim supplemental benefits from another insurance company, make a copy for your records.

**WHEN OTHER INSURANCE PAYS FIRST:** All Medicare payments are made on the condition that you will pay Medicare back if benefits could be paid by insurance that is primary to Medicare. Types of insurance that should pay before Medicare include employer group health plans, no-fault insurance, automobile medical insurance, liability insurance and workers' compensation. Notify us right away if you have filed or could file a claim with insurance that is primary to Medicare.

**YOUR RIGHT TO APPEAL:** If you disagree with what Medicare approved for these services, you may appeal the decision. You must file your appeal within **120 days of the date you receive this notice**. Unless you show us otherwise, we assume you received this notice 5 days after the date of this notice. Follow the appeal instructions on the front of the last page of the notice. If you want **help with your appeal**, a friend or someone else can help you. Also, groups such as legal aid services may provide free assistance. To contact us for the names and telephone numbers of groups in your area, please see our Customer Service Information box on the front of this notice.

**HELP STOP MEDICARE FRAUD:** Fraud is a false representation by a person or business to get Medicare payments. Some examples of fraud include:

- offers of goods or money in exchange for your Medicare Number,
- telephone or door-to-door offers for free medical services or items, and
- claims for Medicare services/items you did not receive.

If you think a person or business is involved in fraud, you should call Medicare at the Customer Service Telephone number on the front of this notice.

**INSURANCE COUNSELING AND ASSISTANCE:** Insurance Counseling and Assistance programs are located in every State. These programs have volunteer counselors who can give you free assistance with Medicare questions, including enrollment, entitlement, Medigap, and premium issues. If you would like to know how to get in touch with your local Insurance Counseling and Assistance Program Counselor, please call us at the number shown in the Customer Service Information box on the front of this notice.

Your Medicare Number: [redacted]

## General Information:

As requested, this is a duplicate copy of your Medicare Summary Notice.

If you change your address, please contact the Social Security Administration by calling 1-800-772-1213.

You have the right to make a request in writing for an itemized statement which details each Medicare item or service which you have received from your physician, hospital, or any other health supplier or health professional. Please contact them directly, in writing, if you would like an itemized statement.

Compare the services you receive with those that appear on your Medicare Summary Notice. If you have questions, call your doctor or provider. If you feel further investigation is needed due to possible fraud or abuse, call the phone number in the Customer Service Information Box.

ALERT: Coverage by Medicare will be limited for outpatient physical therapy (PT), speech-language pathology (SLP), and occupational therapy (OT) services for services received on January 1, 2006 through December 31, 2007. The limits are $1,740 in 2006 and $1780 in 2007 for PT and SLP combined and $1740 in 2006 and $1780 in 2007 for OT. Medicare pays up to 80 percent of the limits after the deductible has been met. These limits don't apply to certain therapy approved by Medicare or to therapy you get at hospital outpatient departments, unless you are a resident of and occupy a Medicare-certified bed in a skilled nursing facility. If you have questions, please call 1-800-MEDICARE.

If you are not due a payment check from Medicare, your Medicare summary notices (MSN) will now be mailed to you on a quarterly basis. You will no longer receive a monthly statement in the mail for these types of MSNs. You will now receive a statement every 90 days summarizing all of your Medicare claims. You may receive a bill from your provider before you receive an MSN. Please compare the MSN with the bill from your provider to ensure you paid the appropriate amount for your services.

Protect your Medicare number as you would a credit card number.

## Appeals Information - Part B (Outpatient)

**If you disagree with any claims decisions on either PART A or PART B of this notice,** your appeal must be received by **August 04, 2006.**
Follow the instructions below:

1) Circle the item(s) you disagree with and explain why you disagree.

2) Send this notice, or a copy, to the address in the "Customer Service Information" box on Page 1. (You may also send any additional information you may have about your appeal.)

3) Sign here ______________________________ Phone number (____)____________

```
MAP1031        M E D I C A R E - A   O N L I N E   S Y S T E M        PAGE 01
 SC                              UB92 CLAIM INQUIRY
  CN 20600602557902       04   HIC [redacted]       RECEIPT DATE 010606   TOB 220
 STATUS D   LOCATION B9997     TRAN DT 030706       STMT COV DT 120105    TO 123105
  UB-FORM: 9     BCBS PROVIDER:                     TRANSACT TYPE:
                 P A T I E N T   S T A Y   I N F O R M A T I O N
 PATIENT CONTROL NBR 1291670                   FEDERAL TAX NO. [redacted]      SUB
 STATEMENT DATES FROM 120105   TO 123105       COVERED DAYS           ORIG DAYS
 NON-COVERED DAYS             COIN DAYS        LRD                  CST RPT DYS
                                                               ORIG CST RPT DYS
                      P A T I E N T   I N F O R M A T I O N
          LAST BAILEY                        FIRST LOUISE      MIDDLE INIT
  ADDR  1 4782 S HOLLADAY BLVD                    2 HOLLADAY UT
        3                                         4
        5                                         6
        ZIP 841175444
              DATE OF BIRTH [redacted]      SEX F     MARITAL STATUS

                            A D M I S S I O N   D A T A
   ADMIT DATE 070604   HOUR     TYPE 3  SOURCE 1  NOE ACT CD    NOE DT
  DISC HM 0000   PATIENT STATUS 30    MEDICAL RECORD NO. 020530

 55615                                                          <== REASON CODES
              PRESS PF3-EXIT  PF8-NEXT PAGE
```

```
MAP1032          M E D I C A R E - A   O N L I N E   S Y S T E M      PAGE 02
 SC                                UB92 CLAIM INQUIRY
 DCN 20600602557902       04  HIC [redacted]     RECEIPT DATE 010606  TOB 220
 STATUS D  LOCATION B9997     TRAN DT 030706    STMT COV DT 120105   TO 123105

 CONDITION CODES 01 64 02    03    04    05    06    07    08    09    10

 BENE EXHAUST DATE SET      QUALIFYING STAY DATES SET       BDL CHK OVR
 PROV FLT DAYS         LTR RATE BYPASS      TECH PROV: DAYS      CHARGES

 OCCURRENCE CDS AND DATES 01            02             03             04
05            06            07            08             09             10

 OCCURRENCE SPAN CDS AND DTS (FROM / THRU)
 1                   2                   3                   4
 5                   6                   7                   8
 9                   10
 AD.DCN
       V A L U E  C O D E S  -  A M O U N T S  -  A N S I   MSP APP IND
01 76       89.00         02                        03
04                        05                        06
07                        08                        09
55615                                                      <== REASON CODES
      PRESS PF3-EXIT  PF5-SCROLL BKWD  PF6-SCROLL FWD  PF7-PREV   PF8-NEXT
```

Date: 03/23/2007 Time: 2:20:50 PM

MAP1033 M E D I C A R E - A O N L I N E S Y S T E M PAGE 03
SC UB92 CLAIM INQUIRY REV CD PAGE 01
DCN 20600602557902 04 HIC [redacted] RECEIPT DATE 010606 TOB 220
STATUS D LOCATION B9997 TRAN DT 030706 STMT COV DT 120105 TO 123105
ESRD HRS: PAT TERM ILL: MULTI-LAB: BENEFIT SAVINGS: Y

| CL | REV | HCPC | MODS | SERV DATE | RATE | TOT UNIT | COV UNIT | TOT CHRG | COV CHRG | NCOV CHRG |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 0300 | 82962 | | 1201 | | 3 | | 9.81 | | 9.81 |
| 2 | 0300 | 82962 | | 1202 | | 3 | | 9.81 | | 9.81 |
| 3 | 0300 | 82962 | | 1203 | | 3 | | 9.81 | | 9.81 |
| 4 | 0300 | 82962 | | 1204 | | 3 | | 9.81 | | 9.81 |
| 5 | 0300 | 82962 | | 1205 | | 3 | | 9.81 | | 9.81 |
| 6 | 0300 | 82962 | | 1206 | | 3 | | 9.81 | | 9.81 |
| 7 | 0300 | 82962 | | 1207 | | 3 | | 9.81 | | 9.81 |
| 8 | 0300 | 82962 | | 1208 | | 3 | | 9.81 | | 9.81 |
| 9 | 0300 | 82962 | | 1209 | | 3 | | 9.81 | | 9.81 |
| 10 | 0300 | 82962 | | 1210 | | 3 | | 9.81 | | 9.81 |
| 11 | 0300 | 82962 | | 1211 | | 3 | | 9.81 | | 9.81 |
| 12 | 0300 | 82962 | | 1212 | | 3 | | 9.81 | | 9.81 |
| 13 | 0300 | 82962 | | 1213 | | 1 | | 3.27 | | 3.27 |
| | | | | | TOTALS | 88 | 0 | 287.76 | 0.00 | 287.76 |

55615 <== REASON CODES
PRESS PF2-103I PF3-EXIT PF5-UP PF6 DOWN PF7-PREV PF8-NEXT PF11-RIGHT

Date: 03/23/2007 Time: 2:20:50 PM

MAP1033 M E D I C A R E - A O N L I N E S Y S T E M PAGE 03
SC UB92 CLAIM INQUIRY REV CD PAGE 02
DCN 20600602557902 04 HIC [redacted] RECEIPT DATE 010606 TOB 220
STATUS D LOCATION B9997 TRAN DT 030706 STMT COV DT 120105 TO 123105
ESRD HRS: PAT TERM ILL: MULTI-LAB: BENEFIT SAVINGS: Y

| CL | REV | HCPC | MODS | SERV DATE | RATE | TOT UNIT | COV UNIT | TOT CHRG | COV CHRG | NCOV CHRG |
|---|---|---|---|---|---|---|---|---|---|---|
| 14 | 0300 | 82962 | | 1214 | | 3 | | 9.81 | | 9.81 |
| 15 | 0300 | 82962 | | 1215 | | 3 | | 9.81 | | 9.81 |
| 16 | 0300 | 82962 | | 1216 | | 3 | | 9.81 | | 9.81 |
| 17 | 0300 | 82962 | | 1217 | | 3 | | 9.81 | | 9.81 |
| 18 | 0300 | 82962 | | 1218 | | 2 | | 6.54 | | 6.54 |
| 19 | 0300 | 82962 | | 1219 | | 3 | | 9.81 | | 9.81 |
| 20 | 0300 | 82962 | | 1220 | | 2 | | 6.54 | | 6.54 |
| 21 | 0300 | 82962 | | 1221 | | 3 | | 9.81 | | 9.81 |
| 22 | 0300 | 82962 | | 1222 | | 3 | | 9.81 | | 9.81 |
| 23 | 0300 | 82962 | | 1223 | | 3 | | 9.81 | | 9.81 |
| 24 | 0300 | 82962 | | 1224 | | 3 | | 9.81 | | 9.81 |
| 25 | 0300 | 82962 | | 1225 | | 3 | | 9.81 | | 9.81 |
| 26 | 0300 | 82962 | | 1226 | | 2 | | 6.54 | | 6.54 |
| | | | | | | ===== | ===== | ========== | ========== | ========== |
| | | | | | TOTALS | 88 | 0 | 287.76 | 0.00 | 287.76 |

55615 <== REASON CODES

PRESS PF2-103I PF3-EXIT PF5-UP PF6 DOWN PF7-PREV PF8-NEXT PF11-RIGHT

Date: 03/23/2007 Time: 2:20:52 PM

MAP1033 M E D I C A R E - A O N L I N E S Y S T E M PAGE 03
SC UB92 CLAIM INQUIRY REV CD PAGE 03
DCN 20600602557902 04 HIC [redacted] RECEIPT DATE 010606 TOB 220
STATUS D LOCATION B9997 TRAN DT 030706 STMT COV DT 120105 TO 123105
ESRD HRS: PAT TERM ILL: MULTI-LAB: BENEFIT SAVINGS: Y

| CL | REV | HCPC | MODS | SERV DATE | RATE | TOT UNIT | COV UNIT | TOT CHRG | COV CHRG | NCOV CHRG |
|---|---|---|---|---|---|---|---|---|---|---|
| 27 | 0300 | 82962 | | 1227 | | 3 | | 9.81 | | 9.81 |
| 28 | 0300 | 82962 | | 1228 | | 3 | | 9.81 | | 9.81 |
| 29 | 0300 | 82962 | | 1229 | | 3 | | 9.81 | | 9.81 |
| 30 | 0300 | 82962 | | 1230 | | 3 | | 9.81 | | 9.81 |
| 31 | 0300 | 82962 | | 1231 | | 3 | | 9.81 | | 9.81 |
| 32 | 0001 | | | | | | | 287.76 | | 287.76 |
| | | | | | TOTALS | 88 | 0 | 287.76 | 0.00 | 287.76 |

55615 <== REASON CODES
PRESS PF2-103I PF3-EXIT PF5-UP PF6 DOWN PF7-PREV PF8-NEXT PF11-RIGHT

Date: 03/23/2007 Time: 2:20:53 PM

M E D I C A R E - A O N L I N E S Y S T E M PAGE 04

SC UB92 CLAIM INQUIRY

DCN 20600602557902 04 HIC [redacted] RECEIPT DATE 010606 TOB 220

STATUS D LOCATION B9997 TRAN DT 030706 STMT COV DT 120105 TO 123105

P A Y E R I N F O R M A T I O N

NPI#: TAXO.CD: FAC.ZIP: OFFSIT/ZIP:

| | CD | PAYER | PROVIDER NO. | RI | AB | PRIOR | EST AMT |
|---|---|---|---|---|---|---|---|
| A | Z | MEDICARE | 465109 | Y | Y | | |
| B | 3 | MEDICAID | 52280 | Y | Y | | |
| C | | | | | | | |

