## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LOUISE BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:06-cv-2144 |
| | ) | Judge Royce C. Lamberth |
| MUTUAL OF OMAHA INSURANCE | ) | |
| COMPANY, MICHAEL O. LEAVITT, | ) | |
| and HERB B. KUHN,[1] | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

OF COUNSEL:
DANIEL MERON
General Counsel

JANICE L. HOFFMAN
Acting Associate General Counsel

MARK D. POLSTON
Deputy Associate
General Counsel for Litigation

WILLIAM A. CONNELLY
Attorney
Department of Health
and Human Services

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

SHEILA M. LIEBER
PETER ROBBINS
United States
Department of Justice
20 Massachusetts Avenue, N.W., Room 7142
Washington, D.C.  20530
Tel:  (202) 514-3953
Attorneys for Defendants

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Herb B. Kuhn, Acting Administrator of the Centers for Medicare & Medicaid Services, is substituted for former Acting Administrator Leslie V. Norwalk.

## TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  The Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.  The Arguments.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    I.  THIS COURT DOES NOT HAVE JURISDICTION OVER PLAINTIFF'S
        FIRST CLAIM UNDER 42 U.S.C. § 1395ff(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        A.  This Court Does Not Have Jurisdiction Under 42 U.S.C.
            §1395ff(f)(2)(A)(iv). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        B.  This Court Does Not Have Jurisdiction Under 42 U.S.C. § 1395ff(f)(3). . . . . . . 13

    II.  THIS COURT DOES NOT HAVE JURISDICTION OVER PLAINTIFF'S FIRST
        CLAIM UNDER 28 U.S.C. § 1331 OR § 1361.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    III.  IN THE ALTERNATIVE, PLAINTIFF'S FIRST CLAIM SHOULD BE
         DISMISSED FOR LACK OF STANDING AND/OR RIPENESS.. . . . . . . . . . . . . . . . 26

    IV.  PLAINTIFF'S FIRST CLAIM IS PATENTLY WITHOUT MERIT. . . . . . . . . . . . . . . 27

    V.  PLAINTIFF'S DUE-PROCESS CLAIM SHOULD BE DISMISSED. . . . . . . . . . . . . 31

    VI.  SUMMARY JUDGMENT SHOULD BE DENIED. . . . . . . . . . . . . . . . . . . . . . . . . . 33

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

## INTRODUCTION

Plaintiff's opposition to defendants' motion to dismiss and cross-motion for summary judgment suffer from two principal defects: they rely on an incoherent jurisdictional theory, and they advance an absurd reading of Medicare law. With respect to jurisdiction, defendants obviously have no quarrel with the proposition that 42 U.S.C. § 1395ff(f) gave plaintiff a right to challenge the local coverage determination ("LCD") on blood-glucose tests <u>while</u> that LCD was in effect. But now that the LCD has been retired and the LCD complaint has been dismissed, that statutory scheme does not give plaintiff any additional right to bypass the ordinary administrative appeal process merely to vindicate her legal theory that retirement of the LCD has the legal effect of prohibiting the fiscal intermediary from ever subsequently denying claims on the ground that the particular tests were not "reasonable and necessary." 42 U.S.C. § 1395y(a)(1)(A). That argument – specious as it is – can be addressed to this Court under 42 U.S.C. § 1395ff(b), but only after a sufficient dollar-amount of benefit claims have been denied by the intermediary and only after the beneficiary has exhausted the administrative appeals process prescribed under 42 U.S.C. §§ 1395ff(a)-(d). Plaintiff's present complaint should therefore be dismissed for lack of subject-matter jurisdiction and failure to exhaust administrative remedies.

With respect to the merits, plaintiff's theory of the case is muddled, to say the least. Defendants once again obviously have no quarrel with the proposition that the retirement of an LCD while an administrative challenge to its validity is pending has the legal effect of requiring the intermediary to adjudicate reopened and future claims without using the LCD. But that is its entire legal effect. Retirement of an LCD does not affect an intermediary's obligation to enforce statutes, regulations and manual provisions that existed independently of the LCD at the time of

retirement.  Nor does LCD retirement affect an intermediary's obligation to follow regulations

promulgated subsequently.  Nor does it compel the intermediary to conclude, as plaintiff

apparently thinks it does, that all claims for blood-glucose tests are automatically "reasonable

and necessary" within the meaning of 42 U.S.C. § 1395y(a)(1)(A).  And LCD retirement

certainly should not be deemed to have such an effect where, as here, the claimant submitted no

documentation that a single blood-glucose test result was ever reported to the treating physician,

or that any test result was ever used to order any subsequent test, or that any test result was

otherwise used by the physician in the treatment of the patient in the relevant period.  Plaintiff's

complaint should therefore be dismissed, and plaintiff's cross-motion for summary judgment

should be denied.

## **BACKGROUND**

Despite the length of the briefing, the nature of this case is actually very simple.

Contrary to plaintiff's apparent view, this is not a case about the validity of an "LCD", and it is

not an appeal from an adverse ruling on the validity of an LCD.  It is a case about the denial of

Medicare claims reopened by a fiscal intermediary after the retirement of an LCD.  The plaintiff

contends that the reopened claims were denied for what she alleges are impermissible reasons,

and she fears that future claims will be denied for the same allegedly impermissible reasons.  She

would like this Court to resolve the dispute immediately without her first having to exhaust the

Medicare claims process and otherwise satisfy the requirements for subject-matter jurisdiction

under 42 U.S.C. § 1395ff(b).  In their opening memorandum, defendants explained why this

cannot be done.  Plaintiff's opening memorandum amounts to an elaborate effort to change the

subject.  Because plaintiff appears to have a fundamentally different view about the nature of the

case, however, t is useful to recapitulate the highlights.

**A.  The Facts**

As was discussed previously, the Secretary of Health and Human Services is prohibited by statute from reimbursing Medicare beneficiaries for any services that he objectively finds are not "reasonable and necessary" for diagnosis or treatment of the patient.  42 U.S.C. § 1395y(a)(1)(A).  Although diabetes is a condition for which blood-glucose testing may be reasonable, a mere "standing order" for blood-glucose tests, by itself, is not "sufficient."  42 C.F.R. § 424.24(f).  Rather, the test must be ordered by the treating physician, and the test results must actually be used "in the management of the beneficiary's specific medical problem."  42 C.F.R. § 410.32(a).  To establish use in management of patient care, the claimant must demonstrate that the test result was "reported to the physician promptly" and that the physician used the result to "instruct continuation or modification of patient care," including "the physician's order for another laboratory service."  Program Memorandum Transmittal ("Program Memorandum") AB-00-108 at 2 (Dec. 1, 2000) (Def. Ex. A) (attached to defendants' motion to dismiss).

Plaintiff believes that these "longstanding" requirements, 71 Fed. Reg. 69,624, 69,704 (Dec. 1, 2006), are merely "trumped-up criteria for 'medical necessity'" and that the Secretary should not be allowed to use them "to deny coverage and payment for blood glucose tests." Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss and in Support of Plaintiffs' Motion for Summary Judgment ("Pl. Mem.")[2] at 9.  The threshold problem for plaintiff, however, is that the facts of this case do not present her with an appropriate jurisdictional vehicle to present her legal theory to this Court.

---

[2] Plaintiff's memorandum refers to "plaintiffs" in the plural, although there is only one plaintiff.  No motion for class certification has been made, and no class has been certified.

As was previously explained, plaintiff is a Medicare beneficiary who resides in a skilled nursing facility ("SNF") in Utah.  Defendants' Memorandum in Support of Their Motion to Dismiss ("Def. Mem.") at 14.  As part of the SNF's care for plaintiff's diabetes, fingerstick tests were performed by the nursing staff to monitor the level of glucose in her blood.  Id. at 14, 38.  On November 4, 2005, a set of claims for blood-glucose tests was submitted to plaintiff's fiscal intermediary.  The claims were for tests performed during the month of October 2005 and totaled $196.20.  Id. at 14 (citing Declaration of Michelle Routt ("Routt Dec.") at ¶ 3 & Attachments ("Routt Docs.") at 1-15) (Def. Ex. B) (attached to defendants' motion to dismiss).  The intermediary denied the claims on the case-specific ground that "[t]he information provided does not support the need for this service."  Id. at 15 (quoting Routt Docs. at 55).  It went on to determine that plaintiff could not be billed by the SNF for the service, however, because she was protected by the "limitation on liability" provision in 42 U.S.C. § 1395pp.  Id. at 16; Routt Docs. at 55.

