UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

|  |  |  |
|---|---|---|
| LOUISE BAILEY,<br>Individually, And On<br>Behalf of All Other Similarly<br>Situated Medicare Part B<br>Beneficiaries | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:06-cv-2144<br>Judge Royce C. Lamberth |
| v. | ) ) | |
| MUTUAL OF OMAHA INSURANCE<br>COMPANY, MICHAEL O. LEAVITT,<br>and HERB B. KUHN | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S REPLY TO
DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
AND IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Counsel:
Carol C. Loepere
Antony B. Klapper
Jason M. Healy
Catherine A. Durkin
Cassia M. McCamon
REED SMITH LLP
1301 K Street, NW
Suite 1100 – East Tower
Washington, D.C. 20005
(202) 414-9200

Thomas C. Fox
REED SMITH LLP
1301 K Street, NW
Suite 1100 – East Tower
Washington, D.C. 20005
(202) 414-9222
Attorney for Plaintiff

## <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY MATTERS ....................................... 1

II.   SUMMARY OF THE CASE AND DEFENDANTS' ARGUMENTS ............. 1

    A.    Brief Statement of the Case .................................. 1

    B.    Summary of Defendants' Arguments ............................ 3

III.  ARGUMENT .................................................. 5

    A.    This Court Has Jurisdiction Over Plaintiff's First Claim Under 42 U.S.C. 1395ff(f) .......................................... 5

        1.    This Court has jurisdiction under 42 U.S.C. 1395ff(f)(2) .......... 8

        2.    This Court has jurisdiction under 42 USC 1395ff(f)(3) ............ 10

    B.    This Court Has Jurisdiction Over Plaintiff's First Claim Under 28 U.S.C. §§ 1331 and 1361 ................................... 14

    C.    Plaintiff Has Standing To Assert Her First Claim, And That Claim Is Ripe For Judicial Review ..................................... 16

    D.    Defendants' Remaining Arguments In Opposition To Plaintiff's First Claim Are Without Merit ..................................... 17

    E.    Plaintiff's Due Process Claim Has Merit ........................ 18

    F.    Plaintiff's Motion For Summary Judgment Should Be Granted ....... 19

IV.   CONCLUSION ............................................... 20

## I.     PRELIMINARY MATTERS

Plaintiff files herewith a Motion for Oral Argument on Plaintiff's Motion For Summary Judgment and Opposition To Defendants' Motion To Dismiss.  Due to the substantial briefing by the parties to date, and the parties' seemingly incompatible views of this case, the Plaintiff believes that this Court will benefit from hearing oral argument.

## II.     SUMMARY OF THE CASE AND DEFENDANTS' ARGUMENTS

### A.     Brief Statement of the Case

Plaintiff has already submitted a detailed statement of this case in its Complaint, Motion For Summary Judgment, and Opposition To Defendants' Motion To Dismiss.  Instead of reproducing the same, Plaintiff offers the following brief summary of the Plaintiff's case, particularly as it pertains to the Defendants' Reply In Support Of Their Motion To Dismiss And Opposition To Plaintiff's Motion For Summary Judgment ("Defs.' Reply" or "Reply Brief").

This case is about the Defendants' concerted and continuing efforts to block coverage of blood glucose tests that are necessary to the health of Plaintiff Bailey and members of the proposed class who are Medicare Part B beneficiaries residing in SNFs across the country. Simply stated, a National Coverage Determination ("NCD") on blood glucose testing was published and it supports frequent testing of Plaintiff's blood glucose levels, as defined by a physician, consistent with the medical evidence and best medical practices.  (Pls.' Statement ¶ 41 and R. at 46.)  Defendant CMS knew that the NCD, the statute, and its then-existing regulations allowed for Medicare Part B coverage of Plaintiff's blood glucose tests and payment of such claims.  (Pls.' Statement ¶ 44, 47 and Am. Compl. Ex. 2-3.)  To deny payment for these tests, CMS privately developed bogus coverage policies (including requirements for a separate

physician order for each test and prompt reporting of the test result to the physician before the next test) under the guise of legitimate medical necessity criteria, published these new requirements in a series of Program Memoranda (namely, AB-00-99 and AB-00-108) without public comment, and instructed its contractors (including Defendant Mutual) to incorporate these policies in their Local Coverage Determinations ("LCDs").  (Pls.' Statement ¶ 45.)  Any and all criticism of these policies from health care providers, beneficiaries – and even from those within Mutual and CMS – were quickly discounted and disregarded.  (Pls.' Statement ¶ 48.)

