## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
Civil Division

| | | |
|---|---|---|
| LOUISE BAILEY, Individually, And On Behalf of All Other Similarly Situated Medicare Part B Beneficiaries | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:06-cv-2144 Judge Royce C. Lamberth |
| v. | ) ) | |
| MUTUAL OF OMAHA INSURANCE COMPANY, MICHAEL O. LEAVITT, and HERB B. KUHN | ) ) ) ) | |
| Defendants. | ) ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT
### OF MATERIAL FACTS AS TO WHICH THERE IS A GENUINE ISSUE

Plaintiff, by and through her counsel, hereby proffers the following Response to Defendants' Statement Of Material Facts As To Which There Is A Genuine Issue (hereinafter, "Defendants' Statement") in support of Defendants' Reply In Support Of Their Motion To Dismiss And Opposition To Plaintiffs' Motion For Summary Judgment (hereinafter, "Defendants' Reply").

## I.    INTRODUCTION

Throughout Defendants' Statement, Defendants attempt to create factual disputes where none exist.  On several occasions Defendants cite documents or sources that fail to support their assertion of a factual dispute.  Furthermore, Defendants claim several facts are in dispute by altering language from Plaintiffs' Statement of Material Facts Not In Dispute (hereinafter, "Plaintiffs' Statement") or by raising a dispute on a wholly immaterial basis.

First, Plaintiff submits a list of items that organize Defendants' claimed items of dispute into

three categories: (1) items that the parties agree are undisputed; (2) items allegedly disputed on the basis that they are either not statements of fact or not material; and (3) items disputed for which either factual evidence shows there is no dispute or for which the dispute is not genuine because it relates to a non-material aspect of the statement of fact (such as Plaintiff's word choice, for example) and is thus irrelevant to Plaintiffs' Motion For Summary Judgment.  Where there is a dispute of facts, the disputed facts must be *material* to defeat a motion for summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Also, the evidence must support the assertion that there is a dispute; false "facts" alone cannot create a genuine dispute.  See Jane W. v. President Dirs. Of Georgetown College, 863 A.2d 821, 826 (D.C. 2004).

Second, Plaintiff addresses the substance of each of Defendants' responses to Plaintiffs' Statement.  As Plaintiff's responses to Defendants' Statement show, Defendants' Statement does not actually raise genuine issues of fact.

## II.    SUMMARY OF ALLEGED DISPUTES AS TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

| A.  Paragraphs In Plaintiffs' Statement That The Parties Agree Are Undisputed: |
| --- |
| 1, 3, 4, 6, 7, 8, 17 (in part),19, 20, 21 (in part), 22, 26, 31, 35, 36, 37, 38, 50, 54 |
| B.  Paragraphs In Plaintiffs' Statement That Defendants Allege Are Either Not Statements Of Fact Or Not Material Or Dispute In The Alternative: |
| 9*,10*, 11*, 13, 14, 15, 16, 23*, 24*, 25*, 28*, 29*, 30*, 33, 40*, 41, 42, 43*, 44*, 45*, 46*, 47*, 48*, 52*, 53*<br><br>* For these paragraphs, Defendants further allege disputes in the alternative; however, (like group C) either the factual evidence shows there is no dispute or the dispute is not genuine. |
| C.  Paragraphs In Plaintiffs' Statement Allegedly Disputed, But For Which Either Factual Evidence Shows There Is No Dispute Or For Which The Dispute Is Not Genuine: |
| 2, 5, 12, 17 (in part), 18, 21 (in part), 27, 32, 34, 39, 49, 51 |

III.    **PLAINTIFF'S RESPONSES TO DEFENDANTS' RESPONSES TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

A.      **Undisputed Facts**

There are a significant number of facts that are material to Plaintiffs' Motion For Summary Judgment and that Defendants concede are not in dispute.  Specifically, the parties agree that statements in nineteen of the fifty-four paragraphs in Plaintiffs' Statement—1, 3, 4, 6, 7, 8, 17 (in part),19, 20, 21 (in part), 22, 26, 31, 35, 36, 37, 38, 50, 54—present no genuine issue of material fact.

*Paragraph 1* - The parties agree that Plaintiff Bailey is 73 years old, resides at the Holladay Healthcare Center, a Medicare skilled nursing facility ("SNF") and has severe diabetes with blindness as a result of her illness.  Defs.' Statement at 5.

*Paragraph 3* - The parties further agree that Defendant Mutual of Omaha Insurance Company ("Mutual") acts as a Medicare fiscal intermediary and adjudicates the Medicare claims of Plaintiff Bailey.  Id. at 6.

*Paragraph 4* - The parties agree that the Secretary ("the Secretary") of the Department of Health and Human Services ("HHS") and the Acting Administrator ("Acting Administrator") of the Centers for Medicare and Medicaid Services ("CMS") (collectively, the "Defendants"), are responsible for the administration of the Medicare program.  Id.

*Paragraph 6* - Defendants concede that, at the time the Local Coverage Determination ("LCD") at issue in this case was being developed, Mutual was aware that a proposed rule was published by CMS on March 10, 2000 to establish a National Coverage Determination ("NCD") for clinical laboratory services payable under Medicare Part B, including an NCD for blood glucose testing entitled "Medicare National Coverage Decision for Blood Glucose Testing."  Id. at 7, 10.

*Paragraphs 7, 8* - Defendants do not dispute that Mutual finalized and distributed its LCD to

providers on August 6, 2001 and the final NCD for Medicare coverage of blood glucose testing was published by Defendant CMS on November 23, 2001.  Id. at 7, 11.

Paragraph 17 - Defendants do not dispute that, on March 28, 2006, Plaintiff Bailey filed an LCD Complaint with the Departmental Appeals Board ("DAB") challenging the validity of Mutual's LCD on blood glucose testing as legal authority for denying Medicare coverage of her blood glucose tests.  Id. at 9 (partially conceding Pl. Statement at ¶17).

Paragraphs 19, 20 - Defendants do not dispute that, on July 18, 2006, Plaintiff Bailey filed the Aggrieved Party's Statement pursuant to 42 C.F.R. § 426.425(a) and moved for Summary Judgment on her claims to invalidate Mutual's LCD.  Id.

Paragraph 21 - Defendants concede that Mutual's retirement of the LCD divested the ALJ of jurisdiction over Plaintiff Bailey's challenge of the coverage policies in the LCD.  Id.  (partially conceding Pl. Statement ¶ 21).

Paragraph 22 - Defendants also concede that the ALJ concluded that Mutual's withdrawal of its LCD deprived him of jurisdiction under the regulations to further adjudicate the issues Plaintiff Bailey had raised.  Id.

Paragraph 26 - Defendants further concede that Mutual confirmed by letter after the Complaint was filed in this action that Plaintiff Bailey's claims for blood glucose tests were re-reviewed, and again denied.  Id. at 10.

