# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
**LOUISE BAILEY, Individually and on**         )
**Behalf of All Other Similarly Situated**         )
**Medicare Part B Beneficiaries**         )
)
    **Plaintiff,**         )
)
    **v.**         )     **Civil Action No. 06-2144 (RCL)**
)
**MUTUAL OF OMAHA INSURANCE**         )
**COMPANY,** *et al.*,         )
)
    **Defendants.**         )
_____)

## MEMORANDUM OPINION

    This matter comes before the Court on defendants' motion [18] to dismiss and plaintiff Louise Bailey's motion [23] for summary judgment.  Specifically, defendants argue that the amended complaint [8] should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because the Court lacks jurisdiction to adjudicate plaintiff's claims and pursuant to Rule 12(b)(6) because plaintiff has failed to state a claim upon which relief can be granted.  Plaintiff, in contrast, contends that she is entitled to judgment as a matter of law.  Upon consideration of the motions, the opposition and reply briefs, the entire record herein, and applicable law, the Court finds that defendants' motion to dismiss will be granted.  Plaintiff's motion for summary judgment will be denied.

I.    **BACKGROUND**

    A.    **Parties and Preliminary Background**

Plaintiff Louise Bailey brings this proposed class action on behalf of herself and similarly situated Medicare Part B beneficiaries residing in skilled nursing facilities ("SNFs") against Mutual of Omaha Insurance Company ("Mutual"), Secretary Michael O. Leavitt of the Department of Health and Human Services ("HHS"), and Acting Administrator Leslie V. Norwalk of the Centers for Medicare and Medicaid Services ("CMS"). Plaintiff is a 72 year-old diabetic SNF resident whose physician has stated that she requires blood glucose testing four times a day. (*See* Am. Compl. ¶ 18.) Defendant Mutual is a Medicare "fiscal intermediary" responsible for processing Medicare claims of plaintiff Bailey and the proposed class members. (*See id.* ¶ 1.) HHS and CMS are responsible for the administration of the Medicare program. (*See id.* ¶ 1.) Mutual denied claims for Ms. Bailey's blood glucose tests performed in October 2005. (*See* Attach. 1 to Routt Decl. at 53–55.) In count 1 of the amended complaint, Ms. Bailey asserts that continuing enforcement of Mutual's retired Local Coverage Determination ("LCD")—which set forth a standard for coverage and payment of blood glucose test claims for Part B beneficiaries—is the basis for the denial of her claims and that this constitutes a violation of the Medicare Act and regulations. (*See* Am. Compl. ¶ 108–113; LCD, Ex. C to Mot. to Dismiss.) In count 2, plaintiff alleges a due process violation on behalf of herself and putative class members grounded on inadequate notice to beneficiaries of (1) the invalidity of the retired LCD and (2) the policy basis for Mutual's claim denials. (*See* Am. Compl. ¶ 114–20.)

    B.    **Events Prior to Denial of Ms. Bailey's Blood Glucose Test Claims**

Ms. Bailey's SNF submitted a claim for payment on November 4, 2005 for tests performed the previous month. On December 7, 2005, Mutual requested additional information

to determine whether the testing was "reasonable and necessary" such as: (a) physician orders, (b) documentation of necessity for each test including nurse's notes and physician progress notes, (c) results, (d) documentation of doctor notification of each test noting use of the test results to modify treatment, (e) detailed itemization of charges billed, and (f) medical history and a physical supporting diagnosis of diabetes. (*See* Attach. 1 to Routt Decl. at 104, 106.) The SNF responded with documentation on December 12, 2005. (*See id.* at 105–22.) Its response indicated that plaintiff was admitted to the SNF in July 2004 with a physician order for blood glucose testing two times per week. (*See id.* at 111–16.) Nurse notes were included for October 20, 2005 thru November 29, 2005, but did not show whether the physician was notified of the results. (*See id.* at 118.) However, the nurse did note that the doctor had ordered—by phone—an additional daily test. (*See id.* at 117.) Defendants indicate that the nurse notes demonstrate a clear absence of adequate documentation and an absence of doctor involvement. Following the SNF's response, Mutual denied the claim stating that "the information provided does not support the need for this service or item." (*See id.* at 53, 55.) Defendants contend that the denial is based on medical necessity and is in no manner based on the LCD that plaintiff challenges here.