CROSSOVER IND DUE FROM PAT

PARTNER ID

X12 UB92 I N S U R E D I N F O R M A T I O N

| | NAME(L/F) | X12 REL | UB92 REL | CERT-SSN-HIC | SEX | GROUP NAME | DOB | INS GROUP NUMBE |
|---|---|---|---|---|---|---|---|---|
| A | BAILEY | | | LOUISE | F | | [redacted] | |
| | | | | [redacted] | | | | |
| B | BAILEY | | | LOUISE | F | | | |
| | | 18 | 01 | [redacted] | | MEDICAID | | |
| C | | | | | | | | |

55615 <== REASON CODES

PRESS PF3-EXIT PF7-PREV PAGE PF8-NEXT PAGE

Date: 03/23/2007 Time: 2:20:54 PM

```
MAP1035          M E D I C A R E - A   O N L I N E   S Y S T E M           PAGE 05
 SC                                 UB92 CLAIM INQUIRY
 DCN 20600602557902         04  HIC [REDACTED]       RECEIPT DATE 010606  TOB 220
 STATUS D  LOCATION B9997       TRAN DT 030706      STMT COV DT 120105   TO 123105
 MED REV ANALYST  FSSB5501
 TREATMENT AUTHORIZATION CODE   STATUS CD        EMPLOYER NAME
   1)
       STREET                       CITY                    ST     ZIP
   2)
       STREET                       CITY                    ST     ZIP
   3)
       STREET                       CITY                    ST     ZIP

 DIAG CODES  1 73300   2 25010   3 53081   4         5         6
   7         8         9          ADMIT DIAG 73300      E-CODE
                               PRO ID 0       PC        IDE
 PROC CODES  1                   2                  3
             4                   5                  6
 ATT PHYS E69796  NPI           LN FEHLAUER          FN C.         MI S
 OPR PHYS         NPI           LN                   FN            MI
 OTH PHYS         NPI           LN                   FN            MI
 VERIFY NC DT        THRU        HMO REL/OR CD    HMO AUTH
55615                                                        <== REASON CODES
          PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

Date: 03/23/2007 Time: 2:20:54 PM

```
MAP1036         M E D I C A R E - A   O N L I N E   S Y S T E M       PAGE 06
 SC                              UB92 CLAIM INQUIRY
 DCN 20600602557902      04   HIC [redacted]     RECEIPT DATE 010606  TOB 220
 STATUS D  LOCATION B9997     TRAN DT 030706    STMT COV DT 120105   TO 123105
             M S P   A D D I T I O N A L   I N F O R M A T I O N
 INSURERS ADDRESS 1
 INSURERS ADDRESS 2
             CITY                   ST      ZIP         ZIP+4
 INSURERS ADDRESS 1
 INSURERS ADDRESS 2
             CITY                   ST      ZIP         ZIP+4       MSPPS
                    E N T R Y   I N D I C A T O R S
 RTP/BDL/ADR 55615
 REJECT CD    55615  NON PAY CODE       N    CANC DCN
 PROCESS NEW HIC     NEW HIC                 XREF DCN
 GENER HARDCOPY  9   TAPE TO TAPE            CWF DCN
 USER ACTION-CD I    MED REC ATTACHED    N   MR HOSPICE REDUCED
 ADJ REQ ID          TIMELINESS IND          MR HOSPICE RO REFERRED
 ADJ CANCEL CD       PAT FILED BILL-CD       MR INCLD IN COMPOSITE
 ADJ-REAS-CD         UTIL OVERRIDE           MR REVERSAL= URC    DEMAND
 SNF TRANSFER        EMER CARE CD            BYPASS TOB 72X OVERLAP
 MSP OVR CD A    B    C    D    E    F    G    H    I    J    L    PHY SAN
55615                                                   <== REASON CODES
          PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

```
MAP1037      M E D I C A R E - A   O N L I N E   S Y S T E M      PAGE 07
 SC                            UB92 CLAIM INQUIRY                REMARKS PAGE 01
 DCN 20600602557902      04   HIC [redacted]      RECEIPT DATE 010606   TOB 220
 STATUS D  LOCATION B9997     TRAN DT 030706      STMT COV DT 120105    TO 123105

                              A T T A C H M E N T S
      N   HOME HEALTH           N   PACEMAKER                 N   THERAPY PT
      N   AIR/AMBULANCE         N   OP REHAB / THERAPY OT N   THERAPY RT
      N   THERAPY ST            N   THERAPY CR                N   THERAPY MS
      N   THERAPY PS            N   THERAPY SN                N   ESRD ATTACH

 REMARKS:

55615                                                          <== REASON CODES
     PRESS PF3-EXIT  PF5-SCROLL BKWD  PF6-SCROLL FWD  PF7-PREV   PF8-NEXT
```

```
MAP1039        M E D I C A R E - A   O N L I N E   S Y S T E M       PAGE 09
 SC                                 UB92 CLAIM INQUIRY
 DCN 20600602557902        04  HIC [redacted]     RECEIPT DATE 010606  TOB 220
 STATUS D  LOCATION B9997      TRAN DT 030706    STMT COV DT 120105   TO 123105
                        U P D A T E   I N D I C A T O R S
 MED REV RSNS       50200
 MED REV ANALYST  FSSB5501   OPER ID              SST060307  TYPE SAVINGS IND
 KRON OVERRIDE               OUTLIER RLSE CD                 ALIEN OVERRIDE
 MCE/OCE BYPASS              PRE ENT PSY DY CNT
 POST PAY IND                POST PAY REASON
 PRO ERROR REAS              ADR DT  010906
                                 A M O U N T S
         MSP SAVINGS AMT                         PATIENT RESPON.
         MSP BLOOD DEDUCT                        MSP CASH DEDUCT
         MSP TOTAL COINS

        A U T H O R I Z E D   R E A S O N   C O D E   O V E R R I D E S
 REASON          REASON          REASON          REASON          REASON
 CODE  OPER-ID   CODE  OPER-ID   CODE  OPER-ID   CODE  OPER-ID   CODE  OPER-ID

55615                                                        <== REASON CODES
            PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

Date: 03/23/2007 Time: 2:20:57 PM

MAP103A M E D I C A R E - A O N L I N E S Y S T E M PAGE 10
SC UB92 CLAIM INQUIRY
DCN 20600602557902 04 HIC [redacted] RECEIPT DATE 010606 TOB 220
STATUS D LOCATION B9997 TRAN DT 030706 STMT COV DT 120105 TO 123105

P R O C E S S E D C L A I M I N F O R M A T I O N

| | | | |
|---|---|---|---|
| ACT MEDA REIM | | LTR DAYS 2ND YR | |
| BENE INTEREST | | OUTLIER DAYS | |
| BENE REIM AMT | | PAID DATE | 030806 |
| BLOOD PNT CHG | | PATIENT PD BLD DED | |
| CANCEL DATE | | PATIENT PD EXC BLD | |
| CLEAN CLM IND | E | PIP IND | N |
| COIN DY 1ST YR | | PROVIDER INTEREST | |
| COIN DY 2ND YR | | PROVIDER REIM | |
| COST RPT DAYS | | PROVIDER REIM METH | P |
| DRG CODE | | PROV REIM RATE | 0.89 |
| DRG REIM | | VER PAT CASH DED | |
| ESRD FIN REIM | | VER PAT COINS | |
| ESRD HLD REIM | | VER PAT PD BLD DED | |
| EXP TO DEDUCT | | PROCESS DATE | 030606 |
| DRG PATIENT AGE | 072 | PROV REIM RATE = 0 | NO |

55615 <== REASON CODES

PRESS PF3-EXIT PF7-PREV PAGE PF8-NEXT PAGE

```
MAP103B         M E D I C A R E - A   O N L I N E   S Y S T E M        PAGE 11
 SC                                UB92 CLAIM INQUIRY
 DCN 20600602557902         04   HIC [redacted]      RECEIPT DATE 010606   TOB 220
 STATUS D   LOCATION B9997       TRAN DT 030706      STMT COV DT 120105    TO 123105

                            C W F   I N F O R M A T I O N

    TIMES SENT TO CWF   01        CASH DED OVR CD                REASON FOR ENTITLE
    PRIOR DRG CODE                CWF ACTION CD         1        DISPOSITION CD     01
    CWF RECORD ID     HUOP        UNIBILL RIC           W        PRO REVIEW CD
    PASS/DIEM                     PART A EFF     110198          PART B EFF
    CWF MSP CD                    CWF TRANS DT   030306          CWF REPLY DT   030306
    CWF CLAIM OVERRIDES:

             C L A I M   L E V E L   A N S I   R E A S O N   C O D E S

  ADJ REASON: 50     GROUP: CO    APPEALS: MA01

  TOTAL CONTRACTUAL AMOUNT                  ANSI

 55615                                                          <== REASON CODES
              PRESS PF3-EXIT   PF7-PREV PAGE PF8-NEXT PAGE
```

Date: 03/23/2007 Time: 2:20:58 PM

```
MAP103C        M E D I C A R E - A   O N L I N E   S Y S T E M        PAGE 12
 SC                                UB92 CLAIM INQUIRY
 DCN 20600602557902       04   HIC [redacted]    RECEIPT DATE 010606   TOB 220
 STATUS D  LOCATION B9997      TRAN DT 030706    STMT COV DT 120105    TO 123105

                           H M O   I N F O R M A T I O N

   HMO ID     HMO OPTION     HMO EFF DT     HMO CANC DT     HMO PAY-CD    DEMO IND
                                                                 0

                           M S P   I N F O R M A T I O N

        MSP PAY    ORIG MSP    SEC PAYER    SEC PAYER       PATIENT    LCC MSP
          IND        CODE       RPT TYPE   TYPE SAVINGS       AGE        IND
           0                                                  072