At the time that the October 2005 claims were denied, the intermediary had in effect a local coverage determination on the subject of blood-glucose tests in skilled nursing facilities.  See Def. Mem. at 26, et seq. (discussing Local Coverage Determination for Blood Glucose Testing (L19657) ("LCD" or "Retired LCD") (Def. Ex. C) (attached to defendants' motion to dismiss)).  As was previously explained, the LCD served two, limited purposes.  First, it adopted, on an interim basis, the language in the section on blood-glucose tests that appeared in a proposed national coverage determination ("NCD"), which had been developed by the Secretary through a negotiated rulemaking process mandated by Congress.  It also restated, for informational purposes, the reasonable and necessary standard in 42 U.S.C. § 1395y(a)(1)(A), the physician-use standards in 42 C.F.R. § 410.32(a), and program instructions concerning how

to interpret the statute and regulations.  Def. Mem. at 26-27.  The LCD contained no additional legal interpretation added by the intermediary on its own.

The portion of the proposed NCD quoted in the LCD merely discussed, in very general terms, some of the circumstances in which blood-glucose tests conducted in skilled nursing facilities "may" be considered reasonable and necessary for purposes of Medicare reimbursement.  Id. at 20-22 (quoting 65 Fed. Reg. 13,082, 13,128 (Mar. 10, 2000)) (emphases omitted).  But the proposed NCD did not identify any specific circumstances in which blood-glucose tests must be considered reasonable and necessary, and the negotiated rulemaking committee expressly instructed that words like "may" and "might" should not be read in that fashion.  Id. at 19-20 (citing 65 Fed. Reg. at 13,095).  Moreover, the proposed NCD said nothing at all about the physician-use requirement in 42 C.F.R. § 410.32(a), other than to note that there existed "longstanding policies" of the Secretary implementing the "reasonable and necessary" standard "according to the statute" – meaning 42 U.S.C. § 1395y(a)(1)(A) – and that those policies were not addressed or affected by the NCD.  65 Fed. Reg. at 13,130.

The negotiated rulemaking committee subsequently adopted the blood-glucose portion of the proposed NCD verbatim, Def Mem. at 28 (citing 66 Fed. Reg. 58,788, 58,788 (Nov. 23, 2001)), including the caveat that the NCD did not affect "longstanding" policies implementing 42 U.S.C. § 1395y(a)(1)(A).  66 Fed. Reg. at 58,848.  At that time, the LCD ceased to have any use, other than as an informational resource.  Accordingly, the Medicare Summary Notice in which plaintiff's October 2005 claims were denied did not mention any reliance on the LCD, id. at 15 (citing Routt Docs. at 55), as would have been required by statute if an LCD has been used. 42 U.S.C. § 1395ff(a)(4)(A)(i).  Indeed, the LCD was never used to deny any blood-glucose claim of any beneficiary.  Def. Mem. at 31 (citing Administrative Record of Plaintiff's Challenge

to the Local Coverage Determination at 703-04 ("LCD Record") (Def. Ex. D) (attached to
defendants' motion to dismiss) ).

Despite the effectively moribund status of the LCD, plaintiff challenged its validity in
March 2006 by means of the administrative procedure in 42 U.S.C. § 1395ff(f)(2).  Def. Mem. at
29-30 (citing LCD Record at 7-13).  Significantly, plaintiff's administrative complaint
challenged every sentence in the LCD, including every sentence that recited the contents of the
"reasonable and necessary" standard in 42 U.S.C. § 1395y(a)(1)(A), the physician-use standards
in 42 C.F.R. § 410.32(a), the program memoranda discussing the meaning of § 410.32(a), and
the portion of the now-final NCD that discussed blood-glucose tests.  Id.  The intermediary
responded to the complaint by, among other things, challenging whether plaintiff qualified as an
"aggrieved party" within the meaning of 42 U.S.C. § 1395ff(f)(2)(A)(i), in light of the fact that
the LCD had not been used to deny plaintiff's claims and was not being used to deny anyone
else's claims.  Def. Mem. at 30-31 (discussing LCD Record at 703-10 and Routt Docs. at 55, 81,
and citing 42 C.F.R. § 426.110(2)).  That question became moot, however, in August 2006 when
the LCD was retired, Retired LCD at 1, and the administrative law judge dismissed the
complaint, Def. Mem. at 31 (citing LCD Record at 1-2), pursuant to 42 C.F.R. § 426.420(e)(1).
Plaintiff did not appeal the ALJ's dismissal order, and, indeed, she does not consider the decision
to be incorrect.  Rather, the substantive issue she seeks to raise in this case concerns the legal
effect that the LCD retirement and complaint dismissal should have on the subsequent
processing of blood-glucose claims by the intermediary.

The legal effect of the LCD retirement was simple.  Under 42 C.F.R. § 426.420(a),
"[r]etiring an LCD or LCD provision under review has the same effect as a decision under
426.460(b)."  Under 42 C.F.R. § 426.460(b), in turn, the effect of an adverse decision by the ALJ
is to require the intermediary to "reopen the claim of the party who challenged the LCD and

adjudicate the claim without using the provision(s) of the LCD," 42 C.F.R. § 426.460(b)(1)(i),

and to ensure that "any subsequent claims for the service provided under the same

circumstances" are "adjudicated without using the LCD provision(s)." 42 C.F.R.

§ 426.460(b)(1)(iv). Following retirement of the blood-glucose LCD, the intermediary reopened

plaintiff's October 2005 claims and reviewed them "without application" of the retired LCD.

Def. Mem. at 32 (quoting Letter of Martha K. Zajicek ("Zajicek Letter") dated December 19,

2006 at 1).[3] On January 1, 2007, the claims were denied again on the ground that "the

information provided does not support the need for this service or item," id. (quoting Routt Docs.

at 81), and the intermediary again determined that plaintiff was not liable for the cost of the tests

under the limitation-on-liability statute. Id.

## B. The Arguments

Plaintiff's complaint seeks to raise two claims in this Court. First, plaintiff alleges that

the intermediary unlawfully denied the reopened October 2005 claims and that it plans to deny

future claims unlawfully. According to plaintiff, the retirement of the LCD has the legal effect

of making the intermediary (and only that one intermediary) "prohibited from denying [any]

claims for blood glucose testing on the basis of lack of 'medical necessity,'" because, in plaintiff's

own words, "[t]hose terms have been rendered meaningless in this context." Am. Compl. at ¶

112. Second, plaintiff contends that due process requires that beneficiaries other than herself

should be "issued some form of notice" that the LCD has been retired. Id. at ¶ 120. Defendants

moved to dismiss both claims for lack of subject-matter jurisdiction and failure to state a claim.

With respect to the first claim, defendants demonstrated that any challenge to the denial

of the October 2005 claims cannot currently be brought in this Court under 42 U.S.C. §

---

[3] The letter is Ex. 17 attached to plaintiff's Amended Complaint ("Am. Compl.").

1395ff(b) because plaintiff has not exhausted the administrative process by which denials of

claims on reopening can be appealed, see Heckler v. Ringer, 466 U.S. 602, 618 (1984), and

because the claims do not satisfy the dollar amount for federal court jurisdiction.  Def. Mem. at

35-36.  Defendants further demonstrated that anticipated denials of future claims cannot be

brought for the additional reason that a claim for benefits has not even been presented for

determination.  Id. at 36-39 (citing, inter alia, Shalala v. Illinois Council on Long Term Care,

Inc., 529 U.S. 1, 10-21 (2000), Ringer, 466 U.S. at 619-20, and Nat'l Kidney Patients Ass'n v.

Sullivan, 958 F.2d 1127, 1130-34 (D.C. Cir. 1992)).

        Exhaustion of the administrative process would give the Secretary an opportunity to

make a "final decision," 42 U.S.C. § 1395ff(b)(1)(A), with respect to many of the factual and

legal questions implicated by plaintiff's first claim.  For instance, the Secretary would have an

opportunity to determine, as a factual matter, whether the denial of the October 2005 claims (or

the putative denial of any future claims) was based, as the intermediary contends, on a

determination that "the information provided does not support the need for this service or item,"

Def. Mem. at 32 (quoting Routt Docs. at 81), or whether it was based, as plaintiff contends, on

an unlawful application of the retired LCD.  It would give the Secretary a chance to determine,

as a legal matter, whether dismissal of the LCD challenge after the LCD was retired has the legal

consequence of rendering meaningless any enforcement of medical-necessity standards, as

plaintiff contends, or whether it merely has the effect of prohibiting future reliance on the LCD,

as defendants contend.  Exhaustion would also give the Secretary a chance to rule on whether

there are other grounds – such as near-total lack of physician involvement in the management of

plaintiff's diabetic condition – that establish sufficient grounds for denial of the claims.

Exhaustion would also give plaintiff herself a chance to explain, as she has so far declined to do,

why there is such a dramatic discrepancy between the minimalist involvement of her physician

and the much more activist review of test results that plaintiff's own expert avers is medically appropriate for patients who require multiple daily tests to control their blood-glucose levels. See Def. Mem. at 38-39. Finally, exhaustion would give plaintiff opportunities to supplement, if she can, the disturbingly scanty medical documentation submitted in support of her October 2005 claims. See id. at 14-15.