Plaintiff Bailey directly challenged these contrived coverage policies in her administrative appeal of Mutual's blood glucose testing LCD before the HHS Departmental Appeals Board ("DAB").  The administrative law judge ("ALJ") certified Plaintiff's LCD appeal complaint, acknowledging that she had standing to pursue her challenge of Mutual's LCD.  Plaintiff's LCD appeal challenged specific language in the LCD which is contrary to the NCD and the medical evidence.  Beneficiary's Complaint, In re CMS LCD Complaint, Blood Glucose Testing, DAB Docket No. C-06-349 (Mar. 28, 2006) ("LCD Complaint") at 4-5 (Administrative Record ("R.") at 7-8.)  Plaintiff Bailey was careful not to challenge language in the LCD which did not obstruct coverage of her blood glucose tests, such as language restating the negotiated provisions from the NCD.  The Defendants are mistaken in asserting the contrary.  Defs.' Reply at 6 ("Significantly, plaintiff's administrative complaint challenged every sentence in the LCD…").

After Plaintiff thoroughly exposed the coverage policies in the challenged LCD language as conflicting with the NCD and contrary to the medical evidence and medical best practices, CMS and Mutual voluntarily withdrew (retired) the LCD to stem any further challenge to those policies.  (Pls.' Statement ¶ 22-23 and R. at 736).  The withdrawal of the LCD has the same legal

effect as an ALJ decision on the merits that the LCD is invalid.  42 C.F.R. §§ 426.420(a), 426.460(b).  The withdrawal of the LCD also has the effect of a waiver by the Secretary of any further administrative review of the Plaintiff's challenge to the LCD.  Despite these results, the Defendants continue to apply the challenged, and now invalid, coverage policies in the LCD to the Plaintiff's claims for blood glucose tests.  (Pls.' Statement ¶ 26-29.)

Plaintiff Bailey filed this action to enforce the invalidation of the coverage policies Defendants used and will continue to use to improperly deny Medicare Part B coverage of blood glucose tests administered to her and members of the proposed class.  (Pls.' Statement ¶ 24.) Defendants continue to apply these coverage policies even though the Defendants are acting in violation of the Medicare statute and applicable regulations.  (Pls.' Statement ¶ 25-26.) Defendant CMS has gone so far as to quickly promulgate a recent regulation in an effort to bolster some of these improper coverage policies.  42 C.F.R. 424.24(f).

For the reasons discussed in Plaintiff's previous briefs and herein, this Court has jurisdiction to consider Plaintiff's claims for relief, and those claims are ripe for review.  There is no requirement that Plaintiff go through a second, independent administrative appeal process to challenge Mutual's denial of her blood glucose tests using the same now-invalid coverage policies.  If this Court does not retain jurisdiction to enforce the invalidation of Mutual's LCD, then the LCD appeal process will be rendered meaningless.

## B.    Summary of Defendants' Arguments

The Defendants' Reply Brief is a continuation of their campaign to mischaracterize this case in the hope that this Court will not look past the bravado of the jurisdictional arguments to see that their arguments are not supported by the plain language of 42 U.S.C. § 1395ff(f), which established the administrative process for challenging a coverage determination; its legislative

history; the CMS implementing regulations at 42 C.F.R. §§ 426.100-426.587; and the CMS

commentary explaining that administrative process. Nor do their arguments offer any logical

interpretation of the statute and regulations. They are merely designed to thwart further judicial

review.

The Defendants misrepresent to this Court the claims in the Plaintiff's Amended

Complaint, suggesting that the Plaintiff's first claim is solely concerned with the denial of

Plaintiff's blood glucose test claims to Medicare for payment that were twice denied, and future

blood glucose test claims. Defs.' Reply at 7. This is an incorrect reading of the Amended

Complaint. The first claim in the Amended Complaint asserts that Mutual, with the

acquiescence or approval of the other Defendants, continues to apply the coverage policies in the

withdrawn and invalid LCD to Plaintiff Bailey's previous claims for blood glucose tests and all

future Medicare Part B claims for those tests. Am. Class Action Compl. for Decl. and Inj. Relief

("Am. Compl.") at 46-48. Plaintiff asserts that this constitutes a continuing violation of the

Medicare Act and applicable regulations. After thoroughly exposing those coverage policies in

the LCD appeal as wholly lacking support from the medical evidence and clinical best practices,

the Defendants withdrew and retired the LCD. The legal effect of that action is the invalidation

of the challenged coverage policies reflected in Mutual's LCD. The challenged coverage

policies in the LCD are now invalid as to Mutual and cannot be used by Mutual to deny

Medicare coverage of blood glucose tests under Medicare Part B.

Plaintiff filed the Amended Complaint to enforce the invalidation of those challenged

coverage policies and Mutual's prior and ongoing use of those coverage policies in determining

whether blood glucose tests are covered under Medicare Part B. Am. Compl. at 50. Plaintiff

also seeks to have this Court take notice of the generally accepted clinical standards articulated

in her Amended Complaint for the treatment of Medicare beneficiaries who require blood

glucose tests; require that the Defendants provide written notice to members of the proposed

class with those standards; and exercise judicial oversight to ensure that Defendants use those

correct standards when reaching coverage determinations involving blood glucose tests

administered to members of the proposed class.  Am. Compl. at 50-51.