Paragraph 31 – Defendants do not dispute that CMS published a proposed rule to establish an NCD for clinical laboratory services payable under Medicare Part B, including an NCD captioned "Medicare [NCD] for Blood Glucose Testing" on March 10, 2000.  Id. at 11.

Paragraphs 35, 37 - The parties agree that CMS Program Memoranda AB-00-99 and AB-00-108 are statements of Medicare policy that were developed by CMS and adopted without public

comment.  Id. at 15-16.

Paragraphs 36, 38 – The parties agree that CMS issued AB-00-108 entitled "Blood Glucose Monitoring" to Medicare intermediaries and carriers effective January 1, 2001, and issued the final NCD addressing Medicare coverage of blood glucose testing on November 23, 2001.  Id.

Paragraph 50 - The parties further agree that Mutual submitted, as exhibit 1 of its Response to Beneficiary's Complaint (filed with the DAB on August 11, 2006) a redacted copy of a Medicare Appeal Decision dated March 9, 2006, which did not involve Plaintiff Bailey, as evidence that Mutual "does not cite the LCD as the authority for reviewing the appropriateness of the denial of blood glucose monitoring."  Id. at 13.

Paragraph 54 - Finally, the parties agree that Mutual cites "subsequent issuance of an NCD by CMS on the same subject matter" as the basis for its retirement of the LCD.  Id. at 14.

**B.**    **Facts That Defendants Allege Are Not Facts Or Are Not Material Or, In The Alternative, Allegedly Dispute**

Defendants allege, without providing any support, that twenty-five paragraphs of Plaintiffs' Statements, are either not material or are not statements of fact.  For eighteen of these twenty-five paragraphs, Defendants raise alleged disputes in the alternative.  However, these alleged disputes are either not genuine, or the factual evidence Plaintiff cites, as explained below, shows that there is no dispute.

As a preliminary matter, in response to Paragraphs 9, 43, and 48, Defendants allege that material evidence cited by the Plaintiff is simply the view and/or opinion of one CMS employee or consultant.  However, Defendants offer no evidence that the person expressing these views described in these paragraphs was not qualified to express such a view, nor do they offer any evidence that a contrary view existed or was communicated to those developing the blood glucose coverage policy that is the subject of this case.  Defs.' Statement at 7, 11, 12-13.  In fact, the

consistency of the statements corroborate each other.

*Paragraph 9* - Defendants argue, without support, that Paragraph 9 of Plaintiffs' Statement is not material. Defs.' Statement at 7. Paragraph 9 states that after the final NCD was published, Mutual received a written communication from the CMS Region VII office that the language Mutual was planning to add to its LCD from CMS Program Memoranda AB-00-99 and AB-00-108 does not appear in the final NCD and should not be included in the LCD because "it is in conflict with the NCD," as health care providers had argued. Am. Compl. at 32. Consistent with Plaintiffs' Motion For Summary Judgment, this is material evidence that Defendants developed the LCD policies for the arbitrary purpose of denying claims for blood glucose testing in violation of the Medicare statute and applicable regulations. 42 U.S.C. §§ 1395k(a)(2)(B), 1395x(s)(3); 42 C.F.R. §§ 410.32(d), 493.15

In the alternative, Defendants dispute the material fact, arguing: that the e-mail "did not express the view of the Region VII office [of CMS], but rather represented input from a single nurse consultant" and that "the language on which the nurse consultant commented was not the final LCD language adopted by Mutual of Omaha." Defs.' Statement at 7. Defendants offer no evidence that the e-mail did not in fact express the view of the Region VII office of CMS nor do they offer evidence that this was not the final LCD language adopted by Mutual. Defs.' Statement at 7.

*Paragraph 10* - Defendants, without support, dismiss as immaterial the fact that others within Mutual who reviewed the draft LCD internally expressed similar concerns about language in the LCD that does not appear in the final NCD and the negative impact the LCD would likely have on patient care by discouraging testing. Defs.' Statement at 7. Such evidence is certainly material, as it supports Plaintiff's contention that CMS developed various rationales to deny coverage and payment for blood glucose tests in SNFs (including manipulation of the criteria for medical

necessity) despite knowledge that such tests are covered under Medicare Part B, in clear violation of the Medicare Act and applicable regulations. 42 U.S.C. §§ 1395k(a)(2)(B), 1395x(s)(3); 42 C.F.R. §§ 410.32(d), 493.15.  Moreover, the deterrent effect these policies could have on regular blood glucose testing is immaterial because of the concerns expressed about the negative impact on patient care.

In the alternative, Defendants further allege (without offering any factual support whatsoever) that the e-mail from M. McNall to C. Richards was a comment received during the public comment period rather than an "internal expression of concern" with the LCD and that Mr. McNall has never been an employee of Mutual of Omaha.  Defs.' Statement at 7.  The e-mail itself certainly does not provide any evidence that would support Defendants' assertions.  Id.  Regardless, Plaintiff never alleged that M. McNall was an employee of Mutual.  Id.

*Paragraph 11* - Defendants claim that Mutual's notice that it would implement system edits to identify all Medicare Part B claims for blood glucose testing, so as to deny coverage for SNF residents beginning October 1, 2005, is immaterial to Plaintiffs' Motion For Summary Judgment. Defs.' Statement at 7-8.  Defendants provide no rationale for this claim.  Id.  Paragraph 11 of Plaintiffs' Statement is material because it shows Mutual's intent to systematically deny claims for blood glucose testing in violation of the Medicare Act and applicable regulations.  42 U.S.C. §§ 1395k(a)(2)(B), 1395x(s)(3); 42 C.F.R. §§ 410.32(d), 493.15.

Although Defendants disagree with Plaintiff's "characterization of the notice" (claiming that "the contents of which speak for themselves"), Defs.' Statement at 7-8, the fact that Mutual issued the notice remains undisputed.  Id. at 7.  Defendants simply point out for the Court another fact (namely, that the notice "clearly states that it is possible to submit 'documentation to support the medical necessity' of blood-glucose tests" and that "blood-glucose testing claims were denied only

if, after review of the medical records, it was determined that the blood glucose testing services were not reasonable and necessary"). <u>Id.</u>  Although Defendants are correct that, per the notice, submitting documentation to support medical necessity is "possible," immediately above the list of documentation requirements (which, to Plaintiff's knowledge and belief, have never in fact been sufficiently met under Mutual's interpretation of "medical necessity" for blood glucose testing), the notice states: "Mutual of Omaha-Medicare continues to maintain the position that Blood Glucose Monitoring in a SNF is a <u>non-covered</u> service."  Accordingly, it is not in dispute that the notice was issued to inform those submitting claims for blood glucose tests that coverage would be denied on a going-forward basis.  Indeed the contents of the notice are self-explanatory and indicate that "[b]eginning October 1, 2005, claims submitted to Mutual of Omaha-Medicare for Blood Glucose Monitoring will be subject to medical review and/or systems edits."  Beneficiary's LCD Compl., Ex. 15; R. at 170-72.  Finally, Defendants can not and do not dispute that, where CMS and Mutual create policies making it effectively impossible to provide sufficient documentation to prove services are "reasonable and necessary," they have effectively created a policy to deny coverage for all blood-glucose tests.