### C.     Medicare Statutory Background

A National Coverage Determination ("NCD") is a determination by the HHS Secretary with respect to whether or not a particular item or service is covered nationally by Medicare. *See* 42 U.S.C. § 1395ff(f)(1)(B). All Medicare contractors, including carriers and fiscal intermediaries, are legally bound by NCDs. *See* 42 C.F.R. § 405.1060(a)(4). In contrast, LCDs are determinations by fiscal intermediaries—such as Mutual—or carriers respecting whether a particular item or service is covered on an intermediary or carrier-wide basis. 42 U.S.C.

§1395ff(f)(2)(B).  The HHS Secretary is instructed to evaluate new LCDs to determine whether

they should be adopted nationally and to what extent consistency among LCDs can be achieved.

42 U.S.C. § 1395y(l)(5)(A).  Mutual issued a revised version of the blood glucose testing LCD at

issue here with effective date September 21, 2005, which detailed Mutual's coverage policy.[1]

(*See* LCD, Ex. C to Mot. to Dismiss.)  Under the Medicare system, a challenge to an LCD or

NCD is distinct from the general Medicare claims appeal process set forth in 42 U.S.C. § 405(g).

Review of an LCD permits an aggrieved party to examine an entire policy or provision rather

than specific claim denials.[2]  When a beneficiary is confronted with a denied claim that he or she

wishes to challenge, the beneficiary has the option of pursuing review through the claims appeal

process, seeking review of an LCD or NCD, or both.  *See* Review of National Coverage

Determinations and Local Coverage Determinations, 68 Fed. Reg. 63692, 63693–94 (Nov. 7,

2003) (comparing the claims appeal process and the NCD and LCD review processes).  When

the LCD review process was created, the existing claims appeal procedures remained unaltered.

Thus, beneficiaries whose claims have been denied have access to de novo review by an

independent administrative law judge ("ALJ") and ultimately to federal district court review.  *Id*

at 63693; *see* 42 U.S.C. §§ 405(g), 1395ff(b) (setting out these procedures).

---

[1] Plaintiff specifically objects to the portion of the LCD policy that reads, "[i]mplicitly, the laboratory result must be reported to the physician promptly in order for the physician to use the result and instruct continuation or modification of patient care: this includes the physician's order for another laboratory service."  (*See* LCD, Ex. C to Mot. to Dismiss at 5.)

[2] Plaintiffs have standing to challenge coverage determinations if (1) they are entitled to benefits under Part A or enrolled under Part B of Medicare, and (2) they are in need of the items or services that are the subject of the coverage determination.  *See* 42 U.S.C. § 1395ff(f)(5).

D.     <u>**Plaintiff's Administrative Challenge**</u>

Ms. Bailey instituted her challenge as a review of Mutual's blood glucose testing LCD pursuant to the procedures outlined at 42 U.S.C. § 1395ff(f)(2) and claimed that the LCD was contrary to the relevant NCD and to medical best practices.  On April 19, 2006, the ALJ certified that plaintiff met the requisites of an LCD challenge.  (Admin. R. at 22–28); *see* 42 C.F.R. § 426.410(b)–(d).  In that proceeding, Ms. Bailey moved for summary judgment alleging that the LCD was incomplete and inadequate under the reasonableness standard set forth in the regulatory scheme.  (*See* Admin. R. at 649–50); *see also* 42 C.F.R. §§ 426.110; 426.425(a) (indicating that a challenged LCD is reviewed for reasonableness).  Shortly before Mutual's response was due, Mutual retired its LCD.  (*See* Admin. R. at 736.)  Consequently, Administrative Law Judge Sickendick was deprived of jurisdiction because retired LCDs are not subject to review.  (Admin. R. at 1–2; *see* 42 C.F.R. § 426.325(a), (b)(2).  The ALJ was required to dismiss the complaint and inform plaintiff that she would receive individual claim review without application of the retired LCD.  42 C.F.R. § 426.420(e)(1); *see* 42 C.F.R. §§ 426.420(a); 426.460(b) (indicating that retiring an LCD has the same effect as a decision that an LCD is invalid under the reasonableness standard, which entitles the aggrieved party to a Medicare contractor's individual claim review without reliance on the retired LCD).  Because aggrieved parties are granted individual claim review—the same review that would have been available had the adjudicator not been bound by the now irrelevant LCD—HHS regulations provide that the LCD review process concludes upon the relevant LCD's retirement.  *See* Review of National Coverage Determinations and Local Coverage Determinations, 68 Fed. Reg. 63692, 63698 (Nov. 7, 2003).  Moreover, CMS policy explicitly states that when it retires an LCD, it will not apply those policies for future services and will reprocess an aggrieved party's affected claims without