                           P R O   I N F O R M A T I O N

        PRO ID      PRO CNTL       PRO PROCESS      PRO DRG          7 DAY
                      NBR             DATE           CODE           READMIT
        0
55615                                                             <== REASON CODES
             PRESS PF3-EXIT  PF7-PREV PAGE PF8-NEXT PAGE
```

Date: 03/23/2007 Time: 2:20:58 PM

MAP103D M E D I C A R E - A O N L I N E S Y S T E M PAGE 13
SC UB92 CLAIM INQUIRY
DCN 20600602557902 04 HIC [redacted] RECEIPT DATE 010606 TOB 220
STATUS D LOCATION B9997 TRAN DT 030706 STMT COV DT 120105 TO 123105

M I S C E L L A N E O U S

ADJ REJ CD
NEW CLM IND
BATCH AUD IND
CLAIM TYPE A
UNIFORM BILL CD 2
ESRD PAY TYPE 0
DME/ESRD IND
ESRD REDUCT
ROUTING UBC 8
BATCH AUD DT

ORIG MEDA REIMB
ORIG PROV REIMB
ORIG EXP TO DED
ORIG PPS PAYMENT
ORIG PAT CASH DED
ORIG PASS THRU PER DIEM
ORIG PAT PD BLOOD DED
ORIG PAT COIN
ORIG CST REP DAYS
CLAIM DUP DCN#

C L A I M P A T H

O04 Y O05 Y O06 Y O15 Y O25 Y O30 Y O35 Y O50 Y O55 Y O70 Y O80 Y O85 Y O89 Y
B90 Y B99 S

55615 <== REASON CODES

PRESS PF3-EXIT PF7-PREV PAGE PF8-NEXT PAGE

MAP103E M E D I C A R E - A O N L I N E S Y S T E M PAGE 14
SC UB92 CLAIM INQUIRY
DCN 20600602557902 04 HIC [redacted] RECEIPT DATE 010606 TOB 220
STATUS D LOCATION B9997 TRAN DT 030706 STMT COV DT 120105 TO 123105

P P S / P R I C E R C A L C U L A T I O N

| | | | | |
|---|---|---|---|---|
| CARRIER ID | 00823 | CUTOFF DYS | | DSCHRG FRCTN |
| LOCALITY | 09 | FSP PCT | | DRG WT |
| FEDERAL PORTION | | LTR DYS USED | | DRG WT FRCTN |
| HOSPITAL PORTION | | NAT PCT | | C TOT PAY |
| MSA PRICER | 7160 | PAYMENT | | C HSP |
| IRF/IPF AMT | | RTC | 00 | C FSP |
| AVG LOS | | PSR BLND YR | 0 | C OUTLIER |
| B LOS | | REG DYS USED | | C OLD HARM |
| B REVIEW CD | 00 | WAGE INDEX | | C DSH ADJ |
| LUGAR RE-CLASS CD | | PPS INDICATOR | N | C IME ADJ |
| ASC-RTC | | SOLE COM HSP IND | | C EXCEPTIONS |
| DEMO CD | | RUG IND/PHASE | | C 2 PAY CODE |
| PPS DOLLAR THRES | | | | C 2 FSP |
| SUM THRPY VISITS | | EPISODE TOT VIS | | C 2 OUTLIER |
| CBSA PRICER | | CBSA WAGE INDEX | | ESRD WADJ RATE |

55615 <== REASON CODES
PRESS PF3-EXIT PF7-PREV PAGE PF8-NEXT PAGE

MAP103F M E D I C A R E - A O N L I N E S Y S T E M PAGE 15
SC UB92 CLAIM INQUIRY AUDIT PAGE 01
DCN 20600602557902 04 HIC [redacted] RECEIPT DATE 010606 TOB 220
STATUS D LOCATION B9997 TRAN DT 030706 STMT COV DT 120105 TO 123105

C L A I M A U D I T T R A I L

| TRAN DT | S | LOC | OPER ID | REASON | TRAN DT | S | LOC | OPER ID | REASON |
|---|---|---|---|---|---|---|---|---|---|
| 060307 | D | B9997 | SST060307 | 55615 | 060306 | D | B9996 | SST060306 | 55615 |
| 060303 | S | B9099 | CWT060303 | | 060303 | S | B9000 | CNA31311 | |
| 060123 | S | MRDOC | CNA76927 | 39700 | 060109 | S | B6001 | BATCH ADR | 39700 |
| 060108 | S | B6000 | FSSA | 50200 | 060106 | S | B0100 | EMC-4010A | |

55615 <== REASON CODES
PRESS PF3-EXIT PF5-UP PF6-DWN PF7-PREV PF9-UPDT

Date: 03/23/2007 Time: 2:21:01 PM

MAP103F M E D I C A R E - A O N L I N E S Y S T E M PAGE 15
SC UB92 CLAIM INQUIRY AUDIT PAGE 01
DCN 20600602557902 04 HIC [redacted] RECEIPT DATE 010606 TOB 220
STATUS D LOCATION B9997 TRAN DT 030706 STMT COV DT 120105 TO 123105

C L A I M A U D I T T R A I L

| TRAN DT | S | LOC | OPER ID | REASON | TRAN DT | S | LOC | OPER ID | REASON |
|---|---|---|---|---|---|---|---|---|---|
| 060307 | D | B9997 | SST060307 | 55615 | 060306 | D | B9996 | SST060306 | 55615 |
| 060303 | S | B9099 | CWT060303 | | 060303 | S | B9000 | CNA31311 | |
| 060123 | S | MRDOC | CNA76927 | 39700 | 060109 | S | B6001 | BATCH ADR | 39700 |
| 060108 | S | B6000 | FSSA | 50200 | 060106 | S | B0100 | EMC-4010A | |

55615 <== REASON CODES
PRESS PF3-EXIT PF5-UP PF6-DWN PF7-PREV PF9-UPDT

Date: 03/23/2007 Time: 2:21:01 PM



MEDICARE
Part A Intermediary

REPORT: 001 MEDICARE PART A - 52280 PROVIDER NUMBER: 465109
DATE: 1/09/06 ADDITIONAL DEVELOPMENT REQUEST TYPE REQUEST: MEDICAL
BILL TYPE: 223

HOLLADAY HEALTHCARE CENTER
4782 S HOLLADAY BLVD
HOLLADAY UT 84117

WE HAVE REVIEWED YOUR CLAIM RECORDS AND FOUND THAT ADDITIONAL DEVELOPMENT WILL BE NECESSARY BEFORE PROCESSING CAN BE FINALIZED. TO ASSIST YOU IN PROVIDING THE REQUIRED INFORMATION, WE HAVE ASSIGNED REASON CODES TO THE AFFECTED CLAIM RECORD (SEE BELOW) FOR YOUR REVIEW. PLEASE REFER TO THE ACCOMPANYING LIST FOR EXPLANATION OF THE ASSIGNED CODE, AND ENTER THE REQUIRED INFORMATION IN THE SPACE PROVIDED BELOW EACH CLAIM RECORD AND RETURN WITHIN 30 DAYS TO THE: OMB CONTROL# 0938-0969

MEDICAL REVIEW DEPARTMENT
MUTUAL OF OMAHA MEDICARE
PO BOX 1602
OMAHA NE 68101

| MEDICAL REC NO. / DCN | PATIENT NAME/ HIC NUMBER | | FROM/TO DATES | OPR-MED ANALYST | TOTAL CHARGES |
|---|---|---|---|---|---|
| 020530<br>20600602557902 | BAILEY<br>[redacted] | LOUISE | 120105<br>123105 | M699 | 287.76 |

REASONS: 50200

50200
PLEASE SUBMIT THE FOLLOWING INFORMATION TO SUPPORT BLOOD GLUCOSE SERVICES
- PHYSICIAN ORDER(S) TO INCLUDE BLOOD GLUCOSE TESTING.
- DOCUMENTATION FOR THE MEDICAL NECESSITY FOR EACH TEST BILLED, THIS MAY INCLUDE NURSE'S NOTES AND OR PHYSICIAN PROGRESS NOTES.
- RESULTS OF EACH BLOOD GLUCOSE/ACCUCHECK TEST BILLED.
- DOCUMENTATION OF PHYSICIAN NOTIFICATION OF EACH TEST RESULT NOTING THE USE OF THE RESULTS TO MODIFY TREATMENT.
- DETAILED ITEMIZATION OF CHARGES BILLED.
- HISTORY AND PHYSICAL SUPPORTING THE DIAGNOSIS OF DIABETES

Holladay Healthcare Center

A Kindred Community

December 12, 2005

IS MAILING 2 3 JAN '06

Medicare Medical Review Unit
Mutual of Omaha Insurance Company
Medicare Area - Medical Reviews
P. O. Box 1602
Omaha, NE 68101

*Re: Request for Blood Glucose Testing Documentation/Information*
*Provider Name/Number:* Holladay Health Care Ctr
*Beneficiary Name:* Bailey Louise
*HICN:* [redacted]
*Dates of Services:* 12-1-05 To 12-31-05

To Whom It May Concern:

We are in receipt of your request for information dated 1-9-06. Pursuant to your request, the following documents are enclosed for your review.

| | No. of Pages |
|---|---|
| Physician Order(s) for blood glucose testing (BGT) | [ ] |
| Documentation of medical necessity for BGT | [ ] |
| Documentation of BGT results | [ ] |
| Documentation of any physician notification of BGT results and any resulting physician orders | [ ] |
| National BGT Coverage Decision | [ 4 ] |
| Letter to Mutual of Omaha, dated April 22, 2005, with attachment | [ 11 ] |
| Total number of pages submitted for review | [ 29 ] |

Should you have any questions, please contact the undersigned at [phone number]. 801-277-7002

[signature] Bom
Name, Credentials

cc: Facility Executive Director
Regional Director of Utilization
Claim Tracking File

For Mutual of Omaha Medicare's use only:
Received ____________ Analyzed ____________ Region ____________ Clerk # ____________
Reason Code(s) ____________ MR HCPCS Code(s) ____________
MR Decision ____________
MR Rev Code ____________
MR All ____________

Medically reviewed by ____________ Date ____________
Overridden by ____________ Date ____________



MEDICARE
Part A Intermediary

REPORT: 001 MEDICARE PART A - 52280 PROVIDER NUMBER: 465109
DATE: 1/09/06 ADDITIONAL DEVELOPMENT REQUEST TYPE REQUEST: MEDICAL
BILL TYPE: 223

HOLLADAY HEALTHCARE CENTER
4782 S HOLLADAY BLVD
HOLLADAY UT 84117

WE HAVE REVIEWED YOUR CLAIM RECORDS AND FOUND THAT ADDITIONAL DEVELOPMENT WILL BE NECESSARY BEFORE PROCESSING CAN BE FINALIZED. TO ASSIST YOU IN PROVIDING THE REQUIRED INFORMATION, WE HAVE ASSIGNED REASON CODES TO THE AFFECTED CLAIM RECORD (SEE BELOW) FOR YOUR REVIEW. PLEASE REFER TO THE ACCOMPANYING LIST FOR EXPLANATION OF THE ASSIGNED CODE, AND ENTER THE REQUIRED INFORMATION IN THE SPACE PROVIDED BELOW EACH CLAIM RECORD AND RETURN WITHIN 30 DAYS TO THE: OMB CONTROL# 0938-0969

MEDICAL REVIEW DEPARTMENT
MUTUAL OF OMAHA MEDICARE
PO BOX 1602
OMAHA NE 68101

| MEDICAL REC NO. / DCN | PATIENT NAME/ HIC NUMBER | | FROM/TO DATES | OPR-MED ANALYST | TOTAL CHARGES |
|---|---|---|---|---|---|
| 020530 | BAILEY | LOUISE | 120105 | M699 | 287.76 |
| 20600602557902 | [redacted] | | 123105 | | |

REASONS: 50200

50200

PLEASE SUBMIT THE FOLLOWING INFORMATION TO SUPPORT BLOOD GLUCOSE SERVICES

- PHYSICIAN ORDER(S) TO INCLUDE BLOOD GLUCOSE TESTING.
- DOCUMENTATION FOR THE MEDICAL NECESSITY FOR EACH TEST BILLED, THIS MAY INCLUDE NURSE'S NOTES AND OR PHYSICIAN PROGRESS NOTES.
- RESULTS OF EACH BLOOD GLUCOSE/ACCUCHECK TEST BILLED.
- DOCUMENTATION OF PHYSICIAN NOTIFICATION OF EACH TEST RESULT NOTING THE USE OF THE RESULTS TO MODIFY TREATMENT.
- DETAILED ITEMIZATION OF CHARGES BILLED.
- HISTORY AND PHYSICAL SUPPORTING THE DIAGNOSIS OF DIABETES



DBA HOLLADAY HEALTH CARE CENTER
4782 SO. HOLLADAY BLVD
SALT LAKE CITY UT 84117

020530

5 FED. TAX NO. | 6 STATEMENT COVERS PERIOD FROM 120105 THROUGH 123105 | 7 COV D. 0 | 8 N-C D. 0 | 9 C-I D. 0 | 10 L-R D. 0 | 11

12 PATIENT NAME: BAILEY, LOUISE

13 PATIENT ADDRESS

14 BIRTHDATE | 15 SEX F | 16 MS U | ADMISSION 17 DATE 07062004 | 18 HR 12 | 19 TYPE 3 | 20 SRC 1 | 21 D HR | 22 STAT 30 | 23 MEDICAL RECORD NO. 020530

CONDITION CODES 24 25 26 27 28 29 30 | 31

32 OCCURRENCE CODE DATE | 33 OCCURRENCE CODE DATE | 34 OCCURRENCE CODE DATE | 35 OCCURRENCE CODE DATE | 36 OCCURRENCE SPAN CODE FROM THROUGH | 37 A B C

Medicaid

39 VALUE CODES CODE AMOUNT | 40 VALUE CODES CODE AMOUNT | 41 VALUE CODES CODE AMOUNT
a
b
c
d

| 42 REV. CD. | 43 DESCRIPTION | 44 HCPCS / RATES | 45 SERV. DATE | 46 SERV. UNITS | 47 TOTAL CHARGES | 48 NON-COVERED CHARGES | 49 |
|---|---|---|---|---|---|---|---|
| 300 | LAB | 82962 | 12012005 | 3 | 981 | | |
| 300 | LAB | 82962 | 12022005 | 3 | 981 | | |
| 300 | LAB | 82962 | 12032005 | 3 | 981 | | |
| 300 | LAB | 82962 | 12042005 | 3 | 981 | | |
| 300 | LAB | 82962 | 12052005 | 3 | 981 | | |
| 300 | LAB | 82962 | 12062005 | 3 | 981 | | |
| 300 | LAB | 82962 | 12072005 | 3 | 981 | | |
| 300 | LAB | 82962 | 12082005 | 3 | 981 | | |
| 300 | LAB | 82962 | 12092005 | 3 | 981 | | |
| 300 | LAB | 82962 | 12102005 | 3 | 981 | | |
| 300 | LAB | 82962 | 12112005 | 3 | 981 | | |
| 300 | LAB | 82962 | 12122005 | 3 | 981 | | |
| 300 | LAB | 82962 | 12132005 | 1 | 327 | | |
| 300 | LAB | 82962 | 12142005 | 3 | 981 | | |
| 300 | LAB | 82962 | 12152005 | 3 | 981 | | |
| 300 | LAB | 82962 | 12162005 | 3 | 981 | | |
| 300 | LAB | 82962 | 12172005 | 3 | 981 | | |
| 300 | LAB | 82962 | 12182005 | 2 | 654 | | |
| 300 | LAB | 82962 | 12192005 | 3 | 981 | | |
| 300 | LAB | 82962 | 12202005 | 2 | 654 | | |
| 300 | LAB | 82962 | 12212005 | 3 | 981 | | |
| 300 | LAB | 82962 | 12222005 | 3 | 981 | | |
| 300 | LAB | 82962 | 12232005 | 3 | 981 | | |

| 50 PAYER | 51 PROVIDER NO. | 52 REL INFO | 53 ASG BEN | 54 PRIOR PAYMENTS | 55 EST. AMOUNT DUE | 56 |
|---|---|---|---|---|---|---|
| MEDICARE | 465109 | Y | Y | | | |
| MEDICAID | Mentally | Y | Y | | | |

57 DUE FROM PATIENT ▶

| 58 INSURED'S NAME | 59 P.REL | 60 CERT. - SSN - HIC. - ID NO. | 61 GROUP NAME | 62 INSURANCE GROUP NO. |
|---|---|---|---|---|
| BAILEY, LOUISE | 01 | | | |
| BAILEY, LOUISE | 01 | | | |

63 TREATMENT AUTHORIZATION CODES | 64 ESC | 65 EMPLOYER NAME | 66 EMPLOYER LOCATION

67 PRIN. DIAG. CD. 73300 | 68 CODE 25010 | 69 CODE 53081 | OTHER DIAG. CODES 70 CODE | 71 CODE | 72 CODE | 73 CODE | 74 CODE | 75 CODE | 76 ADM. DIAG. CD. 73300 | 77 E CODE | 78

79 P.C. | 80 PRINCIPAL PROCEDURE CODE DATE | 81 OTHER PROCEDURE CODE DATE | OTHER PROCEDURE CODE DATE

82 ATTENDING PHYS. ID E69796 FEHLAUER C S

OTHER PROCEDURE CODE DATE | OTHER PROCEDURE CODE DATE | OTHER PROCEDURE CODE DATE

83 OTHER PHYS. ID

84 REMARKS (801)277-7002

OTHER PHYS. ID

85 PROVIDER REPRESENTATIVE X | 86 DATE

I CERTIFY THE CERTIFICATIONS ON THE REVERSE APPLY TO THIS BILL AND ARE MADE A PART HEREOF.

UB-92 HCFA-1450 OCR/ORIGINAL



4782 SO. HOLLADAY BLVD
SALT LAKE CITY UT 84117

6 STATEMENT COVERS PERIOD: 120105 | 123105 | 0 | 0 | 0 | 0

12 PATIENT NAME: BAILEY, LOUISE

13 PATIENT ADDRESS: [redacted]

| 14 BIRTHDATE | 15 SEX | 16 MS | 17 DATE | 18 HR | 19 TYPE | 20 SRC | 21 D HR | 22 STAT | 23 MEDICAL RECORD NO. |
|---|---|---|---|---|---|---|---|---|---|
| [redacted] | F | U | 07062004 | 12 | 3 | 1 | | 30 | 020530 |

Medicaid

| 42 REV. CD. | 43 DESCRIPTION | 44 HCPCS / RATES | 45 SERV. DATE | 46 SERV. UNITS | 47 TOTAL CHARGES | 48 NON-COVERED CHARGES |