In light of these advantages, it is surprising that plaintiff has not attempted to test the correctness of the reopening determination through the claims-appeal process available to her and, if necessary, aggregate the claims required to meet the dollar-amount prerequisites for federal-court jurisdiction under 42 U.S.C. § 1395ff(b). Rather than exhausting the administrative appeal process and relying on § 1395ff(b)(1)(A) to raise a perfected claim, plaintiff's complaint insists that jurisdiction can be founded on 28 U.S.C. § 1331, or 28 U.S.C. § 1361, or 42 U.S.C. § 1395oo(f), or 42 U.S.C. § 1395ff(f)(3). Am. Compl. at ¶ 16. Defendants' opening memorandum refuted each of these arguments.

First, defendants showed that the statute at 42 U.S.C. § 1395oo(f) is obviously inapplicable because it provides for judicial review only of determinations of payments to hospitals and other health-care providers based on annual cost reports submitted to intermediaries. Def. Mem. at 34. No such payment is involved here. Defendants also showed that the potential availability of the claims-review mechanism in 42 U.S.C. § 1395ff(b) precludes jurisdiction under 28 U.S.C. § 1331 and § 1361. Def. Mem. at 39-42. Finally, defendants demonstrated that 42 U.S.C. § 1395ff(f)(3) is inapplicable because, among other reasons, there is currently no local coverage determination in effect for plaintiff to challenge. Def. Mem. at 34-35.

The only jurisdictional statute mentioned in plaintiff's opening memorandum is 42 U.S.C. § 1395ff(f), and subsection (3) of that provision is addressed only briefly as an "in the

alternative" argument.  See Pl. Mem. at 30-31.  The bulk of her jurisdictional argument now appears to envision that this Court has jurisdiction under 42 U.S.C. § 1395ff(f)(2)(A)(iv) to enforce what plaintiff conceives to be the legal effect of the LCD retirement on future claims processing, and that this jurisdiction arises as some sort of continuation of the LCD challenge that was dismissed by the ALJ when the LCD was retired.  See Pl. Mem. at 12-23.  Although plaintiff does not mention the federal-question statute or the mandamus statute, the middle of her jurisdictional argument also includes one portion (curiously mislabeled as an "exhaustion" argument) that appears to be trying to assert that jurisdiction can be founded on these statutes, as well.  Id. at 24-30.  Defendants will respond to each theory in turn.

## **ARGUMENT**

### I.  THIS COURT DOES NOT HAVE JURISDICTION OVER PLAINTIFF'S FIRST CLAIM UNDER 42 U.S.C. § 1395ff(f).

The short answer to plaintiff's newly revised jurisdictional theory under 42 U.S.C. § 1395ff(f) is that there is nothing in that statutory scheme which gives this Court jurisdiction to "enforce," Pl. Mem. at 3, what plaintiff conceives to be the legal effect of the retirement of the LCD on determinations by the fiscal intermediary made after the reopening that followed the dismissal of the LCD complaint by the administrative law judge.  To be sure, the subsection gives this Court jurisdiction, in some circumstances, to review the validity of an LCD while the LCD is still in effect.  But it does not confer any authority to review the putative legal consequences of the retirement of an LCD on claims processing that occurs after the LCD complaint has been dismissed by an ALJ.  The jurisdiction to review the correctness of such subsequent determinations exists certainly, but it arises exclusively under 42 U.S.C. § 1395ff(b) and only after presentment, exhaustion of the Medicare appeals process in 42 U.S.C.

§§ 1395ff(a)-(d), and only after the aggregation of the necessary dollar amount in dispute.  Def.

Mem. at 35-39.

### A.  This Court Does Not Have Jurisdiction Under 42 U.S.C. §1395ff(f)(2)(A)(iv).

Plaintiff's attempt to characterize her present complaint as some sort of continuation of

the LCD complaint that was dismissed, without her objection, by the ALJ simply has no merit.

As defendant explained in his opening memorandum, the statute provides that, "[u]pon the filing

of a complaint by an aggrieved party," an LCD "shall be reviewed by an administrative law

judge." 42 U.S.C. § 1395ff(f)(2)(A)(i).  The "decision of [the] administrative law judge" then

"shall be reviewed by the Departmental Appeals Board," 42 U.S.C. § 1395ff(2)(A)(ii), and a

"decision of the Departmental Appeals Board," in turn, "constitutes a final agency action and is

subject to judicial review." 42 U.S.C. § 1395ff(2)(A)(iv).  Because the existence of a "decision

of the Departmental Appeals Board," id., is "a statutorily specified jurisdictional prerequisite," it

"cannot be dispensed with" and is not waivable on grounds based on "the judicially developed

doctrine of exhaustion." Weinberger v. Salfi, 422 U.S. 749, 766 (1975).

No decision of the Departmental Appeals Board is at issue here.  Under the regulations,

"[o]nly LCDs . . . that are currently effective may be challenged." 42 C.F.R. § 426.325(a).

Accordingly, when an LCD is retired during the course of an administrative challenge, the ALJ

"must dismiss the complaint." 42 C.F.R. § 426.420(e)(1).  If the complaining party believes the

dismissal was ordered in error, he may appeal to the Departmental Appeals Board.  42 C.F.R.

§ 426.465(a)(2).  Failure to appeal "waives the right to challenge any part(s)" of the dismissal

decision.  42 C.F.R. § 426.468(a).  Plaintiff therefore has waived any right to challenge the ALJ's

decision to dismiss her LCD complaint.

In fact, she does not even contend that the decision of the ALJ was wrong. On the contrary, her claim is premised on the proposition that the dismissal was correctly ordered, and she seeks to "enforce" what she considers to be legal consequences of that correctly-decided dismissal on the <u>subsequent</u> determinations rendered by the intermediary on reopened and future claims. There is nothing in 42 U.S.C. § 1395ff(f) that confers on this Court jurisdiction over such a claim. As was discussed above, plaintiff's objections to the grounds on which her claims were (or, in the future, may be) subsequently denied must be pursued under 42 U.S.C. §§ 1395ff(a)-(d). She cannot circumvent the process by "appealing" an administrative outcome – the dismissal of her LCD complaint – that she does not allege was incorrect.

Defendants, of course, have no quarrel with the general position that 42 U.S.C. § 13955ff(f) provides a process "separate and distinct from the existing appeal rights for denied Medicare claims," Pl. Mem. at 14 (citing 68 Fed. Reg. 63,692, 63,693 (Nov. 7, 2003)). But that proposition does not support plaintiff's contention that this Court automatically has jurisdiction under § 1395ff(f) to entertain any claim so long as it can be characterized as "LCD-related" in some generalized sense. Am. Compl. at ¶ 75. The absence of any decision of the Departmental Appeals Board to be reviewed – indeed, the absence of any disagreement by plaintiff with the outcome of the LCD proceeding at all – precludes judicial review under plaintiff's new theory premised on 42 U.S.C. § 1395ff(f)(2)(A)(iv).[4]

---

[4] Plaintiff's reliance on the line of authority under 42 U.S.C. § 405(g) (and the Medicare statutes that incorporate it) for the proposition that the Secretary "effectively waived any right to assert a failure to exhaust administrative remedies" during the LCD administrative proceeding, Pl. Mem. at 7, is wholly misplaced. In 42 U.S.C. § 405(g) and § 1395ff(b)(1)(A), the reviewable action is described as the "final decision" of the Secretary, a term that is "left undefined" and whose "meaning is left to the Secretary to flesh out by regulation." <u>Salfi</u>, 422 U.S. at 766. Because the administrative body that makes the "final decision" is not expressly identified, the Supreme Court has determined that, in some circumstances, a decision by an intermediary can suffice as the "final decision" without exhaustion of subsequent levels of review. <u>See, e.g.</u>, <u>Ringer</u>, 466 U.S. at 618 (citing <u>Salfi</u>, 422 U.S. at 766-67, and <u>Mathews v. Eldridge</u>, 424 U.S.