## III.    ARGUMENT

### A.    This Court Has Jurisdiction Over Plaintiff's First Claim Under 42 U.S.C. 1395ff(f)

The Defendants continue to argue that Mutual never used the LCD as a basis to deny the

Plaintiff's claims for blood glucose tests.  In fact, the Defendants go so far as to make the broad

statement that "Indeed, the LCD was never used to deny any blood-glucose claim of any

beneficiary."  Defs.' Reply at 5.  Yet the Defendants do not back up this statement with the

results of an analysis of all denials issued by Mutual to claims for blood glucose tests that have

been submitted to date, or even a sufficient sample of such denials.  Instead, the Defendants

make this bold statement based upon its review of Mutual's denials of Plaintiff Bailey's claims

for her blood glucose tests, where Mutual does not refer to the LCD directly.[1]  See id.  But this

does not validate the Defendants' statement.

As the Plaintiff has discussed in detail in her Memorandum of Points and Authorities In

---

[1]    Throughout Defendants' Reply Brief, rather than cite directly to the administrative record, they cite as authority a declaration by a CMS employee prepared for purposes of this litigation.  See Routt Declaration, Ex. B of Defs.' Mem. in Supp. of Mot. to Dismiss. Aside from confirming that Mutual used the term "medical necessity" or "reasonable and necessary" as the terminology for the bogus coverage policies developed by CMS and inserted in Mutual's LCD, and the basis for denying Plaintiff's claims for blood glucose tests, the Declaration is merely the Defendants' own restatement of some of the facts in this case and should not be confused with the administrative record.

Opposition To Defendants' Motion To Dismiss And In Support Of Plaintiffs' Motion For Summary Judgment ("Plaintiffs' Memorandum.") and her Statement of Material Facts not In Dispute ("Plaintiffs' Statement"), the facts in this case clearly show that Mutual, along with the other Defendants, have been and continue to deny coverage for blood glucose tests under Part B using "medical necessity" or the related phrase "reasonable and necessary" as the terminology on claims denials for the challenged coverage policies in the LCD, which are now invalid. Pls.' Mem. in Supp. of Mot. for Summ. J. ("Pls.' Mem.") at 20-21, 56-57; Pls.' Statement ¶¶ 49, 50, 51, 52.

Indeed, the Defendants' own Reply Brief confirms this in arguing that the coverage criteria that Plaintiff Bailey's claims failed to meet are many of the same coverage policies from the LCD which Plaintiff Bailey successfully challenged in her LCD appeal (namely, prompt reporting of test results to the physician, and the physician's review and use of those test results before ordering any new tests). Defs.' Reply at 29. Plaintiff filed this action to stop Mutual from using those same criteria to deny coverage of blood glucose tests under Medicare Part B.

On a related point, the Defendants argue that they complied with the ALJ's order of dismissal in Plaintiff Bailey's LCD appeal by re-adjudicating her claims for blood glucose tests without using the LCD. Defs.' Reply at 30. But, from Defendants' own Reply Brief, the Defendants acknowledge that Mutual is still applying the same coverage policies from the LCD that are now invalid to determine coverage of blood glucose tests. Defs.' Reply at 29.

As discussed previously (Am. Compl. at 12-19; Pls.' Mem. at 9-10), the source of the challenged coverage policies is Defendant CMS, as confirmed by the internal CMS communications submitted with the Amended Compliant. (Pls.' Statement ¶ 44—48; Am. Compl. Ex. 2, 3, 4, 5, 6, 9, 10, 12, 13, 14 ) CMS developed these bogus coverage policies in the

name of "medical necessity" to deny Part B coverage of blood glucose tests even though the

NCD, the statute, and even CMS's own regulations supported coverage. (Pls.' Statement ¶¶ 43,

44). In their Reply Brief, the Defendants make only a few passing responses to this evidence.

Therefore, the Court should consider the Defendants to have admitted to those facts.

On the merits, this case turns on the validity of coverage policies for blood glucose

testing, originally included in the informal Program Memoranda AB-00-99 and AB-00-108. If

the Court follows the CMS internal documents,[2] they show that CMS privately developed the

Program Memoranda under the guise of "medical necessity" coverage policies. At bottom, they

were intended to be interpreted by CMS contractors like Mutual, to require a separate physician

---

[2]    Among the CMS internal documents previously detailed in Plaintiff's Amended
Complaint ("Pl. Am Compl.") and Plaintiffs' Memorandum of Points and Authorities in
Opposition to Defendants' Motion to Dismiss and in Support of Plaintiffs' Motion for
Summary Judgment (Pl. Mem.), Jacqueline Gordon, a CMS policy specialist on skilled
nursing provider reimbursement procedures prepared a written report which
acknowledged that "SNF's [are] eligible for CLIA waiver for these tests" and "payment
for blood glucose testing is made on a fee schedule basis," yet, nevertheless, advocated to
the various CMS division directors (including Tom Hoyer, CMS Director of the Chronic
Care Policy Group) that "[f]or the patients in the non-certified portion [of the nursing
home] we should pay based upon the fee schedule and try to limit payment based upon
medical necessity criteria." Pl. Am. Compl. at 13-19; Pl. Mem. at 9-10, 21.