*Paragraphs 13-16* - Defendants argue that Paragraphs 13, 14, 15, and 16 of Plaintiffs' Statement (with respect to the definition and nature of an LCD, the nature of the appeals process for challenging LCDs under 42 U.S.C. § 1395ff(f)(3), and the availability of federal court jurisdiction over LCD challenges where there are no material issues of fact in dispute) do not contain statements of fact and state only that "the contents of the referenced [authority] speak for themselves."  Defs.' Statement at 8.  Given that Defendants have neither expressly disputed such statements nor provided any analysis to suggest that such statements are inaccurate in any way, and based on the statements' consistency with federal law, these statements remain undisputed for the purpose of

Plaintiffs' Motion For Summary Judgment.

*Paragraph 23* - Defendants argue that Paragraph 23 of Plaintiffs' Statement (stating that, without an LCD, Plaintiff Bailey was rendered unable to further utilize the LCD appeal process to challenge the merits of the coverage policies in the LCD) does not contain a statement of fact, and declare that the contents of the referenced statute speak for themselves. Defs.' Statement at 9. Defendants further dispute that Plaintiff Bailey was precluded from challenging any subsequent denial of blood glucose claims under 42 U.S.C. §§ 1395ff(a)-(d). Id. Defendants apparently fail to understand the difference between the LCD appeal process set forth in 42 U.S.C. § 1395ff(f) and the denied claims appeal process set forth in 42 U.S.C. § 1395ff(a)-(d). Upon Mutual's withdrawal of the LCD, Plaintiff Bailey was precluded under 42 C.F.R. 426.405(d)(4) and 42 C.F.R. 426.420(e)(1) from continuing to challenge the merits of the coverage policies in the LCD. Pls.' Statement at 8. Plaintiff does not allege that the claims appeals process under 42. U.S.C. § 1395(a)-(d) was unavailable for challenging a denied claim – rather, Plaintiff Bailey used the LCD appeal process to directly challenge the merits of the coverage policies in the LCD, pursuant to 42 C.F.R. 426.405(d)(4) and 42 C.F.R. 426.420(e)(1). Id. Accordingly, there is no genuine issue of fact with respect to Paragraph 23 of Plaintiffs' Statement. Defendants merely raise the denied claims appeal process – a separate and distinct appeal process which has nothing to do with this case – in order to distract the Court from what is truly at issue here.

*Paragraph 24* - Defendants argue that Paragraph 24 of Plaintiffs' Statement (stating that Mutual's withdrawal of its blood glucose testing LCD has the same legal effect as an ALJ's decision to invalidate that LCD under the reasonableness standard pursuant to 42 C.F.R. § 426.460(b)) is not a statement of fact, and claim that "the referenced provisions speak for themselves." Defs.' Statement at 9. Defendants further dispute that the withdrawal of an LCD

during a pending challenge results in any ruling on whether the LCD is reasonable.  Id.  However,

the regulation cited by Plaintiff – 42 C.F.R. § 426.420(a) – expressly provides that "retiring an LCD

or LCD provision under review has the same effect as a decision under § 426.460(b)," which

addresses the situation where "the ALJ finds that the provision or provisions of the LCD named in

the complaint is (are) invalid under the reasonableness standard."  Given the express language of

these regulations, Defendants have no plausible basis on which to dispute that withdrawal of an

LCD, while it is subject to challenge, has the same legal effect as an ALJ's decision to invalidate

the LCD under the reasonableness standard.  Plaintiff did not state that this results in an ALJ ruling

on whether the LCD is reasonable.  Defs.' Statement at 9.

Paragraph 25 - Paragraph 25 of Plaintiffs' Statement contains the following statements of

material fact: (1) the LCD and the policies incorporated therein, which contained Mutual's policy

on blood glucose testing coverage, are invalid as a matter of law upon withdrawal of the LCD; (2)

the policy or policies discussed in the LCD are invalid when the LCD is retired, not just the

document itself, and those policies may not be applied to services furnished after the retirement date

and the aggrieved party's affected claims must be reprocessed without applying the retired policy;

and (3) Mutual cannot deny claims for blood glucose testing services on or after August 11, 2006

using any of the coverage policies in the now-retired and invalid LCD on blood glucose testing.

Pls.' Statement at 9-10.

In response, Defendants argue that these statements are not statements of fact, and their

"legal conclusions are incorrect."  Defs.' Statement at 9-10. However, Plaintiff makes no legal

conclusions in these statements of fact; rather, Plaintiff restates federal law as provided in 42 C.F.R.

§ 426.460(b) and 42 C.F.R. 426.420(e)(1).  Pls.' Statement at 9-10. Defendants further dispute "any

suggestion that retirement of an LCD, as a matter of law, invalidates any federal laws or regulations,

national coverage decisions, or program instructions" despite the fact that nowhere in Paragraph 25 does Plaintiff assert this. Pls.' Statement at 9-10. Again, Plaintiff merely restates the content of 42 C.F.R. § 426.460(b) and 42 C.F.R. 426.420 and CMS's discussion of these regulations in the preamble, within the context of this case.

Paragraph 30 - Defendants argue that Paragraph 30 of Plaintiffs' Statement (stating that the Balanced Budget Act of 1997 ("BBA") required national uniformity and simplified administrative requirements with respect to clinical diagnostic laboratory services payable under Medicare Part B) is not a statement of fact. Defs.' Statement at 9. Defendants further assert that the legal conclusions contained in Plaintiffs' Statement at ¶ 30 are incorrect. Id. Specifically, Defendants "dispute any suggestion that § 4554(b) of the [BBA] required, as a matter of law, that CMS adopt nationally uniform coverage policies," arguing that the referenced provision merely required, as part of a list of "considerations in design of national policies," that policies the Secretary adopted "be designed to promote . . . national uniformity." Defs.' Statement at 10. Defendants' attempt to dispute this statement of material fact is nothing more than an exercise in semantics. Plaintiff makes no legal conclusions regarding the adoption of nationally uniform coverage policies; rather, Plaintiff merely means to establish Congress's intent to create nationally uniform policies. Whether this is done through a congressional mandate that all policies be nationally uniform or through a congressional mandate that all policies promote national uniformity, is immaterial. What is material is the fact that Congress expressed by statute that nationally uniform policies with simplified administrative requirements be created for clinical diagnostic laboratory services payable under Medicare Part B, such as blood glucose tests.