5

reference to the retired policy.  *See id.*  Accordingly, in a letter dated December 19, 2006, Mutual indicated that it had performed an individual claim review without the application of the blood glucose testing LCD and that it had affirmed denial of plaintiff's claim.  (*See* Ex. 17 to Am. Compl.)

        **E.**      **Plaintiff's Action Before this Court**

On December 15, 2006, plaintiff filed suit in this Court asserting a claim of improper reliance on the retired LCD and a due process violation arising from alleged inadequate notice to plaintiff and putative class members.  In her first claim, Ms. Bailey argues that following retirement of the LCD, Mutual continued to apply the now invalid LCD.  Plaintiff alleges that despite CMS's NCD that supports frequent testing, CMS has engaged in a plan to systematically deny coverage for blood glucose testing of Part B beneficiaries in SNFs.  (*See* Am. Compl. ¶¶ 14, 71, 113.); Coverage and Administrative Policies for Clinical Diagnostic Laboratory Services, 66 Fed. Reg. 58788, 58846 (Nov. 23, 2001) (setting forth blood glucose NCD).  Under this alleged scheme, upon the LCD's retirement, CMS adopted regulations consisting of a "trumped-up" medical necessity requirement and a provision that a physician's "standing order" of a series of blood glucose tests would not be payable.  (*See* Am. Compl. ¶ 11); 42 C.F.R. § 424.24(f) (enacted Dec. 1, 2006).  Under plaintiff's reasoning this medical necessity criteria is merely a means of continuing to abide by the withdrawn LCD's policy.  Plaintiff claims to challenge not the denial of her tests but rather the continued use of policies from the retired LCD.  (*See* Mot. for Summ. J. Mem. at 7–8.)

Plaintiff states that she followed all procedural requirements of 42 U.S.C. § 1395ff(f)(2) and pursued the LCD challenge as far as possible until defendants—not plaintiff—took action to end this process.  (*See* Mot. for Summ. J. Mem. at 6.)  According to plaintiff, this is precisely

what exhaustion of administrative remedies entails—a showing that she claims is sufficient for this Court to exercise jurisdiction.

Defendants argue that the real issue in plaintiff's LCD-related claim is that she simply believes her blood glucose test claims were denied for erroneous reasons.  (*See* Mot. to Dismiss at 2.)  Defendants state that they complied with the ALJ's order of dismissal by re-adjudicating plaintiff's claims for blood glucose testing without employing the retired LCD.  (Defs.' Reply at 30.)  Defendants further contend that "medical necessity" is determined on a case-by-case basis at "the discretion of the intermediary and agency adjudicators at higher levels of authority."  (*Id.* at 17–18.)  On re-adjudication, Ms. Bailey's claims were denied, and she had access to the individual claims appeal process that must be exhausted before resorting to judicial relief. Accordingly, defendants assert that plaintiff is merely attempting to bypass the mandatory administrative Medicare claims process and obtain a ruling directly from this Court.  (Mot. to Dismiss at 2.)  Defendants also warn that this Court's relief would require one Medicare contractor to pay all the blood glucose testing claims for beneficiaries in SNFs without any evidence that test results are reported to physicians or that physicians use the tests to manage beneficiaries' diabetes and despite the relevant regulation indicating that such "standing orders" are insufficient.  (*Id.* at 1–2); *see* 42 C.F.R. § 424.24(f).