|---|---|---|---|---|---|---|
| 300 | LAB | 82962 | 12242005 | 3 | 981 | |
| 300 | LAB | 82962 | 12252005 | 3 | 981 | |
| 300 | LAB | 82962 | 12262005 | 2 | 654 | |
| 300 | LAB | 82962 | 12272005 | 3 | 981 | |
| 300 | LAB | 82962 | 12282005 | 3 | 981 | |
| 300 | LAB | 82962 | 12292005 | 3 | 981 | |
| 300 | LAB | 82962 | 12302005 | 3 | 981 | |
| 300 | LAB | 82962 | 12312005 | 3 | 981 | |
| 001 | TOTAL CHARGE | | | | 28776 | |

| PAYER | 51 PROVIDER NO. | 52 REL INFO | 53 ASG BEN | 54 PRIOR PAYMENTS | 55 EST. AMOUNT DUE |
|---|---|---|---|---|---|
| MEDICARE | 465109 | Y | Y | | |
| MEDICAID | Medically | Y | Y | | |

DUE FROM PATIENT

| INSURED'S NAME | 59 P.REL | 60 CERT. - SSN - HIC. - ID NO. | 61 GROUP NAME | 62 INSURANCE GROUP NO. |
|---|---|---|---|---|
| BAILEY, LOUISE | 01 | [redacted] | | |
| BAILEY, LOUISE | 01 | | | |

TREATMENT AUTHORIZATION CODES | 64 ESC | 65 EMPLOYER NAME | 66 EMPLOYER LOCATION

PRIN. DIAG. CD.: 73300 | OTHER DIAG. CODES: 25010, 53081 | 76 ADM. DIAG. CD.: 73300 | 77 E-CODE

80 PRINCIPAL PROCEDURE | 81 OTHER PROCEDURE

82 ATTENDING PHYS. ID: E69796 FEHLAUER C S

83 OTHER PHYS. ID

OTHER PHYS. ID

REMARKS (801)277-7002

85 PROVIDER REPRESENTATIVE X | 86 DATE

92 HCFA-1450 OCR/ORIGINAL

I CERTIFY THE CERTIFICATIONS ON THE REVERSE APPLY TO THIS BILL AND ARE MADE A PART HEREOF.

CHART FROM 12 / 1 / 05 THRU 12 /31/ 05

PATIENT NAME: Louise Bailey

DOCTOR: Fehlauer

DATE OF S/S INSULIN: 7/6/04

FREQUENCY OF USE: BID

MONTH OF THIS RECORD: December

SLIDING SCALE ORDER:

| | = | U | INSULIN |
|---|---|---|---|
| | = | U | INSULIN |
| | = | U | INSULIN |
| | = | U | INSULIN |
| | = | U | INSULIN |

| DATE | BREAKFAST 0700 TEST | INS. | SITE | INIT. | LUNCH TEST | INS. | SITE | INIT. | DINNER 1630 TEST | INS. | SITE | INIT. | BEDTIME 2000 TEST | INS. | SITE | INIT. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 214 | | | DB | | | | | 109 | | | DB | 164 | | | MM |
| 2 | 206 | | | DB | | | | | 75 | 8oz juice given | | DB | 253 | | | [illegible] |
| 3 | 93 | | | DB | | | | | 122 | | | DB | 220 | | | [illegible] |
| 4 | 80 | juice given | | at | | | | | 82 | juice given 122 | | at | 335 | | | [illegible] |
| 5 | 73 | med pass given | | dc | | | | | 172 | | dc | | 229 | | | MM |
| 6 | 132 108 | | | dc | | | | | 125 | | | R | 261 | | | MA |
| 7 | 92 | | | DB | | | | | 137 | | | DB | 238 | | | MA |
| 8 | 83 | | | DB | | | | | 194 | | | DB | 171 | | | MM |
| 9 | 81 | | | DB | | | | | 224 | | | DB | 472 | | | [illegible] |
| 10 | 152 | | | MT | | | | | 219 | | | MT | 274 | | | MA |
| 11 | 107 | | | dc | | | | | 128 | | | dc | 266 | | | [illegible] |
| 12 | 89 | | | dc | | | | | 92 | | | dc | 163 | | | MA |
| 13 | | | | | | | | | 138 | | | dc | | | | |
| 14 | 133 | | | DB | | | | | 284 | | | DB | 270 | | | [illegible] |
| 15 | 119 | | | DB | | | | | 172 | | | DB | 332 | | | |
| 16 | 93 | | | MT | | | | | 110 | | | MT | 210 | | | [illegible] |
| 17 | 113 | | | MT | | | | | 160 | | | MT | 299 | | | [illegible] |
| 18 | 159 | | | MT | | | | | | | | | 280 | | | [illegible] |
| 19 | 110 | | | Ok | | | | | 135 | | | Ok | 236 | | | Kk |
| 20 | | | | | | | | | 132 | | | Ok | 233 | | | MM |
| 21 | 117 | | | DB | | | | | 144 | | | DB | 188 | | | MM |
| 22 | 141 | | | DB | | | | | 115 | | | DB | 207 | | | [illegible] |
| 23 | 119 | | | dc | | | | | 128 | | | dc | 196 | | | SE |
| 24 | 126 | | | dc | | | | | 134 | | | dc | 218 | | | |
| 25 | 94 | | | DB | | | | | 122 | | | DB | 219 | | | [illegible] |
| 26 | 117 | | | DB | | | | | 221 | | | DB | 180 | | | MA |
| 27 | 133 | | | DB | | | | | | | | | 320 | | | MA |
| 28 | 125 | | | at | | | | | 162 | | | at | 158 | | | MA |
| 29 | 103 | | | dc | | | | | 179 | | | dc | | | | |
| 30 | 177 | | | dc | | | | | 151 | | | dc | 258 | | | [illegible] |
| 31 | 183 | | | MT | | | | | 208 | | | MT | 201 | | | [illegible] |

Christmas Party! 12/21/05

# Medication Record

| Order | | 01 Th | 02 Fr | 03 Sa | 04 Su | 05 Mo | 06 Tu | 07 We | 08 Th | 09 Fr | 10 Sa | 11 Su | 12 Mo | 13 Tu | 14 We | 15 Th | 16 Fr | 17 Sa | 18 Su | 19 Mo | 20 Tu | 21 We | 22 Th | 23 Fr | 24 Sa | 25 Su | 26 Mo | 27 Tu | 28 We | 29 Th | 30 Fr | 31 Sa |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Order Date: 11/29/2005 | INFO | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| NOURISHMENTS: OFFER MEAL SUPPLEMENT AND SO | ONLY | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| FOODS WHILE HAVING SORE THROAT. | DO NOT | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Discontinue Date: 12/05/2005 | CHART | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Order Date: 10/20/2005 | TIME 0800 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | | | | | | | | | | | | | | | | | | | | | | | | | | |
| LANTUS INSULIN 25 UNITS SQ Q AM / DM | SITE | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | | | | | | | | | | | | | | | | | | | | | | | | | | |
| ORDER D/C'd 12/5/05 LE | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Order Date: 07/06/2004 | SEE | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| GLUCOSCAN BID / DM | OTHER | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| ***SEE DIABETIC RECORD*** | SHEET | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| | TO CHART | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Order Date: 11/08/2005 | SEE | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| PLEASE CHECK BS @ 2000 Q HS / DM | OTHER | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| ***SEE DIABETIC RECORD*** | SHEET | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| | TO CHART | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Order Date: 04/27/2005 PLAVIX 75 MG PO Q DAY / VENOUS THROMBOSIS | 0800 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Order Date: 04/14/2005 COZAAR 25 MG PO Q DAY / HTN | 0800 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Order Date: 02/08/2005 PREVACID 30 MG PO Q HS / GERD | 2100 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | |
| Order Date: 06/16/2005 LIPITOR 20 MG PO Q PM / HYPERCHOLESTROLEMIA | 1700 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |

MEDICATION HOURS | HOUR

CHARTING FROM 12/1/2005 THRU 12/31/2005 | COMPLETE ENTRIES CHECKED BY: | TITLE:

DIAGNOSIS: Diabetes mellitus; Hypertension; Osteoporosis; VENOUS THROMBOSIS NEC; ADJUSTMNT DIS W DEPRESSN; DMI WO CMP NT ST UNCNTRL; ESOPHAGEAL REFLUX; BOTH EYES BLIND-WHO DEF

ALLERGIES: DEMEROL

NURSE'S ALERT: BLIND; Do not resuscitate; Pain less than daily; Some/all natural teeth lost, does not have or does not use dentures (or partial plates)

| PHYSICIAN | TELEPHONE NO | ALT. PHYS. | ALT. TELEPHONE |
|---|---|---|---|
| FEHLAUER, DR. STEVE | (801)408-5060 | FEHLAUER, DR. STEVE | (801)408-5060 |

| RESIDENT NAME | MED REC NO | NURSE STA | ROOM/BED | FACILITY | PAGE |
|---|---|---|---|---|---|
| BAILEY, LOUISE | 20530 | 1 | 0110B | Holladay Healthcare Center | 1 |

# Medication Record

| Order | Hour | 01 Th | 02 Fr | 03 Sa | 04 Su | 05 Mo | 06 Tu | 07 We | 08 Th | 09 Fr | 10 Sa | 11 Su | 12 Mo | 13 Tu | 14 We | 15 Th | 16 Fr | 17 Sa | 18 Su | 19 Mo | 20 Tu | 21 We | 22 Th | 23 Fr | 24 Sa | 25 Su | 26 Mo | 27 Tu | 28 We | 29 Th | 30 Fr | 31 Sa |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Order Date: 11/29/2005 | PRN | | | | | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| CEPACOL THROAT LOZENGES PRN (GIVE 1 TAB | | | | | | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| BEFORE EACH MEAL X 7 DAYS) / SORE THROAT | | | | | | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Discontinue Date: 12/05/2005 | | | | | | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Order Date: 03/24/2005 | P | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| PREP H SUPPOSITORY 1 PR BID PRN / | R | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| ½ tab if awake / insomnia? oops [illegible] | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Lantus Insulin 23 units SQ QAM 12/5/05 | 4:00 07 | | | | | → | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | Site | | | | | → | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Ambien 5mg po ē HS PRN on M-W-F only. 12/6/05 | PRN | | See | | insomnia | | | | sheet | | | | Error | | | | | | | | | | | | | | | | | | | |

INSTRUCTIONS (SEE REVERSE SIDE)

CHARTING FROM: 12/1/2005 THRU: 12/31/2005 COMPLETE ENTRIES CHECKED BY: TITLE:

DIAGNOSIS: Diabetes mellitus; Hypertension; Osteoporosis; VENOUS THROMBOSIS NEC; ADJUSTMNT DIS W DEPRESSN; DM! WO CMP NT ST UNCNTRL; ESOPHAGEAL REFLUX; BOTH EYES BLIND-WHO DEF

ALLERGIES: DEMEROL

NURSE'S ALERT: BLIND; Do not resuscitate; Pain less than daily; Some/all natural teeth lost, does not have or does not use dentures (or partial plates)

PHYSICIAN: FEHLAUER, DR. STEVE TELEPHONE NO. (801)408-5060 ALT. PHYS. FEHLAUER, DR. STEVE ALT. TELEPHONE (801)408-5060

| RESIDENT NAME | MED REC NO. | NURSE STA | ROOM/BED | FACILITY | PAGE |
|---|---|---|---|---|---|
| BAILEY, LOUISE | 20530 | 1 | 0110B | Holladay Healthcare Center | 3 |

# PHYSICIAN'S PROGRESS NOTES

| DATE | TIME | NOTES MUST BE SIGNED BY PHYSICIAN |
|---|---|---|
| 7-8-04 | | Admission H & P |
| | | CC: Constipation often & requested softner |
| | | HPI: This is an admission H & P for a 72 yr old ♀ who was adm. from home & c̄ self care deficits 2° D.M./effects. Husb. has assisted her, along c̄ H.H. CNA for last 4 yrs but now c̄ caregiver fatigue & ∅ assist. from family. |
| | | No med. records avail. p̄ several attempts for HHC staff & husb. to acquire. Medical & surg. hx acquired from this very pleasant & cognitively intact lady. |
| | | P.M.HX: Medicaid pending. |
| | | · AODM/IDDM (4-5 yrs. & first dx. p̄ onset of blindness) |
| | | · Neuropathy of bil. ft. 2° DM. |
| | | · gastroparesis 2° D.M. (dx. hosp. stay 12/03) |
| | | · Hx T.I.A. c̄ temp. loss of speech |
| | | · HTN, prim. · depression, situational |
| | | · osteoporosis prev. - ∅ bone density |
| | | · hiatal hernia c̄ GERD |
| | | · GLFs x2 ℞ (2 & 4 yrs ago c̄ fx.) |
| | | · Blindness 2° DM 4-5 yrs. |
| | | PSHX: · (L) hip pinning (4 yrs. ago) 2° GLF |
| | | · (R) shoulder fx. & rep 2° GLF 2 yrs. ago |
| | | · TAH, remote. · hyster. 20 yrs. ago. · mult. eye surg. |

| NAME–Last | First | Middle | Attending Physician | Record No. | Room/Bed |
|---|---|---|---|---|---|
| Bailey, Louise | | | Fehlauer | | |

[signature], APRN

CFS 9-1HH © 1992 Briggs Corporation, Des Moines, IA 50306 (800) 247-2343 PRINTED IN U.S.A.

PHYSICIAN'S PROGRESS NOTES

☐ Continued on Reverse

# PHYSICIAN'S PROGRESS NOTES

| DATE | TIME | NOTES MUST BE SIGNED BY PHYSICIAN |
|---|---|---|
| 7-8-04 | | Current Meds: / Allergies: |
| | | • lexapro 10 mg qd / • lantus insulin 10 U |
| | | • prevacid 30 mg bid / ō AM |
| | | • lasix 20 qd / • plavix 75 qd |
| | | - reglan 10 mg / • lipitor 40 ō HS |
| | | ō AC / • cozaar 50 qd |
| | | • calcium 500 tid / • Darvocet N 100 qid |
| | | Fam Hx: Father = ↓ age 75 c MI; AODM |
| | | Mother = ↓ age 85 - ? ō kidney, lung or liver dis. |
| | | Soc. Hx: Married, 3 children = 2 dau |
| | | out-of-state & son in SLC. Retired. |
| | | Occup = sales/office worker/business owner |
| | | ō tobacco or ETOH. |
| | | ROS: ⊕ constipation; ⊕ numbness of bil ft; |
| | | otherwise N.S. |
| | | ADLs: Cont. B&B; requires assist. c feeding; |
| | | mod. assist. c bathing, drsg, & hygiene. |
| | | Propels self in w/c & ambs. |
| | | S: See HPI. Denies CP, N/V, joint pain. |
| | | O: VS = 134/88 71-18 Wt. = 5'5" 116 lbs. |
| | | Gen. = Sitting in w/c. Alert & oriented X3 |
| | | & very pleasant & coop. HEENT = Normocephalic, |
| | | P ± L ō react to light - does ō see light of |
| | | opthmascope. Bil. TM visible & intact. Skin tag |
| | | (L) ear auricle. Own teeth T & L but poor |
| | | hygiene. Nares dry. Neck = ō JVD or adenopathy. |
| | | — [signature] APRN |

| NAME-Last | First | Middle | Attending Physician | Record No. | Room/Bed |
|---|---|---|---|---|---|
| Bailey | Loreese | | Fellows | | |

PHYSICIAN'S PROGRESS NOTES

# PHYSICIAN'S PROGRESS NOTES

| DATE | TIME | NOTES MUST BE SIGNED BY PHYSICIAN |
|---|---|---|
| 7-8-04 | | Ht = RRR ø murmur; $S_1S_2$. Lungs = CTA, ø wheezing. Abdom. = sl. rounded, soft & N.T. c̄ hypoactive BTs x4 quads. Skin = intact. Extrem. = ↓ ROM Ⓡ shoulder, to abduction; otherwise WNLs. Fair strength x4. Toenails longer than recommended. ø cyanosis or sores. |