**B.  This Court Does Not Have Jurisdiction Under 42 U.S.C. § 1395ff(f)(3).**

Plaintiff's three-paragraph defense of her original jurisdictional theory premised exclusively on 42 U.S.C. § 1395ff(f)(3), Pl. Mem. at 30-31, merits little response.  As defendants pointed out in their opening memorandum, this Court has jurisdiction to review an LCD only if jurisdiction would otherwise be available under 42 U.S.C. § 1395ff(f)(2)(A), and there is no jurisdiction under that section to challenge a retired LCD.  Def. Mem. at 34-35.  Whatever "policies" plaintiff believes have illegitimately survived the retirement of the LCD and the dismissal of her LCD complaint, challenges to them can be brought before this Court only through appeals of subsequent claims denials that have been exhausted through the administrative process.  See, e.g., St. Mark's Lutheran Home v. Thompson, No. 01CIV 1034, mem. opp. at 4-6 (D. Minn. Oct. 2, 2002) (Def. Ex. G) (attached to defendants' motion to dismiss).  And it avails plaintiff nothing to contend that she "is not challenging the denial of payment for her blood glucose tests," but rather "she is challenging the policies" that she believes were "used and continue to be used to deny coverage."  Pl. Mem. at 7-8.  Rhetorical distinctions of that sort have long been held to be irrelevant to Medical jurisdictional prerequisites.  Illinois Council, 529 U.S. at 13-14; Ringer, 466 U.S. at 614.

In any event, even if an LCD remained in effect so as to be potentially subject to being challenged under 42 U.S.C. § 1395ff(f)(3), direct jurisdiction in this Court still would be

_____

319, 330-32 (1976)).  But, in the case of 42 U.S.C. § 1395ff(f)(2)(A), a decision of the administrative law judge, 42 U.S.C. § 1395ff(f)(2)(A)(ii), "shall be reviewed by the Departmental Appeals Board of the Department of Health and Human Services," id., and the "decision of the Departmental Appeals Board constitutes" the "final agency action" that is "subject to judicial review."  42 U.S.C. § 1395ff(f)(2)(A)(iv).  It is hard to see any ambiguity as to what constitutes the "final agency action" subject to review under this sui generis statutory scheme.  Accordingly, plaintiff's lengthy discussion of exhaustion in the context of other Medicare statutes, Pl. Mem. at 24-30, contains no mention of any case dealing with the meaning of 42 U.S.C. § 1395ff(f)(2)(A)(iv).

unavailable because "the moving party" cannot plausibly allege that "there are no material facts

in dispute." 42 U.S.C. § 1395ff(f)(3)(A). Virtually every factual contention that plaintiff

contends is material to her claim for blood-glucose benefits is disputed here. Indeed, most are

entirely unsupported by plaintiff herself. Just a sampling is set forth below:

Defendants contend that the October 2005 claims were denied on reopening because "the

information provided does not support the need for this service," Def. Mem. at 32 (quoting Routt

Docs. at 81), and that this determination was made after reopening "without application" of the

retired LCD. Id. (quoting Zajicek Letter at 1); Defendants' Statement of Material Facts as to

Which There is a Genuine Issue ("Def. Facts Statement") at ¶¶ A.1, B.27. Although the

evidence before this Court – including the specific letter on which plaintiff relies – offers no

support for her position, plaintiff contends exactly the opposite: that the retired LCD was used

as the basis for the denial. Plaintiffs' Statement of Material Facts Not in Dispute ("Pl. Facts

Statement") at ¶¶ 26-27 (citing the Zajicek Letter). With respect to future claims, defendants

contend that the intermediary intends to follow its own statement and not use the retired LCD.

Retired LCD at 16; Def. Facts Statement at ¶¶ A.1, B.27. Plaintiff (again, in direct contradiction

to the only evidence before the Court) contends exactly the opposite: that the intermediary

intends to "continue to apply these coverage policies" in "violation of the Medicare statutes and

applicable regulations," Pl. Mem. at 3, and "continues to enforce its retired LCD after its

withdrawal." Pl. Facts Statement at ¶ 27.

In addition, defendants contend that the "information provided" by the plaintiff with

respect to her October 2005 claims "does not support the need" for the blood-glucose tests. Def.

Mem. at 32 (quoting Routt Docs. at 81). Plaintiff contends that the tests were "necessary," Pl.

Mem. at 2, notwithstanding the undisputed fact that there was no documentation submitted to the

intermediary in support of these claims that shows any physician involvement in plaintiff's

diabetes care during the time period in question, and, in particular, no documentation that the physician ever saw a single test result, or used a single test result to order subsequent tests. See Routt Dec. ¶¶ 3-10 & Routt Docs. at 1-86 (materials submitted to the intermediary in support of, or prepared by the intermediary in connection with, plaintiff's October 2005 claims). Once again, those are rather significant disputes of material fact.

Plaintiff further asserts that her treating physician "has determined that she requires blood glucose testing four times per day, and this is medically necessary in order to maintain control over her blood-glucose levels." Pl. Mem. at 5 (apparently intending to cite Pl. Facts Statement at ¶ 2, rather than ¶ 1). Plaintiff's treating physician, however, does not say when he decided that four tests a day were necessary, see LCD Record at 155-156, and nothing before the Court demonstrates that this decision was made during the time period relevant to plaintiff's claims. The documents submitted in support of plaintiff's October 2005 claims merely showed that, when plaintiff was admitted to a SNF in 2004, the physician ordered two blood-glucose tests per day, and that a third test was added in November 2005. Def. Mem. at 14-15; Routt Docs. at 37, 38; see also Def. Facts. Statement at ¶ B.2. Moreover, there is nothing in those documents indicating that the physician ever made a finding of medical necessity for any of the October 2005 tests, see Routt Dec. ¶¶ 3-10 & Routt Docs. at 1-86, much less any documentation that any prior test results had been considered (or even seen) by the time the October 2005 tests occurred.

Perhaps the most fundamental dispute of material fact, however, concerns what plaintiff characterizes as the "bogus" coverage policies themselves. Pl. Mem. at 2. As defendants previously explained, the relevant regulations provide that a laboratory test cannot be considered "reasonable and necessary" within the meaning of 42 U.S.C. § 1395y(a)(1)(A), unless the test is ordered by the treating physician, and the test results are actually used by that physician "in the management of the beneficiary's specific medical problem." 42 C.F.R. § 410.32(a). A "standing

order" for blood-glucose tests, by itself, is not "sufficient," 42 C.F.R. § 424.24(f), but what constitutes a "standing order" is not otherwise defined in the regulation.

The preamble merely indicates that the standing-order test was meant to be consistent with "longstanding" requirements, 71 Fed. Reg. at 69,704, that the test results must be "reported to the physician promptly" and that the physician must use the result to "instruct continuation or modification of patient care," including "the physician's order for another laboratory service." Program Memorandum AB-00-108 at 2. Although the Secretary has encouraged intermediaries to "review their local coverage policy to clarify, if necessary, that a glucose monitoring laboratory service must be performed in accordance with laboratory service coverage criteria including the order and clear use of a laboratory result prior to a similar subsequent laboratory order to qualify for separate payment under the Medicare laboratory benefit," id., he has thus far left it to the discretion of intermediaries (and to agency adjudicators at higher levels of the Medicare appeals process) to determine how these standards should be applied in particular circumstances.[5]

Plaintiff's assumption – that the standards must be construed to mean that there must be "a separate physician order for each test," and that there must be "prompt reporting of the test result to the physician before the next test" is performed, Pl. Mem. at 2 (emphasis added) – may represent one way the prohibition on a "standing order" in 42 C.F.R. § 424.24(f) could be read.

_____

[5] In passing, defendants also note that the Secretary has never "instructed [his] contractors (including Mutual) to incorporate these policies in their Local Coverage Determinations." Pl. Mem. at 2-3. The program instruction merely encourages intermediaries to "review their local coverage policy to clarify [it], if necessary." Program Memorandum AB-00-108 at 2. Plaintiff's own statement of facts merely alleges that the Secretary "was working to develop a policy" on blood-glucose tests at the same time as the national coverage determination was under consideration. Pl. Facts Statement at ¶ 45. None of the "exhibits" cited in this paragraph supports the conclusion in plaintiff's memorandum that the Secretary "instructed [his] contractors (including Mutual) to incorporate these policies in their Local Coverage Determinations." Pl. Mem. at 2-3.

But it does not represent the only way the language might be read.  On its face, the program

memorandum – the content of which 42 C.F.R. § 424.24(f) was intended to reflect – merely

indicates that each laboratory test result must be "reported to the physician promptly" so that it

can be used, among other things, to "order" another service, Program Memorandum AB-00-108

at 2, and that there must be "clear use" of "a" laboratory result "prior to a similar subsequent

laboratory order." Id. (emphasis added).  But this language does not compel the conclusion that

the "next" test ordered, Pl. Mem. at 2, must be supported by the review of the previous test result

ordered.  So long as subsequent orders for blood-glucose tests are based on a review of an earlier

test result, the regulation does not specifically address how many subsequent tests can be ordered

in a row before the line into an impermissible "standing order," 42 C.F.R. § 424.24(f), is crossed.