Also, in response to numerous emails where members of the Central Office exchanged
ideas on how Medicare could avoid paying for these blood glucose tests, notwithstanding
the conclusion that they are a covered service under Medicare Part B, Mr. Hoyer wrote an
e-mail to Ms. Gordon dated January 29, 1999, stating: "Unfortunately, in the Part B only
setting, if it is a covered test and CLIA waivered then we may have no choice but to pay.
I hope someone comes up with a better idea." Pl. Am. Compl. at 16; Pl. Mem. at 9-10,
21. In June of 1999, Mr. Hoyer circulated a fact sheet laying out the statutory authorities
and relevant facts which led him to conclude that "our history and our rules seem to
militate in favor of paying for this service under the fee schedule." Pl. Am. Compl. at 18-
19; Pl. Mem. at 9-10, 21. Also attached was a proposed policy drafted by Ms. Gordon
and Ms. Greenberg to limit coverage of blood glucose tests in SNFs to diagnostic tests
(i.e., a test administered to the patient to diagnose diabetes) but deny coverage for
additional tests performed during the treatment of the patient's disease to monitor the
patient's condition. Pl. Am. Compl. at 19; Pl. Mem. at 9-10, 21. Mr. Hoyer knew, even
at that time, that the pending National Coverage Determination would clearly support
payment of blood glucose monitoring claims, stating: "The proposed policy would
decline to provide coverage. But the proposed regulation on laboratory services that is
now being negotiated by Grand Bagley's shop [the National Coverage Decision] contains
criteria that seem surely to lead to payment." Pl. Am. Compl. at 19; Pl. Mem. at 9-10, 21.

order for each test and prompt reporting by the beneficiary's health care provider of the test result to the physician before the next test – an impossible construction from a practical standpoint in a case like Plaintiff Bailey's, where her physician ordered four tests per day to monitor appropriately her blood glucose levels.

Having developed these informal Program Memoranda without public comment, CMS distributed them to its contractors to incorporate the coverage policies in their local coverage determinations, which Mutual did in its LCD. These coverage policies would, as the CMS internal documents were intended to make clear, provide a basis for its contractors like Mutual to deny coverage for blood glucose tests on the basis of a lack of "medical necessity."

### 1.    This Court has jurisdiction under 42 U.S.C. 1395ff(f)(2)

The Defendants argue that the Plaintiff does not have standing in this case, and it is not yet ripe, and therefore this Court does not have jurisdiction over her claims, because the Plaintiff has not yet gone through the claims appeal process to challenge Mutual's denial and re-denial of her blood glucose testing claims. Defs.' Reply at 10. However, this argument fails under the statute giving Medicare beneficiaries the right to challenge coverage policies in LCDs directly (42 U.S.C. § 1395ff(f)(2)), CMS's own implementing regulations (42 C.F.R. §§ 426.110, 426.320), and CMS's commentary in the preamble to those regulations explaining that a beneficiary can pursue an LCD challenge without going through the claims appeal process. (68 Fed. Reg. 63,692-63,694 (Nov. 7, 2003)).

Congress created a separate appeal process for LCD challenges that includes judicial review. Defendants agree that the LCD appeal process is "separate and distinct from the existing appeal rights for denied Medicare claims." Defs.' Reply at 12 (quoting Pls.' Mem. at 14 (citing 68 Fed. Reg. 63,692, 63,693 (Nov. 7, 2003)). Because the Secretary effectively waived further

administrative review of Mutual's LCD when it was withdrawn, judicial review of the Defendants' continued application of the coverage policies in the invalid LCD is appropriate at this time.

To be clear, Plaintiff opposes Defendant Mutual's application, and continued application, of the <u>coverage policies</u> in the withdrawn LCD that she challenged through her administrative appeal. Plaintiff chose to utilize the LCD appeal process because it was the most direct way to have the challenged coverage policies in the LCD invalidated, and it has the broadest application to the proposed class of Medicare Part B beneficiaries.

Plaintiff was fully aware of the appeal process for denied Medicare claims. However, she chose to exercise the rights that Congress gave her under 42 U.S.C. § 1395ff(f)(2) for the betterment of the entire proposed class. She challenged arbitrary coverage policies that the Defendants fabricated purely to deny coverage of much-needed blood glucose tests that are used to monitor the health of a large and fragile population of the elderly in this country who suffer from diabetes -- an incurable and debilitating disease, which can be fatal. Could Plaintiff Bailey have used the claims appeal process to reverse the denials of Medicare Part B payment for her own blood glucose test claims? Yes. But that would not have helped the thousands of other diabetic nursing home residents who need blood glucose tests administered every day obtain Medicare coverage for those tests. In addition, filing a claim denial appeal would not have changed the Defendants' increasing willingness to flout the law with their ongoing application of coverage policies that make it administratively impracticable, and perhaps impossible in many cases, to satisfy the standards for coverage for this service.