Paragraph 33 - Defendants argue that Paragraph 33 of Plaintiffs' Statement (stating that the proposed NCD captioned "Medicare National Coverage Decision for Blood Glucose Testing"

expressly supports frequent testing of blood glucose values in the management of patients with diabetes) is not a statement of fact, arguing that "the contents of the referenced document speak for themselves." Given that Defendants have neither expressly disputed Paragraph 33 nor provided any analysis to suggest that such statement is inaccurate in any way, and based on the statement's consistency with federal law, Paragraph 33 remains undisputed for the purpose of Plaintiffs' Motion For Summary Judgment.

*Paragraph 40* - Defendants assert that Paragraph 40 of Plaintiffs' Statement (stating that a NCD is a determination by CMS as to whether or not a particular service is covered nationally by Medicare and is legally binding on all Medicare contractors, including carriers and fiscal intermediaries, as well as the DAB and its ALJs) is not a statement of fact, arguing that the referenced provisions speak for themselves. Defs.' Statement at 11. Defendants dispute that, as a matter of law, an NCD is always binding on the DAB, arguing that the DAB has authority to review and invalidate an NCD. Id. Plaintiff makes no legal conclusions in Paragraph 40, but merely restates the content of federal law. Pl. Statement at 12. While it is true that the DAB may review NCDs when they are challenged pursuant to 42 C.F.R. part 426, until then, an NCD is binding on the DAB including (as was the situation in this case) where the plaintiff challenges an LCD. The fact material to Plaintiffs' Motion For Summary Judgment (as expressly stated by Plaintiff in Paragraph 40) is that an NCD is binding upon fiscal intermediaries, carriers, QIOs, QICs, ALJs, and the MAC. 42 C.F.R. § 405.1060(a)(4).

*Paragraph 41* - Defendants argue that Paragraph 41 of Plaintiffs' Statement (stating that an NCD takes precedence over decisions made on the local level by Medicare contractors, i.e., LCDs, and other non-binding policies) is not a statement of fact, stating only that the legal effect of an NCD is set forth in 42 U.S.C. § 1395ff the contents of which speak for themselves. Defs.'

Statement at 11.  However, section 13.1.1 of the Medicare Program Integrity Manual specifically

provides that a contractor must amend the affected LCDs when a new NCD is published.  Pls.'

Statement at 12-13.  Given that Defendants have neither expressly disputed Paragraph 41 of

Plaintiffs' Statement, nor provided any analysis to suggest that Paragraph 41 is inaccurate in any

way, and based on Paragraph 41's consistency with federal law, this statement remains undisputed

for the purpose of Plaintiffs' Motion For Summary Judgment.

      *Paragraph 42* - Paragraph 42 of Plaintiffs' Statement states that: (1) an LCD may not

conflict with an NCD once the NCD is effective; (2) if an NCD conflicts with a previously

established LCD the contractor must change its LCD to conform to the NCD; (3) an LCD may not

alter the NCD; (4) a contractor may, however, make an LCD that supplements a national coverage

decision where the national coverage decision is silent on an issue.  Pls.' Statement at 13.  In

response, Defendants claim only that "this paragraph does not contain a statement of fact" and "the

referenced document speaks for itself." Defs.' Statement at 11. The cited Federal Register provision

clearly states:

> An [LCD] may not conflict with a national coverage decision once the
> national coverage decision is effective. If a national coverage decision
> conflicts with a previously established [LCD], the contractor must
> change its [LCD] to conform to the national coverage decision. A
> contractor may, however, make an [LCD] that supplements a national
> coverage decision where the national coverage decision is silent on an
> issue. The [LCD] may not alter the national coverage decision.

66 Fed. Reg. 58,788, 58,788 (Nov. 23, 2001).  Given that Defendants have neither expressly

disputed Paragraph 42 nor provided any analysis to suggest that such statements are inaccurate in

any way, and based on the consistency of the statements with federal law, these statements remain

undisputed for the purpose of Plaintiffs' Motion For Summary Judgment.

      *Paragraph 43* - Defendants dismiss as immaterial the fact that, after the BBA was enacted,

internal CMS communications from that time to the present concluded that blood glucose testing in a nursing home setting is a covered service under Medicare Part B. Defs.' Statement at 11. However, such evidence is certainly material, as it supports Plaintiff's contention that CMS developed various rationales to deny coverage and payment for blood glucose tests in SNFs (including manipulation of the criteria for medical necessity) despite its knowledge that such tests are covered under Medicare Part B, in clear violation of the Medicare Act and applicable regulations. 42 U.S.C. §§ 1395k(a)(2)(B), 1395x(s)(3); 42 C.F.R. §§ 410.32(d), 493.15.

In the alternative, Defendants purport to dispute paragraph 43 by denying "any suggestion that the referenced e-mails show a conclusion on the part of CMS," and arguing that "these e-mails reflect preliminary thoughts of one CMS employee." However, Defendants offer no evidence or support for their objection to the statement. Accordingly, the statement in Paragraph 43 of Plaintiffs' Statement remains undisputed.

*Paragraph 45* - Defendants dismiss as immaterial the fact that, at the same time CMS was participating in the negotiated rulemaking for the NCD which it knew would support Medicare coverage of blood glucose testing by diabetic patients like Plaintiff Bailey and other Medicare Part B beneficiaries in nursing homes, the agency was working to develop a policy to deny coverage for blood glucose testing under Medicare Part B. Defs.' Statement at 12. However, such evidence is certainly material, as it supports Plaintiff's contention that CMS developed various rationales to undermine coverage and payment for blood glucose tests in SNFs (including manipulation of the criteria for medical necessity) despite its knowledge that such tests are covered under Medicare Part B, while at the same time CMS was participating in the development of the NCD which supports Medicare coverage of blood glucose testing.

In the alternative, Defendants purport to "dispute that CMS developed a policy to deny

coverage for all blood-glucose tests," arguing that "CMS developed those policies to comply with the statutory requirement that 'no payment may be made under part A or part B . . . for any expenses incurred for items or services . . . which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury.'" Defs.' Statement at 12. Defendants, however, fail to reconcile their unsupported dispute with the content of Exhibits 4, 9, 12, and 13 to Plaintiffs' Amended Complaint in this case which clearly show that (in conflict with the proposed NCD, published at 65 Fed. Reg. 13,082, 13,128, Mar. 10, 2000) individuals within CMS intended to implement a policy to deny claims for blood glucose testing and intended to manipulate the concept of medical necessity in order to do so. (Am. Compl. Ex 4 – Meeting Report of Jan. 26, 1999; Ex. 9 – Issues Paper; Ex. 12 – T. Hoyer e-mail dated Jun. 2, 1999; Ex. 13 – T. Hoyer e-mail dated Aug. 11, 2000.)