Plaintiff's due process claim asserts that Mutual provided inadequate notice of both (1) the LCD's retirement and its effect, and (2) the policy upon which Mutual relies in denying blood glucose claims to plaintiff and similarly situated beneficiaries.  (*See* Am. Compl. at ¶¶ 116–20; Mot. for Summ. J. Mem. at 32–33.)  Under plaintiff's reasoning, depriving Ms. Bailey and others of their property right in the payment of blood glucose test claims without sufficient notice violates due process.

II.    **ANALYSIS**

A.    **Standard of Review:  Motion to Dismiss**

Defendant moves to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules

of Civil Procedure.  When a party files a motion to dismiss for lack of subject-matter jurisdiction

under Rule 12(b)(1), "the plaintiff[ ] bear[s] the burden of proving by a preponderance of the

evidence that the Court has subject matter jurisdiction." *Biton v. Palestinian Interim Self-Gov't*

*Auth.*, 310 F. Supp. 2d 172, 176 (D.D.C. 2004).  A court considering a motion to dismiss for lack

of jurisdiction must construe plaintiffs' complaint in plaintiffs' favor, accepting all inferences

that can be derived from the facts alleged.  *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249,

1253 (D.C. Cir. 2005).

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint.  *Browning v.*

*Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  This Court will dismiss a claim if the plaintiff fails

to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp.*

*v. Twombly*, 127 S.Ct. 1955, 1974 (2007) (abrogating the prior standard which required

appearance, beyond a doubt, that plaintiff can prove no set of facts in support of his claim that

would entitle him to relief).  The complaint need only set forth a short and plain statement of the

claim, giving the defendant fair notice of the claim and the grounds upon which it rests.

*Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing *Conley v.*

*Gibson*, 355 U.S. 41, 47 (1957)).  Thus, in resolving a Rule 12(b)(1) or 12(b)(6) motion, the

court must treat the complaint's factual allegations as true and draw all reasonable inferences

therefrom in the plaintiff's favor.  *Macharia v. United States*, 334 F.3d 61, 67 (D.C. Cir. 2003),

cert. denied, 540 U.S. 1149 (2004); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d

156, 165 (D.C. Cir. 2003).

**B.    Jurisdiction Over Plaintiff's LCD-Related Challenge**

The Court first determines whether it has subject-matter jurisdiction over count 1, plaintiff's LCD-related action. This Court's "subject-matter jurisdiction [is] constitutionally limited by Article III [and] extends only so far as Congress provides by statute." *Commodity Futures Trading Comm'n v. Nahas*, 738 F.2d 487, 492 (D.C. Cir. 1984). Therefore, "the court must scrupulously preserve the precise jurisdictional limits prescribed by Congress." *Id.* at 492 n.9 (citations omitted). Plaintiff offers four statutory bases for the Court's jurisdiction: (1) 42 U.S.C. § 1395oo(f); (2) 42 U.S.C. § 1395ff(f)(3); (3) 28 U.S.C. § 1331; and, (4) 28 U.S.C. § 1361. (*See* Am. Compl. ¶ 16.) Defendants assert that none of these statutes confer subject-matter jurisdiction on this Court and that a fifth jurisdictional provision—42 U.S.C. § 1395ff(b)—is the only such provision possibly applicable to plaintiff's claim but one wherein plaintiff has failed to meet the requisite dollar-amount, presentment, and exhaustion requirements. (*See* Mot. to Dismiss at 33–34.) For the reasons set forth below, this Court does not have subject-matter jurisdiction over plaintiff's challenge to Mutual's alleged improper use of policies from the retired blood glucose LCD.