| | | A/P: (1.) Constipation 2° DM, ↓ mobility. Add senna S qd & ↑ as needed. |
| | | (2.) AODM/IDDM c̄ neuropathy, retinopathy/blindness, gastroparesis. On lantus & accept. glucoscans last 2 d. Cont. to monitor. ø chg in meds. Cont. I.P. care. |
| | | (3.) HTN = WNLs ø Δ in meds. |
| | | (4.) Depression al, situational, 2° mult. health problems. Cont. lexapro. |
| | | (5.) Health maint. = declines offer of mammo, but agrees to dental. SW to assist c̄ medicaid dentist loc. |
| | | (6) Osteoporosis prev. = cont. cal. add vit. |
| | | (7) A.D. = ø C.P.R. |
| | | (8) Labs = consider hgb. $A_1c$, CMP, $B_{12}$, TSH, $T_4$ if ø done @ prim. MD clinic last Fri. Msg to call for labs. |
| | | [signature] Pope, APRN/GNP |

| NAME–Last | First | Middle | Attending Physician | Record No. | Room/Bed |
|---|---|---|---|---|---|
| Bailey | Louise | | Tehlauer | | |

CFS9-1HH © 1992 Briggs, Des Moines, IA 50306 PRINTED IN U.S.A. (H500)
DON'T BREAK THE LAW / MAKE THE CALL Save 13% 1-800-247-2343 www.BriggsCorp.com savings on buying vs. copying

PHYSICIAN'S PROGRESS NOTES
☒ Continued on Reverse

IC158

# PHYSICIAN'S ORDERS

| D/C DATE | ORDER DATE | Cd | ORDER TEXT | FREQUENCY |
|---|---|---|---|---|
| | | | GENERIC EQUIVALENTS MAY BE USED UNLESS OTHER-WISE NOTED. | |
| | 7/6/2004 | DT | 3 : THERAPEUTIC DIET: 1800 CAL ADA | |
| | 7-6-04 | | Resident is DNR. | |
| | 7/6/2004 | MF | 8 : MAY HAVE ANNUAL FLU VACCINE<br>MAY HAVE ANNUAL PPD TEST | |
| | 7/6/2004 | TI | 13 : LANTUS INSULIN 10 UNITS SQ Q AM / DM | QAM S |
| | 7/6/2004 | GS | 21 : GLUCOSCAN BID / DM<br>***SEE DIABETIC RECORD*** | SO |
| | 7/8/2004 | MR | 22 : SENNA S 1 TAB PO Q DAY / CONSTIPATION | QD |
| | 7/6/2004 | MR | 18 : LIPITOR 40 MG PO Q HS / HYPERCHOLESTROLEMIA | QHS |
| | 7/6/2004 | MR | 20 : CALCIUM 500 MG PO TID / OSTEOPOROSIS | TID |
| | 7/6/2004 | ME | 11 : LEXAPRO 10 MG PO Q DAY / SIT. DEPRESSION R/T HEALTH PROBLEMS.<br>***SEE A/D BLUE MED SHEET*** | SO |
| | 7/6/2004 | MR | 17 : REGLAN 10 MG PO Q AC&HS / GERD | AC & HS |
| | 7/6/2004 | MR | 14 : PREVACID 30 MG PO BID / GERD | BID |
| | 7/6/2004 | MR | 15 : LASIX 20 MG PO Q DAY / HTN | QD |
| | 7/6/2004 | MR | 16 : PLAVIX 75 MG PO Q DAY / HYPERCHOLESTROLEMIA | QD |
| | 7/6/2004 | MR | 19 : COZAAR 50 MG PO Q DAY / HTN | QD |
| | 7/8/2004 | TR | 24 : SHOES OR SLIPPERS ON FEET WHEN LEAVING ROOM TO PROTECT THEM | IO1 |

| Charting From | Thru | Facility Name | LAST PHYS. EXAM |
|---|---|---|---|
| 8/1/2004 | 8/31/2004 | Holladay Healthcare Center | |

| PHYSICIAN NAME | ALT. PHYS. NAME | ALT. PHYS. PHONE |
|---|---|---|
| FEHLAUER, DR. STEVE (801)321-5060 | FEHLAUER, DR. STEVE | (801)321-5060 |

| Diagnosis | Nursing Alert |
|---|---|
| Diabetes mellitus; Hypertension; Osteoporosis; OSTEOPOROSIS NOS; BRIEF DEPRESSIVE REACT; DMI WO CMP NT ST UNCNTRL; ESOPHAGEAL ...FLUX; BOTH ...S BLIND-WHO DEF | BLIND; Do not resuscitate; Pain less than daily; Some/all natural teeth lost, does not have or does not use dentures (or partial plates) |
| | **ALLERGIES** |
| | DEMEROL |

| PATIENT NAME | PATIENT NO. | STA | ROOM/BED | PAGE |
|---|---|---|---|---|
| BAILEY, LOUISE | 20530 | 1 | 0102A | 1 |

# PHYSICIAN'S ORDERS

| D/C DATE | ORDER DATE | Cd | ORDER TEXT | FREQUENCY |
|---|---|---|---|---|
| | 7/6/2004 | TR | 9 : OFFER HS SNACK DOCUMENT % TAKEN OR R=REFUSED | NS1 |
| | 7/6/2004 | TV | 5 : VITAL SIGNS Q DAY (SEE VS & WT REPORT/YELLOW) | SO |
| | 7/6/2004 | WA | 4 : WEIGHTS WEEKLY (SEE WT HX REPORT/DIETARY) LAST WT: | SO |
| | 7/6/2004 | AG | 6 : MAY GO OUT ON PASS WITH MEDS AND RESPONSIBLE PERSON | |
| | 7/6/2004 | AS | 2 : MAY PARTICIPATE IN SOCIAL ACTIVITIES AS TOLERATED | |
| | 7/6/2004 | OA | 7 : PODIATRIST CARE AS ORDERED | PRN |
| | 7/7/2004 | RP | 1 : REHAB POTENTIAL: POOR | |

I HAVE REVIEWED & APPROVED THE PATIENT CARE PLAN

I HAVE REVIEWED & APPROVED THE ACTIVITY PLAN. IT ISN'T IN CONFLICT WITH MED. PLAN OF CARE

CONTINUE THE ABOVE ORDERS FOR 30 DAYS/SNF OR 60 DAYS/ICF UNLESS OTHERWISE SPECIFIED.

I CERTIFY THAT THIS PATIENT REQUIRES SKILLED / INTERMEDIATE NURSING HOME CARE.

REHAB/RESTORATIVE NURSING PER NURSING JUDGEMENT

NURSES REVIEW BY: [signature], UN DATE: 8-1-04

M.D. SIGNATURE: [signature] DATE: 8/3/04

| Charting From | Thru | Facility Name | LAST PHYS. EXAM |
|---|---|---|---|
| 8/1/2004 | 8/31/2004 | Holladay Healthcare Center | |

| PHYSICIAN NAME | | ALT. PHYS. NAME | ALT. PHYS. PHONE |
|---|---|---|---|
| FEHLAUER, DR. STEVE | (801)321-5060 | FEHLAUER, DR. STEVE | (801)321-5060 |

| Diagnosis | Nursing Alert |
|---|---|
| Diabetes mellitus; Hypertension; Osteoporosis; OSTEOPOROSIS NOS; BRIEF DEPRESSIVE REACT; DMI WO CMP NT ST UNCNTRL; ESOPHAGEAL FLUX; BOTH S BLIND-WHO DEF | BLIND; Do not resuscitate; Pain less than daily; Some/all natural teeth lost, does not have or does not use dentures (or partial plates) |
| | **ALLERGIES** |
| | DEMEROL |

| PATIENT NAME | PATIENT NO. | STA | ROOM/BED | PAGE |
|---|---|---|---|---|
| BAILEY, LOUISE | 20530 | 1 | 0102A | 2 |

# ADMISSION ORDERS

**SECTION A: MEDICATION/TREATMENT**

| Medication/Treatment | Diagnosis |
|---|---|
| Lexapro 10mg po QD ✓ | depression |
| Darvocet N 100 po QID prn pain ✓ | osteoporosis |
| Lantus insulin 10units SQ Q AM ✓ | DM |
| Prevacid 30mg po BID. ✓ | GERD |
| Lasix 20mg po QD. ✓ | HTN |
| Plavix 75mg po QD. ✓ | hypercholesterolemia |
| Reglan 10mg po QAC et Q HS. ✓ | GERD |
| Lipitor 40mg po Q HS. ✓ | hypercholesterolemia |
| Cozaar 50mg po QD. ✓ | HTN |
| Calcium 500mg po TID ✓ | osteoporosis |
| ~~Glucosean BID~~ | ~~DM~~ |

Nurse's signature: [signature] LPN / W. [signature]

Date 7 / 6 / 04

I have reviewed this resident's plan of care and am in agreement with it.

Physician's signature [signature]

Date 7 / 12 / 04

**SECTION D: NEW ADMISSION ORDERS (Complete this section once part 4 is detached)**

Admit to: Holladay Healthcare

Rehab potential: ☐ Good ☐ Fair ☒ Poor ☐ None

Comment:

**CPR Status:** ☐ Yes ☒ No CPR Resident representative aware? ☒ Yes ☐ No

Advance directives issued? ☒ Yes ☐ No Copy attached? ☐ Yes ☐ No

**Diet Order:** 1800 cal ADA

Texture: ☒ Regular ☐ Ground meat ☐ Pureed ☐ As tolerated ☐ Other

☐ May have regular diet - Special occasions

☐ Supplements:

**Therapy Evaluation Orders:**

Weight bearing ability: ☐ Full ☐ Partial ☐ None Mobility Status:

PT yes x per week OT ____ x per week ST ____ x per week

| ADDITIONAL ORDERS | YES | NO |
|---|---|---|
| Restraints – If yes, type/frequency/reason | | ✓ |
| Side rails – If yes, type/frequency/reason | | ✓ |
| Podiatry care PRN | ✓ | |
| Dental care PRN | ✓ | |
| Ophthalmology care PRN | ✓ | |
| Audiological care PRN | ✓ | |
| May participate in: Overall activity plan | ✓ | |
| Volunteer program | | |
| May have occasional alcoholic beverage | | ✓ |
| May go on pass with meds | ✓ | |
| PPD per facility policy | ✓ | |
| Chest X-ray | ✓ | |
| Pneumococcal vaccine | | ✓ |
| Annual flu shot | ✓ | |
| Laboratory per facility policy | ✓ | |
| | | |
| | | |
| | | |
| Vital signs per facility policy | ✓ | |
| | | |
| Weight per facility policy | ✓ | |

Discharge Plans:

**Admission date** 7 / 6 / 04 Date Of Birth [redacted]

**SECTION B: DIAGNOSES (not listed in Section A)**

**SECTION C: ALLERGIES**

Demerol

☐ Generic equivalents may not be used

WHITE–To Physician for Signature YELLOW–Temporary Chart Copy PINK–Pharmacy Copy GREEN–Medication Adm. Record

| NAME–Last | First | Middle | Attending Physician | Record No. | Room/Bed |
|---|---|---|---|---|---|
| Bailey | Louise | | Fehlauer | | 102A |

CFS 5-2/4P © 1992 Briggs Corporation, Des Moines, IA 50306 (800) 247-2343 PRINTED IN U.S.A.

ADMISSION ORDERS



**PHYSICIAN'S TELEPHONE ORDERS AUDIT**

Name of Facility: HHC

Address:

Family Name: Bailey

First Name: Louise

Admission Number:

Room No.:

Attending Physician: Feinlauer

Orders

| Date Ordered | Time Ordered | Date Discontinued | Orders |
|---|---|---|---|
| 11/8/05 | | | please check BS @ 2000 Q day |

Signature of Nurse Receiving Order: W. Hammer LN

Signature of Physician: C 11/10/05

Date:

| | Initials | | Initials | | Initials | |
|---|---|---|---|---|---|---|
| On MD Order Sheet | | Med/Tx Sheet | | Date & Time | | Communicated |
| Pharmacy | | Nurses Notes | | Pt. Care Plan | | Signed |

Form 1394/4 © BRIGGS, Des Moines, IA 50306 (800) 247-2343 PRINTED IN U.S.A. www.BriggsCorp.com

ORIGINAL COPY - Physician Please Sign and Return

# NURSE'S NOTES

| DATE/ TIME | PROB. NO. | NOTES MUST BE SIGNED WITH NAME AND TITLE |
|---|---|---|
| 10/20/05 1050 | | Order received to Δ Lantus to 25 units SQ @ 4pm. — [illegible] |
| 10/27/05 | | Pt. seen by podiatrist, no new orders — [illegible] |
| 11-5-05 | | N.O. Benadryl 25mg Caps 2 po Q HS prn sleep per pt. request — [illegible] |
| 11/8/05 | | Louise attended care plan mtg. is doing well pleased w/ new room & situation. We are working on getting her a new wheelchair, which pleases her. Her daughter-in-law present as well. She is pleased w/ care & Louise's new room. — [illegible] |
| 11-8-05 1300 | | T.O. Please check BS @ 2000 Q day. Put in MAR and on BS sheet. — [illegible] |
| 11-10-05 | | Orders noted: 1) Tylenol 500mg ii po QHS 2) If/when res wakes @ Noc, √ BG et SaO2. Notify MD if abnormal, x 1 week. 3) Prevacid @ HS (time Δ). — [illegible] RN |
| 11-14-05 | | weekly done today — [illegible] |
| 11/28/05 1600 | | Resident c/o cough & hoarse voice. Requesting cough med. Order received & noted from Dr. [illegible]. Called to pharm. Res to stay in Rm until [illegible] symptoms gone — [illegible] |
| 11/28/05 1430 | | N.O. Cepacol throat lozenges prn sore throat; Give 1 before ea meal x 7 days. Offer meal supplements & soft foods while having sore throat, this is already being done — [illegible] |

| NAME–Last | First | Middle | Attending Physician | Record No. | Room/Bed |
|---|---|---|---|---|---|
| Bailey | Louise | | Dr. Fehlauer | | |

CFS 6-32HH © 1992 Briggs, Des Moines, IA 50306 PRINTED IN U.S.A. (R500)
DON'T BREAK THE LAW / MAKE THE CALL Save 13%* 1-800-247-2343 www.BriggsCorp.com *savings on buying vs. copying
NURSE'S NOTES
☐ Continued on Reverse
163

has not been coded to the full number of digits required for that code. (From Coding Clinic for ICD–9–CM. Fourth Quarter, 1995, page 44.)

4. Diagnoses documented as "probable," "suspected," "questionable," "rule-out," or "working diagnosis" should not be coded as though they exist. Rather, code the condition(s) to the highest degree of certainty for that encounter/visit, such as signs, symptoms, abnormal test results, exposure to communicable disease or other reasons for the visit. (From Coding Clinic for ICD–9–CM, Fourth Quarter 1995, page 45.)

5. When a non-specific ICD–9 code is submitted, the underlying sign, symptom, or condition must be related to the indications for the test above.

6. When the indication for the test is long-term administration of glucocorticosteroids, use ICD–9–CM code V58.69.

*Medicare National Coverage Decision for Blood Glucose Testing*

*Description*

This policy is intended to apply to blood samples used to determine glucose levels.

Blood glucose determination may be done using whole blood, serum or plasma. It may be sampled by capillary puncture, as in the fingerstick method, or by vein puncture or arterial sampling. The method for assay may be by color comparison of an indicator stick, by meter assay of whole blood or a filtrate of whole blood, using a device approved for home monitoring, or by using a laboratory assay system using serum or plasma. The convenience of the meter or stick color method allows a patient to have access to blood glucose values in less than a minute or so and has become a standard of care for control of blood glucose, even in the inpatient setting.

*HCPCS Codes (Alpha numeric, CPT–AMA)*

| Code | Descriptor |
|---|---|
| 82947 | Glucose; quantitative, blood (except reagent strip) |
| 82948 | Glucose; blood, reagent strip |
| 82962 | Glucose, blood by glucose monitoring device(s) cleared by the FDA specifically for home use. |

*Indications*