    Indeed, in the preamble to the current regulation, the Secretary carefully declined to draw

the line in the sand imagined by plaintiff.  During the comment period, members of the medical

and laboratory communities "explained that it is common medical practice in the nursing home

for the physician to certify a standing order for a 1-month time period for the nurse to perform

daily glucose monitoring fingerstick tests throughout the month."  71 Fed. Reg. at 69,704.  The

implication was that, if test results were reported to a physician on a monthly basis and new tests

were then ordered on a monthly basis, the test regime should not be considered a "standing

order."  The Secretary acknowledged that further "refinements to coverage policies" along the

more fact-specific lines suggested by the commenters "could benefit providers," id., but he

declined to make them.  Rather, he simply stated that the new rule "does not alter existing

policies" and that those existing policies prescribe that a physician who ordered the tests "must

use the results promptly in the management of the beneficiary's specific medical condition."  Id.

at 69,705.  How that test is applied in specific case settings has been left to the discretion of the

intermediary and agency adjudicators at higher levels of authority.

There is nothing in this language, for instance, that would <u>necessarily</u> preclude the physician from ordering three tests on Day One, promptly reviewing the results of the three tests, and ordering three more tests for Day Two.  Nor is there anything in this language that would <u>necessarily</u> forbid the physician from ordering twenty-one tests for Week One, promptly reviewing the results for the twenty-one tests, and ordering twenty-one more tests for Week Two.  The same might even be said – at least hypothetically – of Month One and Month Two. The question of when an "order" (based on an examination of an earlier test) for more than one test in a row becomes a "standing order" insufficient to support medical necessity is simply one of the plethora of fact-intensive issues that has not been completely resolved by regulation, but rather left for resolution through the agency adjudicatory process.  <u>See</u> Def. Mem. at 8-9 (citing <u>Shalala v. Guernsey Mem'l Hosp.</u>, 514 U.S. 87, 96 (1995)).

The testing scenario described by plaintiff's own expert nicely illustrates the point. Plaintiff's expert offers his opinion that the medically appropriate testing regime for a diabetic patient who requires three or more blood-glucose tests a day is for the physician to instruct the nursing staff "to notify the physician of <u>all</u> the individual determinations" and for the physician to "review" those test results "every 24 to 48 hours."  Def. Mem. at 38 (quoting Declaration of David Jackson, M.D., Ph.D. at 6) (emphasis added).[6]  If a physician following Dr. Jackson's advice were to review the results from the first test performed and then, on the basis of those results, order three more tests for the next 24-hour period or six more tests for the next 48-hour period, it would be an open question whether the order for the second batch of tests would constitute a "standing order" within the meaning of 42 C.F.R. § 424.24(f).  At the very least, a plausible argument could be made that the test results were "reported to the physician promptly"

---

[6] The declaration is attached as Ex. 1 to plaintiff's Amended Complaint.

and that the physician used the results to "instruct continuation or modification of patient care,"

including "the physician's order for another laboratory service," Program Memorandum AB-00-

108 at 2, in a manner that supports payment for the tests as "reasonable and necessary." 42

U.S.C. § 1395y(a)(1)(A).

The facts of this case, of course, stand in stark contrast to the hypothetical scenario

described by Dr. Jackson. In this case, plaintiff submitted no documentation to her intermediary

that any October 2005 test results were ever reported to the treating physician, no documentation

that her physician ever used any test results to order new tests in October 2005, and no

documentation that her physician ever used any test results in any other way to manage her

condition during October 2005. Def. Mem. at 14-16; Routt Docs. at 1-86. The only direct

evidence regarding physician involvement in plaintiff's diabetes management after her initial

admission screening that appears in the claims records submitted to the fiscal intermediary is a

nurse's recording of a telephone order by the physician on November 8, 2005 adding an

additional blood glucose test at 8:00 p.m. each day. Def. Mem. at 15 (citing Routt Docs. at 38,

39).[7] It is hard to reconcile plaintiff's own evidence with the proposition that the blood-glucose

regime used in her case is consistent with the "best medical practices," Pl. Mem. at 2, or that the

tests were "necessary." Id. There is, at the very least, a dispute of fact as to whether the

_____

[7] The LCD Record includes a declaration by plaintiff's physician containing the curious,
and unsupported, assertion that the SNF records "show" that he was "reviewing the information
and changing the treatment plan based on the results." LCD Record at 155. Nothing in the
documents submitted to the intermediary in support of plaintiff's claims, however, reflected any
such review, Routt Docs. at 1-86, and the declaration does not state when it began. The
declaration may also signal the existence of a factual dispute as to how many blood glucose tests
were performed on plaintiff per day during the October 2005 time period. The documentation
submitted to the intermediary in support of plaintiff's claims shows that two tests were
performed per day. See Def. Mem. at 14 (citing Routt Docs. at 30-31); Def. Facts Statement at ¶
B.2. The declaration submitted in support of the LCD complaint states that she "currently"
needs four tests per day, but does not explain when the increase occurred. LCD Record at 155.

"information provided" by the claimant in support of her October 2005 claims did "not support the need for this service." Def. Mem. at 32 (quoting Routt Docs. at 81).

These factual disputes, of course, would not exist if plaintiff were to exhaust her administrative remedies under 42 U.S.C. §§ 1395ff(a)-(d) and properly transform any resulting action in this Court into a more traditional action seeking judicial review based on an agency record. Any need for fact-finding here merely reinforces the reasons why plaintiff's complaint is premature before exhaustion of her administrative appeal rights.[8]

Finally, plaintiff does not even bother to explain where in 42 U.S.C. § 1395ff(f) she finds jurisdiction for this Court to review her contention, which consumes twelve pages of her memorandum, that either the denial of her claims or the promulgation of the "standing order" regulation at 42 C.F.R. § 424.24(f) is unlawful because it allegedly conflicts with the national coverage determination that became effective in 2002. See Pl. Mem. at 46-58. Advance rulings on such issues are precisely what Illinois Council and Ringer hold that this Court cannot issue in the absence of subject-matter jurisdiction under 42 U.S.C. § 1395ff(b) and analogous claims-review provisions. If plaintiff believes that it requires too much effort on the part of the beneficiary to challenge the denial of a reopened claim after a challenged LCD has been retired and the challenge to the LCD dismissed, her arguments should be addressed to Congress. Illinois Council, 529 U.S. at 20; Ringer, 466 U.S. at 619, 621-22. This Court should not intervene in the Medicare appeals process prematurely merely because plaintiff appears to have

---

[8] The need for exhaustion is, ironically, reinforced by the e-mails, on which plaintiff places such importance, Pl. Mem. at 54-56, discussing differing views of agency personnel about how the "physician use" and "no-standing-order" rules should be applied in particular settings. Obviously, the fact that there is no single view among agency personnel is all the more reason why judicial intervention would be premature before a "final decision" of the Secretary is reached through the administrative review process. 42 U.S.C. § 1395ff(b)(1)(A).

accomplished something less than she desired through her challenge to a now-retired local coverage determination.

## II.  THIS COURT DOES NOT HAVE JURISDICTION OVER PLAINTIFF'S FIRST CLAIM UNDER 28 U.S.C. § 1331 OR § 1361.

What remains of plaintiff's contention that jurisdiction can be alternatively founded on the federal-question statute or the mandamus statute requires little further discussion.  Plaintiff's refusal to dispute the proposition that a perfected claim could eventually be brought by plaintiff in this Court under 42 U.S.C. § 1395ff(b), at least after its jurisdictional requirements were properly met, demolishes their curious contention that, in the absence of review under 42 U.S.C. § 1395ff(f), there would be "no available administrative avenue of relief" by which the "coverage policies" she deems to be unlawful could ever be challenged.  Pl. Mem at 27 (emphasis in original).  As defendants have previously explained, the avenue for challenging what plaintiff alleges to be unlawful claims denials is 42 U.S.C. § 1395ff(b)(1), and plaintiff is free to avail herself of that avenue after she has presented claims, pursued them through the administrative appeals process set forth in 42 U.S.C. §§ 1395ff(a)-(d), and aggregated a sufficient number of claims to meet the dollar-amount threshold.  Def. Mem. at 35-39.[9]  The potential availability of this administrative and judicial remedy, in turn, precludes jurisdiction under the federal-question statute, 28 U.S.C. § 1331, and the mandamus statute.  28 U.S.C. § 1361.  See Def. Mem. at 39-42.  Each of the decisions cited by plaintiff supports, rather than undermines, that conclusion.