By extension, the Defendants' arguments on jurisdiction would require the perverse result that judicial review would only have been available to the Plaintiff if she lost her LCD appeal.

- 9 -

Under the Defendants' logic, if the Plaintiff succeeded in her challenge to the coverage policies in the LCD, which she did when the LCD was withdrawn and rendered invalid, she has no recourse if, as is the case here, Mutual and the other Defendants ignore the results of the appeal and continue to apply the challenged coverage policies to Plaintiff's blood glucose tests. The Defendants' recalcitrance has made this truly a Pyrrhic victory in the likes of DeWall. DeWall Enterprises, Inc. v. Thompson, 206 F. Supp. 2d 992, 998 (D. Neb. 2002)("The Secretary has not challenged the [adverse] determinations through the appeals process available to it, but has simply ignored the determinations. Under this system, district court review is available only if [Plaintiff] loses. By failing to appeal adverse decisions, but then refusing to follow the dictates of those decisions, the Secretary has, in practice, denied any judicial review to [Plaintiff]".) In DeWall, the district court granted jurisdiction, despite that the administrative appeal was adverse to the Agency and favorable to appellant DeWall, because the agency continued to apply the overturned coding policies regardless of their invalidation. Id.

As a consolation prize here, the Defendants offer the following advice: try appealing again under a different administrative appeal process and maybe we will change our actions. In response, the Plaintiff states that the Defendants had an opportunity to defend their coverage policies during the administrative process that was established for just that purpose – Plaintiff's challenge to Mutual's LCD under 42 U.S.C. § 1395ff(f)(2) – but seeing the strength of the Plaintiff's opposition to those coverage policies, the Defendants chose not to defend those policies on the merits. That was the Defendants' choice and this Court must enforce the result.

### 2.    This Court has jurisdiction under 42 USC 1395ff(f)(3)

The Defendants argue that the Plaintiff has not explained why her challenge to coverage policies for blood glucose tests are different than a challenge to the denial of Medicare payment

for those tests. Defs.' Reply at 13. As discussed above (see supra § II.B), Plaintiff has shown

that this case is a continuation of the LCD appeal process and Plaintiff's effort to have this Court

enforce the legal effect of that appeal and the LCD withdrawal. First, Mutual's withdrawal of

the LCD legally amounted to a final decision on the merits. 42 C.F.R. § 426.460(b). (Pls.'

Statement ¶ 24.) Second, per 42 U.S.C. § 405(g) and (h), this Court has jurisdiction to review

final decisions on questions arising under the Social Security Act. Third, given that Mutual's

withdrawal of the LCD deprived the ALJ of jurisdiction, Plaintiff Bailey has no other forum in

which to pursue enforcement of the ALJ's decision which requires Mutual to review claims

without application of the challenged coverage policies in the invalid LCD. 42 U.S.C. §

426.460(b)(1). (R. at 2.) Therefore, further administrative review is both unnecessary and futile.

See supra § III.A.1.

The Defendants also discuss certain facts from the Plaintiff's Statement Of Material Facts

Not In Dispute and argue that they are disputed and/or unsupported. Defs.' Reply at 14-16. In

response, the Plaintiff submits herewith a reply to the Defendants' Statement of Material Facts

As To Which There Is A Genuine Dispute ("Defendants' Statement"), in which the Plaintiff

explains in convincing fashion that no material facts are in dispute and the Defendants'

statements to the contrary are unsupported or otherwise without merit. (Pl.'s Resp. to Defs.'

Statement Of Material Facts As To Which There Is A Genuine Issue ("Pl.'s Facts Resp.")

submitted herewith.) Accordingly, the Plaintiff is entitled to summary judgment as a matter of

law.

The LCD, we are now told by Defendants, was merely "an informational resource" which

"was never used to deny any blood glucose claim of any beneficiary." Defs.' Reply at 5.

However, this interpretation of an LCD is not compatible with the way the statute defines an

LCD and what they represent to the providers and beneficiaries whom fiscal intermediaries service; namely, coverage determinations of general applicability related to a certain healthcare item or service (in this case, blood glucose testing).  (Pls.' Statement ¶¶ 13, 14.)  The Defendants make a related point that the LCD does not contain any legal interpretation added by Mutual. Defs.' Reply at 5. In fact, in Program Memoranda AB-00-108, CMS expressly instructed contractors to "review their local coverage policy" on blood glucose testing in light of the proposed NCD but also to ensure that such tests are only covered to the extent there is an order "and clear use of a laboratory result prior to a similar subsequent laboratory order to qualify for separate payment."  CMS Program Memorandum AB-00-108 at 2.  Moreover, the Plaintiff has demonstrated that Defendants' statement is not true – Mutual incorporated the challenged coverage policies from Program Memoranda AB-00-99 and AB-00-108 and included additional interpretation and analysis of those policies in the LCD.  (Am. Compl. at 24-33.)