*Paragraphs 44,46 and 47* - Defendants claim that the following statements of fact are not material: (1) internal communications show a series of actions by CMS with Medicare fiscal intermediaries, including Mutual, to develop criteria for "medical necessity" to deny coverage and payment for blood glucose tests in skilled nursing facilities; (2) CMS internal communications articulated a desire and rationale to deny coverage and prevent payment of blood glucose testing claims even though CMS acknowledges that these tests, when performed in SNFs, are covered as CLIA waived tests under Medicare Part B and paid under the fee schedule; and (3) members of the CMS Central Office in Baltimore, Maryland exchanged ideas on how Medicare could avoid paying for these blood glucose tests, notwithstanding the conclusion that they are a covered service under Medicare Part B." Defs.' Statement at 12.

Defendants provide no support for their assertion that these statements of fact are not material to this case – likely because no such support exists. Id. CMS's internal communications

and interactions with Medicare fiscal intermediaries, including Mutual, to develop various rationales (including manipulation of the criteria for medical necessity) to deny coverage and payment for blood glucose tests in SNFs despite knowledge that such tests are covered under Medicare Part B clearly violates the Medicare Act and applicable regulations. 42 U.S.C. §§ 1395k(a)(2)(B), 1395x(s)(3); 42 C.F.R. §§ 410.32(d), 493.15.

In the alternative, Defendants state that they dispute the facts stated above, again providing little or no support for their bare, unsubstantiated assertions that these facts are false. Defs.' Statement at 12. Defendants dispute that "any involvement by Mutual of Omaha, or otherwise show a series of actions by CMS with fiscal intermediaries to develop criteria to deny coverage for all blood-glucose tests," arguing that "CMS developed those policies to comply with the statutory requirement that 'no payment may be made under part A or part B . . . for any expenses incurred for items or services . . . which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury.'" Id. Additionally, in a vague, unsupported, near-recitation of the facts as stated by the Plaintiff, Defendants dispute the facts by stating: "defendants dispute that CMS desired to deny payment for all blood-glucose tests under Medicare Part B. The referenced documents show that CMS employees understood that some blood glucose tests performed in SNFs might not be reimbursable in some circumstances." Id.

Such unsupported efforts by Defendants to "dispute" the undisputed material facts as stated by Plaintiff are easily, and have already been, refuted by Plaintiff. As previously detailed in Plaintiffs' Amended Complaint and Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss and in Support of Plaintiffs' Motion For Summary Judgment ("Plaintiffs' Memorandum"), Jacqueline Gordon, a CMS policy specialist on skilled nursing provider reimbursement procedures prepared a written report which acknowledged that

- 16 -

"SNF's [are] eligible for CLIA waiver for these tests" and "payment for blood glucose testing is made on a fee schedule basis," yet, nevertheless, advocated to the various CMS division directors (including Tom Hoyer, CMS Director of the Chronic Care Policy Group) that "[f]or the patients in the non-certified portion [of the nursing home] we should pay based upon the fee schedule and try to limit payment based upon medical necessity criteria."  Am. Compl. at 13-19; Pls.' Mem. in Opp'n. to Defs.' Mot. to Dismiss and in Supp. of Mot. for Summ. J. ("Pls.' Mem.") and at 9-10, 21.

Also, in response to numerous emails where members of the Central Office exchanged ideas on how Medicare could avoid paying for these blood glucose tests, notwithstanding the conclusion that they are a covered service under Medicare Part B, Mr. Hoyer wrote an e-mail to Ms. Gordon dated January 29, 1999, stating: "Unfortunately, in the Part B only setting, if it is a covered test and CLIA waivered then we may have no choice but to pay.  I hope someone comes up with a better idea."  Am. Compl. at 16; Pls.' Mem. at 9-10, 21.  In June of 1999, Mr. Hoyer circulated a fact sheet laying out the statutory authorities and relevant facts which led him to conclude that "our history and our rules seem to militate in favor of paying for this service under the fee schedule."  Am. Compl. at 18-19; Pls.' Mem. at 9-10, 21.  Also attached was a proposed policy drafted by Ms. Gordon and Ms. Greenberg to limit coverage of blood glucose tests in SNFs to diagnostic tests (i.e., a test administered to the patient to diagnose diabetes) but deny coverage for additional tests performed during the treatment of the patient's disease to monitor the patient's condition.  Am. Compl. at 19; Pls.' Mem. at 9-10, 21.  Mr. Hoyer knew, even at that time, that the pending National Coverage Determination would clearly support payment of blood glucose monitoring claims, stating: "The proposed policy would decline to provide coverage.  But the proposed regulation on laboratory services that is now being negotiated by Grand Bagley's shop [the National Coverage Decision] contains criteria that seem surely to lead to payment." Am. Compl. at 19; Pls.' Mem. at 9-

10, 21.

*Paragraph 48* - Defendants dismiss as immaterial the fact that the CMS Office of General Counsel warned CMS policy staff that blood glucose tests administered to Part B SNF residents are covered laboratory tests and that intermediaries cannot determine that such tests are outside the scope of covered benefits. Defs.' Statement at 12-13. Such evidence is certainly material, as it directly supports Plaintiff's contention that CMS developed various rationales to deny coverage and payment for blood glucose tests in SNFs (including manipulation of the criteria for medical necessity) despite its knowledge that such tests are covered under Medicare Part B, in clear violation of the Medicare Act and applicable regulations. 42 U.S.C. §§ 1395k(a)(2)(B), 1395x(s)(3); 42 C.F.R. §§ 410.32(d), 493.15.

In the alternative, Defendants dismiss the views of the CMS Office of General Counsel as the views or "opinion of one CMS employee." Defs.' Statement at 12-13. However, Defendants offer no evidence or support for this objection. The CMS Office of General Counsel expressed the view of CMS; rather, Plaintiff alleged that the CMS Office of the General Counsel communicated to CMS policy staff that blood glucose tests administered to Part B SNF residents are covered laboratory tests and that intermediaries cannot determine that such tests are outside the scope of covered benefits. Pls.' Statement at 4-5. Accordingly, this statement of fact remains undisputed.

*Paragraph 52* - Defendants dismiss as immaterial the fact that the criteria specified in this Medicare Appeal Decision are substantially the same as the following criteria in Mutual's LCD:

- "confirmed continuing risk of glucose metabolism abnormality";

-  "laboratory results [to] be reported to the physician promptly;" and

- use of lab results "in the management of the beneficiary's specific medical problem" including the "physician's order for another laboratory service."

Pls.' Statement at 17; Defs.' Statement at 12-13. Such evidence is certainly material, as it supports

Plaintiff's contention that, throughout the relevant period of time and continuing to the present,

Mutual relied on the LCD policies to deny coverage and payment for blood glucose tests in SNFs

despite that these polices conflict with the NCD, were invalidated through the LCD appeals process,

and violate of the Medicare Act and applicable regulations. 42 U.S.C. §§ 1395k(a)(2)(B),

1395x(s)(3); 42 C.F.R. §§ 410.32(d), 493.15.