**1.    Jurisdiction Under 42 U.S.C. § 1395oo**

This Court cannot exercise jurisdiction pursuant to 42 U.S.C. § 1395oo. That section only applies to a "*provider of services* which has filed a required cost report within the time specified in regulations." 42 U.S.C. § 1395oo(a). A "provider of services" is defined as "a hospital, critical access hospital, skilled nursing facility, comprehensive outpatient rehabilitation facility, home health agency, hospice program, or . . . a fund." 42 U.S.C. § 1395x(u). Plaintiff is not a "provider of services"—she is a Medicare Part B individual beneficiary—and thus this

court cannot exercise jurisdiction over her claim pursuant to section 1395oo.  *See United States v. Sanet*, 666 F.2d 1370, 1373 n.15 (11th Cir. 1982) (stating that the procedures under section 1395oo only apply to Medicare Part A provider disputes).

### 2.    Jurisdiction Under 42 U.S.C. § 1395ff(f)(3)

This Court cannot exercise jurisdiction pursuant to 42 U.S.C. § 1395ff(f)(3).  That section provides that a plaintiff may seek judicial review without filing an administrative complaint under section 1395ff or exhausting other administrative recourse if three requirements are met:  (1) there is a determination otherwise subject to review under paragraph 1395ff(f)(1)(A)(iii) for NCDs or paragraph 1395ff(f)(2)(A)(i) for LCDs; (2) plaintiff alleges there are no material issues of fact in dispute; and, (3) plaintiff alleges that "the only issue of law is the constitutionality of a provision of this subchapter, or that a regulation, determination, or ruling by the Secretary is invalid."  42 U.S.C. § 1395ff(f)(3).  Here, the Court need not proceed beyond the first requirement because retired LCDs are not otherwise subject to review under paragraph 1395ff(f)(2)(A)(i).  That paragraph sets forth the general procedures that an administrative law judge must follow when reviewing LCD complaints.  *Id.* § 1395ff(f)(2)(A)(i).  However, HHS regulations indicate that only "currently effective" LCDs may be challenged under that paragraph and that "retired LCDs" are not subject to such review.  *See* 42 C.F.R. § 426.325(a), (b)(2).  The LCD in question here was retired by CMS on August 11, 2006, thus taking the LCD out of the requisite category of "currently effective."  (*See* Admin. R. at 736.)  Consequently, plaintiff's claim is not subject to review pursuant to paragraph 1395ff(f)(2)(A)(i) and this Court does not have jurisdiction under section 1395ff(f)(3).

### 3.    Federal Question Jurisdiction Under 28 U.S.C. § 1331

Plaintiff additionally claims that this Court has subject-matter jurisdiction pursuant to 28

U.S.C. § 1331 federal question jurisdiction.  However, the potential availability of judicial

review after exhaustion of the administrative claims appeal process bars this Court's jurisdiction

under section 1331.  This Circuit has stated:

> "No action against the United States, the [Secretary of Health and
> Human Services], or any officer or employee thereof shall be brought
> under 28 U.S.C. § 1331 . . . to recover on any claim arising under"
> the Medicare Act.  42 U.S.C. §§ 405(h), 1395ii.  Judicial review may
> be had only after the claim has been presented to the Secretary and
> administrative remedies have been exhausted.  *See* 42 U.S.C.
> §§ 405(g), (h), 1395w-22(g)(5); *Shalala v. Ill. Council on Long Term
> Care, Inc.*, 529 U.S. 1, 8–9 (2000).  This bar against § 1331 actions
> applies to all claims that have their "standing and substantive basis"
> in the Medicare Act.

*Am. Chiropractic Ass'n v. Leavitt*, 431 F.3d 812, 816 (D.C. Cir. 2005) (citations omitted).  The

Supreme Court has provided one exception to the general rule that all Medicare suits founded on

general federal question jurisdiction are precluded: "if the claimant can obtain judicial review

only in a federal question suit, § 1395ii will not bar the suit."  *Id.* (citing *Ill. Council*, 529 U.S. at

10–13, 17–20).  This Circuit explained,

> The exception applies not only when administrative regulations
> foreclose judicial review, but also when roadblocks practically cut off
> any avenue to federal court.  As to the latter, it is not enough that
> claimants would encounter "potentially isolated instances of the
> inconveniences sometimes associated with the postponement of
> judicial review," or that their claims might not receive adequate
> administrative attention.  The difficulties must be severe enough to
> render judicial review unavailable as a practical matter.
>
> . . . The question is thus whether [plaintiff] could get [her] claims
> heard administratively and whether [she] could receive judicial
> review after administrative channeling.