Blood glucose values are often necessary for the management of patients with diabetes mellitus, where hyperglycemia and hypoglycemia are often present. They are also critical in the determination of control of blood glucose levels in the patient with impaired fasting glucose (FPG 110–125 mg/dL), the patient with insulin resistance syndrome and/or carbohydrate intolerance (excessive rise in glucose following ingestion of glucose or glucose sources of food), in the patient with a hypoglycemia disorder such as nesidioblastosis or insulinoma, and in patients with a catabolic or malnutrition state. In addition to those conditions already listed, glucose testing may be medically necessary in patients with tuberculosis, unexplained chronic or recurrent infections, alcoholism, coronary artery disease (especially in women), or unexplained skin conditions (including pruritis, local skin infections, ulceration and gangrene without an established cause). Many medical conditions may be a consequence of a sustained elevated or depressed glucose level. These include comas, seizures or epilepsy, confusion, abnormal hunger, abnormal weight loss or gain, and loss of sensation. Evaluation of glucose may also be indicated in patients on medications known to affect carbohydrate metabolism.

*Limitations*

Frequent home blood glucose testing by diabetic patients should be encouraged. In stable, non-hospitalized patients who are unable or unwilling to do home monitoring, it may be reasonable and necessary to measure quantitative blood glucose up to four times annually.

Depending upon the age of the patient, type of diabetes, degree of control, complications of diabetes, and other co-morbid conditions, more frequent testing than four times annually may be reasonable and necessary.

In some patients presenting with nonspecific signs, symptoms, or diseases not normally associated with disturbances in glucose metabolism, a single blood glucose test may be medically necessary. Repeat testing may not be indicated unless abnormal results are found or unless there is a change in clinical condition. If repeat testing is performed, a specific diagnosis code (e.g., diabetes) should be reported to support medical necessity. However, repeat testing may be indicated where results are normal in patients with conditions where there is a confirmed continuing risk of glucose metabolism abnormality (e.g., monitoring glucocorticoid therapy).

ICD–9–CM Codes Covered by Medicare Program

| Code | Description |
|---|---|
| 011.00–011.96 | Tuberculosis |
| 038.0–038.9 | Septicemia |
| 112.1 | Recurrent vaginal candidiasis |
| 112.3 | Interdigital candidiasis |
| 118 | Opportunistic mycoses |
| 157.4 | Malignant neoplasm of Islets of Langerhans |
| 158.0 | Malignant neoplasm of retroperitoneum |
| 211.7 | Benign neoplasm of Islets of Langerhans |
| 242.00–242.91 | Thyrotoxicosis |
| 250.00–250.93 | Diabetes mellitus |
| 251.0–251.9 | Disorders of pancreatic internal secretion |
| 253.0–253.9 | Disorders of the pituitary gland |
| 255.0 | Cushing syndrome |

| Code | Description |
|---|---|
| 263.0–263.9 | Malnutrition |
| 271.0–271.9 | Disorders of carbohydrate transport and metabolism |
| 272.0–272–4 | Disorders of lipoid metabolism |
| 275.0 | Hemochromotosis |
| 276.0–276.9 | Disorders of fluid, electrolyte and acid-base balance |
| 278.3 | Hypercarotinemia |
| 293.0 | Acute delirium |
| 294.9 | Unspecified organic brain syndrome |
| 298.9 | Unspecified psychosis |
| 300.9 | Unspecified neurotic disorder |
| 310.1 | Organic personality syndrome |
| 337.9 | Autonomic nervous system neuropathy |
| 345.10–345.11 | Generalized convulsive epilepsy |
| 348.3 | Encephalopathy, unspecified |
| 355.9 | Neuropathy, not otherwise specified |
| 356.9 | Unspecified hereditary and idiopathic peripheral neuropathy |
| 357.9 | Unspecified inflammatory and toxic neuropathy |
| 362.10 | Background retinopathy |
| 362.18 | Retinal vasculitis |
| 362.29 | Nondiabetic proliferative retinopathy |
| 362.50–362.57 | Degeneration of macular posterior pole |
| 362.60–362.66 | Peripherial retinal degeneration |
| 362.81–362.89 | Other retinal disorders |
| 362.0 | Unspecified retinal disorders |
| 365.04 | Borderline glaucoma, ocular hypertension |
| 365.32 | Corticosteriod-induced glaucoma residual |
| 366.00–366.09 | Presenile cataract |
| 366.10–366.19 | Senile cataract |
| 367.1 | Acute myopia |
| 368.8 | Other specified visual disturbance |
| 373.00 | Blephartis |
| 377.24 | Pseudopapilledema |
| 377.9 | Autonomic nervous system neuropathy |
| 378.50–378.55 | Paralytic strabiamus |
| 379.45 | Argyll-Robertson pupils |
| 410.00–410.92 | Acute myocardial infarctions |
| 414.00–414.19 | Coronary atherosclerosis and aneurysm of heart |
| 425.9 | Secondary cardiomyopathy, unspecified |
| 440.23 | Arteriosclerosis of extremities with ulceration |
| 440.24 | Arteriosclerosis of extremities with gangrene |
| 440.9 | Arteriosclerosis, not otherwise specified |
| 458.0 | Postural hypotension |
| 462 | Acute pharyngitis |
| 466.0 | Acute bronchitis |
| 480.0–486 | Pneumonia |
| 490 | Recurrent bronchitis, not specified as acute or chronic |
| 491.0–491.9 | Chronic bronchitis |
| 527.7 | Disturbance of salivory secretion (drymouth) |
| 528.0 | Stomatitis |
| 535.50–535.51 | Gastritis |
| 536.8 | Dyspepsia |
| 571.8 | Other chronic nonalcoholic liver disease |
| 572.0–572.8 | Liver abscess and sequelae of chronic liver disease |
| 574.50–574.51 | Choledocholitiasis |
| 575.0–575.12 | Cholecystitis |
| 576.1 | Cholangitis |
| 577.0 | Acute pancreatitis |
| 577.1 | Chronic pancreatitis |
| 577.8 | Pancreatic multiple calculi |
| 590.00–590.9 | Infections of the kidney |
| 595.9 | Recurrent cystitis |
| 596.4 | Bladder atony |
| 596.53 | Bladder paresis |
| 599.0 | Urinary tract infection, recurrent |
| 607.84 | Impotence of organic origin |
| 608.89 | Other disorders male genital organs |
| 616.10 | Vulvovaginitis |
| 626.0 | Amenorrhea |
| 626.4 | Irregular menses |
| 628.9 | Infertility—female |
| 648.00 | Diabetes mellitus complicating pregnancy, Childbirth or the puerperium, unspecified as to episode of care or not applicable |
| 648.03 | Diabetes mellitus complicating pregnancy, Childbirth or the puerperium, antipartum condition or complication |

| Code | Description |
|---|---|
| 648.04 | Diabetes mellitus complicating pregnancy, Childbirth or the puerperium, postpartum condition or complication |
| 648.80 | Abnormal glucose tolerance complicating pregnancy, childbirth or the puerperium, unspecified as to episode of care or not applicable |
| 648.83 | Abnormal glucose tolerance complicating pregnancy, childbirth or the puerperium, antipartum condition or complication |
| 648.84 | Abnormal glucose tolerance complicating pregnancy, childbirth or the puerperium, postpartum condition or complication |
| 656.60–656.63 | Fetal problems affecting management of mother—large for-date of fetus |
| 657.00–657.03 | Polyhydramnios |
| 680.0–680.9 | Carbuncle and furuncle |
| 686.00–686.9 | Infections of skin and subcutaneous tissue |
| 698.0 | Pruritis ani |
| 698.1 | Pruritis of genital organs |
| 704.1 | Hirsutism |
| 705.0 | Anhidrosis |
| 707.0–707.9 | Chronic ulcer of skin |
| 709.3 | Degenerative skin disorders |
| 729.1 | Myalgia |
| 730.07–730.27 | Osteomyelitis of tarsal bones |
| 780.01 | Coma |
| 780.02 | Transient alteration of awareness |
| 780.09 | Alteration of consciousness, other |
| 780.2 | Syncope and collapse |
| 780.31 | Febrile convulsions |
| 780.39 | Seizures, not otherwise specified |
| 780.4 | Dizziness and giddiness |
| 780.71–780.79 | Malaise and fatigue |
| 780.8 | Hyperhidrosis |
| 781.0 | Abnormal involuntary movements |
| 782.0 | Loss of vibratory sensation |
| 783.1 | Abnormal weight gain |
| 783.2 | Abnormal loss of weight |
| 783.5 | Polydipsia |
| 783.6 | Polyphagia |
| 785.0 | Tachycardia |
| 785.4 | Gangrene |
| 786.01 | Hyperventilation |
| 786.09 | Dyspnea, |
| 786.50 | Chest pain, unspecified |
| 787.6 | Fecal incontinence |
| 787.91 | Diarrhea |
| 788.41–788.43 | Frequency of urination and polyuria |
| 789.1 | Hepatomegaly |
| 790.2 | Abnormal glucose tolerance test |
| 790.6 | Other abnormal blood chemistry (hyperglycemia) |
| 791.0 | Proteinuria |
| 791.5 | Glycosuria |
| 796.1 | Abnormal reflex |
| 799.4 | Cachexia |
| V23.0–.9 | Supervision of high risk pregnancy |
| V67.2 | Follow-up examination, following chemotherapy |
| V67.51 | Follow up examination with high-risk medication not elsewhere classified |
| V58.69 | Long term current use of other medication |

*Reasons for Denial:*

Note: This section was not negotiated by the Negotiated Rulemaking Committee. This section includes HCFA's interpretation of its longstanding policies and is included for informational purposes.

• Tests for screening purposes that are performed in the absence of signs, symptoms, complaints, or personal history of disease or injury are not covered except as explicitly authorized by statute. These include exams required by insurance companies, business establishments, government agencies, or other third parties.

• Tests that are not reasonable and necessary for the diagnosis or treatment of an illness or injury are not covered according to the statute.

• Failure to provide documentation of the medical necessity of tests may result in denial of claims. Such documentation may include notes documenting relevant signs, symptoms or abnormal findings that substantiate the medical necessity for ordering the tests. In addition, failure to provide independent verification that the test was ordered by the treating physician (or qualified nonphysician practitioner) through documentation in the physician's office may result in denial.

• A claim for a test for which there is a national coverage or local medical review policy will be denied as not reasonable and necessary if it is submitted without an ICD–9–CM code or narrative diagnosis listed as covered in the policy unless other medical documentation justifying the necessity is submitted with the claim.

• If a national or local policy identifies a frequency expectation, a

claim for a test that exceeds that expectation may be denied as not reasonable and necessary, unless it is submitted with documentation justifying increased frequency.

• Tests that are not ordered by a treating physician or other qualified treating nonphysician practitioner acting within the scope of their license and in compliance with Medicare requirements will be denied as not reasonable and necessary.

• Failure of the laboratory performing the test to have the appropriate Clinical Laboratory Improvement Amendment of 1988 (CLIA) certificate for the testing performed will result in denial of claims.

ICD–9–CM Codes Denied

| Code | Description |
|---|---|
| 798.0–798.9 | Sudden death, cause unknown |
| V15.85 | Exposure to potentially hazardous body fluids |
| V16.1 | Family history of malignant neoplasm, trachea, bronchus, and lung |
| V16.2 | Family history of malignant neoplasm, other respiratory and intrathoracic organs |
| V16.4 | Family history of malignant neoplasm, genital organs |
| V16.5 | Family history of malignant neoplasm, urinary organs |
| V16.6 | Family history of malignant neoplasm, leukemia |
| V16.7 | Family history of malignant neoplasm, other lymphatic and hematopoietic neoplasms |
| V16.8 | Family history of malignant neoplasm, other specified malignant neoplasm |
| V16.9 | Family history of malignant neoplasm, unspecified malignant neoplasm |
| V17.0–V17.8 | Family history of certain chronic disabling diseases |
| V18.0–V18.8 | Family history of certain other specific conditions |
| V19.0–V19.8 | Family history of other conditions |
| V20.0–V20.2 | Health supervision of infant or child |
| V28.0–V28.9 | Antenatal screenings |
| V50.0–V50.9 | Elective surgery for purposes other than remedying health states |
| V53.2 | Fitting and adjustment of hearing aid |
| V60.0–V60.9 | Housing, household, and economic circumstances |
| V62.0 | Unemployment |
| V62.1 | Adverse effects of work environment |
| V65.0 | Healthy persons accompanying sick persons |
| V65.1 | Persons consulting on behalf of another person |
| V68.0–V68.9 | Encounters for administrative purposes |
| V70.0–V70.9 | General medical examinations |