The first decision on which plaintiff relies, Pl. Mem. at 26, was reversed in relevant part in American Chiropractic Association, Inc. v. Leavitt, 431 F.3d 812, 815-18 (D.C. Cir. 2005),

---

[9] The dollar amount can also be aggregated by the skilled nursing facility.  See 42 U.S.C. § 1395ff(b)(1)(E)(ii)(II).

rev'g in relevant part, 131 F. Supp. 2d 174 (D.D.C. 2001), and her analysis goes downhill from there. All of the other decisions on which she relies merely identify circumstances in which jurisdiction can be founded on 28 U.S.C. § 1331 or 28 U.S.C. § 1361 because judicial relief is not available under 42 U.S.C. § 1395ff(b)(1)(A) or analogous jurisdictional statutes in the Medicare Act. The two other decisions of this Court on which plaintiff relies, for instance, both involved a situation where the risk of "draconian sanction" was held to effectively preclude health-care providers from pursuing ostensibly-available avenues of relief under the Medicare Act. Nat'l Ass'n of Psychiatric Health Sys. v. Shalala, 120 F. Supp. 2d 33, 38 (D.D.C. 2000) (plaintiff risked termination from the Medicare program); see also Am. Lithotripsy Soc'y v. Thompson, 215 F. Supp. 2d 23, 29 (D.D.C. 2002) ("statutory penalties of up to $15,000 per bill" could subject plaintiff to "financial ruin," as well as "criminal penalties and exclusion from participation in any health care program.") (emphasis in original). In that setting, this Court held that jurisdiction was not precluded by 42 U.S.C. § 1395ii because the deterrent effect of the sanctions created "the practical equivalent of a total denial of judicial review." Am. Lithotripsy, 215 F. Supp. 2d at 29 (quoting Illinois Council, 529 U.S. at 22); Psychiatric Health Sys., 120 F. Supp. 2d at 39 (same). In this case, of course, plaintiff need not face any sanction merely to claim Part B benefits for blood-glucose tests and then to pursue any determination that she thinks was wrongly decided through the administrative appeal process. The absence here of the circumstances that were outcome-controlling in American Lithotripsy and Psychiatric Health Systems undermines, rather than supports, any contention that no avenue of judicial relief is available here under 42 U.S.C. § 1395ff(b)(1)(A).

In Furlong v. Shalala, 238 F.3d 227 (2d Cir. 2001), the court merely held that physicians who chose not to take assignments of Part B beneficiary claims do not have to exhaust the Medicare appeals process before bringing suit in district court for the simple reason that

physicians who do not take assignments of beneficiary claims do not have any Medicare appeal rights to exhaust. The physicians would have had Medicare appeal rights only by taking an assignment of the beneficiary claims and thereby acquiring the appeal rights that go with the claims. Id. at 232-33. The only portion of the decision that is relevant here is dicta in which the court emphasized that Medicare beneficiaries enrolled in Part B have the full quantum of rights to administrative and judicial review under 42 U.S.C. § 1395ff(b)(1) that beneficiaries enjoy under Part A. Furlong, 238 F.3d at 230; see also Furlong v. Shalala, 156 F.3d 384, 388 & 390 (2d Cir. 1998), on remand, 2000 WL 194843 (S.D.N.Y. Feb. 18, 2000), aff'd in part, rev'd in part, 238 F.3d 222 (2d Cir. 2001). Since plaintiff here is a Medicare beneficiary (and not a physician who declined to take assignment of a Part B claim), the Furlong analysis once again refutes, rather than supports, plaintiff's argument, at least by negative inference.

The other decision on which plaintiff primarily relies, DeWall Enterprises, Inc. v. Thompson, 206 F. Supp. 2d 992 (D. Neb. 2002), is easily distinguishable. In that case, a contractor denied the Part B claims of a medical-equipment supplier on the ground that the supplier had used the wrong billing code to claim payment. The decision was reversed on subsequent administrative appeal, the contractor proceeded to deny the same claims on the same grounds numerous additional times, and each time the determination was reversed on administrative appeal. In that exasperating setting, the court held that, "[b]y failing to appeal adverse decisions, but then refusing to follow the dictates of those decisions, the Secretary has, in practice, denied any judicial review," effectively catching the supplier "in an endless loop wherein he achieves an illusory victory in administrative proceedings but has no recourse to enforce that victory." Id. at 998.

Plaintiff in this case obviously does have a mechanism by which she can "enforce" what she conceives to be the "victory" she achieved in the LCD proceeding. If she really believes that

the legal consequence of the LCD retirement was to forbid the denial of her October 2005 claims

on reopening and the subsequent denial of all future claims on <u>any</u> grounds related to medical

necessity, she could have challenged the determination on the reopened claims (and she can

challenge any adverse determinations on the future claims) through the administrative appeals

process available to her under 42 U.S.C. §§ 1395ff(a)-(d), and challenge any unsatisfactory

result in this Court under 42 U.S.C. § 1395ff(b)(1)(A).  Inasmuch as the outcome of such an

administrative appeal is unknown at this time, there is no "loop" of "illusory victory" in which

she could possibly be said to be currently ensnared.  It is not necessary for defendants to quarrel

with the result in <u>DeWall</u> to note that the same situation is not present here.[10]  Plaintiff cites no

authority for the proposition that jurisdiction over her challenge to the denial of past and future

claims is not limited to an action brought under 42 U.S.C. § 1395ff(b)(1)(A) after exhaustion of

the Medicare appeals process and the aggregation of a sufficient dollar-amount in claims.[11]

---

[10] In passing, defendants note that the analysis in <u>DeWall</u> is inconsistent with the holding in <u>Heckler v. Ringer</u>, in which the Supreme Court declined to waive presentment and exhaustion in the precise circumstances where agency adjudicators at higher levels of review had repeatedly reversed contractors' denials of claims for a certain surgical procedure on the ground that the procedure was not reasonable and necessary.  466 U.S. at 614-16.  The <u>DeWall</u> decision, on which no court has subsequently relied, can best be understood as a <u>sui generis</u> outlier based on the court's sympathetic view of the plight of a small entrepreneur who was being required to undergo the expense of repeated administrative appeals by an apparently stubborn contractor.  Defendants question, however, whether there is any genuine <u>legal</u> basis for the Court's implied conclusion that, at some point, a contractor is required to treat the decision of an administrative law judge in one appeal as precedential authority in subsequent determinations.  Only regulations and formal administrative rulings by the Secretary have such binding effect.  <u>Ringer</u>, 466 U.S. at 614-18.  If, in particular settings, the administrative process established by Congress is becoming too burdensome to serve the public interest, the problem must be addressed to Congress.  <u>Illinois Council</u>, 529 U.S. at 20; <u>Ringer</u>, 466 U.S. at 619, 621-22.  <u>DeWall</u> is merely an example of how hard cases can sometimes make bad law.

[11] The other decisions cited by plaintiff are obviously inapposite.  In <u>Bartlett Medical Center v. Thompson</u>, 347 F.3d 828 (10th Cir. 2003), the court merely held that there was no administrative procedure by which a hospital could compel a reopening of cost reports which the plaintiff hospitals alleged was required by 42 C.F.R. § 405.1885(b).  Jurisdiction to seek the <u>procedural</u> remedy of reopening was therefore held to be enforceable under the mandamus statute, <u>id.</u> at 835-38, for the same reasons that the Court of Appeals for this Circuit so held in

### III.  IN THE ALTERNATIVE, PLAINTIFF'S FIRST CLAIM SHOULD BE DISMISSED FOR LACK OF STANDING AND/OR RIPENESS.

Even if plaintiff could establish a statutory basis for jurisdiction over her challenge to the denial of the October 2005 claims and anticipated denials of her future claims, her first cause of action should be dismissed for the additional reason that she lacks standing and/or her claims are not ripe.  As defendants demonstrated in their opening memorandum, plaintiff was not injured by the denial of her October 2005 claims (whether initially or on reopening) because she was held financially harmless under 42 U.S.C. § 1395pp.  Def. Mem. at 44.  Plaintiff's opening memorandum is totally unresponsive to this argument.  Defendants have no quarrel with the proposition that it is not necessary for a Medicare beneficiary to have been held "financially responsible" to pay for a service, Pl. Mem. at 15, in order to be an "aggrieved party" for purposes of challenging an existing LCD under 42 U.S.C. § 1395ff(f)(2) and regulations promulgated thereunder.  But it is certainly necessary for plaintiff to have suffered a financial injury in order to have standing under Article III of the Constitution to seek backward-looking relief with

_____

Monmouth Medical Center v. Thompson, 257 F.3d 807, 815 (D.C. Cir. 2001).  In this case, of course, plaintiff is not seeking to compel the procedural remedy of a reopening.  She got a reopening of her October 2005 claims.  What she seeks is an order compelling the intermediary to reach a different substantive result in the determination of the reopened claims.  In Erringer v. Thompson, 189 F. Supp. 2d 984 (D. Ariz. 2001), the plaintiffs brought a claim alleging, among other things, that it violated due process for intermediaries to deny claims on the basis of a local coverage determination without informing beneficiaries in the initial denial notice that an LCD had been used in making the determination.  The court's holding – that exhaustion of the process for appealing the denial was not necessary to challenge the adequacy of the notice in the initial determination, id. at 988-94 – is irrelevant here because defendants have never argued that exhaustion of the remedies in 42 U.S.C. §§ 1395ff(a)-(d) is necessary for plaintiff to maintain her second claim based on due process.  In addition, plaintiff herself emphasizes that the Erringer plaintiffs had all met the presentment requirement, Pl. Mem. at 25 (citing Erringer, 189 F. Supp. 2d at 993), a circumstance that does not apply to plaintiff's anticipated future claims.