In what is now an apparent effort to salvage the coverage policies that were challenged by Plaintiff Bailey in the administrative appeal and rendered invalid, and make this case all about the authority of CMS to establish and its contractors to apply "medical necessity" criteria, CMS renounces ever instructing Mutual to incorporate the policies in its LCD.  Defs.' Reply at 16 n.5. CMS disavows any interpretations that Mutual used to deny coverage of blood glucose testing for Plaintiff Bailey and other similarly situated Medicare beneficiaries by reading the requirement for a separate physician order for each test and prompt reporting of the test result to the physician before the next test -- as the internal CMS documents show was the original intent of the CMS officials who prepared the documents.

Defendants now argue that the intent expressed in the internal CMS documents to give its contractors criteria for "medical necessity" to deny coverage for blood glucose tests has been

completely misinterpreted and applied by Mutual.  Indeed, Defendants argue, the language in the LCD coverage policies stemming from CMS Program Memoranda AB-00-99 and AB-00-108 can be read with a variety of interpretations.  We are now told that the Program Memoranda no longer "compel" the conclusion, which Mutual reached in its LCD, that the next test ordered must be supported by the physician review of the previous test ordered.  That is but one way to read the prohibition on a standing order, Defendants argue.  Def. Reply at 16-17.

Defendants concede these so-called "medical necessity" criteria can be read other ways. Id.  According to this new interpretation offered for the first time in this litigation, a physician could write a single order for multiple tests in one day, a week, a month, or two months, without being considered a standing order.  Id. at 17-18.  What at first blush might appear to be a concession or relaxation of the challenged coverage policies by the Defendants ends up being a slight of hand.  Defendants offer no notice or other communication to Plaintiff Bailey or any other Medicare beneficiary, or their physicians, so that they may understand these now redefined "medical necessity" criteria.  Instead, Defendants state that this will be determined on a case-by-case basis "at the discretion of the intermediary and agency adjudicators at higher levels of authority."  Id. at 17 (emphasis added).  The identification of the "agency" and the "levels of authority" are left undefined.  Id. at 17-18.

At this point, the mystery behind the inception of the CMS policies in Program Memoranda AB-00-99 and AB-00-108 which, as shown by the internal CMS documents, were intended to deny coverage for blood glucose testing, has been removed by the LCD's withdrawal.  Mutual's interpretation and application of these policies in its LCD to Plaintiff Bailey and all other similarly situated Medicare beneficiaries has been disavowed.  And, in Phoenix-like fashion, Defendants for purposes of this litigation have fashioned a new policy on

coverage determinations for blood glucose testing, which is subject to a variety of interpretations of "medical necessity," none of which is compelled, and all of which are left to the discretion of the fiscal intermediaries and agency adjudication.

This is nothing new. The intermediaries and agency have been reaching determinations, adjudicating, and reviewing blood glucose tests for Medicare Part B beneficiaries for years. As the Plaintiff discussed in the Amended Complaint, there are a number of ALJ decisions in claims appeal cases involving blood glucose tests. Extendicare Health Services v. AdminaStar Federal, Docket No. 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 (Aug. 12, 2004) (Ex. 17 to Beneficiary's LCD Complaint, R. at 177-180); Extendicare Health Services v. AdminaStar Federal, Docket No. 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 (Aug. 24, 2004) (Ex. 18 to Beneficiary's LCD Complaint, R. at 184-191). Despite the fact that these cases were favorable to the appellants, the decisions did not deter the Defendants in the instant case from continuing to apply the same coverage policies to deny coverage of blood glucose tests under Medicare Part B. This is, in part, a function of such claims appeal cases, which concern the specific nature of the claims, not the coverage policies behind the denial of all claims. That is why the Plaintiff must pursue her case now, before this Court. Because this case is about enforcing the result of her LCD appeal so that Defendant Mutual can no longer use any of the challenged coverage policies in the LCD to deny coverage for her blood glucose tests or the tests of any other beneficiary.

**B.    This Court Has Jurisdiction Over Plaintiff's First Claim Under 28 U.S.C. §§ 1331 and 1361**

Defendants' position, stated as early as in the Introduction to Defendants' Reply (Def. Reply at 1-2), and then repeated throughout their Reply (Def. Reply at 7-10, 23-24), is that Plaintiff must now invoke the administrative process for a denied claim. As set forth in great

detail in Plaintiffs' Memorandum, Plaintiff exhausted the separate and distinct administrative

process provided by 42 U.S.C. § 1395ff(f) and 42 U.S.C. § 426.100-426.587 to challenge a local

coverage determination, and she is not required to exhaust another administrative process for

claim denials because the Defendants voluntarily withdrew the LCD which embodied the

coverage policies from CMS Program Memoranda AB-00-99 and AB-00-108 and denied her a

decision on the merits.  Pls.' Mem. at 12-31.