     In the alternative, Defendants dispute the "characterizations" in Paragraph 52 of Plaintiffs'

Statement. As an initial matter, disputing how something is "characterized" is simply not sufficient

to defeat Plaintiffs' Motion For Summary Judgment. Defendants further raise the irrelevant

argument that "there is no original content in the LCD" and cite to two sources of evidence as

support: Program Memorandum AB-00-108 and section 190.20 of the Medicare NCD Manual

(attached as Exhibit E to Defendants' Motion to Dismiss). Defendants fail to articulate how this

argument does anything to change the fact that the criteria specified in this Medicare Appeal

Decision are substantially the same as the listed criteria in Mutual's LCD. Moreover, Defendants'

cited authority does not support its position that that section 190.20 of the Medicare NCD Manual

contains the LCD criteria Plaintiff listed in Paragraph 52. Defendants state that "the phrases listed

by Plaintiff in this paragraph are found in . . . § 190.20 of the [NCD Manual]" which is a gross

misstatement of fact. Defs.' Statement at 13-14. Nowhere in section 190.20 are these criteria listed

or specified as requirements for coverage and payment of blood glucose testing under any

circumstance. Indeed, the cited provision of the NCD Manual states "repeat [blood glucose] testing

may be indicated where results are normal in patients with conditions where there is a confirmed

continuing risk of glucose metabolism abnormality" which comes from the NCD and clearly

supports coverage and payment for blood glucose testing in a SNF, unlike Mutual's LCD and

Medicare Appeals Decision discussed in Paragraph 52.

*Paragraph 53* - Defendants dismiss as immaterial Paragraph 53 of Plaintiffs' Statement which sets forth the many ways that Mutual's LCD on blood glucose testing conflicts with the NCD on blood glucose testing. Defs.' Statement at 14. However, such evidence is certainly material, as an LCD may not conflict with an NCD regarding the same subject matter, Medicare Program Integrity Manual (CMS Pub. 100-08) § 13.1.1, which goes to Plaintiff's contention that blood glucose testing in SNFs is a covered service under Medicare Part B and coverage and payment denials based on the invalid LCD policies is a clear violation of the Medicare Act and applicable regulations. 42 U.S.C. §§ 1395k(a)(2)(B), 1395x(s)(3); 42 C.F.R. §§ 410.32(d), 493.15.

In the alternative, Defendants dispute "the legal conclusion that Mutual of Omaha's LCD conflicted with the NCD on blood glucose testing." However, Plaintiff makes no legal conclusions in this statement of material fact; rather, she merely sets forth those provisions in the LCD that differ from the provisions of the NCD. Pls.' Statement at 17-20. Defendants alleged "dispute" is thus without merit and the material facts set forth by Plaintiff describing the differences between the LCD and the NCD remain undisputed.

Defendants concede that, "the NCD did not preclude regular blood glucose testing of SNF residents," but claim that because the NCD "made clear" that in the absence of a "frequency limitation," at the national level, Medicare contractors, such as Mutual, may establish local frequency limitations. Defs.' Statement at 14. Defendants also claim that the NCD is silent with respect to certain issues such as the "reporting of tests, the use of tests by the physician, the ordering of subsequent tests," and draw the Court's attention to the "reasonable and necessary" standard which, they claim, is "not addressed or affected by the NCD." Defs.' Statement at 14. Defendants' arguments do not, however, rebut the undisputed fact set forth in Paragraph 53 that the NCD

supports "frequent" blood glucose testing, 66 Fed. Reg. at 58, 846 (R. at 65), while the LCD

contains significant limitations on testing as Plaintiff sets forth in Paragraph 53. Further,

Defendants' arguments with respect to new interpretations of CMS's standing order prohibition in

42 C.F.R. § 424.24(f) suggest that Mutual's interpretation of a standing order (and related

"frequency limitations") may not be correct. (Defs.' Reply at 16-17)

**C.    Allegedly Disputed Facts**

Defendants, without support, only purport to dispute twelve paragraphs of Plaintiffs'

Statement—2, 5, 12, 17, 18, 21, 27, 32, 34, 39, 49, and 51. With respect to five of these paragraphs

(17, 18, 21, 32, and 51), Defendants' arguments pertain only to Plaintiff's description of the facts

and not to the veracity of the facts themselves. With respect to two statements of material fact (34

and 49), Defendants' arguments pertain to a non-material element of the statement and are therefore

inconsequential to any ruling on Plaintiffs' Motion For Summary Judgment. Such objection to

word choice and non-material detail is distracting, irrelevant, and unfairly burdens the Court. Only

with respect to five paragraphs in Plaintiffs' Statement (2, 5, 12, 27, and 39) do Defendants actually

attempt to dispute Plaintiff's evidence. Yet in each instance, Defendants' arguments misrepresent

the nature of Plaintiffs' Statement and/or evidence and offer no evidence to support that the fact is

disputed. Accordingly, Defendants' attempt to defeat Plaintiffs' Motion For Summary Judgment

must fail.

1.    Defendants' Evidentiary Arguments Fail: The Evidence Shows Plaintiffs' Statement Is Not
      In Dispute

*Paragraph 2* - Defendants dispute that Plaintiff Bailey's physician, Dr. C. Steven Fehlauer,

has determined that she requires blood glucose testing four times per day and that this is medically

necessary in order to maintain control over her blood glucose levels. Defs.' Statement at 6. Despite

that Paragraph 2 of Plaintiffs' Statement does not refer to a specific time-frame, or discuss the

extent to which Ms. Bailey <u>received</u> the ordered blood glucose testing, Defendants argue that "no evidence has been adduced that plaintiff [Bailey] required or received blood glucose testing four times a day in October 2005" and claim that the documents cited by Plaintiff do not establish this as fact. Defs.' Statement at 6.  Unfortunately, Defendants fail to acknowledge that Dr. Fehlauer's affidavit plainly states: "Due to Ms. Bailey's condition, she currently requires blood glucose testing 4 times per day.  This is necessary in order to maintain control over Ms. Bailey's blood glucose levels."  (R. at 155.)  Without offering any evidence that he is qualified to interpret Dr. Fehlauer's prescription shorthand, counsel for Defendants claims that, based on the physician orders cited (R. at 100-101), Dr. Fehlauer only believed blood glucose testing was necessary for Ms. Bailey up to three times per day.  It is inappropriate for Defendants' counsel to speak to what Dr. Fehlauer believes is medically necessary when Dr. Fehlauer has provided a sworn declaration on this matter (R. at 155).  Because whether Plaintiff Bailey received blood glucose tests three times a day or four times a day in October 2005 is immaterial to this case, Defendants' argument with respect to paragraph two has no merit.  The basic material fact is indisputable: Ms. Bailey's physician determined that regular blood glucose testing a number of times each day is medically necessary in her case and has been medically necessary throughout the relevant time period.  (R. at 155, 100-101.)