*Id.* (citing *Ill. Council*, 529 U.S. at 22–23).  Here, plaintiff has an alternate route to judicial

review.  Although an LCD-based challenge was no longer possible once Mutual retired the blood

glucose LCD, plaintiff had the ability to institute a separate administrative appeal of her denied

claims if she believed coverage was improperly denied; if plaintiff were dissatisfied with the

result of those proceedings, she would then be entitled to judicial review of a final administrative

decision. *See* 42 U.S.C. §§ 405(g), 1395ff(a), (b), 1395ii. Plaintiff has neglected to pursue this

administrative channel and consequently she has not demonstrated the type of "unavailability of

review" required to bypass the administrative process. *See Bartlett Mem. Med. Ctr. v.

Thompson*, 347 F.3d 828, 993 (10th Cir. 2003) (stating that in *Illinois Council*, plaintiffs "failed

even to attempt to vindicate their complaints through a host of available agency procedures,"

which is unlike the situation where plaintiffs have no remaining avenues to pursue their claims

administratively). Any inconvenience and delay associated with Ms. Bailey's first seeking

administrative review of her denied claim does not equate to "unavailability of review." *See Am.

Chiropractic*, 431 F.3d at 816. Because plaintiff has not shown that judicial review is

"unavailable as a practical matter," this court may not exercise federal question jurisdiction at

this time.

### 4.    Mandamus Jurisdiction Pursuant to 28 U.S.C. § 1361

This Court finds that mandamus jurisdiction under 28 U.S.C. § 1361 is likewise not

proper. The drastic remedy of mandamus is to be invoked only in extraordinary circumstances.

*See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980); *Consol. Edison Co. v. Ashcroft*,

286 F.3d 600, 605 (D.C. Cir. 2002) (noting that mandamus is a drastic remedy and only

appropriate where a public official violates a ministerial duty "so plainly prescribed as to be free

from doubt"). As a result, courts should not grant mandamus unless the party seeking relief has

"no other adequate means to attain the relief he desires." *Allied Chem.*, 449 U.S. at 35. Here,

plaintiff has another route to relief—instituting the individual claims review process and

12

carrying that procedure to its exhaustion before seeking judicial relief.  Thus, this Court finds

inadequate grounds for taking the drastic step of asserting subject-matter jurisdiction under

section 1361.

**5.     Jurisdiction Under 42 U.S.C. § 1395ff(b)**

As defendants contend, the only jurisdictional statute relevant to plaintiff's claim—once

Mutual retired the challenged LCD—is 42 U.S.C. § 1395ff(b).  This statute provides the

individual Medicare claims denial appeals process that Ms. Bailey must pursue prior to invoking

this Court's jurisdiction.  At this time, plaintiff has not begun that process and thus has not

demonstrated that the statute's dollar-amount, presentment, and exhaustion prerequisites have

been met.  *See* 42 U.S.C. § 1395ff(b)(1)(E)(I) (dollar-amount requirement); *Heckler v. Ringer*,

466 U.S. 602, 617 (1984) (explaining that 42 U.S.C. § 405(g) "consists of a nonwaivable

requirement that a claim for benefits shall have been presented to the Secretary and a waiveable

requirement that the administrative remedies prescribed by the Secretary be pursued fully by the

claimant") (internal citations omitted).  The Secretary has not explicitly waived exhaustion and

this Court does not find any implicit waiver based on the LCD's retirement.  *See Heckler*, 466

U.S. at 617–18 (noting that the Secretary may waive the exhaustion requirement where he deems

further exhaustion futile).  As discussed in Part II.B.3 of this opinion, this case is not one where

administrative review is unavailable as a practical matter, and the Court disagrees with plaintiff's

statement that she has no available administrative avenue to challenge the alleged ongoing

application of the retired LCD policies.  If plaintiff were to initiate an appeal of her denied blood

glucose claims, the Secretary would ultimately be responsible for determining if the claims were

denied on invalid grounds such as reliance on the retired LCD.  Only then would plaintiff have

exhausted administrative channels at which time federal court jurisdiction would be permitted.