| V73.0–V73.99 | Special screening examinations for viral and chlamydia diseases |
| V74.0–V74.9 | Special screening examinations for bacterial and spirochetal diseases |
| V75.0–V75.9 | Special screening examination for other infectious diseases |
| V76.0 | Special screening for malignant neoplasms, respiratory organs |
| V76.3 | Special screening for malignant neoplasms, bladder |
| V76.42–V76.9 | Special screening for malignant neoplasms, (sites other than breast, cervix, and rectum) |
| V77.0–V77.9 | Special screening for endocrine, nutrition, metabolic, and immunity disorders |
| V78.0–V78.9 | Special screening for disorders of blood and blood-forming organs |
| V79.0–V.79.9 | Special screening for mental disorders |
| V80.0–V80.3 | Special screening for neurological, eye, and ear diseases |
| V81.0–V81.6 | Special screening for cardiovascular, respiratory, and genitourinary diseases |
| V82.0–V82.9 | Special screening for other conditions |

*ICD–9–CM Codes That Do Not Support Medical Necessity*

Any ICD–9–CM code not listed in either of the ICD–9–CM sections above.

*Sources of Information*

AACE Guidelines for the Management of Diabetes Mellitus, Endocrine Practice (1995)1:149–157.

Bower, Bruce F. and Robert E. Moore, Endocrine Function and Carbohydrates. Clinical Laboratory Medicine. Kenneth D. McClatchy, editor. Baltimore/Williams & Wilkins, 1994. pp 321–323.

Report of the Expert Committee on the Diagnosis and Classification of Diabetes Mellitus, Diabetes Care, Volume 20, Number 7, July 1997, pages 1183 *et seq.*

Roberts, H.J., Difficult Diagnoses, W. B. Saunders Co., pp 69–70.

*Coding Guidelines*

1. Any claim for a test listed in "HCPCS CODES" above must be submitted with an ICD–9–CM diagnosis code or comparable narrative. Codes that describe symptoms and signs, as opposed to diagnoses, should be provided for reporting purposes when a diagnosis has not been established by the physician. (Based on Coding Clinic for ICD–9–CM, Fourth Quarter 1995, page 43.)

2. Screening is the testing for disease or disease precursors so that early detection and treatment can be provided for those who test positive for the disease. Screening tests are performed when no specific sign, symptom, or diagnosis is present and the patient has not been exposed to a disease. The testing of a person to rule out or to confirm a suspected diagnosis because the patient has a sign and/or symptom is a diagnostic test, not a screening. In these cases, the sign or symptom should be used to explain the reason for the test. When the reason for performing a test is because the patient has had contact with, or exposure to, a communicable disease, the appropriate code from category V01, Contact with or exposure to communicable diseases, should be assigned, not a screening code, but the test may still be considered screening and not covered by Medicare. For screening tests, the appropriate ICD–9–CM screening code from categories V28 or V73–V82 (or comparable narrative) should be used. (From Coding Clinic for ICD–9–CM, Fourth Quarter 1996, pages 50 and 52)

3. A three-digit code is to be used only if it is not further subdivided

Attention Medicare Medical Review Unit

For Provider Use:

Provider Number 465109

HIC Number [redacted] DCN 20400602557902

Dates of Service 12-01-05 to 12-31-05

Please indicate if:

PT Notes Attached ______ ST Notes Attached ______ OT Notes Attached ______

SNF MDS Attached ______ Demand MDS Attached ______

Itemized bill for Supply/Pharmacy ______

Ambulance ______ Cardiac Rehab ______ Cataract surgery ______

Chest X-Rays ______ CT Scan ______ EPO ______ HBO ______ Labs ______

MRI ______ MRA ______ Observation ______ PSYCH ______

Questionable Covered Procedure ______

Other (Specify) ______

For Mutual of Omaha Medicare's use only:

Received MEDICARE 42 23 JAN '06 Analyzed 1-23-06 Region 4 Clerk # 71692

Reason Code(s) 5020036 MR Indicators: ______

**MR Decision:** ______ Pay all lines

X Deny All lines

______ Deny Lines ______

**MR Indicators:**

MR HCPCS Code 82962

MR Rev Code 300

(for all denials, use denial codes 55615-C/55616-L)

X Services not reasonable and necessary per Pub. 100-4, Ch 7, Section 90.1

______ Services not provided as billed

______ Other ______

Medically Reviewed by [signature] Date 3/2/06

MAR 03 2006 Carolyn Green 81311 05 Medicare

Overridden by ______ Date ______

For Support Services User Only - OK to file MEDICARE 67 04 MAR '06

EOS Thin Client 1.14 - Microsoft Internet Explorer provided by Mutual of Omaha

http://a029/jeos/appEnSwPROD.html

465109 KINDRED NRSG CTRS WEST LLC PART B PAID DATE: 03/08/2006 REMIT#: 416 PAGE: 1

| PATIENT NAME / HIC NUMBER / FROM DT THRU DT / CLM STATUS | PATIENT CNTRL NUMBER / ICN NUMBER / NACHG HICHG TOB / COST COVDY NCOVDY | RC | REM | DRG# / OUTCD CAPCD / PROF COMP / DRG AMT | DRG OUT AMT / NEW TECH/ECT / HSP PAYMT / DEDUCTIBLES | COINSURANCE / COVD CHGS / NCOVD CHGS / DENIED CHGS | PAT REFUND / ESRD NET ADJ / INTEREST / PRE PAY ADJ | CONTRACT ADJ / PER DIEM RTE / PROC CD AMT / NET REIMB |
|---|---|---|---|---|---|---|---|---|
| | | 50 | MA01 | | .00 | .00 | .00 | 202.74 |
| | | 04 | | | .00 | .00 | .00 | .89 |
| | | | | .00 | .00 | .00 | .00 | .00 |
| 4 | | | | .00 | .00 | 202.74 | .00 | .00 |
| BAILEY L | 1262342 | 50 | MA01 | | .00 | .00 | .00 | 261.60 |
| | 20524002602402 | 04 | | | .00 | .00 | .00 | .89 |
| 11/01/2005 11/30/2005 | 220 | | | .00 | .00 | .00 | .00 | .00 |
| 4 | | | | .00 | .00 | 261.60 | .00 | .00 |
| BAILEY L | 1291670 | 50 | MA01 | | .00 | .00 | .00 | 297.75 |
| | 20600502557902 | 04 | | | .00 | .00 | .00 | .89 |
| 12/01/2005 12/31/2005 | 220 | | | .00 | .00 | .00 | .00 | .00 |
| | | | | .00 | .00 | 287.76 | .00 | .00 |
| | | | | | .00 | .00 | .00 | 389.13 |
| | | | | | .00 | .00 | .00 | .89 |
| | | | | .00 | .00 | .00 | .00 | .00 |
| | | | | .00 | .00 | 389.13 | .00 | .00 |
| | | | | | .00 | .00 | .00 | 405.48 |
| | | 04 | | | .00 | .00 | .00 | .89 |
| | | | | .00 | .00 | .00 | .00 | .00 |
| | | | | 0 | .00 | 405.48 | .00 | .00 |
| | | | | | .00 | .00 | .00 | 395.67 |
| | | | | | .00 | .00 | .00 | .89 |
| | | | | .00 | .00 | .00 | .00 | .00 |
| | | | | .00 | .00 | 395.67 | .00 | .00 |
| | | 50 | MA01 | | .00 | 273.66 | .00 | 255.06 |
| | | 04 2 | | | .00 | 1368.28 | .00 | .89 |
| | | | | .00 | .00 | 255.06 | .00 | 1368.28 |
| | | | | .00 | .00 | .00 | .00 | 1094.62 |
| | | 50 | MA01 | | .00 | 205.15 | .00 | 392.40 |
| | | 04 2 | | | .00 | 1025.69 | .00 | .89 |



CMS CENTERS for MEDICARE & MEDICAID SERVICES

# Medicare Summary Notice

April 01, 2006

LOUISE BAILEY
[redacted]

**CUSTOMER SERVICE INFORMATION**

**Your Medicare Number:** [redacted]

If you have questions, write or call:
MUTUAL OF OMAHA (#52280)
MEDICARE DIVISION
P.O. BOX 1602
OMAHA, NE 68101

**Call: 1-800-MEDICARE (1-800-633-4227)**
**Ask For Hospital Services**
**TDD-Telecommunication Device**
**For The Deaf: 1-877-486-2048**

**BE INFORMED:** Always review your Medicare Summary Notice for correct information about the items or services you received.

This is a summary of claims processed on 03/06/2006.

## PART B MEDICAL INSURANCE - OUTPATIENT FACILITY CLAIMS

| Dates of Service | Services Provided | Amount Charged | Non-Covered Charges | Deductible and Coinsurance | You May Be Billed | See Notes Section |
|---|---|---|---|---|---|---|
| Control number 20600602557902 04 | | | | | | |
| **Kindred Nrsg Ctrs West Llc** | | | | | | a,b,c |
| **Holladay Healthcare Ctr** | | | | | | |
| **4782 South Holladay Blvd** | | | | | | |
| **Salt Lake City, UT 84117** | | | | | | |
| Referred by: C. S. Fehlauer | | | | | | |
| 12/01/05-12/31/05 | Glucose blood test (82962) | $9.81 | $9.81 | $0.00 | $0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 3.27 | 3.27 | 0.00 | 0.00 | a,b |

**(continued)**

**THIS IS NOT A BILL - Keep this notice for your records.**

For more information about services covered by Medicare, please see your Medicare Handbook

**PART A HOSPITAL INSURANCE (INPATIENT)** helps pay for inpatient hospital care, inpatient care in a skilled nursing facility following a hospital stay, home health care and hospice care. Inpatient services are measured in benefit periods. A benefit period begins the first time you receive Medicare covered inpatient hospital care and ends when you have been out of the hospital or skilled nursing facility for 60 consecutive days. There is no limit to the number of benefit periods you may have.

**THE AMOUNT YOU MAY BE BILLED** for **Part A** services includes:

- **an inpatient hospital deductible** once during each benefit period,
- **a coinsurance amount for the 61st through the 90th days** of a hospital stay during each benefit period,
- **a coinsurance amount for each Lifetime Reserve Day,** which can be used if you have to stay in the hospital more than 90 days in one benefit period. Lifetime Reserve Days may be used only once.
- **a blood deductible** for the first three pints of unreplaced blood furnished to you in a calendar year in some states,
- **an inpatient coinsurance for the 21st through the 100th days** of a Medicare covered stay in a **skilled nursing facility,**
- charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

**PART B MEDICAL INSURANCE (OUTPATIENT FACILITIES)** helps pay for care provided by certified medical facilities, such as hospital outpatient departments, renal dialysis facilities, and community health centers.

**THE AMOUNT YOU MAY BE BILLED** for **PART B** services includes:

- **An annual deductible,** taken from the first Medicare Part B charges each year;
- After the deductible has been met for the year, depending on services received, a **coinsurance** amount (20 percent of the amount charged), or a fixed copayment for each service; and
- Charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

If you have supplemental insurance, it may help to pay the amounts you may be billed.

If you use this notice to claim supplemental benefits from another insurance company, make a copy for your records.

**WHEN OTHER INSURANCE PAYS FIRST:** All Medicare payments are made on the condition that you will pay Medicare back if benefits could be paid by insurance that is primary to Medicare. Types of insurance that should pay before Medicare include employer group health plans, no-fault insurance, automobile medical insurance, liability insurance and workers' compensation. Notify us right away if you have filed or could file a claim with insurance that is primary to Medicare.

**YOUR RIGHT TO APPEAL:** If you disagree with what Medicare approved for these services, you may appeal the decision. You must file your appeal within **120 days of the date you receive this notice**. Unless you show us otherwise, we assume you received this notice 5 days after the date of this notice. Follow the appeal instructions on the front of the last page of the notice. If you want **help with your appeal**, a friend or someone else can help you. Also, groups such as legal aid services may provide free assistance. To contact us for the names and telephone numbers of groups in your area, please see our Customer Service Information box on the front of this notice.

**HELP STOP MEDICARE FRAUD:** Fraud is a false representation by a person or business to get Medicare payments. Some examples of fraud include:

- offers of goods or money in exchange for your Medicare Number,
- telephone or door-to-door offers for free medical services or items, and
- claims for Medicare services/items you did not receive.

If you think a person or business is involved in fraud, you should call Medicare at the Customer Service Telephone number on the front of this notice.

**INSURANCE COUNSELING AND ASSISTANCE:** Insurance Counseling and Assistance programs are located in every State. These programs have volunteer counselors who can give you free assistance with Medicare questions, including enrollment, entitlement, Medigap, and premium issues. If you would like to know how to get in touch with your local Insurance Counseling and Assistance Program Counselor, please call us at the number shown in the Customer Service Information box on the front of this notice.

## PART B MEDICAL INSURANCE - OUTPATIENT FACILITY CLAIMS (continued)

| Dates of Service | Services Provided | Amount Charged | Non-Covered Charges | Deductible and Coinsurance | You May Be Billed | See Notes Section |