respect to the past denial of her October 2005 claims based on what she alleges to be unlawful reliance on a retired LCD.[12]

In addition, to the extent that plaintiff contends that the complained-of government conduct is the use of a retired LCD to re-adjudicate her October 2005 claims, the complained-of conduct simply did not happen. The only evidence before the Court is that the October 2005 claims were denied on reopening on the ground that "the information provided does not support the need for this service," Def. Mem. at 32 (quoting Routt Docs. at 81), and that this determination was made "without application" of the retired LCD. Id. (quoting Zajicek Letter at 1). Plaintiff has submitted nothing to show that the claims were denied on the basis of the LCD.[13]

The problems with respect to standing and ripeness with respect to future claims also are not addressed in plaintiff's memorandum. The retirement of the LCD plainly states that the LCD will not be used to adjudicate future claims, Retired LCD at 16, and the regulatory language under which future claims will be adjudicated – which now appears at 42 C.F.R. § 424.24(f) – did not even exist when the LCD was retired. As was discussed above, plaintiff has no way of knowing how that regulation will be construed in her specific fact situation – which itself may change in the future – until determinations on actually-submitted claims are rendered. Prior to that time, the claims are premature.

---

[12] Plaintiff does not contend that her SNF is refusing to perform blood-glucose tests in the absence of Medicare payment, so there is no allegation of any physical injury.

[13] The requests for additional information on which plaintiff attempts to infer reliance on the LCD, Pl. Mem. at 61, were not even issued with respect to the reopening determination. They were issued with respect to the original determination. In any event, these requests for information are not <u>decisional</u> documents.

## IV. PLAINTIFF'S FIRST CLAIM IS PATENTLY WITHOUT MERIT.

Even if plaintiff's first claim could survive its jurisdictional defects, it is completely without merit. The reasons why the dismissal of an administrative challenge to a retired LCD does not affect the responsibility of the intermediary to enforce existing statutes, existing and subsequently promulgated regulations, and the Secretary's program instructions with respect to existing and subsequently promulgated regulations are set forth in defendants' opening memorandum. Def. Mem. at 44-47. To summarize, the retirement of an LCD does not result in a decision by the ALJ that the LCD is unreasonable. It merely has the same procedural "effect" as if it had been declared unreasonable, 42 C.F.R. § 426.420(a), as if the LCD had been held to be invalid. Def. Mem. at 45. Furthermore, an ALJ would not have the power to declare any statutes, regulations or informal program instructions invalid in the context of reviewing an LCD because each of those sources of law and interpretation are expressly placed outside his purview. Id. at 46. And, even if it were within the power of the ALJ to invalidate existing statutes, regulations and interpretations, he could not possibly have the power to bar the Secretary from issuing the new regulations at 42 C.F.R. § 424.24(f) or to force one intermediary in the United States not to enforce them. Id. Plaintiffs' unsupported contention that statutes, regulations and program instructions that are "discussed," Pl. Mem. at 45, in an LCD become "null and void," id. at 43, if the LCD is retired while under challenge simply makes no sense. Suffice it to say that the idea that one intermediary – by retiring its own LCD – could rewrite the laws passed by Congress, the regulations promulgated by the Secretary, and the program instructions promulgated by the Secretary is simply too ludicrous to merit any further comment.[14]

---

[14] When, in the portion of the regulatory preamble on which plaintiff relies, the Secretary stated that the retirement of an under-challenge LCD "would result in the retired/withdrawn policy no longer applying in the claims adjudication process," 68 Fed. Reg. 63,692, 63,698 (Nov. 7, 2003) (emphasis added), the Secretary was obviously referring to the LCD itself and any

To the extent plaintiff thinks that denial of her blood-glucose claims is inconsistent with the general spirit of the national coverage determination that took effect in 2002 (and brought about the occasion to retire the now-superfluous LCD), see Pl. Mem. at 45-53, she can raise her argument in the ordinary Medicare appeals process.  In any event, as was discussed above, the relevant portion of the NCD does not identify any circumstances under which payment for blood-glucose tests must be made, and it does not comment at all on the extent to which test results must be reported to the physician and used to order new tests and otherwise manage the patient's condition.  The fact that there are "no specific limitations" in the NCD regarding test reporting, physician-use of tests, the meaning of the term "promptly," and the propriety of standing orders, see Pl. Mem. at 49, does not support the conclusion that the NCD prohibits such limitations.  It supports the conclusion that the matter simply was not addressed in the NCD.  These are merely topics on which the negotiated rulemaking committee made no statements, other than to note that there existed "longstanding policies" of the Secretary (such as those implementing the physician-use requirement in 42 C.F.R. § 410.32(a)) that were reasons for denial of claims and that were not affected by the NCD.  66 Fed. Reg. at 58,848.  Plaintiff's contention that the NCD should be read as invalidating those policies is absurd.  At the very

---

policies that the LCD added to the decisional law used by the intermediary to determine claims. No reasonable person could read the passage to imply anything so startling as the proposition that an intermediary, by retiring its own LCD, conferred on itself the power to sweep aside all statutes, regulations and program instructions mentioned, for informational purposes or context, in the document.  Nothing in the text of the regulation itself refers to policies at all.  It merely refers to the the non-use of the retired "LCD" or challenged "provisions" of the "LCD."  42 C.F.R. §§ 426.460(b)(1)-(2).  Elsewhere in the preamble, the Secretary expressly stated that the retirement of an under-challenge LCD merely "means that the contractor may longer use that LCD in the adjudication of claims on a prospective basis." 68 Fed. Reg. at 63,709 (emphasis added).  Any ambiguity in the language used in different parts of the preamble, however, must be resolved by the default rule that any reasonable construction of the Secretary is entitled to deference.  See Def. Mem. at 44 (citing Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994)).

least, however, there is nothing in the NCD that could remotely be construed as mandating Part B reimbursement where, as with respect to plaintiff's October 2005 claims here, there was no documentation submitted to the intermediary in support of the claim that any test results were ever reported to the treating physician, that the treating physician ever looked at them, that he ever used the results to order any new tests, that he ever used the test results for any other purpose, or that he was even involved in monitoring the patient's condition.

Indeed, plaintiff appears to be unaware of the incongruity of her own reliance on the NCD in support of her claims. The language currently in the NCD was recited verbatim in the LCD (while the NCD was still in the proposal stage). If the effect of reciting language from other sources (such as a statute, regulation or program memorandum) has the effect of making that language unenforceable by the intermediary, then the same effect would logically render the NCD invalid, as well. Plaintiff's first claim simply collapses under the weight of its own incongruity.

As defendants explained in their opening memorandum, the retirement of an LCD while a challenge to its validity is pending has only three legal consequences. The first is that the ALJ must dismiss the LCD complaint for lack of jurisdiction. 42 C.F.R. § 426.420(e)(1). The ALJ complied with this requirement. Def. Mem. at 31 (citing LCD Record at 1-2). The second is that the intermediary "must reopen the claim of the party who challenged the LCD and adjudicate the claim without using the [challenged] provision(s)" of the LCD. 42 C.F.R. § 426.460(b)(1)(i). The intermediary complied with this requirement. Def. Mem. at 32 (citing Routt Docs. at 79-86 & quoting Zajicek Letter at 1).[15] Finally, "any subsequent claims for the

---

[15] Arguably, even this reopening was unnecessary because plaintiff's October 2005 claims were not "previously denied" on the basis of the LCD. 42 C.F.R. § 426.460((b)(1)(i). The issue is of no consequence, however, since the intermediary had independent authority to reopen the claims under 42 C.F.R. § 405.980.

service provided under the same circumstances" must be adjudicated by the intermediary

"without using the LCD provision(s)" that were challenged. 42 C.F.R. § 426.460(b)(1)(iv). The

intermediary complied with that requirement, as well. Def. Mem. at 32. Thus, even if this Court

had jurisdiction to "enforce" the ALJ's dismissal order in the manner supposed by plaintiff, Pl.

Mem. at 3, there is no aspect of the order that has not been followed.

## V.   PLAINTIFF'S DUE-PROCESS CLAIM SHOULD BE DISMISSED.

For the reasons stated above, plaintiff's first cause of action should be dismissed for lack

of subject-matter jurisdiction and failure to state a claim. Defendants' response to plaintiff's

remaining claim – ostensibly based on a due-process theory – is complicated by the fact that the

claim alleged in the complaint bears no resemblance to the new theory articulated for the first

time in her opening memorandum. Defendants will reply to each in turn.