      Plaintiff contends that she has exhausted her administrative remedies under 42 U.S.C. §

1395ff(f) to challenge the coverage policies in the LCD and this Court has jurisdiction over this

matter and can now proceed under 42 U.S.C. § 1395ff(f) or 28 U.S.C. § 1331 to review the legal

consequences of the withdrawal of the LCD and the validity of the CMS coverage policies

incorporated therein.

      The futility of a separate claims appeal under 42 U.S.C. § 1395ff(b) by the Plaintiff was,

perhaps, inadvertently conceded by Defendants who state in their Reply that an ALJ in a claims

appeal would be precluded from ruling upon the validity of the CMS policies, namely Program

Memoranda AB-00-99 and AB-00-108, that were reflected in the LCD to deny coverage for

Plaintiff's blood glucose tests.  Defendants' Reply states:

> Furthermore, an ALJ would not have the power to declare any statutes,
>
> regulations or _informal program instructions_ invalid in the context of reviewing
>
> an LCD because each of those sources of law and interpretation are expressly
>
> outside his purview.

Defs.' Reply at 27 (emphasis added).  Thus, Plaintiff's challenge to the ongoing application of

the challenged coverage policies from the now invalid LCD could not be ruled upon by the ALJ

in a claims appeal under 42 U.S.C. § 1395ff(b).  Also, as discussed above, this case bears all the

markings of cases like <u>DeWall</u> where further review would be meaningless because the Defendants have not complied with the legal effect of the invalidated LCD and the challenged coverage policies included therein.  See Section III.A.1 above.  Since use of this separate and distinct claims appeal process by the Plaintiff would be futile, and could not provide the relief she seeks from this Court, Defendants' arguments in favor of postponing judicial review in this manner are without merit.

### C.    **Plaintiff Has Standing To Assert Her First Claim, And That Claim Is Ripe For Judicial Review**

In similar fashion, the Defendants argue that the Plaintiff does not have standing under Article III of the Constitution to proceed with this case because they assert that she has been held financially harmless and there is no proof that the retired LCD is still being used by Mutual to adjudicate claims for blood glucose tests.  Defs.' Reply at 25-26.  Plaintiff has set forth in detail the basis on which she has standing to proceed with this case in Plaintiffs' Memorandum. Pls.' Mem. at 31-34.  Contrary to the Defendants' position, neither "financial" nor "physical" injury is required to establish standing to seek declaratory and injunctive relief in federal court, and Defendants have cited to no authority that suggests otherwise. Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 42-44; Defs.' Reply at 25-26.  Rather, the standard is actual or imminent injury, which Plaintiff has established. Pls.' Mem. at 32-33.  Defendants conceded that Plaintiff has a legal interest in Part B covered services to which she is entitled.  (Defs.' Mem. at 50 quoting <u>Grey Panthers v. Schweiker</u>, 652 F. 2d 146, 148 n.2 (D.C. Cir. 1980)).

Plaintiff does not seek financial relief in this case, but rather enforcement of the invalidation of Mutual's LCD as the result of her LCD Appeal and protection of her interest to Part B covered services. Am. Compl. at 50-51.  Whether the numerous facts cited by Plaintiff

(Pls.' Statement ¶¶ 49-53) support Plaintiff's allegations in the Amended Complaint with respect to Mutual's prior and continued use of the LCD policies to deny coverage and payment for blood glucose testing goes to the merits of Plaintiffs' Motion For Summary Judgment, and not to whether there is a lack of standing and/or ripeness, which clearly there is not. Pls.' Mem. at 31-34, 58.

### D. Defendants' Remaining Arguments In Opposition To Plaintiff's First Claim Are Without Merit

The Defendants raise a number of additional arguments in response to Plaintiff's Motion For Summary Judgment that also lack merit. Defendants argue that retirement of an LCD only has a procedural "effect" as if it had been declared unreasonable. As discussed in Section III.A.2 above, this characterization of a withdrawn and invalidated LCD is not correct. The challenged coverage policies in the LCD are invalid as a matter of law because the withdrawal and retirement of the LCD has the same legal effect as a decision invalidating the LCD on the merits. 42 C.F.R. §§ 426.420(a); 426.460(b); Pls.' Mem. at 18-22.

Defendants also argue that the Plaintiff's logic would by necessity render the NCD invalid as well, because language from the NCD was incorporated in Mutual's retired LCD. Defs.' Reply at 29. However, as already discussed in Section II.A above, the Plaintiff was careful to only challenge in her LCD appeal complaint the bogus coverage policies developed by CMS and further interpreted by Mutual. LCD Complaint at 9-10 (R. at 12-13). Therefore, Defendants' argument is not based upon a proper review of the administrative record in this case and is without merit.