> *Paragraph 5* - Defendants dispute that Mutual published its LCD on blood glucose testing as a "statement of the policies" it would "impose on claimants who submit Medicare Part B claims for blood glucose tests."  Defs.' Statement at 7.  Defendants argue that "no evidence before the Court supports" such an assertion.  However, Defendants' objection is not consistent with 42 U.S.C. § 1395ff(f)(2)(B), which defines an LCD as "a determination by a fiscal intermediary or carrier under Part A or Part B, as applicable, respecting whether or not a particular item or service is

covered on an intermediary or carrier—wide basis under such parts, in accordance with section 862(a)(1)(A)" (the Medicare reasonable and necessary standard). See 42 U.S.C. § 1395ff(f)(2)(B). Thus, an LCD is an official statement of the fiscal intermediary's policies on whether specific items or services are covered for the purpose of Medicare reimbursement.  Defendants' entire discussion of whether the LCD contained "original content" is irrelevant to Paragraph 5 and is yet another attempt to draw the Court's attention away from what is at issue in the case.

*Paragraph 12* - Defendants dispute that from the date Mutual put in place system edits (October 1, 2005), Mutual has denied coverage for Medicare Part B claims for blood glucose tests provided to SNF residents on the basis of the policies reflected in its LCD. Defs.' Statement at 8. Defendants maintain that Mutual never relied on the LCD "itself" to deny any lab tests as not reasonable and necessary.  What Defendants do not and can not dispute is that Mutual relied on those *policies* reflected in its LCD which remains an undisputed material fact.  R. at 51, 706-707, 712.  Indeed, as explained fully in Plaintiffs' Memorandum in Support of Plaintiffs' Motion For Summary Judgment (Pls.' Mem. at 57-58), the very document which Defendants uphold as proof that Mutual never used the LCD "itself" to deny blood glucose testing – a "Medicare Appeal Decision" or sample denial - restates the same policies that are incorporated into the LCD. Compare R. at 703, 706-07 with R. at 51.  Whether the LCD was "cited" in any of the documents Plaintiff relies on is of no consequence if the policies set forth in them are substantially the same as those set forth in the LCD.  (R. at 51.)  Defendants continue to raise this meaningless distinction in an attempt to justify their actions after-the-fact and to mislead the court as to the nature of Plaintiff's argument.

*Paragraph 27* - Defendants further dispute that Mutual of Omaha continues to enforce the retired LCD. Defs.' Statement at 10.  Defendants argue that "[t]he referenced letter states that

Mutual of Omaha reconsidered Plaintiff Bailey's claims for blood glucose testing 'without the application' of the retired LCD." Zacijek Letter at 1 (Am. Compl., Ex. 17). However, despite what the referenced letter "states" on its face, it is undisputed that Mutual, in fact, continues to enforce the challenged coverage policies in the retired LCD because Plaintiff's readjudicated claims were again denied on the same basis, for lack of medical necessity. At the conclusion of Plaintiff Bailey's LCD challenge, Mutual argued that, despite that it had gone through the trouble of developing the LCD and publishing it for use by health care providers (including Ms. Bailey's SNF), it did not actually rely on the LCD in determining coverage and payment for blood glucose tests. (R. at 703-704.) Instead (Mutual argued and Defendants maintain), it had always denied coverage and payment for blood glucose tests based on whether or not such tests were "medically necessary." (R. at 704, 712.) Moreover, Mutual reasoned, regardless of what a physician decides is medically necessary for an individual patient's health, "medical necessity" <u>excludes</u> all situations in which blood glucose testing is conducted on a regular basis to promptly detect blood glucose abnormalities and prevent or address potential complications associated with same. (R. at 713, a letter from Mutual to nursing home administrators, stating: "The various regulations do not preclude nursing facility nursing staff from doing daily or more frequent blood glucose monitoring . . . . It does [sic], however, preclude the facility from billing the intermediary for this service as a medically necessary diagnostic laboratory test under 1862(a)(1)(A) and 42 C.F.R. § 410.32.") Moreover, under Mutual's "medical necessity" standard, each test result must: (1) be reported to a patient's physician (apparently by some other method than simply recording the result in the patient's medical record, which Plaintiff Bailey's nurses did, R. at 151) (R. at 63, 170, 707); (2) be "used" by the physician for medical management of the patient (R. at 63, 170, 707); and (3) justify any further testing of that patient's blood glucose levels (R. at 63, 707, citing CMS Program

Memorandum AB-00-108 which requires a "physician's order for another laboratory service" to be based on the result from the prior test, R. at 167.)  Unless there is "documentation" of (1) through (3) above (although what type of documentation has never been articulated or explained, see R. at 707, 63-64), Mutual says that it does not consider blood glucose testing to be a "covered service" under Medicare Part B.  (R. at 703.)  Coincidentally, Mutual's LCD – which is no longer valid – specifically articulates all three of the above requirements.  (R. at 52.)  It states: "the laboratory result must be reported to the physician promptly [requirement (1)] in order for the physician to use the result [requirement (2)] and instruct continuation or modification of patient care: this includes the physician's order for another laboratory service [requirement (3)]."  Id. Therefore, Defendants' unsupported arguments that Mutual has re-reviewed Plaintiff Bailey's claims for blood glucose tests "without application of the LCD" are contradicted by the record.  The same coverage policies in the LCD continue to be used by Mutual.

*Paragraph 39* - Defendants dispute the fact that the final NCD did not include certain restrictions on coverage found in AB-00-99 and AB-00-108 that Mutual included in the LCD. Defs.' Statement at 11.  A plain reading of the documentary evidence shows that Defendants have no reasonable basis on which to dispute this fact.  Program memorandum AB-00-99 states that for a lab test to be covered, the result "must be reported to the physician promptly so that the physician can use the result for continuation or modification of patient care," including orders for additional testing.  CMS Program Memorandum AB-00-99.  Program Memorandum AB-00-108 substantially restates these specific limitations.  CMS Program Memorandum AB-00-108 (R. at 167).  However, these limitations appear nowhere in the final NCD.  66 Fed. Reg. 58,788, 58,846 (Nov. 23, 2001). Although Defendants emphasize that the "Reasons for Denial" section of the final NCD was not negotiated by the Negotiated Rulemaking Committee, the undisputed fact remains that the

limitations set forth in the CMS program memoranda are simply not set forth in the final NCD. In fact, in the preamble to that section (which Defendants quote), the Committee explains that it was including CMS's "longstanding policies" related to coverage in the published final NCD "for informational purposes." 66 Fed. Reg. at 58,848. However, even this list of self-proclaimed longstanding coverage policies does not include those limitations set forth in the CMS program memoranda, which further supports Plaintiff's argument that CMS developed them for the arbitrary purpose of denying coverage of blood glucose testing in violation of the NCD coverage policies, the Medicare Statute, and the applicable regulations. 42 U.S.C. §§ 1395k(a)(2)(B), 1395x(s)(3); 42 C.F.R. §§ 410.32(d), 493.15. Because Defendants mischaracterize the evidence and do not articulate a bona fide reason to dispute this statement of material fact, the fact is undisputed for the purpose of Plaintiffs' Motion For Summary Judgment.