*See* 42 U.S.C. § 405(g) (permitting judicial review upon exhaustion). The Court recognizes that plaintiff alleges a systematic reliance on the retired LCD affecting an entire class of proposed plaintiffs. If plaintiff had at a minimum demonstrated that her individual claims had been appealed to their administrative conclusion—and preferably that other beneficiaries had done the same—this Court would be less reluctant to find that it possesses jurisdiction not only over her individual claim but also over the broader allegation of Mutual's continuing reliance on the retired LCD. *See DeWall Enters. v. Thompson*, 206 F. Supp. 2d 992, 998 (D. Neb. 2002) (finding that federal court jurisdiction was appropriate where CMS had continued to employ a challenged policy despite an ALJ many times overturning unfavorable CMS coding determinations made pursuant to that policy).

The Court notes that an exhaustion rule "promotes a sensible division of tasks between the agency and the court" and discourages litigants "from weakening the position of the agency by flouting its processes, while court resources are reserved for dealing primarily with those matters which could not be resolved administratively." *Doyle v. Sec'y of HHS*, 848 F.2d 296, 300 (1st Cir. 1988); *see McKart v. United States*, 395 U.S. 185, 193–95 (1969) (outlining the justifications for requiring administrative exhaustion). Here, plaintiff makes no showing that her matter could not be resolved administratively. Because plaintiff sought this Court's relief immediately upon Mutual's LCD retirement, the Court cannot say whether plaintiff's pursuit of an administrative appeal of her claim denials—independent of plaintiff's LCD review that became impossible when the challenged LCD was retired—would have resolved her dispute such that judicial recourse would be rendered unnecessary.

In sum, this Court finds no statutory provision that confers subject-matter jurisdiction over plaintiff's first claim.

14

C.    **Due Process Claim**

Medicare Part B beneficiaries have a protected due process "property interest" in "receiving the medical insurance benefits for which they paid a monthly premium." *Gray Panthers v. Schweiker*, 652 F.2d 146, 148 n.2 (D.C. Cir. 1980). "[N]otice and opportunity for [a] hearing appropriate to the nature of the case" are the essential requirements of due process. *See generally Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (citing Henry J. Friendly, *Some Kind of Hearing*, 123 U. PA. L. REV. 1267, 1281 (1975)). Due process is not violated when a person is unlawfully deprived of property and a meaningful post-deprivation remedy is provided. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984) (an unauthorized intentional deprivation of property did not violate due process because the state provided an adequate post-deprivation remedy).

In count 2 of the present case, plaintiff alleges two due process violations: (1) that putative class members did not receive individualized notice of the LCD's retirement so that they could have information necessary to appeal blood glucose test denials, (*see* Am. Compl. at ¶¶ 116–20), and (2) that Mutual's Medicare Summary Notices ("MSNs") and other communications, which offer only a general explanation for denial, provide inadequate notice of the true coverage policies being applied—allegedly those of the retired LCD. (*See* Mot. for Summ. J. Mem. at 32–33; Ex. 17 to Am. Compl.; MSN, Attach. 1 to Routt Decl. at 53.)