|---|---|---|---|---|---|---|
| **This Claim was continued from the previous page.** | | | | | | |
| 12/01/05-12/31/05 | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 6.54 | 6.54 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| | Glucose blood test (82962) | 9.81 | 9.81 | 0.00 | 0.00 | a,b |
| **Claim Total** | | **$287.76** | **$287.76** | **$0.00** | **$0.00** | |

**Notes Section:**

a The information provided does not support the need for this service or item.

b You should not be billed for this service. You do not have to pay this amount.

c The amount Medicare paid the provider for this claim is $0.00.

**Deductible Information:**

You have met the Part B deductible for 2005.

## ABOUT YOUR MEDICARE BENEFITS

For more information about services covered by Medicare, please see your Medicare Handbook.

**PART A HOSPITAL INSURANCE (INPATIENT)** helps pay for inpatient hospital care, inpatient care in a skilled nursing facility following a hospital stay, home health care and hospice care. Inpatient services are measured in benefit periods. A benefit period begins the first time you receive Medicare covered inpatient hospital care and ends when you have been out of the hospital or skilled nursing facility for 60 consecutive days. There is no limit to the number of benefit periods you may have.

**THE AMOUNT YOU MAY BE BILLED** for **Part A** services includes:

- **an inpatient hospital deductible** once during each benefit period,
- **a coinsurance amount for the 61st through the 90th days** of a hospital stay during each benefit period,
- **a coinsurance amount for each Lifetime Reserve Day,** which can be used if you have to stay in the hospital more than 90 days in one benefit period. Lifetime Reserve Days may be used only once.
- **a blood deductible** for the first three pints of unreplaced blood furnished to you in a calendar year in some states,
- **an inpatient coinsurance for the 21st through the 100th days** of a Medicare covered stay in a **skilled nursing facility,**
- charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

**PART B MEDICAL INSURANCE (OUTPATIENT FACILITIES)** helps pay for care provided by certified medical facilities, such as hospital outpatient departments, renal dialysis facilities, and community health centers.

**THE AMOUNT YOU MAY BE BILLED** for **PART B** services includes:

- **An annual deductible,** taken from the first Medicare Part B charges each year;
- After the deductible has been met for the year, depending on services received, a **coinsurance** amount (20 percent of the amount charged), or a fixed copayment for each service; and
- Charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

If you have supplemental insurance, it may help to pay the amounts you may be billed.

If you use this notice to claim supplemental benefits from another insurance company, make a copy for your records.

**WHEN OTHER INSURANCE PAYS FIRST:** All Medicare payments are made on the condition that you will pay Medicare back if benefits could be paid by insurance that is primary to Medicare. Types of insurance that should pay before Medicare include employer group health plans, no-fault insurance, automobile medical insurance, liability insurance and workers' compensation. Notify us right away if you have filed or could file a claim with insurance that is primary to Medicare.

**YOUR RIGHT TO APPEAL:** If you disagree with what Medicare approved for these services, you may appeal the decision. You must file your appeal within **120 days of the date you receive this notice**. Unless you show us otherwise, we assume you received this notice 5 days after the date of this notice. Follow the appeal instructions on the front of the last page of the notice. If you want **help with your appeal**, a friend or someone else can help you. Also, groups such as legal aid services may provide free assistance. To contact us for the names and telephone numbers of groups in your area, please see our Customer Service Information box on the front of this notice.

**HELP STOP MEDICARE FRAUD:** Fraud is a false representation by a person or business to get Medicare payments. Some examples of fraud include:

- offers of goods or money in exchange for your Medicare Number,
- telephone or door-to-door offers for free medical services or items, and
- claims for Medicare services/items you did not receive.

If you think a person or business is involved in fraud, you should call Medicare at the Customer Service Telephone number on the front of this notice.

**INSURANCE COUNSELING AND ASSISTANCE:** Insurance Counseling and Assistance programs are located in every State. These programs have volunteer counselors who can give you free assistance with Medicare questions, including enrollment, entitlement, Medigap, and premium issues. If you would like to know how to get in touch with your local Insurance Counseling and Assistance Program Counselor, please call us at the number shown in the Customer Service Information box on the front of this notice.

**General Information:**

As requested, this is a duplicate copy of your Medicare Summary Notice.

If you change your address, please contact the Social Security Administration by calling 1-800-772-1213.

You have the right to make a request in writing for an itemized statement which details each Medicare item or service which you have received from your physician, hospital, or any other health supplier or health professional. Please contact them directly, in writing, if you would like an itemized statement.

Compare the services you receive with those that appear on your Medicare Summary Notice. If you have questions, call your doctor or provider. If you feel further investigation is needed due to possible fraud or abuse, call the phone number in the Customer Service Information Box.

ALERT: Coverage by Medicare will be limited for outpatient physical therapy (PT), speech-language pathology (SLP), and occupational therapy (OT) services for services received on January 1, 2006 through December 31, 2007. The limits are $1,740 in 2006 and $1780 in 2007 for PT and SLP combined and $1740 in 2006 and $1780 in 2007 for OT. Medicare pays up to 80 percent of the limits after the deductible has been met. These limits don't apply to certain therapy approved by Medicare or to therapy you get at hospital outpatient departments, unless you are a resident of and occupy a Medicare-certified bed in a skilled nursing facility. If you have questions, please call 1-800-MEDICARE.

If you are not due a payment check from Medicare, your Medicare summary notices (MSN) will now be mailed to you on a quarterly basis. You will no longer receive a monthly statement in the mail for these types of MSNs. You will now receive a statement every 90 days summarizing all of your Medicare claims. You may receive a bill from your provider before you receive an MSN. Please compare the MSN with the bill from your provider to ensure you paid the appropriate amount for your services.

Protect your Medicare number as you would a credit card number.

**Appeals Information - Part B (Outpatient)**

**If you disagree with any claims decisions on either PART A or PART B of this notice,** your appeal must be received by **August 04, 2006.**
Follow the instructions below:

1) Circle the item(s) you disagree with and explain why you disagree.

2) Send this notice, or a copy, to the address in the "Customer Service Information" box on Page 1. (You may also send any additional information you may have about your appeal.)

3) Sign here ______________________________ Phone number (____)____________

For more information about services covered by Medicare, please see your Medicare Handbook.

**PART A HOSPITAL INSURANCE (INPATIENT)** helps pay for inpatient hospital care, inpatient care in a skilled nursing facility following a hospital stay, home health care and hospice care. Inpatient services are measured in benefit periods. A benefit period begins the first time you receive Medicare covered inpatient hospital care and ends when you have been out of the hospital or skilled nursing facility for 60 consecutive days. There is no limit to the number of benefit periods you may have.

**THE AMOUNT YOU MAY BE BILLED** for **Part A** services includes:

- **an inpatient hospital deductible** once during each benefit period,
- **a coinsurance amount for the 61st through the 90th days** of a hospital stay during each benefit period,
- **a coinsurance amount for each Lifetime Reserve Day,** which can be used if you have to stay in the hospital more than 90 days in one benefit period. Lifetime Reserve Days may be used only once.
- **a blood deductible** for the first three pints of unreplaced blood furnished to you in a calendar year in some states,
- **an inpatient coinsurance for the 21st through the 100th days** of a Medicare covered stay in a **skilled nursing facility,**
- charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

**PART B MEDICAL INSURANCE (OUTPATIENT FACILITIES)** helps pay for care provided by certified medical facilities, such as hospital outpatient departments, renal dialysis facilities, and community health centers.

**THE AMOUNT YOU MAY BE BILLED** for **PART B** services includes:

- **An annual deductible,** taken from the first Medicare Part B charges each year;
- After the deductible has been met for the year, depending on services received, a **coinsurance** amount (20 percent of the amount charged), or a fixed copayment for each service; and
- Charges for services or supplies that are **not covered** by Medicare. You may not have to pay for certain denied services. If so, a NOTE on the front will tell you.

If you have supplemental insurance, it may help to pay the amounts you may be billed.

If you use this notice to claim supplemental benefits from another insurance company, make a copy for your records.

**WHEN OTHER INSURANCE PAYS FIRST:** All Medicare payments are made on the condition that you will pay Medicare back if benefits could be paid by insurance that is primary to Medicare. Types of insurance that should pay before Medicare include employer group health plans, no-fault insurance, automobile medical insurance, liability insurance and workers' compensation. Notify us right away if you have filed or could file a claim with insurance that is primary to Medicare.

**YOUR RIGHT TO APPEAL:** If you disagree with what Medicare approved for these services, you may appeal the decision. You **must** file your appeal within **120 days of the date you receive this notice**. Unless you show us otherwise, we assume you received this notice 5 days after the date of this notice. Follow the appeal instructions on the front of the last page of the notice. If you want **help with your appeal**, a friend or someone else can help you. Also, groups such as legal aid services may provide free assistance. To contact us for the names and telephone numbers of groups in your area, please see our Customer Service Information box on the front of this notice.

**HELP STOP MEDICARE FRAUD:** Fraud is a false representation by a person or business to get Medicare payments. Some examples of fraud include:

- offers of goods or money in exchange for your Medicare Number,
- telephone or door-to-door offers for free medical services or items, and
- claims for Medicare services/items you did not receive.

If you think a person or business is involved in fraud, you should call Medicare at the Customer Service Telephone number on the front of this notice.

**INSURANCE COUNSELING AND ASSISTANCE:** Insurance Counseling and Assistance programs are located in every State. These programs have volunteer counselors who can give you free assistance with Medicare questions, including enrollment, entitlement, Medigap, and premium issues. If you would like to know how to get in touch with your local Insurance Counseling and Assistance Program Counselor, please call us at the number shown in the Customer Service Information box on the front of this notice.