The complaint itself merely alleges that third parties not before this Court have a due-

process right to the same individualized notice of the retirement of the LCD as plaintiff herself

received, so that they may pursue appeal rights if claims for blood-glucose tests are denied. Am.

Compl. at ¶¶ 116-20. As defendants demonstrated in their opening memorandum, plaintiff

cannot plausibly argue that she has been personally injured by a failure to receive notice that she

admits she received, and this lack of injury defeats both her personal standing and any claim to

standing to assert the putative rights of other Medicare beneficiaries. Def. Mem. at 47-49.

Plaintiff's memorandum does not respond. Plaintiff's only response to the additional defects in

her theory of third-party standing is to voice her disagreement with the long line of authority

holding that Medicare beneficiaries do not have a "close relationship" to each other merely

because they are Medicare beneficiaries, Def. Mem. at 49, and cannot be deemed to

automatically suffer a hindrance from asserting their own claims merely because they are elderly

or infirm. Id. at 49-50. Finally, plaintiff makes no argument whatsoever that due process

requires notice of the retirement of an LCD that is any more personalized that the publication on

the Internet by which the LCD is first issued. Plaintiff's due-process claim, as pled in the

complaint, should therefore be dismissed for lack of subject-matter jurisdiction or, in the

alternative, failure to state a claim.

Plaintiff's due-process theory, as revised by her opening memorandum, also should be

dismissed, but the analysis differs slightly. The gravamen of her revised theory is apparently

that the intermediary did not give her adequate notice of the reasons why her October 2005

claims were denied on reopening because the contractor merely stated that "[t]he information

provided does not support the need for this service," Def. Mem. at 32 (quoting Routt Docs. at

81), without writing a more elaborate treatise on the "policies" used in making the determination.

Pl. Mem. at 62. To the extent that plaintiff now contends that she was injured by some failure on

the part of the beneficiary to tell her why her October 2005 claims were denied, Pl. Mem. at 31-

34, the short answer is that the Medicare Summary Notice she received in 2006 did not prevent

her from bringing an LCD complaint and the Medicare Summary Notice she received in 2007

following reopening was sufficient to allow her to pursue an appeal of the intermediary's

determination. She has suffered no injury.

In any event, it is not necessary to reinvent the wheel to resolve whether the notice

language used by the intermediary satisfies due process. As defendants explained in their

opening memorandum, the precise language currently used in the Medicare Summary Notice

was the product of a class-action settlement agreement approved by this Court, Def. Mem. at 51

(citing Gray Panthers v. Heckler, 1985 WL 81770 (D.D.C. Nov. 4, 1985)), which implemented

changes to the explanation of "medical necessity" in the initial determination notice that had

previously been found by the Court of Appeals for this Circuit to be sufficient to satisfy the

notice requirements of due process with respect to denials of Part B claims. Gray Panthers v.

Schweiker, 716 F.2d 23, 33 (D.C. Cir. 1983). To require a more detailed discussion on Medicare

statutes, regulations and program memoranda of the type envisioned by plaintiff – especially

when ample opportunity to secure "additional information" about the reasons for the decision is

available, 42 U.S.C. § 1395ff(a)(4)(A)(ii); see also 42 U.S.C. § 1395ff(a)(4)(C); 42 C.F.R.

§ 405.1034(a), and the beneficiary has the specific right to be informed whether a local coverage

determination was used as the basis for the decision, 42 U.S.C. § 1395ff(a)(4)(A)(i) – would

self-evidently be overly burdensome for the federal government, make it virtually impossible to

process the millions of Part B claims in a timely fashion, and would probably have no effect on

the beneficiaries other than to confuse them.[16]

## VI. SUMMARY JUDGMENT SHOULD BE DENIED.

Finally, plaintiff's cross-motion for summary judgments merits little discussion. To

support a motion for summary judgment, the moving party must come forward with sufficient

"facts as would be admissible in evidence," Fed. Civ. P. 56(e), to show that "there is no genuine

issue as to any material fact," and that "the moving party is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(c). For the reasons stated above, this Court lacks subject-matter

jurisdiction and the complaint fails to state a claim. Plaintiff therefore cannot possibly be

entitled to judgment as a matter of law.

Even if it were necessary to continue the analysis further, however, where, as here, the

party moving for summary judgment bears the burden of proof, she must first "make a prima

facie showing that [she] is entitled to summary judgment" by submitting sufficient "credible

evidence" that "would entitle [her] to a directed verdict if not controverted at trial." Cobell v.

---

[16] To the extent plaintiff believes that the intermediary was not telling the truth when it informed her that her claims were reviewed on reopening without application of the retired LCD, her second, "due process," claim is merely an intellectually awkward way of restating her first claim, and should be dismissed for the same reasons.

Norton, 260 F. Supp. 2d 110, 117 (D.D.C. 2003).  As plaintiff herself emphasizes, "wholly conclusory statements for which no supporting evidence is offered" are not sufficient to meet this test.  Pl. Mem. at 41 (quoting Carter v. Greenspan, 304 F. Supp. 2d 13, 21 (D.D.C. 2004), and citing Greene v.Dalton, 164 F.3d 671, 674-75 (D.C. Cir. 1999).  Only if the plaintiff meets that burden of production does the burden then shift to the non-moving party to come forward with facts that show an issue of material fact in dispute.  Cobell, 260 F. Supp. 2d at 117.  At both stages of the analysis, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).  Plaintiff here does not even meet her threshold burden of production.

The only evidence on which plaintiff relies for her central factual claims that the intermediary denied the reopened October 2005 claims on the basis of the retired LCD and that it intends to deny future claims on the basis of the retired LCD is a letter written by the intermediary that plainly states the opposite:  that the LCD was not used in the reopening determination.  Pl. Facts Statement at ¶¶ 26-27 (citing Zajicek Letter at 1).  Furthermore, the Medicare Summary Notice states that the October 2005 claims were denied on reopening because the "information provided does not support the need for this service or item," Def. Mem. at 32 (quoting Routt Docs. at 81), and the intermediary made this statement under circumstances where it would have been legally required to inform the beneficiary if the determination had been based on an LCD.  42 U.S.C. § 1395ff(a)(4)(A)(i).  Contrary to plaintiff's view, it is hard to see how the fact that the blood-glucose tests were denied because they were not "reasonable and necessary," Pl. Mem. at 44, supports any inference beyond the fact that the intermediary found that the services were not "reasonable and necessary" under 42 U.S.C. § 1395y(a)(1)(A) and regulations and policies promulgated thereunder.  Obviously, plaintiff cannot prove that the

intermediary is relying on an LCD using only a letter that states it is not relying on an LCD,[17]

and, even if plaintiff were to dispute the truthfulness of the letter, such a dispute of material fact

would obviously defeat summary judgment.  See Reeves v. Sanderson Plumbing Prods., 530

U.S. 133, 150 (2000) (court may not make "credibility determinations" or "weigh the evidence"

in a manner unfavorable to non-moving party): Anderson, 477 U.S. at 255 (same).  Other factual

disputes were discussed earlier in this memorandum, and additional disputes are discussed in

Defendants' Statement of Material Facts As to Which There is a Genuine Issue.  Summary

judgment in plaintiff's favor is obviously not appropriate here.

## CONCLUSION

For the reasons stated, plaintiff's complaint should be dismissed, and plaintiff's cross-

motion for summary judgment should be denied.[18]

|  | Respectfully submitted, |
|---|---|
| OF COUNSEL: | |
| DANIEL MERON | PETER D. KEISLER |
| General Counsel | Assistant Attorney General |
| | |
| JANICE L. HOFFMAN | JEFFREY A. TAYLOR |
| Acting Associate General Counsel | United States Attorney |
| | |
| MARK D. POLSTON | /s/ Peter Robbins |
| Deputy Associate | SHEILA M. LIEBER |
| General Counsel for Litigation | PETER ROBBINS |
| | Department of Justice |
| WILLIAM A. CONNELLY | 20 Massachusetts Avenue, N.W., Room 7142 |
| Attorney | Washington, D.C.  20530 |
| Department of Health | Tel:  (202) 514-3953 |
| and Human Services | Attorneys for Defendants |

---

[17] Indeed, the logical conclusion from this analysis would be that, if plaintiff survived defendant's motion to dismiss, the motion should simply be converted into one for summary judgment in favor of defendant, since both sides agree that the contents of the Zajicek Letter are controlling with the respect to the past use and anticipated future use (or, more accurately, non-use) of the LCD.  Pl. Facts Statement at ¶¶ 26-27.

[18] Plaintiff does not contest that the intermediary also should be dismissed on the ground that the Secretary is the real party in interest.  Def. Mem. at 52 n.23.