Moreover, the Defendants' argue that Plaintiff Bailey's claims for blood glucose tests were not denied based upon the LCD but because they did not meet the criteria articulated in

their Reply Brief, and that Mutual has complied with the ALJ's order of dismissal in the LCD

appeal.  Defs.' Reply at 28-30.  However, as Plaintiff has discussed in Section III.A above, these

are in fact some of the <u>same</u> policies from the LCD that are now invalid, which is a further

validation of Plaintiff's Complaint and makes the Defendants' argument self-defeating.

### E.    <u>Plaintiff's Due Process Claim Has Merit</u>

Plaintiff does not directly disagree with Medicare Summary Notice language, as the

Defendants argue.  Defs.' Reply at 31.  Defendants, with no factual analysis, present this

argument in apparent reliance upon the decision by the Court of Appeals in <u>Gray Panthers v.</u>

<u>Heckler</u>, 1985 WL 81770 (D.D.C. Nov. 4, 1985), which approved language currently used in the

Medicare Summary Notice to be received by Medicare beneficiaries on denials of Part B claims.

However, this has no apparent relevance to the issue in this case.

Plaintiff asserts that the Defendants violated her due process rights, and the due process

rights of the proposed class members, by failing to provide sufficient notice that the challenged

coverage policies in the LCD were invalidated and what the new standards are for Medicare Part

B coverage of blood glucose tests. Am. Compl. at 48-49; Pls.' Mem. at 58-65.

As an additional or alternative basis for jurisdiction, this Court could find jurisdiction

based upon Defendants' violation of Plaintiff Bailey's Fifth Amendment Due Process rights

which entitled her to adequate notice of the policies and standards that Mutual used, and will

continue to use, to evaluate coverage of blood glucose tests.  Am. Compl. at 48-49; Pls.' Mem. at

59.  If, as the Defendants now argue for the first time, the CMS policies for coverage of blood

glucose testing and defining "medical necessity" have a variety of interpretations, one or more of

which, as now explained in this litigation, if known to Mutual and to Plaintiff Bailey and her

physician, could have resulted in a favorable coverage decision, this supports Plaintiff's claim of

inadequate notice.

Such relief – i.e., adequate notice – should be included in a notice sent to all Medicare beneficiaries, their physicians, and other health care providers so they too will know that the challenged coverage policies in the LCD were invalidated and what are the proper coverage standards. Am. Compl. at 49.

### F.    Plaintiff's Motion For Summary Judgment Should Be Granted

Contrary to Defendants arguments in their reply, the Plaintiff is entitled to summary judgment because she has provided this Court with sufficient credible evidence in the Amended Complaint and shown in her Statement that there are no material facts in dispute. Fed. R. Civ. P. 56(c).

Also, as Defendants have acknowledged by their own statements in their Reply, Mutual denied and continues to deny coverage of the Plaintiff's blood glucose tests using the challenged coverage policies in Mutual's LCD, which are now invalid and of no legal effect. Defendants' argue that the Plaintiff has not provided documentation or evidence to show that her blood glucose tests met the requirements for promptly reporting test results to the physician, and sufficient physician involvement in the management of her condition by reviewing those test results before ordering new tests. Defs.' Reply at 8, 29, 33-34; Defs.' Mem. at 2, 14-15. Yet, all this shows is that the Plaintiff's blood glucose tests did not meet the same coverage policies that were first published in CMS Program Memoranda AB-00-99 and AB-00-108, added to LCDs published by Mutual and other Medicare contractors, and more recently included in a new regulation at 42 C.F.R. 424.24(f). The ADR requests to the Plaintiff, the sample ALJ decision submitted by the Defendants in this case, and even the Remittance Advice/MSNs for Plaintiff's claims verify that the same coverage policies were being applied, and continue to be applied.

Pls.' Statement ¶ 49-52. (R. at 63, 51-52, 702-711, Am. Compl. Ex. 17.)

These coverage policies are administratively unworkable in practice and were merely designed to thwart valid coverage of blood glucose tests under Medicare Part B. Now invalid, the coverage policies must no longer be used by Mutual with respect to blood glucose tests.

## IV.    **CONCLUSION**

For the foregoing reasons, and because Defendants' Motion To Dismiss is without merit and there are no material facts in dispute, Plaintiff respectfully requests that this Court deny Defendants' Motion To Dismiss and grant Plaintiffs' Motion For Summary Judgment.

Respectfully submitted,

/s/ Thomas C. Fox
Thomas C. Fox (D.C. Bar #4473)

Counsel:
Carol C. Loepere
Antony B. Klapper
Jason M. Healy
Catherine A. Durkin
Cassia M. McCamon
REED SMITH LLP
1301 K Street, NW
Suite 1100 – East Tower
Washington, D.C. 20005
(202) 414-9200

REED SMITH LLP
1301 K Street, NW
Suite 1100 – East Tower
Washington, D.C. 20005
(202) 414-9222
Attorney for Plaintiff

Dated: September 5, 2007