2.    Defendants Arguments Relate to Semantics (17, 18, 21, 32, and 51)

   *Paragraphs 17 & 18* – Defendants' arguments with respect to whether Plaintiff Bailey was an aggrieved party under 42 C.F.R. § 426.460, amount to hair-splitting over whether the word "verify" has the same or similar meaning as the word "confirm." Defs.' Statement at 9. The fact is that the Administrative Law Judge ("ALJ") specifically acknowledged that Plaintiff Bailey was an aggrieved party when he determined that her Compliant was acceptable under the LCD appeal regulations. See DAB Acknowledgment and Receipt of Acceptable Complaint, Order, and Briefing Schedule (C-06-349) at 2; R. at 22-28. Although Defendants deny that the ALJ "verified" that Plaintiff Bailey was an aggrieved party under 42 C.F.R. § 426.460, they admit that the ALJ certified that Plaintiff Bailey's "complaint was acceptable by confirming, among other things, that the complaint is being submitted by an aggrieved party." Defs.' Statement at 9 (emphasis added).

   *Paragraph 21* - Similarly, Defendants dispute paragraph 21 of Plaintiffs' Statement on the

basis that Mutual "retired" the LCD rather than "withdrew" it. Defs.' Statement at 9. Although the regulation at 42 C.F.R. § 426.420 uses the word "retired," these two verbs are synonymous and Defendants' comment exemplifies the frivolity of their arguments with respect to their alleged disputes.

Paragraph 32 - Defendants dispute that the March 10, 2000 proposed NCD was developed by the Negotiated Rulemaking Committee (of which CMS was a party) on the basis that the NCD included a description of CMS's self-proclaimed "longstanding" or historical coverage policies "for informational purposes" that were not negotiated. Defs.' Statement at 10. Because Plaintiff did not use the phrase "in its entirety" in Paragraph 32, Defendants' argument, at best, amounts to a clarification rather than a genuine dispute. However, this distinction is irrelevant to Plaintiff's point which is that CMS was included in the Negotiated Rulemaking Committee which developed the NCD. 65 Fed. Reg. 13,082, 13,086 (Mar. 10, 2000); 66 Fed. Reg. 58,788, 58,848 (Nov. 23, 2001).

Paragraph 51 - Defendants dispute that the Medicare Appeal Decision referenced in Paragraph 51 of Plaintiffs' Statement cites CMS Program Memorandum AB-00-108 as the "basis" for its decision to deny claims for blood glucose testing. Defs.' Statement at 13. Defendants' rationale is that Program Memorandum AB-00-108 is listed in the Medicare Appeal Decision under "Medicare Regulations and References Used for Decision" (in addition to other sources). Id. (emphasis added). Defendants go on to reason that "[t]he basis for the decision is contained in the section of the [document] titled 'Explanation of the Decision,'" Id. (emphasis added) – a section that is located immediately above the "Regulations and References Used for Decision" section and, in fact, contains no citations to any specific authority whatsoever. Their dispute has no merit. If cited authority is "used for a decision," the decision is necessarily based on that authority in some way. Defendants' argument with respect to Paragraph 51 and whether claims denials were based on

Program Memorandum AB-00-108 is not only trivial, but is manufactured for the sole purpose of making it appear to the Court that there are disputes of fact at issue for purposes of the Court's ruling on Plaintiffs' Motion For Summary Judgment.  Mutual itself has admitted that it "looks to" AB-00-108, among other things, "in making its decision" whether to cover or deny claims for blood glucose testing.  (R. at 703.)  Accordingly, as shown by the evidence Plaintiff cites, Mutual's use of AB-00-108 in the process of reaching a decision on whether to deny SNF residents' claims for blood glucose testing is an undisputed statement of material fact.  (R. at 706-707.)

3.      <u>Regardless of Any Dispute, Defendants' Arguments Relate to Inconsequential Detail</u>

*Paragraph 34* - With respect to Paragraph 34 of Plaintiffs' Statement, Defendants correctly point out that the issue-date of CMS Program Memorandum AB-00-99 is October 24, 2000 rather than October 20, 2000.  Defs.' Statement at 11.  However, this typographical error in Plaintiffs' Statement does not amount to a "genuine" issue:  the material fact that CMS issued this Program Memo to Medicare intermediaries on the subject of glucose monitoring effective November 1, 2000 is undisputed.  CMS Program Memorandum AB-00-99.

*Paragraph 49* - Defendants dispute the date of the Additional Development Request ("ADR") (which Plaintiff cites as support for Paragraph 49 of Plaintiffs' Statement) claiming, without any apparent relevance, that the ADR does not relate to blood glucose testing provided during the month of October 2005.  Defs.' Statement at 13.  Nowhere in Paragraph 49 did Plaintiff allege that the ADR related to any specific claims during any specific timeframe.  The month of October 2005 was not even mentioned in Paragraph 49 (which merely sets forth what documentation Mutual's ADR requested to support blood glucose services for Plaintiff Bailey and which Defendants can not and do not appear to dispute).  Pls.' Statement at 15-16.  Defendants draw the Court's attention to an ADR dated November 7, 2005 (which is identical to the one cited

by Plaintiff, except for the date) for no apparent reason other than to distract the Court from what is material to this case – i.e., (as the undisputed fact set forth in Paragraph 49 of Plaintiffs' Statement shows) that Mutual and CMS systematically denied claims for blood glucose testing based on invalid LCD policies in violation of the Medicare Statute and applicable regulations.  42 U.S.C. §§ 1395k(a)(2)(B), 1395x(s)(3); 42 C.F.R. §§ 410.32(d), 493.15.

Respectfully submitted,

/s/ Thomas C. Fox
Counsel:                          Thomas C. Fox (D.C. Bar #4473)
Carol C. Loepere                  REED SMITH LLP
Antony B. Klapper                 1301 K Street, NW
Jason M. Healy                    Suite 1100 – East Tower
Catherine A. Durkin               Washington, D.C. 20005
Cassia M. McCamon                 (202) 414-9222
REED SMITH LLP                    Attorney for Plaintiff
1301 K Street, NW
Suite 1100 – East Tower
Washington, D.C. 20005
(202) 414-9200

Dated: September 5, 2007