Regarding the first argument, the Court finds that plaintiff does not have standing to assert the claim. Analysis of any class action claim begins with a court's inquiry into standing wherein a plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). However, third-party standing

may be permitted when three factors are present: (1) "[t]he litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute, (2) the litigant must have a close relation to the third party, and (3) there must exist some hindrance to the third party's ability to protect his or her own interests." *Lepelletier v. FDIC*, 164 F.3d 37, 43 (D.C. Cir. 1999) (citing *Powers v. Ohio*, 499 U.S. 400, 411 (1991) (internal quotations omitted)). Here, plaintiff has failed to establish injury in fact. Plaintiff recognizes that she—unlike members of the putative class—received notice of the fact that Mutual would re-adjudicate claims without reference to the retired blood glucose LCD. (*See* Am. Compl. ¶¶ 116–118.) In fact, the ALJ's order dated September 19, 2006, expressly offered Ms. Bailey notice that the blood glucose LCD had been retired and that Mutual would re-adjudicate plaintiff's claims without application of the LCD. (*See* Admin. R. at 1–2.) Although putative class members may not have received such notice, plaintiff Bailey could not possibly suffer "injury in fact" arising from her own personal alleged lack of notice because she admittedly received the notification in question. Without standing, Ms. Bailey's first theory of due process violation must be rejected.

The Court next considers plaintiff's second theory of due process violation regarding the alleged insufficiency of the substance of Mutual's notifications of claim denials. Plaintiff states that her due process rights and those of similarly situated beneficiaries are violated by Mutual's MSNs and other communications that fail to state which coverage policies Mutual relies upon in denying claims—allegedly the retired LCD's policies. (*See* Mot. for Summ. J. Mem. at 62.) Plaintiff asserts that such failure results in a high risk that putative class members will be deprived of their property interest in Medicare Part B services. (*See id.*) Plaintiff asks this Court to, in essence, find that Mutual's explanation that "the information provided does not support the

16

need for this service or item" violates due process.  (*See* MSN, Attach. 1 to Routt Decl. at 55.)

This is the same style of explanation outlined in § 7012 of the nationally utilized *Medicare*

*Carriers Manual* (the "Manual").  *See Gray Panthers v. Heckler*, No. 77-CV-488, 1985 WL

81770 (D.D.C. Nov. 4, 1985) (implementing changes to the explanation of "medical necessity"

in the Manual as the product of a class-action settlement); *see also* Medicare Carriers Manual,

Part III, § 7012, Part 15.9, available at, http://www.cms.hhs.gov/Manuals/PBM.

     Mutual provides notice that these claims are denied as unnecessary.  This is specific

enough to satisfy the demands of due process, particularly in light of the fact that all

beneficiaries are advised of the right to initiate procedures for obtaining more information

concerning an initial denial of a claim for benefits and notification of the right to seek a

redetermination or otherwise appeal the decision.  *See* 42 U.S.C. § 1395ff(a)(4)(A)(ii), (iii).

Furthermore, Medicare beneficiaries "may obtain, upon request, information on the specific

provision of the policy, manual, or regulation" applied.  *Id.* § 1395ff(a)(4)(C).  Additionally, the

Court notes that Mutual's explanation, although basic, puts beneficiaries on notice that their

claims have been denied for a lack of necessity as opposed to the myriad of other possible

explanations that could have nothing to do with necessity such as a service simply not being

covered under any circumstances.  The Court is unable to find that Mutual has not provided

"notice of the factual basis" for claims denials.  *See Gray Panthers*, 652 F.2d at 168 (stating that

such notice is a due process requirement).  Additionally, to the extent that plaintiff argues that

beneficiaries are entitled to a legal explanation such as the regulatory grounds underlying a

specific claim denial, Congress has not required such notice and the Court does not find that lack

thereof rises to the level of a due process violation. Accordingly, when construing all facts and allegations in plaintiff's favor, the Court finds that it is proper to dismiss plaintiff's due process claim.

## III.     <u>CONCLUSION</u>

Upon full consideration of the parties' filings, applicable law, and the record herein, this Court will GRANT defendants' motion [18] to dismiss.

Plaintiff has moved [23] for summary judgment in this action. However, as discussed above, this Court finds that it is without subject-matter jurisdiction to consider plaintiff's first cause of action and that dismissal is also appropriate as to plaintiff's due process claim. Accordingly, the Court must DENY the motion for summary judgment.

A separate order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, on February 8, 2008.

18